UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

COMPASS-CHARLOTTE 1031, LLC,

                              Plaintiff,

    -against-

PRIME CAPITAL VENTURES, LLC                    Case No.:  1:24-CV-55 (MAD/DJS)
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                          Defendants.

_____

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF EMERGENCY MOTION FOR APPOINTMENT OF A
## RECEIVER AND FOR EXPEDITED DISCOVERY

**<u>TABLE OF CONTENTS</u>**

**PRELIMINARY STATEMENT** ........................................................................................ 1

    I.    PRIME CAPITAL VENTURES........................................................................ 2

        a.    Prime Appears to Have No Accountants and Misrepresented the Location of Its Books And Records ......................................................................................... 2

        b.    Prime Has Not Repaid Millions of Deposits ................................................ 2

    II.    BERONE CAPITAL ....................................................................................... 3

        a.    Prime Told the Bankruptcy Court That the Missing ICA Deposits Were Held by Berone Capital - an Entity That Cannot Be Located and Has No Physical Offices .............. 3

**ARGUMENT** ............................................................................................................ 4

    I.    AN ORDER APPOINTING A RECEIVER IS NECESSARY AND APPROPRIATE TO PROTECT COMPASS-CHARLOTTE'S INTERESTS ......................................... 4

        a.    Each of the Relevant Factors Justifies the Appointment of a Permanent, General Receiver ......................................................................................................... 5

        b.    In the Alternative, the Court Should Appoint a Temporary, Limited Receiver ......... 12

        c.    Potential Receiver .................................................................................... 12

    II.    AN ORDER AUTHORIZING EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE................................................................................................ 13

        a.    Good Cause Exists For Expedited Discovery............................................. 13

        b.    The Requested Discovery Satisfies *Notaro* ............................................. 15

        c.    In the Interim, Compass-Charlotte Should be Permitted to Engage in Limited Expedited Discovery ..................................................................................................... 16

**CONCLUSION** ....................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ayyash v. Bank Al-Madina*,
  233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................ 13, 15, 16
*Brenntag Int'l. Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir 1999) .......................................................................................... 8
*Briggs & Stratton Corp. v. Chongquing RATO Power Co.*,
  2013 U.S. Dist. LEXIS 196222 (N.D.N.Y. Apr. 25, 2013) ...................................... 13
*Citibank, N.A. v. Nyland (CF 8) Ltd.*,
  839 F.2d 93 (2d Cir. 1988) .......................................................................................... 12
*Computerland Corp. v. Batac, Inc.*,
  No. 88 CIV. 8624 (SWK), 1988 WL 140816, (S.D.N.Y. Dec. 16, 1988) ........................ 14, 15
*Crites, Inc., v. Prudential Ins. Co. of Am.*,
  322 U.S. 408, (1944) .................................................................................................... 12
*D.B. Zwirn Special Opportunities Fund, LP v. Tama Broadcasting, Inc.*,
  550 F. Supp. 2  (S.D.N.Y. 2008) ................................................................................. 8
*Esbitt v Dutch-Am. Mercantile Corp.*,
  335 F. 2d 141 (2d Cir. 1964) ....................................................................................... 5
*Firemen's Ins. Co. of Newark, N.J. v. Keating*,
  753 F. Supp. 1146 (S.D.N.Y.1990) ............................................................................. 9
*Hempchain Farms, LLC v. Sack*,
  516 F. Supp. 3d 197 (N.D.N.Y. 2021) ........................................................................ 5
*In re Feit & Drexler, Inc.*,
  760 F.2d 406 (2d Cir.1985).......................................................................................... 9
*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011)...................................... 5
*Muench Photography, Inc. v. McGraw-Hill Cos.*,
  2013 WL 5372785 (S.D.N.Y. Aug. 15, 2013) ............................................................ 11
*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................................... 15
*Novartis Consumer Health, Inc. v. Johnson & Johnson Consumer Pharm. Co.*,
  290 F.3d 578 (3d Cir. 2002)......................................................................................... 10
*OMG Fidelity, Inc. v. Sirius Techs., Inc.*,
  239 F.R.D. 300 (N.D.N.Y. 2006) ................................................................................ 14
*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990).......................................................................................... 10
*Pashaian v. Eccelston Props.*,
  88 F.3d 77 (2d Cir. 1996).............................................................................................. 8
*Qwest Comms Int'l, Inc. v. Worldquest Networks, Inc.*,
  213 F.R.D. 418 (D.Colo.2003) .................................................................................... 15
*Roswell Capital Partners LLC v. Alternative Constr. Techs.*,
  2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ............................................................... 11

*S.E.C. v Am. Bd. of Trade, Inc.,*
  830 F.2d 431 (2d Cir. 1987)............................................................................. 4, 8
*Semitool, Inc. v. Tokyo Electron America, Inc.,*
  208 F.R.D. 273 (N.D. Cal. 2002)................................................................... 13, 15
*Southeast Farms, Inc. v. Martens Fresh, LLC,*
  2023 WL 2447752 (N.D.N.Y. Jan. 31, 2023)...................................................... 15
*Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp, Inc.,*
  2003 WL 23350128 (W.D.N.Y. Dec. 5, 2003)..................................................... 15
*Tuccillo v. Geisha NYC, LLC,*
  635 F. Supp. 2d 227 (E.D.N.Y. 2009) ................................................................ 10
*U.S. Bank Nat'l Ass'n v. Nesbitt Bellvue Prop. LLC,*
  866 F. Supp. 2d 247 (S.D.N.Y. 2012).............................................................. 4, 5
*U.S. v. Vulpis,*
  967 F.2d 734 (2d Cir. 1992)................................................................................ 4
*U.S. v. Zitron,*
  1990 WL 13278 (S.D.N.Y. Feb. 2, 1990)............................................................. 8
*Wilmington Tr., N.A. as Trustee for the Registered Holders of Credit Suisse First Boston Mortg.*
  *Sec. Corp. v. 1738 E. 4th St. LLC,*
  2023 WL 7000966 (E.D.N.Y. Sept. 13, 2023) .................................................... 12
*Zeltser v. Regal v. World-Wide Holdings,*
  111 F.3d 124 (2d Cir. 1997)................................................................................ 8

**Statutes**

28 U.S.C. §§ 754, 1692.......................................................................................... 5

**Rules**

Fed. R. Civ. P. 26............................................................................................... 13, 17
Fed. R. Civ. P. 30............................................................................................... 13, 17
Fed. R. Civ. P. 33 & 34.......................................................................................... 13
Fed. R. Civ. P. 66.................................................................................................... 4

Plaintiff Compass-Charlotte 1031, LLC ("Compass-Charlotte") submits this memorandum of law in support of its emergency motion for appointment of a receiver and expedited discovery. Plaintiff incorporates the allegations and exhibits set forth in and attached to the Verified Complaint as if set forth fully herein. Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Verified Complaint.

## PRELIMINARY STATEMENT

This case involves what appears to be a multi-state fraud scheme with victims holding claims for well over $50 million for return of deposits which were paid and then not returned. That $50+ million of deposits has gone missing (including a nearly $16 million deposit of Plaintiff Compass-Charlotte). The immediate appointment of a receiver is required to find the deposits and return those deposits to Plaintiff and other creditors.

Prime Capital Ventures, LLC ("Prime") and Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC (collectively "Berone Capital") are joint venture partners who together operate under the name "Prime Capital Ventures LLC." They claim to provide third parties with loans in the form of lines of credit. They promise that if a third party sends them 20% of the loan value in cash upfront (which they refer to as an "interest credit account" or "ICA deposit"), then they will hold that amount to pay interest on the line of credit they promise to advance to the third party.

However, Prime and Berone Capital have repeatedly taken such deposits, failed to advance lines of credit, and then failed to return the deposits when contractually required to do so. Prime has repeatedly and falsely told Compass-Charlotte (and numerous other victims) that the funds are going to be returned any moment or that the wire has already been sent (all with no return of funds).

Indeed, Prime and Berone Capital have taken over $50 million of ICA deposits from unsuspecting victims (like plaintiff Compass-Charlotte) and now those funds are gone and their location is unknown, ***even after a federal bankruptcy court issued multiple orders attempting to locate the funds and entered a sanctions order against Berone Capital for non-compliance***.[1]

## I.   PRIME CAPITAL VENTURES

Prime claims to have made and funded hundreds of millions of dollars in loans from its Albany, New York headquarters, but is not even registered with the New York Secretary of State to conduct business in New York.

### a.   Prime Appears to Have No Accountants and Misrepresented the Location of Its Books And Records

Prime's principal told the federal bankruptcy court that a Rochester accounting firm has all of Prime's books and records and that the firm "completely handle[s] our accounting, one hundred percent."   Yet, that same accountant thereafter responded to the trustee appointed by the bankruptcy court that "I do not have the books and records for this company" and "I have no record of this company."   Those books and records have not been located.   Indeed, Prime was unable to even provide the bankruptcy trustee with the most basic of financial statements (like a balance sheet or income statement), although the trustee requested them numerous times.

### b.   Prime Has Not Repaid Millions of Deposits

As set forth more fully in paragraphs 138-143 of the Verified Complaint, Prime has engaged in a pattern of soliciting deposits ("ICA Deposits") from parties (in addition to Compass-Charlotte) seeking loans by representing that the ICA Deposits would be used solely to pay the

---

[1] Compass-Charlotte and other Prime creditors filed an involuntary bankruptcy petition against Prime on December 19, 2023 (*In re Prime Capital Ventures, LLC*, 23-11302 (Bankr. N.D.N.Y.) ("Prime Bankruptcy Case")), which was dismissed upon motion of the petitioning creditors on January 9, 2024.   *See* Prime Bankruptcy Case, Doc. 87.

interest due on the loans.  Instead, Prime failed to advance loan proceeds and did not return the ICA Deposit upon demand.  Based upon lawsuits that have been filed in multiple jurisdictions that are based on facts substantially similar to those in the case at bar, Compass-Charlotte is aware of over $50 million in ICA Deposits that Prime has failed to return to borrowers.

## II.    **BERONE CAPITAL**

### a.    **Prime Told the Bankruptcy Court That the Missing ICA Deposits Were Held by Berone Capital - an Entity That Cannot Be Located and Has No Physical Offices**

Prime entered into a Joint Venture Agreement with Berone Capital on August 16, 2022. Verified Compl., Exhibit 25.  As set forth more fully in paragraphs 144-165 of the Verified Complaint, Prime represented to a federal bankruptcy court that the ICA Deposits provided by Compass Charlotte and other loan applicants to Prime were now held by Berone Capital.  The bankruptcy trustee then attempted to contact Berone Capital to verify Prime's information. However – much like Prime's books and records – Berone Capital cannot be located.

The following facts relating to Berone Capital are instructive:

  i.    Berone Capital defaulted on an order to show cause issued in the Prime Bankruptcy Case regarding Berone Capital's failure to respond to discovery demands;

  ii.    Berone Capital appears to have no physical offices.  The addresses it does list are to a mailbox at a UPS store in Georgia and to a $99 / month "virtual office" in Miami, Florida;

  iii.    No one responds to Berone Capital's phone or to emails;

  iv.    Two of the Berone Capital entities, including the general partner of the fund which allegedly holds the $50+ million plus in deposits, voluntarily dissolved on November 29, 2023; and

  v.    As set forth in paragraphs 57-59 of the Verified Complaint, Berone Capital appears to have made false statements in its filings with the Securities and Exchange Commission ("SEC") as to whether its members were registered brokers and if it was currently managing funds.

Therefore, although Prime claims that the ICA Deposits sent to it by Charlotte-Compass and others are held by Berone Capital, the Berone Capital hedge fund allegedly holding the ICA Deposits has

dissolved, and no one can say who is now in control of that hedge fund or where the ICA deposits are.  Berone Capital has failed to respond to all inquiries and is now subject to a contempt order from the bankruptcy court.

If Prime and Berone Capital are legitimate entities conducting legitimate businesses, they should be willing to immediately provide information to the Court and a third-party receiver appointed by the Court to confirm where the missing $50+ million in deposits is (including Compass-Charlotte's $16 million deposit) and that they are solvent and can repay the millions of dollars of deposits that are owed.

## ARGUMENT

### I.   AN ORDER APPOINTING A RECEIVER IS NECESSARY AND APPROPRIATE TO PROTECT COMPASS-CHARLOTTE'S INTERESTS

Rule 66 of the Federal Rules of Civil Procedure authorizes the appointment of a receiver in federal cases.  FED. R. CIV. P. 66 ("These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued.").  The standard for appointing a receiver in a federal diversity action is governed by federal law.  *U.S. Bank Nat'l Ass'n v. Nesbitt Bellvue Prop. LLC*, 866 F. Supp. 2d 247, 255 (S.D.N.Y. 2012).

Whether to appoint a receiver "is a matter of judicial discretion."  *U.S. v. Vulpis*, 967 F.2d 734, 736 (2d Cir. 1992).  This Court has the power to appoint a receiver "where necessary to prevent the dissipation of a defendant's assets pending further action by the court."  *S.E.C. v Am. Bd. of Trade, Inc.*, 830 F.2d 431, 426 (2d Cir. 1987) (affirming interim appointment of a receiver to conserve estate assets in light of defendants' deteriorating financial condition).  "A primary purpose of appointing a receiver is to conserve the existing estate."  *Esbitt v Dutch-Am. Mercantile Corp.*, 335 F. 2d 141 (2d Cir. 1964) (approving appointment).  Factors a court considers when deciding whether to appoint a receiver include:

> Fraudulent conduct on the part of the defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Nesbitt Bellvue Prop. LLC*, 866 F. Supp. 2d at 255.  A receiver appointed in federal court in an action involving property in different districts has jurisdiction and control over all such property. *Id.* at 256 (citing 28 U.S.C. §§ 754, 1692).

As set forth in the Verified Complaint and herein, these factors weigh heavily in Compass-Charlotte's favor, and a receiver must therefore be appointed in this case.  Indeed, this Court has granted the appointment of receivers under similar circumstances in the past.  *See S.E.C. v. Ryan et al.*, Case No. 1:10-cv-00513, Dkt. No. 6 (N.D.N.Y. May 3, 2010) (Mordue, J.).

### a. Each of the Relevant Factors Justifies the Appointment of a Permanent, General Receiver

#### i. *The Defendants Committed Fraud in Connection with their Line of Credit Scheme*

Courts recognize fraud where a plaintiff successfully alleges "(1) a misrepresentation or material omission of fact, (2) the falsity of the representation, (3) knowledge of the party making the representation that it was false when made, (4) justifiable reliance by the plaintiff, and (5) resulting injury."  *Hempchain Farms, LLC v. Sack*, 516 F. Supp. 3d 197, 205 (N.D.N.Y. 2021) (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011)).

As outlined in the Verified Complaint, Defendants have engaged in what appears to be a multi-state fraud scheme with victims holding well over $50 million for the return of deposits which were paid, never returned, and have seemingly gone missing.  Verified Compl. ¶¶ 1, 138. The scheme involves Defendants making material false misrepresentations to induce its customers to enter into line of credit agreements whereby customers provide Prime with a large deposit

totaling 20% of the line of credit intended to, but never do, serve as funding for a corresponding Interest Credit Account.  *Id.* ¶ 2.  Defendants do not segregate these deposits in an Interest Credit Account ("ICA"); instead, Defendants take the money wired by borrowers and use it for other purposes, including alternative investments and to fund Prime's apparent sole member's flashy lifestyle.  *Id.* ¶ 102.

Defendants' material false statements have taken various forms.  For example, on March 17, 2022, Prime's apparent sole member—Kris Roglieri—published a public relations notice and related YouTube video touting that Prime successfully funded a $188 million deal with ALUX Properties, LLC for The Bailey in Atlanta, Georgia.  *Id.* ¶ 73.  In reality, this marketing campaign was a complete fraud as Prime never funded any loan to ALUX Properties; Prime only entered into a Development Line of Credit Agreement with third party investor Blackwater Capital Group related to the ALUX deal.  *Id.* ¶¶ 75-76.  ALUX Properties subsequently filed a lawsuit against Prime in Fulton County, Georgia as a result of this lie, alleging the deal was used only to steal a $10 million ICA payment from third party investor Blackwater Capital Group.  *Id.* ¶¶ 84-86.  As a result, a receiver was appointed in Georgia after the court concluded the Development Line of Credit with Blackwater Capital Group was a "total fraud."  *Id.* ¶¶ 87-88.  Despite this, Prime continues to this day to promote on its website and YouTube page that this deal was successfully funded in an effort to induce future customers into doing business with Prime. *Id.* ¶ 89.  In addition to the ALUX deal, Prime also publically claims to have funded deals totaling $410 million in South Korea and $2.3 billion in Dubai.  *Id.* ¶ 82-83.  Like ALUX, these foreign loans were never funded by Prime and are promoted simply as a means of inducing future customers.

Since March 2022, Prime has induced at least seven other corporate entities into entering similar Development Line of Credit Agreements—primarily taking advantage of the Federal

Reserve's high interest rates by offering unsuspecting customers lower-than-average rates on lines of credit. *Id.* ¶¶ 138-140. One such entity is Compass-Charlotte. On April 24, 2023, Compass-Charlotte (as borrower) entered into a Development Line of Credit Agreement with Prime (as lender) to make a loan for $79,511,250 for purposes of funding one of Compass-Charlotte's multi-family apartment projects in North Carolina (the "Compass Prime Agreement"). *Id.* ¶ 126. The Compass Prime Agreement is virtually identical to the Blackwater Capital form which the Georgia court determined to be a "total fraud." *Id.* In entering this agreement, Compass-Charlotte reasonably relied on Prime's public statements that it successfully funded the ALUX and other multi-million dollar deals—including the representation on Prime's website that Prime is "A Boutique Investment Bank" with "Over $10 Billion in Transactions Financed." *Id.* ¶ 120. Compass-Charlotte also relied on Section 10.12 of the Compass Prime Agreement, which purported to Compass-Charlotte that Prime was able to fund the nearly $80 million loan. *Id.* ¶ 128. In so relying, Compass-Charlotte wired $15,902,250 to Prime as an ICA payment pursuant to the Compass Prime Agreement. *Id.* ¶ 130. Since April 27, 2023, Prime has had Compass-Charlotte's ICA deposit, but has never advanced any funds or provided a line of credit. *Id.* ¶ 135. Compass-Charlotte demanded the return of its deposit on October 27, 2023 pursuant to the Compass Prime Agreement's termination clause, but has yet to see it returned, notwithstanding the fact that Prime has repeatedly acknowledged Compass-Charlotte is owed such money. *Id.* ¶¶ 135-137.

While it continues to wrongfully withhold multiple ICA deposits, Prime's apparent sole member—Kris Roglieri—has publicly touted a life of extreme luxury. *Id.* ¶ 141. For example, a July 24, 2023 article published by Gentleman Avenue lists Kris Roglieri as the owner of a Maserati MC12—worth upwards of $2.5 million—and various other luxury supercars. *Id.*

This scheme has resulted in extensive injury to its victims.  Compass-Charlotte is now missing nearly $16 million.  *Id.* ¶ 170.  Defendants' conduct is classic fraud.

    ii.  *Plaintiff is in Imminent Danger of Loss and A Receiver is Necessary to Prevent Irreparable Harm*

Imminent danger in the context of appointing a receiver is found where the Defendants are subject to impending insolvency.  *See, e.g.*, *D.B. Zwirn Special Opportunities Fund, LP v. Tama Broadcasting, Inc.*, 550 F. Supp. 2 481, 491-92 (S.D.N.Y. 2008); *U.S. v. Zitron*, 1990 WL 13278, *2 (S.D.N.Y. Feb. 2, 1990) (quoting Weinstein, Korn & Miller, New York Civil Practice ¶ 5228.04 at 52–466 (1989)) ("[t]he need for a receivership is obvious when . . . leaving the property in the custody of the judgment debtor creates a risk of fraud or insolvency.").  This deterioration of Defendants' financial condition, on its own, is sufficient grounds for the appointment of a receiver.  *See Brenntag Int'l. Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir 1999) (affirming a finding of irreparable harm to plaintiff in light of defendant's insolvency); *see also Am. Bd. of Trade*, 830 F.2d at 436 (affirming appointment of receiver in light of defendants' deteriorating financial condition); *Zeltser v. Regal v. World-Wide Holdings*, 111 F.3d 124 (2d Cir. 1997) (affirming injunction based on defendant's likely insolvency and plaintiff's potential inability to collect on a judgment); *Pashaian v. Eccelston Props.*, 88 F.3d 77, 87 (2d Cir. 1996) (affirming finding of irreparable harm based on defendant's insolvency).

Additionally, irreparable harm is established where a Defendant attempts to remove collateral from a Plaintiff's reach.  "It is familiar law that where a non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is proper."  *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y.1990); *see also In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir.1985) ("even

where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction.").

As set forth in the Verified Complaint, Prime failed to provide the bankruptcy court with accurate representations of its corporate assets.  Prime's apparent sole member, Kris Roglieri, made repeated false statements to the bankruptcy court regarding Prime's assets, and Berone Capital has failed to appear in the bankruptcy court to verify that Prime has money on deposit with it at RBC despite the bankruptcy court's orders to do so.  Verified Complaint ¶¶ 158-164.  For example, Kris Roglieri testified in the bankruptcy court that "Sardone & Sardone CPA" is the only entity with remote access to Prime's books and records.  *Id.* ¶ 156.  Following that testimony, a representative of Sardone & Sardone CPA stated in an email, "I am confused . . . I do not have the books and records for this company.  I have no record of this company."  *Id.* ¶ 157.  Additionally, Roglieri testified that he was confident over $52+ million was being held on deposit with Berone Capital at the Royal Bank of Canada ("RBC")—however, the interim trustee appointed by the bankruptcy court discovered after communicating directly with RBC that such statement was a fabrication.  *Id.* ¶ 160.  While RBC does hold an account in the name of Berone Capital, it is not held for the benefit of Prime, and contains nowhere near $52+ million.  *Id.*  Prime continues to owe millions of dollars to creditors that were subjected to Prime and Berone Capital's Line of Credit Scheme.  *Id.* ¶¶ 138-140.  Without any clarity regarding the viability of Prime or Berone Capital's businesses, Compass-Charlotte (and this Court) must conclude that Prime is at or approaching insolvency.  Thus, appointment of a receiver is appropriate.

There is also a substantial likelihood that Defendants will continue their pattern and practice of transferring or dispensing funds away from accounts in Prime's possession, depriving

Compass-Charlotte of its ability to recover its contractually-entitled ICA payment. Compass-Charlotte was led to believe when entering the Compass Prime Agreement that its ICA payment was being held in a segregated account at Citi Bank in Greenwich, Connecticut, where the ICA payment was originally wired. *Id.* ¶¶ 130-134. However, it later became apparent that Prime unilaterally moved that money to a foreign investment account at RBC that is not even held for the benefit of Prime. *Id.* ¶ 136. Indeed, it appears many of Prime's victims' ICA payments were similarly transferred to foreign accounts. *Id.* ¶¶ 138-140. In the absence of a receiver monitoring the flow of Prime's funds, there is a substantial likelihood that Prime will engage in similar practices with whatever corporate assets it has left and Compass-Charlotte (as well as Prime's other victims) will continue to suffer irreparable harm as a result.

### iii.   The Balancing of Harms Favors Plaintiff

It is undisputed that Compass-Charlotte has complied with its contractual obligations. Verified Compl. ¶¶ 130, 168. In stark contrast, as set forth in detail above and as admitted by Defendants, Defendants have engaged in a fraudulent scheme, including but not limited to the conduct that forms the basis of this lawsuit. To the extent Defendants suffer any harm, that harm is entirely self-inflicted and does not warrant withholding relief. *See Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 247-48 (E.D.N.Y. 2009) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) for the proposition that "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself"); *see also Opticians Ass'n. of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (finding that party "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself").

#### iv.   Plaintiff Has a Substantial Likelihood of Success on the Merits

In its Complaint, Compass-Charlotte asserts three claims against Defendants – all of which have merit and entitle Compass-Charlotte to relief.  For the purposes of seeking immediate injunctive relief, however, Compass-Charlotte addresses only the causes of action for breach of contract, where Compass-Charlotte's relief cannot be disputed based on the evidence submitted herewith.

A successful claim for breach of contract under New York law must allege "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages."  *Muench Photography, Inc. v. McGraw-Hill Cos.*, 2013 WL 5372785, *3 (S.D.N.Y. Aug. 15, 2013).  Here, there is no question as to any of the foregoing requirements.  There is no dispute that Compass-Charlotte and Prime entered into the Compass Prime Agreement.  Verified Compl. ¶ 126.  Further, there is no question that Compass-Charlotte performed all of its obligations under the Compass Prime Agreement.  *Id.* ¶¶ 130, 168. There is also no dispute that Prime breached the Compass Prime Agreement by failing to return Compass-Charlotte's $15,902,250.00 ICA payment, because Prime has admitted the money belongs to Compass-Charlotte.  *Id.* ¶¶ 135-137, 166-170.  Compass-Charlotte will succeed on the merits of this claim.  *See, e.g.*, *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2009 WL 222348, *8-18 (S.D.N.Y. Jan. 30, 2009) (holding that the plaintiff was likely to succeed on the merits of its breach of contract claim and granting TRO and preliminary injunction where the defendant admitted to breaching the parties' contract); *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, 2012 WL 9193862012, *1-6 (S.D.N.Y. Mar. 145, 2012) (granting summary judgment on breach of contract claim where the defendants did not dispute breaching the relevant contract).

**b.  In the Alternative, the Court Should Appoint a Temporary, Limited Receiver**

Courts are permitted to limit the powers of a receiver where appropriate.  *See Wilmington Tr., N.A. as Trustee for the Registered Holders of Credit Suisse First Boston Mortg. Sec. Corp. v. 1738 E. 4th St. LLC*, 2023 WL 7000966, *6 (E.D.N.Y. Sept. 13, 2023) (internal citations omitted); *see also Citibank, N.A. v. Nyland (CF 8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988) ("[The receiver's] authority is wholly determined by the order of the appointing court."); *see also Crites, Inc., v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 413, (1944) ("[O]fficial duties as co-receiver were limited to those conferred upon him by the court").

As set forth *supra*, Argument Section I(A)(ii), Compass-Charlotte will undoubtedly suffer irreparable harm in the absence of the appointment of a receiver due to Prime's likely insolvency and the potential for Prime to move and dispense its remaining funds.  To prevent this irreparable harm from persisting while Compass-Charlotte waits for an evidentiary hearing on its request for a general receiver, the Court should utilize its inherent powers and immediately appoint a limited receiver.  This limited receiver should be permitted to review the books and records of Prime and Berone Capital and report back to the Court on a weekly basis as to whether (a) Prime and Berone Capital are providing open and complete access to records for receiver to review; (b) the amount and location of ICA deposits made by Plaintiff and other creditors; and (c) whether Prime and Berone Capital are legitimate entities or are running a fraudulent scheme.  Such information will assist Compass-Charlotte in understanding whether Prime has the corporate assets it claims it does to satisfy Compass-Charlotte's ICA payment and further justify the need for this Court to appoint a permanent, general receiver.

**c.  Potential Receiver**

Compass-Charlotte has identified Paul A. Levine, Esq., partner at the law firm Lemery Greisler LLC, to serve as the receiver.  Mr. Levine has submitted detailed proposals setting forth

billing rates for himself and professionals he is likely to hire, as well as summary information

detailing his relevant experience and qualifications.  *See generally* Levine Decl.[2]

## II.   AN ORDER AUTHORIZING EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE

In light of Defendants' ongoing fraudulent and deceptive conduct, Plaintiff also requests

expedited discovery in this matter to identify the amount and location of Defendants' assets.  The

Court has broad discretion to control the order of discovery.  *See Ayyash v. Bank Al-Madina*, 233

F.R.D. 325, 326-27 (S.D.N.Y. 2005); FED. R. CIV. P. 26(b), (c).  Though parties generally may not

initiate discovery prior to satisfying Rule 26(f), the Court "may order expedited discovery where

appropriate under a 'flexible standard of reasonableness and good cause.'"  *Briggs & Stratton*

*Corp. v. Chongqing RATO Power Co.*, 2013 U.S. Dist. LEXIS 196222, *3 (N.D.N.Y. Apr. 25,

2013) (citation omitted).  The Federal Rules anticipate that courts will exercise their discretion to

order expedited discovery in cases when necessary.  FED. R. CIV. P. 26(d)(1) (permitting court to

allow discovery before the time specified under the rules); FED. R. CIV. P. 30 (providing that the

court may allow a plaintiff "to take the deposition before the time specified in Rule 26(d)"); FED.

R. CIV. P. 33 & 34 (granting the Court the authority to permit a party to serve discovery before the

Rule 26(f) conference and to shorten the time a defendant has to respond to written discovery).

### a.   Good Cause Exists For Expedited Discovery

Good cause exists "where the need for expedited discovery, in consideration of the

administration of justice, outweighs the prejudice to the responding party."  *Semitool, Inc. v. Tokyo*

*Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002).  Indeed, whether discovery should

commence on an expedited basis "comes down to a comparison of the potential prejudice which

will be suffered by the defendant if discovery is permitted, and that which will be experienced by

---

[2] References to the "Levine Decl." are to the Declaration of Paul A. Levine, Esq., submitted herewith.

the plaintiff if denied the opportunity for discovery at this stage." *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006).   Here, expedited discovery is both reasonable and supported by good cause.

Despite efforts by a federal bankruptcy trustee to locate the nearly $50 million in ICA deposits (including approximately $16 million belonging to Compass-Charlotte), the whereabouts of those deposits remains unknown. Verified Compl. ¶ 4.  Given Defendants' ongoing deceptive conduct described above, and as more fully described in the Verified Complaint, Plaintiff reasonably believes Defendants will attempt to transfer or further conceal their assets to prevent recovery on its claims.   As discussed above, irreparable harm "is present if it appears that defendants intend[] to frustrate a money judgment by transferring assets in a way that makes the judgment uncollectable." *Computerland Corp. v. Batac, Inc.*, No. 88 CIV. 8624 (SWK), 1988 WL 140816, *4-5, (S.D.N.Y. Dec. 16, 1988).  Thus, expedited discovery is imperative to prevent the dissipation of assets and protect Compass-Charlotte from irreparable injury.  Moreover, expedited discovery may further reveal whether the Defendants ever ran a legitimate business or simply operated a multi-million dollar fraudulent scheme.  Such information would further aid resolution of the ultimate dispute.

In contrast, Defendants will not be prejudiced by expedited discovery.  Defendants have had ample opportunity to retain counsel and prepare for litigation in light of the recently concluded bankruptcy proceeding that addressed similar issues and claims.  Verified Compl. ¶ 164.  They will be required to produce the requested discovery regardless.  Furthermore, the immediate discovery Compass-Charlotte seeks is narrowly tailored and directed to non-parties which will impose no burden to the Defendants.  Accordingly, the benefits of expedited discovery far outweigh any prejudice to the Defendants, and good cause exists to grant the requested relief.

**b. The Requested Discovery Satisfies *Notaro***

In addition to the good cause and reasonableness standard, courts in the Second Circuit consider the four factor test established in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982).  *See Southeast Farms, Inc. v. Martens Fresh, LLC*, 2023 WL 2447752, *5 (N.D.N.Y. Jan. 31, 2023). These four factors include a showing of: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted." *Id.* (citing *Notaro*, 95 F.R.D. at 405).  Notably, many courts have rejected the *Notaro* test in favor of the more flexible "good cause" standard described above.  *Ayyash*, 233 F.R.D. at 327 (citing *Special Situations Cayman Fund, L.P. v. Dot Com Entm't. Grp., Inc.,* 2003 WL 23350128, *1 (W.D.N.Y. Dec. 5, 2003); *Qwest Comms. Int'l., Inc. v. Worldquest Networks, Inc.* 213 F.R.D. 418, 419-20  (D.Colo.2003); *Semitool,  Inc.,* 208  F.R.D.  at  275).  Plaintiff's request for expedited discovery also satisfies *Notaro*.

Here, as discussed above, Plaintiff is likely to prevail on the merits of its claims.  This is not a case about liability – Prime has admitted numerous times that it owes approximately $16 million to Compass-Charlotte.  Verified Compl. ¶ 137.  Yet no funds have been returned, and now neither Prime nor Berone Capital will indicate where Compass-Charlotte's deposit is.  *Id.* ¶¶ 135-137.  Thus, there is no question that Compass-Charlotte will succeed on the merits of its claims. As discussed above, Compass-Charlotte will suffer irreparable injury in the absence of expedited discovery as it is likely Defendants will frustrate Compass-Charlotte's money judgment by transferring assets in advance of discovery.  *Computerland Corp.*, 1988 WL 140816, *4-5 (holding that the plaintiff made the requisite showing under *Notaro* for irreparable injury where it appeared

defendants intended to make a judgment uncollectible).  As set forth above and in the Verified Complaint, Defendants have engaged in concerning fraudulent conduct and the circumstances here heavily support that Defendants are engaged in a fraudulent scheme.  Expedited discovery would allow Compass-Charlotte to gather information critical to its claims, including the location of its nearly $16 million, before such assets are wrongly dissipated, while resulting in virtually no burden to the Defendants.

   c.   **In the Interim, Compass-Charlotte Should be Permitted to Engage in Limited Expedited Discovery**

   In light of Defendants' ongoing misconduct and the substantial threat to the assets at the heart of this dispute, Compass-Charlotte further requests an order allowing it to immediately subpoena certain third-party banks and financial institutions that are believed to have critical information about the location of Defendants' assets.[3]  Absent immediate interim relief, Defendants will have time to further transfer or conceal the missing deposits, which would destroy Compass-Charlotte's ability to recover a judgment.  Courts have found there to be an immediate need for discovery where there is a risk that defendants have incentive and capacity to hide the assets relevant to the dispute. *Ayyash*, 233 F.R.D. at 327 (S.D.N.Y. 2005) (finding good cause for expedited discovery on third party banks where the plaintiff "made a strong evidentiary showing of the substantiality of his claims," and where the defendants "have both incentive and capacity to hide [the assets at issue]").  Thus, time is of the essence to preserve Defendants' assets, and interim relief pending resolution of this motion is necessary to prevent irreparable injury to Compass-Charlotte.

_____

[3] These banks and financial institutions include but are not limited to: Citi Bank N.A., Royal Bank of Canada, Signature Bank/Flagstar, Key Bank, Farmers State Bank (Iowa), and IBKR (Interactive Brokers).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

(i)     appoint a permanent receiver with all of the usual powers, including but not limited to, the power to: (a) take exclusive possession, custody, and control of all of Defendants' books and records and assets, wherever located; (b) exclusively operate and manage Defendant's businesses until further order of this Court; and (c) pursue such further and other relief as may be proper, necessary or just under the circumstance;

(ii)    while an evidentiary hearing is pending, appoint an interim, limited receiver to ascertain whether the Defendants are legitimate businesses and report its findings to the Court in a timely fashion;

(iii)   authorize Plaintiff to take expedited discovery without the requirement of a meeting pursuant to FED. R. CIV. P. 26(f), and without regard to the limitation of FED. R. CIV. P. 30(a)(2) and 30(d);

(iv)    while an evidentiary hearing is pending, authorize limited interim expedited discovery permitting Plaintiff to immediately subpoena certain third party banks and financial institutions that are believed to have critical information about the location of Defendants' assets;

(v)     order Defendants to pay the reasonable costs, fees, and expenses of the Receiver incurred in connection with the performance of his duties; and

(vi)    award any further relief this Court deems just and proper.

DATED:      January 12, 2024
            Albany, New York

                              HINCKLEY, ALLEN & SNYDER LLP

                    By:     */s/ Christopher V. Fenlon*
                            Christopher V. Fenlon
                            Kieran T. Murphy
                            30 South Pearl St., Suite 901
                            Albany, NY 12207-3492
                            T: 518-396-3100
                            F: 518-396-3101
                            E: cfenlon@hinckleyallen.com
                                kmurphy@hinckleyallen.com

                            PARKER, POE, ADAMS & BERNSTEIN LLP

                            Will Esser (*pro hac vice to be filed*)
                            Eric H. Cottrell (*pro hac vice to be filed*)
                            620 South Tyron St., Suite 800
                            Charlotte, NC 28202
                            T: 704-335-9507
                            F: 704-334-4706
                            E: willesser@parkerpoe.com
                                ericcottrell@parkerpoe.com

                                *Attorneys for Plaintiff*
                                *Compass-Charlotte 1031, LLC*

18