**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                :

COMPASS-CHARLOTTE 1031, LLC,        :

                                :

          Plaintiff,               :

                                :

          v.                      :      Case No. 24-cv-00055 (MAD/DJS)

                                :

PRIME CAPITAL VENTURES, LLC       :
BERONE CAPITAL FUND, LP,         :
BERONE CAPITAL PARTNERS LLC,    :
BERONE CAPITAL LLC,             :
BERONE CAPITAL EQUITY FUND I, LP, :
and 405 MOTORSPORTS LLC f/k/a Berone :
Capital Equity Partners LLC,        :

                                :

          Defendants.          :
-------------------------------------------------------------x

**PRIME CAPITAL'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO (1) VACATE *EX PARTE* ORDER REGARDING INTERIM RECEIVER AND EXPEDITED DISCOVERY; (2) DISMISS COMPLAINT; AND (3) COMPEL ARBITRATION, AND IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION**

HOGAN LOVELLS US LLP
Pieter Van Tol (Bar Roll # 508405)
Chris Bryant (*pro hac vice* motion forthcoming)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com

*Attorneys for Defendant Prime Capital*

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ........................................................................................................3

I.    Compass Improperly Brought, and Then Hastily Dismissed, the Involuntary Bankruptcy Before Filing This Action.................................................3

II.    The Credit Agreement Contains an Express and Broad Arbitration Provision ........................................................................................5

III.    Compass Repeatedly Ignores the Express and Broad Arbitration Provision..........5

IV.    Compass Fails to Give Proper Notice Regarding Immediate Relief ......................6

ARGUMENT ...........................................................................................................7

I.    Applicable Legal Standards ......................................................................7

      A.    Rule 12(b)(1).........................................................................7

      B.    Motions to Compel ................................................................. 8

II.    The Court Should Dismiss the Complaint and Compel Compass to Arbitrate Its Claims Against Prime Capital ...............................................8

      A.    There Is a Strong Policy in Favor of Arbitration, and the Court Must Strictly Enforce the Parties' Arbitration Agreement ........................ 8

      B.    The Delegation Clause in This Case Is Clear ............................................. 9

      C.    The Parties Have Agreed to Arbitrate and the Enforceable Arbitration Agreement Encompasses the Claims in the Complaint ......... 11

      D.    The Fraud Allegations in the Complaint Do Not Alter the Conclusion That the Claims Against Prime Capital Must Be Decided in Arbitration ........................................................... 12

II.    The Court Should Deny the Request for a Receiver, and Immediately Vacate the *Ex Parte* Order Appointing the Interim Receiver and Allowing Expedited Discovery ........................................................................14

      A.    The Arbitration Agreement Bars the Appointment of a Receiver ........... 14

      B.    Compass Has Failed to Meet the Requirements for a Receiver Generally, and the Requirements for an *Ex Parte* Order Appointing and Interim Receiver................................................................ 14

            (1)    Compass Has Not Justified the *Ex Parte* Appointment of an Interim Receiver ........................................................ 16

            (2)    Compass Has Likewise Not Demonstrated That the Court Should Appoint a Receiver for the Duration of This Case.......... 17

C.    There is No Basis for Expedited Discovery or Expedited Interim Discovery ............................................................................... 23

    (1)   Compass Has Not Shown That Expedited Discovery Is Warranted............................................................................ 23

    (2)   The Court Should Also Vacate the Expedited Interim Discovery Order.......................................................................... 24

CONCLUSION......................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
   307 F.3d 24 (2d Cir. 2002)........................................................................ 11

*Altissima Ltd. v. One Niagara, LLC*,
   2009 WL 1322319 (W.D.N.Y. May 8, 2009)............................................ 15, 18, 19

*Aretakis v. First Fin. Equity Corp.*,
   744 F. App'x 741 (2d Cir. 2018) ............................................................. 13

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) ............................................................ 24

*Barrows v. Brinker Restaurant Corp.*,
   36 F.4th 45 (2d Cir. 2022) ...................................................................... 7

*Bentley v. Control Grp. Media Co.*,
   2020 WL 3639660 (S.D. Cal. July 6, 2020) ........................................... 23

*Bristol Oaks, L.P. v. Werczberger*,
   1996 WL 19207 (E.D.N.Y. Jan. 2, 1996) ............................................... 16

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)................................................................................ 12,13

*Chase v. Check*, 1
   58 F.R.D. 59 (E.D. Pa. 1994).................................................................. 14

*Collins & Aikman Products Co. v. Bldg. Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995)........................................................................ 11

*Daly v. Citigroup Inc.*,
   939 F.3d 415 (2d Cir. 2019).................................................................... 9

*De la Riva v. Suntrust Bank*,
   2022 WL 3681998 (S.D. Fla. Apr. 14, 2022) ........................................ 10

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)................................................................................ 9

*Disability Rights N.Y. v. N.Y. State*,
   2024 WL 20753 (E.D.N.Y. Jan. 2, 2024) .............................................. 7-8

*Epic Systems, Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)............................................................................ 8

*EST, LLC v. Smith*,
   2009 WL 926789 (W.D.N.C. Mar. 31, 2009)......................................... 12

*Fed. Home Loan Mortg. Corp. v. Tully Village Edge Apartments*,
   1997 WL 10975 (N.D.N.Y. Jan. 2, 1997).............................................. 15, 15-16, 16

iii

*Gilbert v. Indeed, Inc.*,
  513 F. Supp. 3d 374 (S.D.N.Y. 2021)........................................................................ 8

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)................................................................................................... 12

*Greystone Bank v. Tavarez*,
  2009 WL 10712899 (E.D.N.Y. Dec. 17, 2009) ....................................................... 15

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999).............................................................................................. 21-22

*Harvey v. Joyce*,
  199 F.3d 790 (5th Cir. 2000) ................................................................................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)................................................................................. 8, 9, 10-11

*Hook v. UBS Fin. Servs.*,
  2011 WL 1741997 (D. Conn. May 4, 2011)............................................................ 12

*In re WinNet R CJSC*,
  2017 WL 1373918 (S.D.N.Y. April 13, 2017) .......................................................... 6

*Inventory Generation Inc. v. Proventure Capital Funding LLC*,
  2023 WL 2609344 (S.D.N.Y. Mar. 23, 2023) ........................................................ 13

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
  698 F.3d 58 (2d Cir. 2012)....................................................................................... 13

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
  596 F.2d 70 (2d Cir. 1979)....................................................................................... 21

*JDP Mortgage LLC v. Gosman*,
  2020 WL 8082390 (E.D.N.Y. Dec. 21, 2020) ................................... 14-15, 15, 19, 20

*Kattula v. Coinbase Global, Inc.*,
  2023 WL 4373385 (N.D. Ga. July 6, 2023)............................................................. 14

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)....................................................................................... 7

*Marmet Health Care Center, Inc. v. Brown*,
  565 U.S. 530 (2012)................................................................................................... 8

*MegaCorp Logistics LLC v. Turvo, Inc.*,
  2018 WL 3619656 (N.D. Cal. July 30, 2018)......................................................... 10

*Meisels v. Meisels*,
  2020 WL 7000903 (E.D.N.Y. May 12, 2020) ......................................................... 15

*Melnick v. Press*,
  2007 WL 2769490 (E.D.N.Y. Sept. 21, 2007) ....................................................... 19

*Metro. Life Ins. Co. v. Bucsek*,
  919 F.3d 184 (2d Cir. 2019)....................................................................................... 9

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) ........................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................................. 8

*Notaro v. Koch*,
   95 F.R.D. 403 (S.D.N.Y. 1982) ....................................................................... 23

*Optimum Productions v. Home Box Office*,
   839 Fed. Appx. 75 (9th Cir. 2020) .................................................................... 9

*Owens v. Gaffken & Barriger Fund LLC*,
   2009 WL 773517 (S.D.N.Y. March 24, 2009) ................................................. 21

*Padula v. eBay*,
   2022 WL 18456614 (E.D.N.Y. Dec. 29, 2022) ................................................ 13

*Petersen v. Federated Dev. Co.*,
   387 F. Supp. 355 (S.D.N.Y. 1974) ................................................................... 20

*Precision Works MFG, LLC v. Union Funding Source, Inc*.,
   2022 WL 16857360 (S.D.N.Y. Oct. 25, 2022) ............................................ 9, 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)..................................................................................... 11-12

*Rent-A-Center, West v. Jackson*,
   561 U.S. 63 (2010)......................................................................................... 9, 10

*Roberts v. Strickland*,
   2010 WL 11553201 (S.D. Ga. Dec. 10, 2010) ................................................ 12

*Rosen v. Siegel*,
   106 F.3d 28 (2d Cir.1997)........................................................................... 14, 15

*Schreiber v. Friedman*,
   2017 WL 5564114 (E.D.N.Y. Mar. 31, 2017) ................................................. 12

*Tang Capital Partners, LP v. Cell Therapeutics, Inc.*,
   591 F. Supp. 2d 666 (S.D.N.Y. 2008)............................................................... 22

*Washington Square Sec., Inc. v. Aune*,
   253 F. Supp. 2d 839 (W.D.N.C. 2003) ............................................................ 23

*Wells Fargo Bank, N.A. v. Tri-5 Realty Mgmt., Inc.*,
   WL 2392034 (N.D.N.Y. Aug. 3, 2009) ............................................................ 16

*Wilson v. Pasquale's DaMarino's, Inc.*,
   2019 WL 4601969 (S.D.N.Y. Sept. 23, 2019)................................................. 19

*Zachman v. Hudson Valley Fed. Credit Union*,
   49 F.4th 95 (2d Cir. 2022) ................................................................................. 8

*Zyppah, Inc. v. Ace Funding Source, LLC*,
   2019 WL 6647912 (SD.N.Y. Nov. 6, 2019)..................................................... 20

**Statutes**

9 U.S.C. § 4 ................................................................................................................. 1

11 U.S.C. § 303(i) ........................................................................................................ 2

N.C.G.S. 75-1.1 *et seq.* ............................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 7

Fed. R. Civ. P. 12(h)(2) ............................................................................................... 3

Fed. R. Civ. P. 60(b) ................................................................................................... 1

Fed. R. Civ. P. 66 ......................................................................................... 1, 17, 23

L.R. 7.1(e) ............................................................................................................ 1,7, 16

Model Rules of Prof'l Conduct R. 3.3(d) (2016) ...................................................... 6

New York Rules of Prof'l Conduct R. 3.3(d) (2017) ................................................ 6

Defendant Prime Capital Ventures, LLC ("Prime Capital"), by its counsel, respectfully submits this memorandum of law, along with the Declaration of Pieter Van Tol dated January 15, 2024, in support of its emergency motion (the "Motion"), pursuant to Local Rule 7.1(e), Fed. R. Civ. P. 12(b)(1) and/or Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 60(b), Fed. R. Civ. P. 66, and Section 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 4, to (1) immediately vacate the *ex parte* appointment of the interim receiver and accompanying order allowing expedited interim discovery; (2) dismiss the claims in the complaint in this case (the "Complaint") against Prime Capital; (3) compel Plaintiff Compass-Charlotte 1031, LLC ("Plaintiff" or "Compass") to arbitrate the claims in the Complaint against Prime Capital pursuant to the arbitration agreement in the Development Line of Credit Agreement between Prime Capital and Compass dated April 24, 2023 (the "Credit Agreement"); and (4) shorten the time on the Motion and set it for a hearing on January 22, 2024.  Prime Capital also respectfully submits this brief in opposition to Plaintiff's Emergency Motion for Appointment of a Receiver and for Expedited Discovery (the "Emergency Motion").

## PRELIMINARY STATEMENT

This case should not be before the Court because, as discussed below, Compass and Prime Capital have expressly agreed to arbitrate <u>all</u> disputes between them.  This lawsuit is the latest bad-faith gambit by Compass, which, in the last month has also:

(1)     brought an action captioned *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC*, 23-cv-1588 (N.D.N.Y.) on December 15, 2023 (the "First Compass Action") (Van Tol Decl., **Exhibit A**);

(2)     improperly and in bad faith commenced an involuntary bankruptcy proceeding under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court in this District captioned *In re Prime Capital Ventures, LLC*, 23-bk-11302 (Bankr. N.D.N.Y.) on December 19, 2023 (the "Involuntary Bankruptcy") (*Id.*, **Exhibit B**);

(3)     dropped the First Compass Action on December 26, 2023 in an effort to conceal Compass' clear lack of eligibility to bring the Involuntary Bankruptcy (*id.*, **Exhibit C**); and

(4)      suddenly dropped the Involuntary Bankruptcy on January 8, 2024, immediately after Prime Capital had filed a motion for a bond (in the amount of $37 million) and a motion for judgment on the pleadings revealing that Compass had commenced the Involuntary Bankruptcy wrongfully and with the malicious intent of harming Prime Capital's business. (*See id.*, **Exhibit D**, **Exhibit E**, and **Exhibit F**.)

Pursuant to 11 U.S.C. § 303(i), Prime Capital will be seeking the imposition of costs, attorneys' fees and damages against Compass for the extensive harm that the wrongful Involuntary Bankruptcy caused.  (*See* Van Tol Decl., Ex. E.)   By filing this action, Compass is now compounding the injury to Prime Capital, which was just beginning to restart its operations after the dismissal of the destructive Involuntary Bankruptcy.

The claims in this case against Prime Capital, however, should be dismissed in favor of arbitration.  The Credit Agreement contains an expansive and clear arbitration clause stating that: "Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Albany County, New York, before one arbitrator."  (Van Tol Decl., **Exhibit G**, § 13.8.)  In cases involving similar provisions, the courts—including the U.S. Supreme Court—have repeatedly dismissed court actions and compelled arbitration.  That is because the arbitration clause here expressly delegates all questions, <u>including the issue of whether the claims at issue are arbitrable</u> (known as "arbitrability"), for determination by the arbitrator, <u>not</u> the court.  Moreover, even if the Court were to decide the issue of arbitrability, the arbitration clause plainly demonstrates the parties' intent to arbitrate the claims here.  *See infra*, 8-13.  The Court, therefore, should dismiss the claims in the Complaint against Prime Capital and order Compass to arbitrate those claims.

The existence of an agreement to arbitrate also means that the Court should vacate the appointment of an interim receiver and the granting of expedited interim discovery.  Indeed, in several similar cases, the court refused to appoint a receiver where, as here, the parties had agreed

to arbitrate their claims.  *See infra*, 14.  Moreover, Compass also failed to meet the stringent requirements for such drastic interim relief, especially since it was granted on an *ex parte* basis. Prime Capital was not heard, even orally, before the Court entered the requested relief.  *See infra*, 14-17.  If it had been heard, counsel for Prime Capital would have informed the Court (as counsel for Compass should have) of the unambiguous arbitration provision in the Credit Agreement.

Even if the Court concludes that this case may move forward (despite the arbitration agreement) and that the interim receiver should remain in place until the hearing on January 22, 2024, it should deny Compass' request for the appointment of a receiver for the duration of this case.  Compass has not met its burden of showing, through "clear and convincing evidence," that a receiver is warranted in this case.  *See infra*, 17-23.  Compass similarly has not demonstrated that it meets the standard for expedited discovery.  *See infra*, 23-25.

Finally, given the significant harm that the interim receiver and the expedited interim discovery are already causing to Prime Capital's operations and business, Prime Capital respectfully requests that the Court vacate the interim relief immediately and hear the Motion on January 22, 2024, which is the date of the hearing on the Emergency Motion.

## BACKGROUND[1]

### I. Compass Improperly Brought, and Then Hastily Dismissed, the Involuntary Bankruptcy Before Filing This Action

Prime Capital's motion for the posting of a bond in the Involuntary Bankruptcy proceeding describes the actions that Compass has taken over the last few months to pressure Prime Capital into paying damages in excess of Compass' $15.9 million ICA deposit.

---

[1]     The facts below relate solely to the arbitration and receivership issues, and Prime Capital reserves its right to present the facts on the substantive merits of Compass' claims in the proper forum (which is arbitration).  If this case is not sent to arbitration, Prime Capital also reserves the right to move to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(h)(2) and other rules.

Compass sent a termination letter on November 17, 2023 and thereafter engaged in campaign of intimidation and harassment, along with two other creditors. (Van Tol Decl., **Exhibit H**.)   On or around December 5, 2023, Compass began soliciting other companies to act as petitioning creditors in an involuntary bankruptcy.  On December 13, 2023, Thomas F. Taft Jr. of Compass sent a text to Kimberly Humphrey of Prime Capital stating that: "Things are going to get really bad as we're all working together.  Potential for forced bankruptcy, criminal charges and media coverage." (*Id.*, **Exhibit I**.)   On December 14, 2023, Mr. Taft sent another text to Ms. Humphrey at Prime Capital warning her that: "We're 24 hrs until thermonuclear war begins." (*Id.*, **Exhibit J**.)

Compass followed up on Mr. Taft's threat by filing the First Compass Action.  In that case, Compass demanded, among other things: (1) the return of ICA deposit (in the amount of $15,902,250); and (2) "actual damages … in excess of $15,902, 250"; and (3) a trebling of damages under the North Carolina Unfair and Deceptive Trade Practices Act.  (*See id.*, Ex. A, ¶¶ 53-80.) Just four days later, Compass increased the pressure on Prime Capital by filing the petition in the Involuntary Bankruptcy, along with two other creditors. (*See id.*, Ex. D.)

The Involuntary Bankruptcy petition was facially deficient, and Prime Capital moved to dismiss the case on January 8, 2024 through the filing of a motion for judgment on the pleadings. (*See id.*, Ex. F.)  That same day, Prime Capital filed the bond motion and set forth, with supporting documentation, the facts showing that Compass and the other petitioning creditors acted in bad faith. (*See id.*, Ex. E.)  Shortly thereafter, Compass and the other petitioning creditors abruptly asked the Bankruptcy Court for permission to dismiss the Involuntary Bankruptcy.   While Compass and the other petitioning creditors offered up excuses for the dismissal, this was a fig leaf to disguise the reality that they abandoned the Involuntary Bankruptcy because they knew it would be dismissed and they would face even more damages for acting in bad faith.

When the Bankruptcy Court granted the dismissal on January 9, 2024, the court's order specifically referred to Prime Capital's bond motion and future proceedings to determine whether Prime Capital may collect costs, attorneys' fees, and damages from Compass.  (*See id.*, Ex. D.) Two days later, Compass gave notice that it would be filing this action, but deliberately (and without cause) failed to give Prime Capital an opportunity to address the Court.

## II.  The Credit Agreement Contains an Express and Broad Arbitration Provision

It is standard practice for Prime Capital to use credit agreements with an arbitration clause. The Credit Agreement is no different.  It states as follows:

- "Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Albany County, New York, before one arbitrator."

- "This agreement to arbitrate is intended by the Parties to constitute a waiver of any right to trial by jury, or the right to proceed in any state or federal court for resolution of any dispute arising in relation to the enforcement or interpretation of this Agreement, this agreement to arbitrate, or any of the LOC Documents."

(*Id.*, Ex. G, § 13.8.)

Thus, the arbitration provision expressly <u>requires</u> the parties to arbitrate all issues between them arising out of or relating to the Credit Agreement, including the issue of whether the Credit Agreement or the agreement to arbitrate therein are valid and enforceable.  The arbitration clause makes it clear that the courts play no role in the adjudication of such issues.

## III.  Compass Repeatedly Ignores the Express and Broad Arbitration Provision

Compass filed the First Compass Action in violation of the arbitration agreement. However, before Prime Capital could move to dismiss and compel arbitration (since its time to respond to the complaint did not expire until January 5, 2024), Compass dropped the First Compass Action on December 26, 2023, in an effort to conceal the dispute and try to avoid the dismissal of

the Involuntary Bankruptcy.  (*Id.*, Ex. C.)  The unsuccessful Involuntary Bankruptcy was itself an attempt by Compass to avoid the arbitration clause in the Credit Agreement, and instead force Prime Capital into liquidation or pressure Prime Capital to pay it damages.  When that failed, Compass violated the arbitration agreement a <u>third time</u> when it filed this action.  But nowhere in its voluminous filings here does Compass even (a) acknowledge the existence of the arbitration agreement; or (b) seek to justify its blatant disregard of the provision.  That omission is telling.

Relatedly, Prime Capital also notes that counsel for Compass had a heightened duty of candor when proceeding on an *ex parte* basis and, therefore, they were required to inform the Court that the Credit Agreement contained the arbitration clause.  *See, e.g.*, *In re WinNet R CJSC*, 2017 WL 1373918, *9 (S.D.N.Y. April 13, 2017) ("Both the New York State and Model Rules of Professional Conduct provide that '[i]n an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.'  New York Rules of Prof'l Conduct R. 3.3(d) (2017); Model Rules of Prof'l Conduct R. 3.3(d) (2016).")  (citations and alterations in original).  Prime Capital reserves all rights in the event that Compass' counsel did not disclose critical facts.

## IV.     Compass Fails to Give Proper Notice Regarding Immediate Relief

Counsel for Compass contacted Prime Capital's counsel at 5:39 pm. on January 11, 2024, stating that it would be filing an action in this Court on January 12, 2024, and that "it will bring a motion by order to show cause before the assigned District Judge for an order: (a) appointing a receiver …; (b) authorizing Compass-Charlotte 1031, LLC to take expedited discovery; (c) appointing a temporary receiver pending a hearing on the order to show cause; and (d) authorizing Compass-Charlotte 1031, LLC to serve non-party subpoenas on banks and financial institutions to ascertain the location and amount of Defendants' assets pending a hearing on the order to show cause; and (e) awarding such other and further relief as the Court deems just and proper."  (*Id.*,

**Exhibit K**.)  Counsel also stated:  "We will email copies of the pleadings and order to show cause papers as soon as they are filed."  (*Id.*)  Counsel for Compass did not inform Prime Capital's counsel that it would be seeking immediate, *ex parte* relief even <u>before</u> the papers were filed.

Consistent with the Local Rules, Prime Capital's counsel assumed that Compass would file the Order to Show Cause and Prime Capital then would have an opportunity to raise any issues with the Court—especially the existence of an arbitration clause that bars Compass from seeking relief here—prior to the entry of an order.  *See* L.R. 7.1(e) ("Immediately after <u>filing</u> an Order to Show Cause, the moving party must telephone the Chambers of the presiding judicial officer and inform Chambers staff that it has filed an Order to Show Cause.") (emphasis added).  However, Prime Capital's counsel did not receive any of the papers in this case, and had no other information about their contents, until 5:09 pm on January 12, 2024, which was <u>after</u> the Court had already signed the Order to Show Cause.  (Van Tol Decl., **Exhibit L**.)  As discussed below, Compass has not shown why any *ex parte* relief was appropriate here.

## **ARGUMENT**

I.     **Applicable Legal Standards**[2]

A.     **Rule 12(b)(1)**

A court must dismiss a claim when it lacks jurisdiction over the subject matter of the action.  *See* Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a Rule 12(b)(1) motion, "the Court draws all facts from the Pleading, the allegations of which are assumed to be true <u>unless contradicted by more specific allegations or documentary evidence</u> … ."  *Disability Rights N.Y. v. N.Y. State*, 2024

---

[2]     The Second Circuit has noted that it is a "(somewhat vexing) question" whether a motion to dismiss in favor of arbitration should be under Rule 12(b)(1) or Rule 12(b)(6).  *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49, n. 6 (2d Cir. 2022).  Accordingly, Prime Capital has invoked both rules.

WL 20753, at *3 (E.D.N.Y. Jan. 2, 2024) (emphasis added).  Here, the clear arbitration provision in the Credit Agreement contradicts the allegation that this Court has subject matter jurisdiction.

### B.      Motions to Compel

As noted above, some courts have held that a motion to compel arbitration is like a Rule 12(b)(6) motion.  *See, e.g.*, *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021).  However, "[c]ourts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment."  *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (internal quotation and citation omitted).  Therefore, "[i]f the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings."  *Id.* (internal quotation and citation omitted; alterations in original).

## II.    The Court Should Dismiss the Complaint and Compel Compass to Arbitrate Its Claims Against Prime Capital

### A.      There Is a Strong Policy in Favor of Arbitration, and the Court Must Strictly Enforce the Parties' Arbitration Agreement

The Supreme Court has repeatedly held that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution."  *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 533 (2012).  It has also established a presumption regarding the breadth of arbitration clauses, holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

As a result, the Court's role in deciding a motion to dismiss and compel arbitration is narrow.  "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *see also Epic Systems, Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting that the FAA "requires courts rigorously to enforce arbitration agreements according to their terms") (internal

quotations and citations omitted). "[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The Court's authority is thus limited to determining (1) the existence and enforceability of an arbitration agreement; and (2) whether the agreement encompasses the dispute. *Optimum Productions v. Home Box Office*, 839 Fed. Appx. 75, 77 (9th Cir. 2020); *see also Precision Works MFG, LLC v. Union Funding Source, Inc*., 2022 WL 16857360, at *1 (S.D.N.Y. Oct. 25, 2022) ("Prior to compelling arbitration, the district court must first determine two threshold issues: (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement.") (citing *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)).

The Court has even less discretion where the parties expressly delegate issues of arbitrability to the arbitrator. "Just as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 189-90 (2d Cir. 2019); *see also Rent-A-Center, West v. Jackson*, 561 U.S. 63, 69-70 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). Accordingly, if there is a delegation clause, the Court <u>must</u> compel arbitration. *See Henry Schein*, 139 S. Ct. at 528 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must [therefore] respect the parties' decision as embodied in the contract.") (alteration in original).

### B.    The Delegation Clause in This Case Is Clear

Here, the parties expressly delegated arbitrability issues to the arbitrator. The arbitration agreement states that the arbitrator shall determine "[a]ny dispute, claim or controversy arising out

9

of or relating to this Agreement, or the breach, <u>termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate</u>." (Van Tol Decl., Ex. G, § 13.8 (emphasis added).)

Numerous cases, including precedent from the Supreme Court, have held that this type of language constitutes a delegation of the arbitrability issue to the arbitrator. *See, e.g., Rent-a-Center*, 561 U.S. at 68 (enforcing delegation clause which stated that "[t]he Arbitrator ... shall have exclusive authority to resolve any dispute relating to the ... enforceability ... of this Agreement"); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (enforcing arbitration agreement where delegation clause provided that disputes regarding "the validity" of the arbitration agreement would be decided by arbitrator); *De la Riva v. Suntrust Bank*, 2022 WL 3681998, at *6 (S.D. Fla. Apr. 14, 2022) (delegation clause was nearly identical to the one here, stating that the arbitrator would determine "[a]ny dispute, claim, controversy or cause of action, that is filed in any court and that arises out of or relates to this Agreement or the breach, termination, <u>enforcement</u>, interpretation or <u>validity</u> thereof, <u>including the determination of the scope or applicability of this agreement to arbitrate</u>") (emphasis in original); *MegaCorp Logistics LLC v. Turvo, Inc.*, 2018 WL 3619656, at *5-6 (N.D. Cal. July 30, 2018) (finding that delegation clause delegated power to determine arbitrability where the provision stated that "[a]ny dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, <u>including the determination of the scope or applicability of this Agreement to arbitrate</u>, shall be determined by a mutually agreed upon arbitrator.") (emphasis in original). In each the foregoing cases, the courts dismissed the litigation (or stayed it) in favor of arbitration.

The Court, therefore, should dismiss the Complaint and compel arbitration because, as a result of the delegation clause in the parties' arbitration agreement, any issues relating to arbitrability are solely for the arbitrator to decide. *See Henry Schein*, 139 S. Ct. at 528 ("When the

parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.").

### C.    The Parties Have Agreed to Arbitrate and the Enforceable Arbitration Agreement Encompasses the Claims in the Complaint

Even if the Court (rather than the arbitrator) were to decide arbitrability, there can be no doubt here that the parties entered into an enforceable agreement to arbitrate and the arbitration agreement covers the claims alleged by Compass.

The arbitration provision explicitly states the parties agreed to submit to an arbitrator "[a]ny dispute, claim or controversy arising out of or relating to this Agreement."  (Van Tol Decl., Ex. G, § 13.8.)  The courts have held that such language "evinces the [parties'] unambiguous intent to arbitrate."  *Precision Works*, 2022 WL 16857360, at *1.  Additionally, the arbitration provision underscores the parties' intent to arbitrate rather than litigate because it states: "This agreement to arbitrate is intended by the Parties to constitute a waiver of any right to trial by jury, or the right to proceed in any state or federal court for resolution of any dispute arising in relation to the enforcement or interpretation of this Agreement, this agreement to arbitrate, or any of the LOC Documents."  (Van Tol Decl., Ex. G, § 13.8.)  Indeed, it is hard to envision better evidence of an intent to arbitrate than the arbitration clause in the Credit Agreement.

The arbitration provision also encompasses the claims in the Complaint because the clause broadly covers any dispute "arising out of or relating to" the Credit Agreement.  The Second Circuit has held that such language "is the paradigm of a broad clause" creating a presumption that the claims between the parties are arbitrable.  *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).  The inclusion of tort allegations in the Complaint does not remove the claims from the scope of arbitration.  *See, e.g.*, *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin*

*Mfg. Co.*, 388 U.S. 395, 402 (1967) ("[A] broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud."); *Schreiber v. Friedman*, 2017 WL 5564114, at *21 (E.D.N.Y. Mar. 31, 2017) (conversion claim falls within scope of clause that is similar to the one here); *Hook v. UBS Financial Services*, 2011 WL 1741997, at *3-4 (D. Conn. May 4, 2011) (same).  The same is true for the cause of action in the Complaint for unfair and deceptive trade practices pursuant to N.C.G.S. 75-1.1 *et seq.* ("UDTPA").  *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA"); *EST, LLC v. Smith*, 2009 WL 926789, at *3 (W.D.N.C. Mar. 31, 2009) (holding that UDTPA claim is arbitrable and "there is no question whatsoever that all the claims in this consolidated action arise directly from and have a significant relation to the Agreement at issue").  Finally, the request in the Complaint for the appointment of a receiver does not fall outside of the parties' arbitration agreement.  *See Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000) (holding that a cause of action for appointment of a receiver "fall[s] squarely within the ambit of the agreement to arbitrate"); *Roberts v. Strickland*, 2010 WL 11553201, at *2 (S.D. Ga. Dec. 10, 2010) (reaching same result).

**D.**    **The Fraud Allegations in the Complaint Do Not Alter the Conclusion That the Claims Against Prime Capital Must Be Decided in Arbitration**

The Supreme Court has stated that "[c]hallenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (internal quotation and citation omitted).  "One type challenges specifically the validity of the agreement to arbitrate."  *Id.*  "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  *Id.*

The Supreme Court held in *Buckeye* that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. The Second Circuit and district courts in this Circuit have repeatedly applied *Buckeye* to compel arbitration where there is a claim that the party was fraudulently induced to enter into the contract as a whole, not the arbitration agreement specifically. *See, e.g.*, *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012) (applying *Buckeye* and enforcing arbitration agreement); *Aretakis v. First Fin. Equity Corp.*, 744 F. App'x 741, 742 (2d Cir. 2018) (affirming the district court's order compelling arbitration because the challenge was to the contract as a whole); *Inventory Generation Inc. v. Proventure Capital Funding LLC*, 2023 WL 2609344, at *6 (S.D.N.Y. Mar. 23, 2023) ("Given the nature of Inventory Generation's challenges to the Agreement as criminally usurious, fraudulently induced, unconscionable, and illegal, these challenges are, therefore, properly evaluated in the first instance by an arbitrator."); *Padula v. eBay*, 2022 WL 18456614, at *5 (E.D.N.Y. Dec. 29, 2022) ("A generalized attack that a contract was fraudulent, a product of illegality, or the product of misrepresentations does not bring Padula's challenge into the Court's decisional ambit.").

Here, Compass alleges that it was fraudulently induced to enter into the Credit Agreement. (*See* ECF #1, ¶¶ 171-180.) Notably, however, the Complaint does not even refer to the arbitration provision in the Credit Agreement, let alone allege that Compass was fraudulently induced to enter into an arbitration agreement. The fraud allegations in the Complaint, therefore, do not change the conclusion that the Court must dismiss the claims against Prime Capital and compel arbitration.

II.   **The Court Should Deny the Request for a Receiver, and Immediately Vacate the _Ex Parte_ Order Appointing the Interim Receiver and Allowing Expedited Discovery**[3]

A.   **The Arbitration Agreement Bars the Appointment of a Receiver**

On the basis of the arbitration agreement alone, the Court should deny the request for a receiver and immediately vacate the _ex parte_ order appointing the interim receiver. A recent case, _Kattula v. Coinbase Global, Inc._, 2023 WL 4373385 (N.D. Ga. July 6, 2023), is instructive. In _Kattula_, the plaintiff moved for the appointment of a receiver. In response, the defendant cited the parties' arbitration agreement and the fact that the parties had delegated the issue of arbitrability to the arbitrator. _See id._ at *1-2. The court granted the defendant's motion to compel and also denied the motion to appoint a receiver as moot. _Id._ at *4; _see also Chase v. Check_, 158 F.R.D. 59, 65-66 (E.D. Pa. 1994) (staying request for receiver in light of arbitration agreement).

The Court, therefore, does not need to address the requirements for the appointments of receivers. Based solely on the parties' arbitration agreement, the Court can (and should) deny the request for a receiver and vacate the _ex parte_ order appointing the interim receiver.

B.   **Compass Has Failed to Meet the Requirements for a Receiver Generally, and the Requirements for an _Ex Parte_ Order Appointing an Interim Receiver**

Even if the Court considers the requirements for the appointment of a receiver, Compass has not satisfied the strict standard for seeking an _ex parte_ order appointing an interim receiver.

"The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." _Rosen v. Siegel_, 106 F.3d 28, 34 (2d Cir.1997) (internal alteration and quotation omitted); _see also JDP Mortgage LLC v. Gosman_, 2020 WL 8082390, at *3 (E.D.N.Y. Dec. 21,

---

[3]   Again, the discussion below is limited to the merits of the receiver's appointment as opposed to the substantive claims in the Complaint, which should be adjudicated in arbitration.

2020) (describing receivership as a "drastic remedy" and refusing to appoint receiver), *report and recommendation adopted*, 2021 WL 66290 (E.D.N.Y. Jan. 7, 2021).

As such, "courts have required the party seeking the remedy to make a clear showing that the appointment is necessary to prevent irreparable injury to the property interests at stake." *Altissima Ltd. v. One Niagara, LLC*, 2009 WL 1322319, at *1 (W.D.N.Y. May 8, 2009); *see also JDP Mortgage*, 2020 WL 8082390, at *2 (quoting *Rosen*, 106 F.3d at 34) ("A plaintiff seeking a court-appointed receiver shoulders the burden to prove, by clear and convincing evidence, that the receiver is 'clearly necessary to protect [its] interests in the property.'") (alterations in original); *Meisels v. Meisels*, 2020 WL 7000903, at *5 (E.D.N.Y. May 12, 2020) ("The appointment of a temporary receiver is a drastic and intrusive remedy to be used sparingly and with extreme caution, and while the grant of such an application lies within the court's discretion, the burden is on the moving party to show by clear and convincing evidence that such relief is necessary."). The *Altissima* court also noted that "courts of equity will exercise extreme caution in the appointment of receivers, which should never be made until a proper case has been clearly established." *Altissima*, WL 1322319, at *1 (internal quotation and citation omitted).

This very high standard for appointing a receiver is even higher when the moving party seeks an *ex parte* order. "Where a receiver is sought *ex parte*, it is particularly important that adequate factual support be provided to indicate that dispensing with notice is warranted." *Greystone Bank v. Tavarez*, 2009 WL 10712899, at *2 (E.D.N.Y. Dec. 17, 2009) (internal quotation and citation omitted). "A party seeking *ex parte* appointment of a receiver must also demonstrate that exigent circumstances exist justifying the appointment on an *ex parte* basis." *Fed. Home Loan Mortg. Corp. v. Tully Village Edge Apartments*, 1997 WL 10975, at *1 (N.D.N.Y. Jan. 2, 1997). Therefore, "an *ex parte* movant must establish that notice to the relevant party is impractical or ill advised because the party involved cannot be found, because a bona fide

emergency situation exists, or because prior notice would likely result in the disappearance of critical evidence or property." *Id.*; *see also Wells Fargo Bank, N.A. v. Tri-5 Realty Mgmt., Inc.*, 2009 WL 2392034, at *1 (N.D.N.Y. Aug. 3, 2009) (citing *Tully* and rejecting *ex parte* application); *Bristol Oaks, L.P. v. Werczberger*, 1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996) (noting that "plaintiff has failed to show in reasonable detail the existence of a genuine emergency necessitating [*ex parte* appointment] in this case") (internal quotation and citation omitted).

### (1)     Compass Has Not Justified the <u>Ex Parte</u> Appointment of an Interim Receiver

As a threshold matter and even apart from the criteria for the appointment of a receiver generally (which are discussed below), Compass failed to show that (a) notice to the relevant party was impractical or ill advised because the party involved could not be found; (b) a bona fide emergency situation exists; or (c) that notice would likely result in the disappearance of critical evidence or property. *Tully*, 1997 WL 10975, at *1.

*First*, counsel for Compass is fully aware of the location and contact information for the principals at Prime Capital and its undersigned counsel. Indeed, Compass' counsel purported to send "reasonable advanced notice" to Prime Capital and its counsel under Local Rule 7.1(e) (Van Tol Decl., Ex. K), but that email omitted several pieces of critical information, such as the fact the appointment of an interim receiver would be sought immediately and before the submissions were publicly filed with the Court. As noted above, Prime Capital's counsel reasonably believed that it would have an opportunity to address the Court on the issues (even orally) after reviewing the filed papers and before the entry of an order, and that Compass was seeking the appointment of interim trustee prior to January 22, 2024, <u>not</u> on the same day as the application. Instead, Prime Capital learned of the interim receiver's appointment when it was a *fait accompli*.

*Second*, Compass did not establish that a bona fide emergency exists or that notice would likely result in the disappearance of critical evidence or property.  The Fenlon Declaration states in conclusory fashion that "there is considerable risk that Defendants will move to dissipate their assets during the notice period to frustrate Plaintiff's ability to recover" the funds it seeks (ECF #6-1), but there is no evidence of such dissipation.  The evidence submitted to the Bankruptcy Court, <u>by counsel for Compass</u>, is that Berone Capital Fund LLP ("Berone Capital Fund") holds $52,364,000 "for benefit of" Prime Capital.  (Van Tol Decl., **Exhibit M**.)[4]

Compass repeatedly alleges in the Complaint that the approximately $52 million is "missing," but the sole basis of this claim is that, before being discharged when the case was dismissed at the request of Compass and the other petitioning creditors, the interim trustee in the Involuntary Bankruptcy had not yet obtained confirmation from Berone Capital Fund or its bank, Royal Bank of Canada ("RBC"), that the funds are in the account.  Of course, that is not evidence that the funds are "missing."  From Prime Capital's perspective, there is written evidence from Berone Capital Fund that Prime Capital has the benefit of approximately $52 million.[5]  In short, Compass' unsupported speculation does not come close to satisfying the very high and strict standard for the appointment of an interim receiver on an *ex parte* basis.

### (2)   *Compass Has Likewise Not Demonstrated That the Court Should Appoint a Receiver for the Duration of This Case*

The factors to be considered by the court in determining whether to appoint a receiver under Fed. R. Civ. P. 66 are: "[a] the fraudulent conduct on the part of the defendant; [b] imminent

---

[4]     This document (the "Berone Statement") is redacted because that is how Prime Capital received it from Berone.  After the Involuntary Bankruptcy began, Prime Capital provided the Berone Statement to creditors, including counsel for Compass, and to the interim trustee.  Compass alleges in the Complaint that the Berone Statement is "false" (ECF #1, ¶ 152), but it offers no support for that speculative allegation.

[5]     Another wild accusation by Compass' counsel in the Involuntary Bankruptcy was that Prime Capital had tried to pass off the Berone Statement as a statement from RBC.  To the contrary, Prime Capital repeatedly noted that—as shown by the document itself—it was generated by Berone Capital Fund.

danger that the property will be lost, diminished in value, or squandered; [c] the inadequacy of available legal remedies; [d] the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing the appointment; [e] the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interests in the property; and [f] whether the interests of the plaintiff and others sought to be protected will in fact be served by receivership." *Altissima*, WL 1322319, at *1. These six factors are discussed below:

### [a]      Alleged fraud

Compass alleges that Prime Capital has "engaged in what appears to be a multi-state fraud scheme" in which $50 million in deposits by borrowers has "seemingly gone missing." (Emer. Mot., 5.)   Those allegations—notably couched in the equivocal words "appears" and "seemingly"—lack any factual support.   To begin with, they cannot be squared with the fact that the Berone Statement shows that Berone Capital Fund holds funds in the amount of over $52 million for Prime Capital.   In alleged support of its fraud claim, Compass also leans heavily on a Georgia-based transaction between Prime Commercial Lending LLC (an entity that is separate from Prime Capital) and Blackwater Capital Group. (*Id.*, 6.)   The facts surrounding that transaction will be developed in the appropriate forum (*i.e.*, arbitration), but it will suffice to say here that purported activities of Prime Commercial Lending LLC cannot be used to support a fraud claim by Compass against Prime Capital.   Finally, the allegations regarding Kris Roglieri's lifestyle (*see id.*, 7) are not probative on the issue of whether Prime Capital committed fraud in its dealing with Compass, and they are included simply to disparage and harass Mr. Roglieri.[6]

---

[6]      Compass alleges that it is "unknown exactly who the members of Prime [Capital] are" (ECF #1, ¶ 16), and suggests that Berone is a member because of a joint venture agreement between Prime Capital and Berone.   These allegations are contradicted by an allegation in a lawsuit filed by Prime Capital stating that Mr. Roglieri is Prime Capital's sole member. (*See* ECF #1, ¶ 17.)   In this case, the corporate disclosure statement for Prime Capital similarly states that Mr. Roglieri is the sole member, and that statement is supported by the Operating Agreement attached to the Van Tol Declaration. (*See* Van Tol Decl., **Exhibit N**.)

In similar circumstances, the courts have held that the movant did not make a sufficient showing as to alleged fraud. *See JDP Mortgage*, 2020 WL 8082390, at *2-3 (finding that fraud allegations were "unsupported by the evidence"); *Wilson v. Pasquale's DaMarino's, Inc.*, 2019 WL 4601969, at *6 (S.D.N.Y. Sept. 23, 2019) (stating that plaintiffs had not "provided factual support for these allegations"); *Altissima*, WL 1322319, at *2 ("plaintiff has not come forward with clear proof of fraud"); *Melnick v. Press*, 2007 WL 2769490, at *2 (E.D.N.Y. Sept. 21, 2007) (refusing to appoint receiver when the necessity for one depended on "resolution of the underlying factual and legal disputes that are at the heart of the lawsuit.").

**[b]    Imminent danger that property will be lost**

Compass contends that Prime Capital is nearing insolvency and will attempt to move funds beyond Compass' reach. (*See id.*, 8-9.)  Once again, these claims are contradicted by the Berone Statement referring to over $52 million held for Prime Capital's benefit by Berone Capital Fund. Compass tries to muddy the waters by alleging, in the face of documentary evidence to the contrary, that the account evidenced by the Berone Statement does not exist, but the sole basis for that allegation is statements by the interim trustee in the Involuntary Bankruptcy regarding the status of his ongoing investigation. (*See id.*, 9.)  The interim trustee made it clear to the Bankruptcy Court that he not yet completed his inquiry into the RBC accounts; he did <u>not</u> state that he had concluded that the account referenced in the Berone Statement does not exist or has no funds.[7]

---

[7]    Compass also alleges in the Complaint that "Prime refused to allow the interim trustee into its offices or provide any access to computers or records." (ECF #1, ¶ 154.)  Once again, that allegation is directly contradicted by a public filing and in-court statements made in the Involuntary Bankruptcy.  Ms. Humphrey filed a declaration in the Involuntary Bankruptcy recounting Prime Capital's cooperation with the interim trustee, which include the production of information and documents.  (*See* Van Tol Decl., **Exhibit O**.)  As for the assertion that the interim trustee was not provided with access to the Prime Capital office, counsel for Prime Capital advised the Bankruptcy Court, the interim trustee and other counsel that the offices were closed for the holidays from December 23, 2023 through January 5, 2024.  Compass and the other petitioning creditors moved to dismiss the Involuntary Bankruptcy on January 8, 2024.

### [c]    Inadequacy of legal remedies

Compass has other legal remedies available to it, namely the pursuit of claims in arbitration against Prime Capital for money damages. *See, e.g.*, *JDP Mortgage*, 2020 WL 8082390, at *3 (noting that movant could seek money damages as an alternative to a receiver). Indeed, this case is exactly like *Zyppah, Inc. v. Ace Funding Source, LLC*, 2019 WL 6647912 (SD.N.Y. Nov. 6, 2019), where the court held as follows:

> Plaintiffs primarily allege the Defendants fraudulently induced them to enter into merchant advance purchase agreements and withdrew money in excess of what was authorized under the letters of guarantee. In addition, Plaintiffs allege the Defendants have attempted to flee the jurisdiction and consequently, Plaintiffs argue they are in "imminent danger" of not receiving the remainder of the amount owed to them. The Court finds that Plaintiffs' claims center on Defendants' alleged breach of the letters of guarantees. Should Plaintiffs prevail in this action, they would be entitled to compensatory damages, and potentially other forms of damages such as consequential, punitive and incidental damages. Therefore, damages are an available legal remedy that could adequately address Plaintiffs' injuries and this factor weighs heavily against the appointment of a receiver. *See Petersen v. Federated Dev. Co.*, 387 F. Supp. 355, 361 (S.D.N.Y. 1974) ("It would appear that should plaintiff prevail on his claims, he would have an adequate remedy in an award of damages against those who have allegedly defrauded him.").

*Id.* at *2. Here, as in the analogous *Zyppah* case, the available legal remedy of money damages for Compass weighs <u>heavily</u> against the appointment of a receiver.

### [d]    Balancing of harm

There is no harm to Compass because it may pursue remedies for damages. By contrast, the harm to Prime Capital and its business, which is now controlled by an interim receiver, is evident and continuing. The appointment of the interim receiver is a continuation of the destruction that Compass caused when it improperly filed the Involuntary Bankruptcy, and obtained the appointment of the interim trustee. Following the dismissal of the Involuntary Bankruptcy, Prime Capital was just beginning to resume operations and discussing the transactions that were due to close (before being halted by the Involuntary Bankruptcy). The appointment of

the interim receiver has once again disrupted, and even halted, Prime Capital's business, which is Compass' primary goal (just as it was in the Involuntary Bankruptcy). The appointment of a permanent receiver would further the damage, perhaps irreversibly. Also, Prime Capital shares offices with other companies owned by Mr. Roglieri and the presence of a receiver will interfere with their operations as well.

The detrimental impact on other borrowers also weighs against a receivership. The numerous borrowers that wish to initiate or close transactions will be impeded by a receivership, just as they were when the interim trustee in the Involuntary Bankruptcy was in place. In *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517 (S.D.N.Y. March 24, 2009), the court stressed that a substantial number of interested parties did not favor a receivership. *Id.* at *4-5. The Court should take into account the similar concerns of borrowers that want to do business with Prime Capital, but will be frustrated by the appointment of a receiver.

### [e]     Probable success/irreparable injury

Prime Capital has defenses to the claims for damages that Compass seeks in the Complaint, but the proper forum for adjudicating them is arbitration. In light of the arbitration agreement, there is little likelihood that Compass will obtain a damages award from this Court. Moreover, even if Compass were to prevail in this action, it seeks damages and it is well-settled law that a party seeking damages cannot claim irreparable harm. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (noting that "irreparable injury means injury for which a monetary award cannot be adequate compensation").

There is another issue with the request for a receiver. "Ordinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver." *Owens*, 2009 WL 773517, at *2 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527

U.S. 308, 310, 312 (1999)).  Here, Compass requests damages only.  Thus, Compass is improperly seeking the appointment of a receiver in connection with legal claims.

Compass focuses on its contract claims and asserts that there is no dispute that Prime Capital breached the Credit Agreement when it did not return the ICA deposit when Compass demanded it.  This argument ignores the fact that (a) there is a dispute as to whether Prime Capital breached the contract (*see, e.g.*, Van Tol Decl., Ex. F, 6); and (b) Compass is seeking contract damages that are far in excess of the ICA deposit (*see* Complaint, ECF #1, ¶ 170 (asserting that Plaintiff's damages are "in excess of $15,902,250)).

Also, even if the contract claim were undisputed (which they are not), the Supreme Court's holding in *Grupo Mexicano* "stands for the proposition that a plaintiff who has sued for a completed breach of a contract cannot 'secure' the money judgment to which he may someday become entitled by 'holding up the money,' as it were, through an injunction against any transfer." *Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666, 671-72 (S.D.N.Y. 2008).  That is precisely what Compass is attempting to do here.  In the Fenlon Declaration, Compass admits that it seeks a receiver to preserve its "ability to recover on the merits of its claims" and "to protect Plaintiff's <u>future judgment</u>."  (ECF # 6-1, ¶¶ 8-9; emphasis added.)  *Grupo Mexicano* does not permit the use of a receiver to secure such a money judgment.

**[f]**   **Receivership's protection of Compass' interests**

A receivership is not necessary to protect Compass' interests in this action.  Compass seeks money damages and the Berone Statement shows that Berone Capital Fund holds $52 million for the benefit of Prime Capital.  An appointment of a receiver would do little because he would have only the same rights to the $52 million that Prime Capital currently has, since receivers stand in the shoes of the companies to which they are appointed, and there is no other evidence that a receiver is needed to protect Compass' interests.

*   *   *   *   *

Thus, an application of the relevant factors demonstrates a receiver is not necessary, and that the appointment of a receiver would worsen the damages that Compass has already inflicted on Prime Capital.  Compass is attempting to use the receivership as leverage and to bring Prime Capital to its knees, so Prime Capital will settle with Compass.  The Court should not condone such a misuse of Rule 66 and the receivership process.

### C.      There is No Basis for Expedited Discovery or Expedited Interim Discovery

As an initial matter, the Court should deny the request for expedited discovery and vacate the order allowing expedited interim discovery because the parties' dispute is arbitrable.  *See Washington Square Sec., Inc. v. Aune*, 253 F. Supp. 2d 839, 845 (W.D.N.C. 2003) ("[T]here is no need to conduct any discovery,  albeit limited, where it is clear that the instant dispute is, in fact, arbitrable."); *Bentley v. Control Group Media Co.*, 2020 WL 3639660, at *4 (S.D. Cal. July 6, 2020) (granting motion to compel arbitration and deny motion for expedited discovery as moot).

### (1)      Compass Has Not Shown That Expedited Discovery Is Warranted

Even apart from the arbitrability issue, Compass does not satisfy the requirements for expedited discovery, whether it is the "good cause" standard or the four-factor test in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982).

Under the "good cause" test, the courts will weigh the potential prejudice to defendant and plaintiff.  (*See* Emer. Mot., 13-14.)  The prejudice to Prime Capital is manifest because it would be engaging in discovery in a case that has no business being before this Court in light of the parties' arbitration agreement.  The arbitration clause sets forth multiple limitations on discovery, and it states that no third-party discovery may take place without an order from the arbitrator.  (Van Tol Decl., Ex. G, § 13.8.)  Granting expedited discovery would allow Compass to evade the discovery limitations to which it agreed in entering into the Credit Agreement.  Compass cannot

23

claim prejudice by virtue of having to comply with the arbitration agreement to which it freely and voluntarily entered. Moreover, Compass has not shown why it needs discovery on Prime Capital's assets when the only evidence before the Court on the current record—as opposed to half-baked allegations in the Complaint—is that there is over $52 million being held for the benefit of Prime Capital. Thus, there is no cause for allowing expedited discovery, let alone "good cause."

Compass also fails the *Notaro* test. There is no "irreparable injury" because Compass seeks money damages. In addition, Compass cannot show probability of success of the merits because it faces dismissal as a result of the arbitration agreement. Finally, there is no need for the expedited discovery (as discussed above), and Prime Capital would suffer prejudice because it would lose the bargained-for limitations on discovery that are in the arbitration agreement.

### (2)      The Court Should Also Vacate the Expedited Interim Discovery Order

The only support that Compass cites for the expedited interim discovery order is *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005). (*See* Emer. Mot., 16.) *Ayyash* requires the movant to provide "a strong evidentiary showing of the substantiality of [its] claims," and to demonstrate that the defendants have the incentive and capacity to hide the assets at issue. *Id.* at 327. Compass has failed to meet either of these elements.

As discussed above, Compass' claims in relation to the allegedly "missing" $52 million lack support and are contradicted by the record before this Court. There is also no evidence that Prime Capital is trying to hide anything about its assets. Prime Capital provided the Berone Statement and otherwise cooperated with the interim trustee during the brief period of the Involuntary Bankruptcy. The information that the interim trustee wanted to verify the existence of the $52 million (*i.e.*, the Berone Capital Fund bank records) is not in Prime Capital's possession or control, and the record from the Involuntary Bankruptcy shows that Prime Capital did not stand in the way of the efforts by the Bankruptcy Court and interim trustee to obtain the information.

Given the above and the fact that the expedited discovery is for a case that Compass that brought in this Court in violation of the arbitration agreement, Prime Capital respectfully requests that the Court vacate the expedited interim discovery order.

## **CONCLUSION**

For the foregoing reasons, Prime Capital respectfully requests that the Court grant the Motion and also:

(1)     Enter the proposed Order to Show Cause attached hereto as **Exhibit 1** (a) immediately vacating the portions of the *ex parte* Order to Show Cause dated January 12, 2024 appointing an interim receiver and allowing for expedited interim discovery; and (b) scheduling a hearing on the Motion for January 22, 2024;

(2)     Dismiss the claims in the Complaint against Prime Capital and compel arbitration with respect to those claims; and

(3)     In the alternative, deny the Emergency Motion for the appointment of a receiver for the duration of the case and for expedited discovery.

Dated: January 16, 2024                    Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Pieter Van Tol*

Pieter Van Tol (Bar Roll # 508405)
Chris Bryant (*pro hac vice* motion pending)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com

*Attorneys for Defendant Prime Capital*