

30 South Pearl Street, Suite 901
Albany, NY 12207

p: 518-396-3100   f: 518-396-3101
hinckleyallen.com

**Christopher V. Fenlon, Partner**
cfenlon@hinckleyallen.com

January 16, 2024

**VIA ECF**
Hon. Mae A. D'Agostino
United States District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Courtroom 5
Albany, New York 12207

      RE:   *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et. al.*,
              Case No. 1:24-cv-55 (N.D.N.Y.)

      **Plaintiff's Interim Response in Opposition to Defendant**
      **Prime Capital Ventures, LLC's Emergency Motion by Order to Show Cause**

Your Honor:

We represent Plaintiff Compass-Charlotte 1031, LLC ("Compass"). We were notified yesterday of Prime Capital Ventures, LLC's ("Prime") intent to file a proposed order to show cause to vacate the appointment of a receiver and compel arbitration. That filing is just one more attempt by Prime by avoid the primary emergency issue at stake in this matter: ***where is the $50+ million in ICA deposits which Prime claimed to the bankruptcy court were "held in Prime Capital's accounts" (including Compass-Charlotte's $16 million deposit) and now cannot be located?*** (Prime Bankruptcy Case Doc. 16). A receiver was properly appointed in order to maintain the status quo and quickly ascertain the answer to this critical question. As such, Compass strongly opposes the entry of any order which changes the relief granted by the Court in its January 12, 2024 Order.[1]

Prime's Emergency Motion (Dkt. No. 12) should be denied for at least the following reasons:

1.     Prime's argument that the receiver should be removed because the dispute between Prime and Compass is subject to arbitration, which Prime has not previously raised, is a red herring.[2] Even if this dispute with Prime is subject to arbitration, it is well-settled that this Court

---

[1] Contrary to Prime's contention, Compass properly gave notice of its intent to present its proposed order to show cause to the Court pursuant to Local Rule 7.1(e) (Dkt. No. 6-1), and promptly served copies of the filed pleadings as soon as they were available via CM/ECF, which is the same procedure followed by Prime here.

[2] Prime has not appeared to defend itself or seek arbitration in multiple other cases filed against it in which plaintiffs, prospective borrowers, were induced to make an ICA deposit and seek the recovery of those deposits.

ALBANY   BOSTON   CHICAGO   HARTFORD   MANCHESTER   NEW YORK   PROVIDENCE

Hon. Mae A. D'Agostino
January 16, 2024
Page 2

has the authority to award provisional relief to Compass to maintain the status quo pending arbitration. The Court's appointment of a receiver and allowing discovery targeted at locating the missing $50+ million so that it can be safeguarded and held by the receiver pending any arbitration which might take place is consistent with this authority. Indeed, the Compass Prime Agreement (Dkt. No. 1-29), expressly authorizes Compass to seek such relief in this Court.

Section 13.8 of the Compass Prime Agreement (entitled <u>Binding Arbitration</u>) states (in relevant part): "This clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." *Id.*

Moreover, that arbitration provision also states that any arbitration "shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures." Rule 24(e) of those JAMS arbitration rules states that "Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." That is a specific recognition of this Court's authority to appoint a receiver even when an arbitration clause is present.[3]

Not only are provisional remedies permitted under the parties' agreement and governing arbitration rules, they are also permitted by applicable caselaw. The Second Circuit has held that federal courts have both the jurisdiction and the authority to grant injunctions and provisional remedies in the context of pending arbitrations. *See General Mills, Inc. v. Champion Petfoods USA, Inc.*, 2020 WL 915824 (S.D.N.Y. Feb. 26, 2020) (analyzing Second Circuit caselaw); *Bahrain Telecommunicaitons Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 180 (D. Conn. 2007) (same); *see also Borden v. Meiki Milk Products Co., Ltd.*, 919 F.2d 822, 826 (2d Cir. 1990) ("an arbitration clause does not deprive the promisee of the usual provisional remedies") (citing *Murray Oil Products Co. v. Mitsui & Co.*, 146 F.2d 381 (2d Cir. 1944)).

The term "provisional remedies" specifically includes the appointment of a receiver. Indeed, Black's Law Dictionary (11th ed. 2019) defines the term as follows:

> **provisional remedy**. A temporary remedy awarded before judgment and pending the action's disposition, such as a temporary restraining order, a preliminary injunction, ***a prejudgment receivership***, or an attachment. Such a remedy is intended to maintain the status quo by protecting a person's safety or preserving property.

(emphasis added). The appointment of a receiver pending arbitration is an appropriate provisional remedy in federal court:

> Even if plaintiffs' claims were subject to mandatory arbitration, this court would retain power to enter equitable relief to preserve the status quo pending the arbitration of the dispute. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

---

[3] *See O'Rourke v. Lunde*, 104 A.3d 92, 100 (Vt. Sup. Ct. 2014) (holding that court retained inherent equitable power to appoint a receiver despite arbitration clause between parties, and quoting American Arbitration Rules provision allowing a court to enter "interim measures" as supporting that determination).

> *Bradley*, 756 F.2d 1048 (4th Cir.1985). *But see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286 (8th Cir.1984). Thus, if equity warrants appointment of a receiver pending the outcome of this litigation, it might also warrant appointment of receiver pending arbitration of the dispute. Appointment of a receiver is only warranted to protect some legal right. *See McDougall v. Huntingdon & Broad Top R. & C. Co.*, 294 Pa. 108, 117, 143 A. 574 (1928). If the situation is such that the legal right can only be protected pending litigation by the appointment of a receiver, then referral of the matter to arbitration without the appointment of a receiver would effectively defeat the plaintiffs' legal right. Equity will not tolerate such an unjust result. Plaintiffs' motion for a stay pending arbitration will be denied.

*Syphers v. Scardino*, 1985 WL 4283, *6 (E.D. Pa. Dec. 5, 1985); *accord GWG MCA Cap., Inc. v. Nulook Cap., LLC*, 2018 WL 1830813, *1 (E.D.N.Y. Jan. 25, 2018) (awarding provisional remedies including the appointment of a receiver pending litigation), *report and recommendation adopted*, 2018 WL 1830814 (E.D.N.Y. Feb. 26, 2018).

As noted in Compass' Complaint, "[i]f Prime and Berone Capital are legitimate entities conducting legitimate businesses, they should be willing to immediately provide information to the Court and a third-party receiver appointed by the Court to confirm where the missing $50+ million in deposits is (including Compass-Charlotte's $16 million deposit) and that they are solvent and can repay the millions of dollars of deposits that are owed." (Dkt. No. 1 at ¶ 8) The fact that Prime has not provided that information and is instead opposing any attempt by Compass to inquire into what happened to the missing $50+ million in ICA deposits speaks volumes.

2. Compass is not party to any agreement to arbitrate with the Berone Defendants and all of Compass' claims against those entities are properly before the Court. Kris Roglieri (the principal of Prime) told the Bankruptcy Court that all ICA payments are transferred by Prime to "the Berone Capital account" and those $50 million of ICA deposits should still be with Berone because of account statements that Berone allegedly provided on a quarterly basis. (Dkt. No. 1-40) Because Prime has been unable to provide any bank account statement, which shows the location of the $50+ million in ICA deposits and Berone did not respond to the Bankruptcy Court's orders to provide evidence of those deposits, the appointment of a receiver is appropriate and Compass is entitled to immediate discovery against third-parties to discover where those deposits, including its $16 million ICA deposit, have gone.

Prime argues that Compass has not shown that the $50+ million in ICA deposits is missing. This argument is meritless. Compass has subpoenaed the records of the RBC account that Berone and Prime claimed the funds were held at. Yet Prime opposes allowing Compass to see those RBC bank account statements of an account held in the name of Berone Capital. And Berone Capital has not responded to this Court or to the Bankruptcy Court, despite a sanctions order entered against it by the Bankruptcy Court. Why does Prime so vigorously oppose any discovery into where the alleged $50+ million in ICA deposits are? Compass has sufficient grounds to believe that those ICA deposits have gone to pay for the luxury lifestyle of Kris Roglieri and Kimmy Humphrey. Indeed, Compass has obtained paperwork showing that in January 2023 Prime purchased a $3.75 million mansion in Virginia Beach, Virginia with funds from the very account

Hon. Mae A. D'Agostino
January 16, 2024
Page 4

that Compass' ICA deposit was wired later wired to at CitiBank. Compass is informed that Kimmy Humphrey resides at this mansion owned in Prime's name. *See* Exhibit A, HUD Closing Statement signed by Kris Roglieri and Property Report Card.

    3.    The relief sought by Prime's Emergency Motion includes a motion to dismiss, yet Prime has not complied with a pre-motion letter and conference as required by Rule 2.A. of Your Honor's Individual Rules and Practices.

    4.    The law firm of Hogan Lovells has an unwaivable conflict of interest in representing Prime and cannot pursue the proposed order to show cause (as more fully described in the pre-motion letter filed with the Court yesterday (Dkt. No. 11)).

Prime's Emergency Motion should be denied, and Prime should present its arguments consistent with the schedule set forth in the Court's Order to Show Cause (Dkt. No. 8).

All rights are reserved.

                    Very truly yours,

                **HINCKLEY, ALLEN & SNYDER LLP**

                Christopher V. Fenlon

Enclosure

cc:    Pieter Van Tol (via ECF and email)
       Berone Defendants (via email)
       William Esser (via email)