

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

January 16, 2024

**Via ECF**

Honorable Mae A. D'Agostino
United States District Court
Northern District of New York
445 Broadway, Suite 330
Albany, NY 12207

Re:     *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC,* 24-cv-00055

Dear Judge D'Agostino:

On behalf of Defendant Prime Capital Ventures, LLC ("Prime Capital"), we respectfully submit this letter in response to the letter opposition (the "Opposition") from Plaintiff Compass-Charlotte 1031 LLC ("Compass" or "Plaintiff") filed earlier today.  The Opposition raises four main points and we will address them in order:

1.      While the arbitration provision in Section 13.8 refers to "provisional remedies," it is specifically limited to those "in aid of arbitration."  (Credit Agreement, § 13.8; emphasis added.) That particular—and critical—language is not in any of three cases cited by Plaintiff that involve the appointment of a receiver (as opposed to some other relief).[1]  Thus, to our knowledge, Compass has not cited <u>any</u> case where the court ordered the appointment of a receiver even though the arbitration agreement expressly limited remedies to those "in aid of arbitration."[2]

In this case, a receivership would actually interfere with an arbitration, rather than aid it, because it would usurp the power of the arbitrator to fashion such remedies.  The courts have held that arbitrators have full power to order the appointment of a receiver.  *See, e.g., Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 539-41 (S.D.N.Y. 2014).  If Compass believes that a receiver is warranted, it must apply to the arbitrator for that relief.  The arbitration provision here is expansive and Section 13.8 makes it evident that the courts have no role in the parties' disputes <u>except</u> to assist them if one party is resisting arbitration.  This clear intent is reinforced by

---

[1]      Those cases are: *Syphers v. Scardino*, 1985 WL 4283, *6 (E.D. Pa. Dec. 5, 1985); *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, 2018 WL 1830813, *1 (E.D.N.Y. Jan. 25, 2018), *report and recommendation adopted*, 2018 WL 1830814 (E.D.N.Y. Feb. 26, 2018); *O'Rourke v. Lunde*, 104 A.3d 92, 100 (Vt. Sup. Ct. 2014).

[2]      The *Syphers* case, on which Plaintiff relies so heavily, is also distinguishable because the court there held that the appointment of a receiver is only warranted to protect some "legal right."  1985 WL 4284, at *6.  Here, Compass says that it needs a receiver to protect the collectability of a money judgment against Prime Capital.  As discussed below, Plaintiff has no legal right to use receivership for that purpose.

January 16, 2024

another clause in the arbitration agreement stating that: "This agreement to arbitrate is intended by the Parties to constitute a <u>waiver of any right to trial by jury, or the right to proceed in any state or federal court</u> for resolution of any dispute arising in relation to the enforcement or interpretation of this Agreement, this agreement to arbitrate, or any of the LOC Documents." (Credit Agreement, § 13.8; emphasis added.)  The broad waiver in the arbitration agreement is inconsistent with the idea that the parties may seek the appointment of a receiver from a court as opposed to an arbitrator.

The Opposition is also noteworthy for what it does not say.  Plaintiff makes no effort to distinguish the cases cited by Prime Capital in its brief where the courts held that an order compelling the parties to arbitration is inconsistent with the appointment of a receiver.  (*See* ECF #12, 14.)  Similarly, the Opposition does not anywhere discuss the numerous cases where the courts held that a party did not meet the stringent standard for the *ex parte* appointment of the receiver.  (*See id.*, 14-17.)[3]  Moreover, Compass ignores the U.S. Supreme Court and other precedent cited in Prime Capital's brief, which hold that a remedy like receivership cannot be used to secure a money judgment, which is Plaintiff's admitted goal here.  (*See id.*, 20-22.)

Finally, Compass mischaracterizes Prime Capital's position by suggesting it is blocking an inquiry into the facts.  (Opp'n, 3.)  To the contrary, Prime Capital seeks to lift the appointment of the interim receiver because of the significant damage that it has already done, and will continue to do, to Prime Capital's business, reputation and customers.  Indeed, the courts are uniform in characterizing the appointment of receiver as a "drastic remedy" that should be used with caution and only upon "clear and convincing" evidence.  (*See* ECF #12, 14-16.)

2.      Compass notes that the Berone defendants are not parties to the arbitration agreement and, therefore, that Plaintiff's claims against those defendants would remain before the Court if arbitration is compelled.  That is beside the point with respect to Prime Capital's emergency motion, which seeks relief as to the receiver appointed over <u>Prime Capital</u>.  Prime Capital has no authority to seek relief for other defendants, and it is not doing so.  Instead, Prime Capital will allow the Berone defendants to make whatever arguments they see fit regarding the receivership.

In addition, Plaintiff states that "Prime opposed allowing Compass to see those RBC bank account statements of an account held in the name of Berone Capital." (Opp'n, 3.)  That is false and belied by the record.  In the Bankruptcy Court proceedings, Prime Capital did not oppose any efforts by that court or the interim trustee to obtain Berone records.  (*See* ECF #12, 24.)  It is incumbent upon counsel for Compass to present facts to the Court, and this is not the first time that we have been forced to correct such misstatements.

And, once again, when Plaintiff has its back against the wall, it lashes out with allegations relating to the wealth of individuals at Prime Capital.  (*See* Opp'n, 3-4.)  Those allegations have nothing to do with the matters before the Court.

---

[3]      Compass seems to suggest that its emergency motion was not on *ex parte* basis because counsel for Compass followed some, but not all, of the requirements in Local Rule 7.1(e).  (Opp'n 1, n.1.)  The January 12, 2024 order was clearly *ex parte* because Prime Capital had no opportunity to be heard on the relief sought until after the order was entered.

January 16, 2024

3.      With regard to Prime Capital's alleged failure to abide by the Court's Individual Rules and Practices, the whole reason for bringing an emergency motion by way of Order of Show Cause is that the situation is urgent and the receivership is currently impeding Prime Capital's ability to do business.  Indeed, in the declaration submitted in support of the Order to Show Cause, Prime Capital established the basis for setting aside standard procedures, such as the pre-motion letter requirement.  (*See* ECF, #13.)

4.      Compass claims that this firm, on behalf of Prime Capital, cannot proceed with the Order to Show Cause because, according to Plaintiff, there is a disqualifying conflict.  Plaintiff's claim is tactical in nature, and it is not well-taken.  Prime Capital will respond to Plaintiff's letter within the three-day period allowed by this Court's Individual Rules and Practices.  But, in the meantime, we note that no motion for disqualification has been made, let alone granted.

Accordingly, Prime Capital respectfully requests that the Court grant the relief sought by Prime Capital in its emergency motion and enter the Order to Show Cause.

Respectfully submitted,

*/s/ Pieter Van Tol*

Pieter Van Tol
Partner
pieter.vantol@hoganlovells.com
D 1 212 909 0661