UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

COMPASS-CHARLOTTE 1031, LLC,

                                Plaintiff,

     -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                                Defendants.

_____

Case No.: 1:24-cv-55

**DECLARATION OF**
**JEFFERY HUSTON**

I, Jeffery Huston, hereby declare as follows:

     1.     I am over 18 years of age, under no disability which would keep me from making this declaration and have personal knowledge of the facts set forth herein based upon my own personal involvement.

     2.     I am the President of 1800 Park Avenue LLC ("1800 Park").

     3.     In October 2023, 1800 Park approached Prime Capital Ventures, LLC ("Prime Capital") regarding a construction loan request to fund a line of credit for over $105 million.

     4.     On October 20, 2023, I received a "Terms and Contingent Letter of Intent" with Prime Capital for that line of credit, which I signed on October 25, 2023. A copy of that term sheet is attached as Exhibit 1.

     5.     Under the term sheet, 1800 Park would have been required to fund an ICA deposit to Prime Capital in the amount of $26,277,562.

     6.     Prime Capital issued to 1800 Park a "Commitment to Fund Letter" dated December 12, 2023, in which Prime Capital committed to fund the line of credit in the amount of $98,905,467 (the "Commitment to Fund"). The Commitment to Fund was executed by Kris Roglieri on behalf of Prime Capital, and was countersigned by myself on December 12, 2023, on behalf of 1800 Park. A copy of that Commitment to Fund is attached as Exhibit 2.

     7.     On December 18, 2023, 1800 Park received draft loan documents that stated the lender was "Prime Commercial Lending, LLC" not Prime Capital. No explanation was provided

for the change from Prime Capital to Prime Commercial Lending, LLC ("PCL") at the time the draft loan documents were provided.

8.      While unknown at the time, I understand that an involuntary bankruptcy petition was filed against Prime Capital on Tuesday, December 19, 2023 (case no. 23-11302, Bankr. N.D.N.Y.; the "Bankruptcy Proceeding").

9.      On Tuesday, December 19, 2023, at 11:22 a.m., Erik Martin (who has a signature block of Vice President, Prime Commercial Lending) sent an email in which he stated that "If we don't make this soft close happen this week, we may lose the deal altogether.  The ICA will jump as well as the rate, and may require a whole new underwrite."

10.     1800 Park did not want to lose the potential financing, so it negotiated that it would send a $5 million initial deposit which would be held in trust and not used for any other purpose until such time as the parties could attempt to close the potential financing.

11.     On December 21, 2023, I received an email from Kimmy Humphrey with a draft "Deposit Agreement" to govern the $5 million deposit, which was drafted to be between 1800 Park and PCL. The Deposit Agreement attached wire instructions which said that we should wire funds to an account at KeyBank allegedly held in the name of PCL.  The following screenshot is taken from those instructions:

> **Account Holder:**          Prime Commercial Lending, LLC

12.     I had my attorney revise the proposed Deposit Agreement to ensure that the $5 million deposit from 1800 Park would be held in trust and not used for any other purpose.  This was essential to me as we had not reached any final agreement with Prime Capital or PCL regarding a line of credit.

13.     On December 22, 2023, Kris Roglieri and I executed the Deposit Agreement (attached as Exhibit 3).

14.     The Deposit Agreement specifically states:

> The Lender [Prime Commercial Lending, LLC] hereby acknowledges receipt of such funds and agrees to hold the Deposit Amount in a separate and distinct account for Borrower, subject to the terms and conditions of this Agreement.  The Deposit Amount should be **held as a trust fund** and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto.

(Emphasis added)

15.     I would not have entered into the Deposit Agreement without this explicit protection.

16.     In accordance with the Deposit Agreement, 1800 Park wired $5,000,000 to the KeyBank account provided by Kimmy Humphrey.

17.     The existence of the Bankruptcy Proceeding and the *Order Appointing Interim Chapter 7 Trustee* entered December 21, 2023, were never disclosed to me or 1800 Park until after the $5 million was made.

18.     1800 Park demanded that its $5 million be returned, which was formalized in a letter from counsel for 1800 Park, dated January 3, 2024, sent to PCL pursuant to the notice provisions of the Deposit Agreement (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as Exhibit 4.

19.     Scott Diberardinis of PCL acknowledged receipt of the Demand Letter in an email received at 4:30pm MST on January 3, 2024.

20.     I have subsequently obtained copies of KeyBank account statements related to our $5,000,000 deposit.  The first statement (Account XXX2233) was not in the name of PCL as falsely represented by Kimmy Humphrey and Kris Roglieri.  Rather, it was in the name of Prime Capital.

21.     The KeyBank account statement shows that the Prime Capital Account XX2233 had a $1,923.66 account balance on December 22, 2023 prior to the $5 million deposit.  The statement shows 1800 Park's $5 million wired in as follows:

| 12-22 | 629232 | Wire Deposit | 1800 Park Ave Ch 8794 | 5,000,000.00 |
|-------|--------|--------------|-----------------------|--------------|

22.     That same statement then shows that exact amount being transferred out with an internet transfer on December 22, 2023, with the full $5 million being transferred to another KeyBank account ending in XX4465.

23.     I have also obtained a copy of the December 2023 bank account statement for KeyBank Account XX4465.  That account is in the name of Prime Commercial Lending LLC. The ending balance in this account for the day prior to the internet transfer of the $5 million was $57,045.90.

24.     The KeyBank account statement shows that immediately after the $5 million was transferred over to PCL's account, the funds were dissipated.  Among other things, portions of 1800 Park's $5 million deposit were wired to the law firms which have appeared to represent Park Capital in its bankruptcy and now in this federal court lawsuit.

| 12-26 | 653078 | Wire Withdrawal | Cullen and Dykma 1915 | 50,000.00 |
|-------|--------|-----------------|-----------------------|-----------|

| 12-29 | 744418 | Wire Withdrawal | Hogan Lovells   9982 | 400,000.00 |
|-------|--------|-----------------|----------------------|------------|

25.     That same statement shows 1800 Park's $5 million trust funds being used for the following unauthorized purposes:

(a)  On December 26, 2023, $84,000 wired to "Wrist Afficionad", which upon information and belief is Wrist Aficionado, a luxury watch seller, according to its website wristaficionado.com; and

(b) On December 26, 2023, $101,000 wired to "Xo Global, Llc", which upon information and belief is XO Global, LLC, a private air charter broker operating under the brand XO;

26.     PCL's use of the 1800 Park funds for any purpose was directly contrary to the terms of the Deposit Agreement which specified that those funds were "**held as a trust fund** and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto."

27.     Despite repeated demands on representatives of PCL, Prime Capital and Prime Capital's counsel, no money has been returned to 1800 Park.

28.     Based upon a review of the KeyBank account statements, it is evident that neither Prime Capital nor PCL ever held the 1800 Park $5 million deposit in trust and instead have used those trust funds to pay the lawyers litigating for Prime Capital in the bankruptcy and this lawsuit (among other uses).

29.     1800 Park urges the Court to maintain the interim receiver appointed in this action so that it and other victims of the fraud being conducted by Prime Capital, PCL, Kris Roglieri and Kimmy Humphrey will hopefully obtain some of their money back.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this <u>16th</u> day of January, 2024.

_____
Jeffery Huston

4

# EXHIBIT 1 to Declaration of Jeffery Huston



## Terms and Contingent Letter of Intent

October 20, 2023

("Project"):  Renville Egg Farm – Construction Loan Request Renville, MN

Dear Sirs,

1800 Park Ave, LLC ("Client") is PRE-APPROVED for funding via non-recourse, asset-backed Line of Credit ("LOC") with Prime Capital Ventures, LLC ("Provider") to be used at the Client's discretion within the scope of the agreement.  Funds are to be used for the acquisition and/or development of the Project.

| | | |
|---|---|---|
| **Debt:** | | |
| *Est. Principal Amount:* | $105,110,250 | |
| Project LOC Amount: | $100,105,000 | |
| Interest Credit Account (ICA): | $26,277,562 | *(pre-paid interest)* |
| Term: | 60 months | |
| Rate: | 8% | *I/O* |
| Pre-Payment Penalty: | None | |
| | | |
| **Sponsor Contribution:** | | |
| Contribution Amount: | $26,277,562 | *cash* |
| | | |
| **Equity:** | | |
| Equity Contribution Amount: | NA | |
| Preferred Rate: | NA | |
| Equity Split: | NA | *(LP/GP)* |
| Promote Fee: | NA | |
| Additional Terms: | NA | RFR at buyout (Right of First Refusal) |
| | | |
| **Deposit:** | | Due upon execution of this Agreement |
| Underwriting/Due Diligence: | $85,000 | *See Addendum A for conditions.* |
| | | |
| **Other Fees:** | | Paid out of loan proceeds. |
| Lender Fee: | 5% | |
| | | |
| **Schedule:** | | |
| Delivery: | TBD; 60 to 90 banking days after ICA payment & contract completion per draw schedule | |

Prime Capital Ventures
66 South Pearl St. 10th Floor
Albany, NY  12207
www.primecommerciallending.com



This approval expires on October 30th, 2023 at 5pm ET and is subject to the following:

- Client Information Summary (CIS) completion, in full.
- Terms and Contingent Letter of Intent signed by primary decision executor.
- Confirmation of Underwriting and Due Diligence Deposit. See Addendum A for conditions.
- Funding is subject to our complete review of the transaction and collateral.
- Provider reserves the right to amend or add any requirements or LOC conditions at its sole discretion.
- Borrower agrees to wire deposit within 24 hours of signing This Letter

Terms & Conditions

This Letter is intended solely as a basis for negotiation between Provider and Client of mutually satisfactory definitive documentation relating to a potential LOC by Provider to Client.  The LOC is subject to the foregoing; and the parties agree to as follows:

1. Definitive Documentation. As promptly as reasonably practicable following the execution and delivery of this letter, the parties (and their respective legal counsel, if necessary) will commence preparation of definitive documents for the LOC. The definitive agreements and other documentation for the LOC (collectively, the "LOC Documents") will be based upon the terms set forth in this document.

2. Due Diligence. Provider will continue to engage in underwriting and due diligence of Client and the scope related to the LOC. Client shall provide information to Provider relevant to the LOC in order that Provider may have the opportunity to conduct customary and appropriate underwriting and due diligence as Provider may deem necessary or desirable in connection with its evaluation of the LOC. In the event that information contained in this letter is found to be inaccurate, the Provider at its sole discretion may update the terms or void this letter completely.

3. Non-Binding. This Letter has been prepared and executed to serve as an aid to the negotiation, preparation and execution of the LOC Documents. Client and Provider have mutually discussed the proposed terms of the LOC Documents without Provider's benefit of complete underwriting and due diligence investigation. Therefore, the terms and conditions of this letter are subject to, among other things, further due diligence investigation by Provider. Except for the provisions of Sections 2, 3, 4, and 5, hereof (which are intended to be legally binding on the parties hereto), this letter is not intended to constitute a binding contract on either party, and neither party will be liable to the other party due to any failure to enter into any LOC Document. No past or future action, course of conduct or failure to act relating to the LOC, or relating to the negotiation of the terms of the LOC or the LOC Documents will give rise to or serve as a basis for any obligation or other liability on the part of either party.

4. Governing Law. This letter is governed by the laws of the State of New York, in Albany County without regard to its conflicts of law rules.

5. Legal Authority. Client and Provider each represents that the respective person executing this Letter on its behalf has the legal authority to enter into this Letter based on the relevant governing documents of each party.

Regards,

By:

_____

Kris Roglieri
CEO
Prime Capital Ventures, LLC

By: _Jeffy Huston_

Name: _Jeff Huston_
Title: _manges_
Company: _1800 PArk AVe LLC_
Date: _10-25-2023_



## Addendum A: Deposit Conditions

You are required to provide a Deposit of <u>$85,000</u> within 24 hours of this signed and countersigned *Terms and Contingent Letter of Intent* Agreement.

The Deposit will be held by Prime Capital Ventures and disbursed to pay third-party costs incurred by Prime Capital Ventures (i.e., appraisal and legal fees, costs of environmental and other assessments and inspections, etc.), as well as the overhead absorbed by Prime Capital Ventures in continuing its underwriting and approval process.

To the extent not disbursed, the balance of the Deposit will be returned to Client if Prime Capital Ventures elects not to issue a formal *Commitment to Fund*.  If Clients elects not to move forward, prior to Commitment to Fund, the deposit is non-refundable.  If a *Commitment to Fund* is issued, the Deposit will be retained by Prime Capital Ventures and applied to the extent available to ongoing third-party costs.  If third-party costs exceed the funds available in the Deposit, you will be obliged to provide sufficient additional funds.

By: _Jeff Huston_ _____

Name: Jeff Huston

Title: Manager

Company: 1800 Park Ave LLC

Date: 10-25-2023

Prime Capital Ventures
66 South Pearl St. 10th Floor
Albany, NY  12207
www.primecommerciallending.com



## Prime Capital Ventures Wire Instructions

| | |
|---|---|
| **Bank:** | Key Bank |
| **Address:** | 127 Public Square |
| | Cleveland, OH, 44114 |
| | |
| **Account Holder:** | Prime Capital Ventures, LLC |
| | |
| **Account #:** | ██████2233 |
| **Routing #:** | ████████ |
| | |
| **SWIFT:** | KEYBUS33ALB |
| **IBAN:** | KEYBUS33 |

# EXHIBIT 2 to Declaration of Jeffery Huston



### Commitment to Fund Letter

December 12, 2023

("Project"):  Renville Egg Farm – Construction Loan Request; Renville, MN

Dear Sirs,

Prime Capital Ventures ("Provider") is pleased to inform 1800 Park Ave, LLC ("Client") that we will commit to fund $98,905,467 via a non-recourse, asset-backed Line of Credit ("LOC") to be used at the Client's discretion within the scope of the Agreement.  Funds are to be used for the acquisition and/or refinancing and development of the Project and are based on the following terms and conditions:

|  |  |  |
|---|---|---|
| **Debt:** | | |
| ***Est. Principal Amount:*** | **$103,850,740** | |
| Project LOC Amount: | $98,905,467 | |
| Interest Credit Account (ICA): | $25,962,685 | *(pre-paid interest)* |
| Term: | 60 months | |
| Rate: | 8% | *I/O* |
| Pre-Payment Penalty: | None | |
| | | |
| **Sponsor Contribution:** | | |
| Contribution Amount: | $25,962,685 | *cash* |
| | | |
| **Equity:** | | |
| Equity Contribution Amount: | NA | |
| Preferred Rate: | NA | |
| Equity Split: | NA | *(LP/GP)* |
| Promote Fee: | NA | |
| Additional Terms: | RFR at buyout | |
| | | |
| **Deposit:** | | |
| Underwriting/Due Diligence: | $85,000 | |
| | | |
| **Other Fees:** | | Paid out of loan proceeds. |
| Lender Fee: | 5% | |
| | | |
| **Schedule:** | | |
| Delivery: | TBD; 60 to 90 banking days after ICA payment & contract completion per draw schedule | |

Prime Capital Ventures
66 South Pearl St. 10th Floor
Albany, NY, 12207
www.primecommerciallending.com



Terms & Conditions:

1.  This agreement must be countersigned by December 12, 2023 to be valid.

2.  Upon issuance of this Commitment to Fund Letter, the Due Diligence deposit is deemed earned by Prime Capital Ventures

3.  Upon signing of this Commitment to Fund Letter, Prime Capital Ventures will begin to prepare and issue loan documents in accordance with this agreement.

4.  Terms and funding are contingent upon fully executed loan documents and ICA payment.

Regards,

By:

*Kris Roglieri*

Kris Roglieri
CEO
Prime Capital Ventures, LLC

By:

DocuSigned by:

*Jeffery Huston*

D6469A3A81B040E...

Name:  Jeffery Huston
Title:  Chief Manager
Company:  1800 Park Ave, LLC
Date:  12/12/2023

# EXHIBIT 3 to Declaration of Jeffery Huston

### DEPOSIT AGREEMENT

THIS DEPOSIT AGREEMENT (this "Agreement") is made and entered into as of December 22, 2023, by and between 1800 PARK AVENUE LLC, a Minnesota limited liability company, (the "Borrower"), and PRIME COMMERCIAL LENDING, LLC, a Delaware limited liability company, (the "Lender" and, together with the "Borrower", sometimes referred to individually as a "Party" and collectively as the "Parties").

### RECITALS

WHEREAS, the Parties intend to enter into that certain Development Line of Credit (the "Credit Agreement"), and certain other related documents (collectively, the "Loan Documents"), for a line of credit in the aggregate principal amount not to exceed One Hundred Three Million Eight Hundred Fifty Thousand Seven Hundred Forty and 00/100 Dollars ($103,850,740.00) (the "Loan"). Borrower will deliver a refundable earnest money deposit in the amount of Five Million and 00/100 Dollars ($5,00,000.00) (the "Deposit Amount") for purposes of opening the Borrower's interest credit account as contemplated in the draft Credit Agreement and securing terms on the executed Letter of Intent ("LOI") dated October 25, 2023. Borrower will wire to Lender Five Million and 00/100 Dollars ($5,000,000.00) of the Deposit Amount required immediately after the Parties fully execute this Agreement, with the remaining Twenty Million Nine Hundred Sixty-Two Thousand Six Hundred Eighty-Five and 00/100 Dollars ($20,962,685.00) to be wired within forty-five (45) additional banking business days thereafter.

WHEREAS, as a condition precedent to proceeding with transaction contemplated under the current draft of the Credit Agreement, Borrower is obligated to deposit an amount equal to Twenty-Five Million Nine Hundred Sixty-Two Thousand Five Hundred Sixty-Two Six Hundred Eighty-Five and 00/100 Dollars ($25,962,685.00) or twenty-five percent (25%) of the amount of the Loan (the "ICA Payment"), with the Lender.

WHEREAS, Borrower has requested that Lender provide forty-five (45) additional banking business days to make the second installment of the ICA Payment, to lock the interest rate under the Credit Agreement to an amount equal to 7.5% and to not increase the amount of the ICA Payment due under the LOI and Credit Agreement to any amount more than 25% of the amount of the Loan, and Lender is willing to accommodate such request so long as Borrower pays to Lender the Deposit Amount, all in accordance with and subject to, the terms of this Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows, with the understandings and agreements set forth in the Recitals above being incorporated into the agreement among the Parties:

1. Deposit Amount. Simultaneously with the execution and delivery of this Agreement, Borrower is depositing with Lender the Deposit Amount pursuant to the account details and wire instructions set forth on Exhibit A, attached hereto and incorporated herein by this reference.

2. Covenants of Lender.

DocuSign Envelope ID: F8EF6F25-9251-4269-9A26-53CAB565G2E5

a. The Lender hereby acknowledges receipt of such funds and agrees to hold the Deposit Amount in a separate and distinct account for Borrower, subject to the terms and conditions of this Agreement. The Deposit Amount shall be held as a trust fund and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto.

b. Lender agrees and acknowledges that the terms offered to Borrower under the LOI shall remain unchanged for a period of forty-five (45) days from the date hereof.

3. Disposition of Funds.

a. Application to ICA Account. If the Parties do enter into the Credit Agreement, the Deposit Amount shall be credited to the Interest Credit Account as contemplated under the Credit Agreement, or as otherwise agreed to by the Parties in the Credit Agreement.

b. Refund. If the Parties do not enter into the Credit Agreement and subject to the terms set forth on the LOI, upon request of the Borrower (i) the Deposit Amount shall be released back to the Borrower, or (ii) the Deposit Amount may be used for a different project subject to Lender approval.

4. Notification to Parties. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below (or at such other address for a party as shall be specified in a notice given in accordance with this Section 4).

If to Borrower, then to:

1800 PARK AVENUE LLC
60148 CSAH 28
Litchfield, MN 55355
Attention: Jeffery Huston
E-mail: jeff@3dmoney.com


with a copy (which shall not constitute notice) to:

Carpenter, Hazlewood, Delgado & Bolen, LLP
1400 E. Southern Avenue, Suite 400
Tempe, Arizona 85282
Attention: Chad P. Miesen, Esq.
E-mail: chad@carpenterhazlewood.com

<u>If to Lender</u>, then to:

Prime Commercial Lending
66 South Pearl Street 10th floor
Albany, NY 12207
Attention: Kris D. Roglieri
E-mail: kris@primecommerciallending.com

with a copy (which shall not constitute notice) to:

Prime Commercial Lending
66 South Pearl Street 10th floor
Albany, NY 12207
Attention: Greg Caito, Esq.
E-mail: gcaito@primecommerciallending.com

5. <u>Termination</u>. This Agreement shall terminate when the entire Deposit Amount has been distributed in accordance with Section 5 of this Agreement.

6. <u>Entire Agreement</u>. This Agreement constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

7. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

**Borrower**:

1800 PARK AVENUE LLC,
a Minnesota limited liability company

By: _Jeffery Huston_____

Name: Jeffery A. Huston
Title: President

**Lender**:

PRIME COMMERCIAL LENDING, LLC,
a Delaware limited liability company

By: _____

Name: Kris Roglieri
Title: CEO

## EXHIBIT A



**Wire Instructions**

| | |
|---|---|
| **Bank:** | Key Bank |
| **Address:** | 127 Public Square |
| | Cleveland, OH 44114 |
| **Account Holder:** | Prime Commercial Lending, LLC |
| **Account #:** | ████████2233 |
| **Routing #:** | ███████████ |
| **SWIFT:** | KEYBUS33ALB |
| **IBAN:** | KEYBUS33 |

# CARPENTER HAZLEWOOD
### Carpenter, Hazlewood, Delgado & Bolen
ATTORNEYS AT LAW

**PHOENIX AREA**
1400 East Southern Avenue, Suite 400
Tempe, Arizona 85282-5691
T 480-427-2800
F 480-427-2801

**Chad P. Miesen, Esq.**
*Licensed in Arizona, Texas and Utah (inactive)*
chad@carpenterhazlewood.com
Direct: 480-427-2860

January 3, 2024

**SENT VIA EMAIL AND CERTIFIED US MAIL (RETURN RECEIPT REQ.)**

> **Certified Article Number**
> 9314 8699 0430 0115 6402 01
> **SENDER'S RECORD**

Prime Commercial Lending, LLC
66 South Pearl Street 10th floor
Albany, NY 12207
Attention: Kris D. Roglieri
Email: kris@primecommerciallending.com

  **Re:  Return of Deposit Amount – 1800 Park Avenue LLC**

Dear Prime Commercial Lending, LLC:

This firm represents 1800 Park Avenue LLC ("**1800 Park**") and hereby requests on behalf of 1800 Park the prompt return of all funds deposited pursuant to that certain Deposit Agreement dated December 22, 2023 (the "**Deposit Agreement**"), entered into by and between 1800 Park and Prime Commercial Lending, LLC ("**Lender**"). A copy of the Deposit Agreement is enclosed for reference.

Pursuant to Section 3.b. of the Deposit Agreement, Borrower has the right to request from Lender a full return of the Deposit Amount (as defined in the Deposit Agreement). This correspondence serves as that request. You are required to return the $5,000,000 deposited pursuant to the Deposit Agreement in full and without deduction. The funds are to be wired to 1800 Park pursuant to the wire instructions enclosed. As standard practice due to worldwide increases in instances of wire fraud, please contact Jeff Huston to verbally confirm the wire instructions prior to initiating the wire transfer.

We expect the full Deposit Amount to be returned as promptly as possible, but in no event later than Friday, January 5, 2024.

CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP
Prime Commercial Lending, LLC
Re: Return of Deposit Amount – 1800 Park Avenue LLC
January 3, 2024
Page 2
_____

Thank you for your anticipated cooperation and prompt attention this matter.

Sincerely,

Chad P. Miesen, Esq.
for

CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP

Enclosures:   Deposit Agreement
              Wire Instructions


cc:    Greg Caito, Esq. (via email only to mailto:gcaito@primecommerciallending.com)
       Scott Diberardinis (via email only to scott@primecommerciallending.com)
       Erik Martin (via email only to erik@primecommerciallending.com)
       Kimmy Humphrey (via email only to kimmy@primecommerciallending.com)
       Scott Williams (via email only to swilliams@alinecapital.com)
       Jeff Huston (via email only to jeff@3dmoney.com)
       Gabe Olson (via email only to gabe@3dmoney.com)

## DEPOSIT AGREEMENT

THIS DEPOSIT AGREEMENT (this "Agreement") is made and entered into as of December 22, 2023, by and between 1800 PARK AVENUE LLC, a Minnesota limited liability company, (the "Borrower"), and PRIME COMMERCIAL LENDING, LLC, a Delaware limited liability company, (the "Lender" and, together with the "Borrower", sometimes referred to individually as a "Party" and collectively as the "Parties").

## RECITALS

WHEREAS, the Parties intend to enter into that certain Development Line of Credit (the "Credit Agreement"), and certain other related documents (collectively, the "Loan Documents"), for a line of credit in the aggregate principal amount not to exceed  One Hundred Three Million Eight Hundred Fifty Thousand Seven Hundred Forty and 00/100 Dollars ($103,850,740.00) (the "Loan"). Borrower will deliver a refundable earnest money deposit in the amount of Five Million and 00/100 Dollars ($5,00,000.00) (the "Deposit Amount") for purposes of opening the Borrower's interest credit account as contemplated in the draft Credit Agreement and securing terms on the executed Letter of Intent ("LOI") dated October 25, 2023.  Borrower will wire to Lender Five Million and 00/100 Dollars ($5,000,000.00) of the Deposit Amount required immediately after the Parties fully execute this Agreement, with the remaining Twenty Million Nine Hundred Sixty-Two Thousand Six Hundred Eighty-Five and 00/100 Dollars ($20,962,685.00) to be wired within forty-five (45) additional banking business days thereafter.

WHEREAS, as a condition precedent to proceeding with transaction contemplated under the current draft of the Credit Agreement, Borrower is obligated to deposit an amount equal to Twenty-Five Million Nine Hundred Sixty-Two Thousand Five Hundred Sixty-Two Six Hundred Eighty-Five and 00/100 Dollars ($25,962,685.00) or twenty-five percent (25%) of the amount of the Loan (the "ICA Payment"), with the Lender.

WHEREAS, Borrower has requested that Lender provide forty-five (45) additional banking business days to make the second installment of the ICA Payment, to lock the interest rate under the Credit Agreement to an amount equal to 7.5% and to not increase the amount of the ICA Payment due under the LOI and Credit Agreement to any amount more than 25% of the amount of the Loan, and Lender is willing to accommodate such request so long as Borrower pays to Lender the Deposit Amount, all in accordance with and subject to, the terms of this Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows, with the understandings and agreements set forth in the Recitals above being incorporated into the agreement among the Parties:

1. Deposit Amount. Simultaneously with the execution and delivery of this Agreement, Borrower is depositing with Lender the Deposit Amount pursuant to the account details and wire instructions set forth on Exhibit A, attached hereto and incorporated herein by this reference.

2. Covenants of Lender.

a. The Lender hereby acknowledges receipt of such funds and agrees to hold the Deposit Amount in a separate and distinct account for Borrower, subject to the terms and conditions of this Agreement. The Deposit Amount shall be held as a trust fund and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto.

b. Lender agrees and acknowledges that the terms offered to Borrower under the LOI shall remain unchanged for a period of forty-five (45) days from the date hereof.

3. Disposition of Funds.

a. Application to ICA Account. If the Parties do enter into the Credit Agreement, the Deposit Amount shall be credited to the Interest Credit Account as contemplated under the Credit Agreement, or as otherwise agreed to by the Parties in the Credit Agreement.

b. Refund. If the Parties do not enter into the Credit Agreement and subject to the terms set forth on the LOI, upon request of the Borrower (i) the Deposit Amount shall be released back to the Borrower, or (ii) the Deposit Amount may be used for a different project subject to Lender approval.

4. Notification to Parties. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below (or at such other address for a party as shall be specified in a notice given in accordance with this Section 4).

If to Borrower, then to:

1800 PARK AVENUE LLC
60148 CSAH 28
Litchfield, MN 55355
Attention: Jeffery Huston
E-mail: jeff@3dmoney.com


with a copy (which shall not constitute notice) to:

Carpenter, Hazlewood, Delgado & Bolen, LLP
1400 E. Southern Avenue, Suite 400
Tempe, Arizona 85282
Attention: Chad P. Miesen, Esq.
E-mail: chad@carpenterhazlewood.com

<u>If to Lender</u>, then to:

Prime Commercial Lending
66 South Pearl Street 10th floor
Albany, NY 12207
Attention: Kris D. Roglieri
E-mail: kris@primecommerciallending.com

with a copy (which shall not constitute notice) to:

Prime Commercial Lending
66 South Pearl Street 10th floor
Albany, NY 12207
Attention: Greg Caito, Esq.
E-mail: gcaito@primecommerciallending.com

     5. <u>Termination</u>. This Agreement shall terminate when the entire Deposit Amount has been distributed in accordance with Section 5 of this Agreement.

     6. <u>Entire Agreement</u>. This Agreement constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

     7. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

**Borrower**:

1800 PARK AVENUE LLC,
a Minnesota limited liability company

By: _____

Name: Jeffery A. Huston

Title: President

**Lender**:

PRIME COMMERCIAL LENDING, LLC,
a Delaware limited liability company

By: _____

Name: Kris Roglieri

Title: CEO

## EXHIBIT A



### Wire Instructions

| | |
|---|---|
| **Bank:** | Key Bank |
| **Address:** | 127 Public Square |
| | Cleveland, OH 44114 |
| | |
| **Account Holder:** | Prime Commercial Lending, LLC |
| | |
| **Account #:** | ████2233 |
| **Routing #:** | ████████ |
| | |
| **SWIFT:** | KEYBUS33ALB |
| **IBAN:** | KEYBUS33 |



**HOME STATE BANK**

P E O P L E   Y O U   C A N   T A L K   T O.

## HSB INCOMING WIRING INSTRUCTIONS:
*Domestic Wires Only*

| | |
|---|---|
| **RECEIVING BANK:** *(Correspondent Bank)* | **UNITED BANKERS BANK** 1650 West 82nd St. Suite 1500 Bloomington, MN 55431 |
| **ROUTING NUMBER:** | ██████████ |
| **BENEFICIARY BANK:** | **HOME STATE BANK** WILLMAR, MN UBB# 2501015 |
| **FURTHER CREDIT:** | (HSB customer name) HFMG |
| **ACCOUNT NUMBER:** | (HSB customer acct. number) ████9072 |

**Questions?**
**Contact Home State Bank Operations Department**
*320-231-1118*
*Operations@hsbofmn.com*

| **Willmar** | **Hutchinson** | **Litchfield** | **Cosmos** |
|---|---|---|---|
| PO Box 1620 1610 E. Hwy 12 Willmar, MN 56201 *320-231-1118* | 745 Hwy 7 West Hutchinson, MN 55350 *320-234-9988* | 1435 E. Hwy 12 Litchfield, MN 55355 *320-593-2001* | PO Box 217 200 Milky Way Street S. Cosmos, MN 56228 *320-877-7211* |