

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

January 17, 2024

**Via ECF**

Honorable Christian F. Hummel
United States Magistrate Judge
United States District Court
Northern District of New York
445 Broadway, Suite 330
Albany, NY 12207

Re:   *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC,* 24-cv-00055

Dear Judge Hummel:

This firm represents Defendant Prime Capital Ventures, LLC ("Prime Capital") in the above action and, pursuant to Local Rule 37.1 and Rules 26(c) and 45(d) of the Federal Rules of Civil Procedure (the "Federal Rules"), we write regarding an urgent discovery dispute that has arisen and requires immediate attention.

Prior to sending this letter, we engaged in a "meet and confer" Zoom call this morning with counsel for Plaintiff Compass-Charlotte 1031, LCC ("Plaintiff"), but it was fruitless.  Counsel for Plaintiff declined to commit to withdraw the portions of the subpoenas discussed below.

At the outset, we note the unusual posture of this case.  Plaintiff obtained an *ex parte* Order to Show Cause (the "Order") on January 12, 2024 in which the Court appointed an interim receiver and allowed Plaintiff to seek expedited interim discovery.  (ECF #8.)  On January 16, 2024, Prime Capital moved to vacate the interim relief.  It also moved to dismiss the action and compel arbitration on the grounds that Plaintiff's claims arise out of a contract between Prime Capital and Plaintiff that contains an express and expansive arbitration provision requiring the parties to arbitrate any dispute between them.  (*See* ECF #12.)  That motion is currently *sub judice*.

It is Prime Capital's position that any discovery relating to Plaintiff's claims against Prime Capital should take place in the arbitration; the arbitration provision has discovery limitations to which the parties agreed, but Plaintiff is blatantly disregarding them.  However, given the expedited discovery that Judge D'Agostino ordered and the fact that Plaintiff has served numerous subpoenas with return dates of tomorrow and Friday, January 19, 2024, Prime Capital is forced to bring the serious deficiencies in the subpoenas to the Court's attention now rather than waiting for an order on the motion to dismiss and compel arbitration.  Prime reserves, and expressly does not waive, all rights under the parties' arbitration agreement.

January 17, 2024

I. **Plaintiff Unleashes a Torrent of Subpoenas on Banks for Financial Information of Non-Party Entities and Individuals**

Beginning on Saturday at 10:00 pm (January 13, 2024), Plaintiffs started issuing subpoenas and, as of last count, it had sent out at least 13 subpoenas. Our focus in this letter—while reserving rights to move against any other subpoenas—is on the eight subpoenas that Plaintiff sent to the following banks: Farmers State Bank, KeyBank, CitiBank, "RBC Clearing & Custody," Royal Bank of Canada, Flagstar Bank, RBC Capital Markets, and Royal Bank of Canada (revised). (*See* Ex. A, collectively attaching subpoenas.)

Each subpoena seeks the following documents for "each Relevant Party":

1. Copies of all monthly statements during the Relevant Time Period for each account in the name of a Relevant Party.

2. Copies of all opening documents for each account in the name of a Relevant Party (e.g., signature cards, account agreements, resolutions, copies of operating agreements, etc.).

3. Copies of all wire transfer forms (whether in-bound or out-bound) related to each account in the name of a Relevant Party during the Relevant Time Period.

4. For any loans or lines of credit associated with any Relevant Party, copies of all loan or line of credit documents during the Relevant Time Period, including any promissory notes, security instruments, pledge agreements, corporate resolutions, operating agreements, etc.

5. For any loans or lines of credit associated with any Relevant Party, a complete payment history on the loans or lines of credit.

6. For any loans or lines of credit associated with any Relevant Party, a complete draw history on the loans or lines of credit showing exactly to where any funds advanced on the loans or lines of credit were transferred, and the person or entity who requested the draw.

7. Any broker, financial advisor or similar agreements.

(*Id.*; emphasis in original.)

The "Relevant Time Period" is listed as June 1, 2021 to the present. (*Id.*) The term "Relevant Party" includes Defendants and their principals, but it also includes the following non-defendant entities and individuals: Prime Commercial Lending, LLC; The Finance Marketing Group; Commercial Capital Training Group, LLC; Commercial Capital Training Institute, LLC; National Alliance of Commercial Loan Brokers; Deal Maker; and FUPME, LLC (the "Non-Party Entities"), Kris Roglieri and Kimberly Humphrey (collectively, the "Non-Parties"). (*Id.*) Thus,

2

January 17, 2024

Plaintiff is seeking broad areas of detailed financial information for a two-and-a-half year period for seven entities and two individuals that have no connection to this action, which is solely between Plaintiff, Prime Capital and the Berone entities listed as Defendants.

## II.   The Subpoenas Should Be Quashed as to the Non-Parties

The only purpose that Plaintiff has in issuing the subpoenas demanding financial information regarding numerous Non-Parties is to gain leverage against Prime Capital in this litigation by harassing and intimidating the Non-Parties, each of which has a direct relation to Prime Capital and its sole member, Mr. Roglieri, and each of which has business dealings with Prime Capital.

The documents sought in the subpoenas are likely to reveal private, confidential, proprietary and business-sensitive information regarding transactions between or among Prime Capital and the Non-Parties (as well as other third parties), and Prime Capital has an interest in preventing the significant harm that it (and its business) would suffer through disclosure of those transactions. Specifically, the disclosure of financial information for the Non-Parties is likely to reveal the banking records and other financial information of Prime Capital with regard to transactions that have absolutely no relevance to the dispute between Plaintiff and Prime Capital.

This establishes standing for Prime Capital to move to quash:

> As is pertinent here, "it is well-established" that an individual or entity with a "real interest" in documents sought by a subpoena "has standing to raise objections to their production." *Solow v. Conseco, Inc.*, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008); *accord Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *5 (S.D.N.Y. Oct. 24, 2014) ("*Refco*"). Accordingly, "[c]ourts in this Circuit 'have found that individuals[ ] whose banking records are subpoenaed[ ] have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution.'" *Refco*, 2014 WL 5420225, at *4 (quoting *Arias-Zeballos v. Tan*, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007)). "Courts have also afforded the same protection to corporations ...." *Id.* (collecting cases).

*Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Investment Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023). Prime Capital's relevance arguments with respect to the financial information sought from Non-Parties similarly relate to Prime Capital's protected interest in its own financial information.

While the Non-Party Entities are mentioned in the Complaint (mostly just in passing), Plaintiffs make no allegations of wrongdoing by them (such as transfers in violation of law), and it does not assert that the Non-Party Entities share in any liability with Defendants.[1] Thus, there is no legitimate justification for seeking the financial records of the Non-Party Entities.

---

[1]   Even if there were an allegation that the Non-Party Entities are somehow liable for the actions of Prime Capital or a judgment against Prime Capital, Plaintiff also cannot seek discovery at this time to determine whether the Non-Party Entities could satisfy a judgment against them. *See generally*

January 17, 2024

The same is true for the requests seeking the financial information of Mr. Roglieri and Ms. Humphrey. While Mr. Roglieri is the sole member of Prime Capital, Plaintiff is seeking the financial records of the company and there is no allegation in the Complaint that the corporate protection should be pierced to obtain Mr. Roglieri's personal information. And, even if Plaintiff had made such an allegation, such discovery cannot be obtained until after there is a judgment.

The request in the subpoenas relating to Ms. Humphrey's financial information is even further afield. Plaintiff alleges that Ms. Humphrey lives in a home in Virginia Beach, Virginia purchased by Prime Capital (*see* ECF #1, 123, n. 11), but that allegation has nothing to do with any of the claims for relief in the Complaint and in no way justifies such an incredibly intrusive inquiry into her financial information. Once again, the production of documents would reveal financial information of Prime Capital that has no relevance to this case.

While the Order shortened the time in which Plaintiff could seek discovery, the other Federal Rules still apply with full force in this case. The Order states that, among other things, Plaintiff may take expedited discovery "pursuant to Rules 26, 30, 31, 33, 34, 36, and 45" of the Federal Rules. (ECF #8, 4.)

The request for financial records of the Non-Parties is an egregious violation of Rule 26(b)1) of the Federal Rules, which states that the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The subpoenas at issue here violate Rule 26(b)(1) because the requests relating to the financial information of the Non-Parties have no relevance whatsoever to the Plaintiff's claims. In similar cases, the courts have routinely quashed subpoenas. *See, e.g.*, *Saadi v. Maroun*, at *1, 2021 WL 8650785 (M.D. Fla. April 9, 2022) (quashing subpoena served on bank because it "sought irrelevant financial information of a non-party); *Pap-R-Prods. Co. v. studio503, LLC*, 2020 WL 406912, at *2 (S.D. Ill. Jan, 24, 2020) (quashing subpoena and noting that request for the financial information of a non-party was "not limited to the issues of this case"); *Patel v. Snapp*, 2013 WL 5876435, at *3 (D. Kan. Oct. 31, 2013) (stating that "none of the requested financial and personal information … appears relevant to plaintiff's claims against

---

*SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011) ("district courts across the country generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment ... on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.") (collecting cases). Here, the Non-Party Entities are not defendants, which underscores how improper the requests for financial information in the subpoenas are.

January 17, 2024

defendants"); *Russo v. Lopez*, 2012 WL 3860827, at *2 (D. Nev. Sept. 5, 2012) (quashing subpoenas "absent some evidence that the records are relevant to this litigation").

Under the circumstances, the subpoenas should be modified pursuant to Rules 26(c) and 45(d) of the Federal Rules to exclude the Non-Parties as a "Relevant Party."

Also, we learned this morning that at least two banks, KeyBank and Farmers State Bank, have already produced financial information for the Non-Parties to Plaintiff. We respectfully ask the Court to order that Plaintiff (a) must destroy those documents as they were obtained through improper subpoenas; and (b) cannot use the information in those documents for any purpose.

### III.     The Court Should Issue the Requested Protective Order Immediately Because Time Is of the Essence

Local Rule 37.1 states that the moving party must request a discovery conference prior to asking for relief, but there is no time for a conference in this case because Plaintiff is demanding compliance tomorrow and Friday. Also, as noted above, some subpoena recipients have already begun to produce documents. Given the urgency and the clear impropriety of Plaintiff's requests regarding the Non-Parties' financial information, Prime Capital requests that the Court enter a protective order pursuant to Rules 26(c) and 45(d) immediately (a) quashing the portions of the subpoenas seeking financial information relating to the Non-Parties; (b) ordering Plaintiff to return any documents that it has received regarding the Non-Parties' financial information; and (c) ordering that Plaintiff may not make use of any information obtained from such documents.

Respectfully submitted,

*/s/ Pieter Van Tol*

Pieter Van Tol
Partner
pieter.vantol@hoganlovells.com
D 1 212 909 0661

Enc.