

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

January 18, 2024

**Via ECF**

Honorable Christian F. Hummel
United States Magistrate Judge
United States District Court
Northern District of New York
445 Broadway
Albany, NY 12207

Re:   *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, 24-cv-00055

Dear Judge Hummel:

This firm represents Defendant Prime Capital Ventures, LLC ("Prime Capital") in the above action. We write regarding the January 17, 2024 letter (the "Opposition") from Plaintiff Compass-Charlotte 1031, LCC ("Plaintiff") in response to Prime Capital's letter of January 17, 2024 (the "January 17 Letter") requesting entry of a protective order.[1]

**I.      Prime Capital Has Shown It Has Standing to Quash Portions of the Subpoenas**

Plaintiff makes the curious claim that Prime Capital directed the Court to "a slew of out-of-circuit cases" on standing. (Opp'n, 1.) That is not true. In the January 17 Letter, we cited *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Investment Mgmt. Co.*, 650 F. Supp. 3d 199 (S.D.N.Y. 2023), on the standing issue and, *Silverstone*, in turn, cites four other cases from this Circuit. (Jan. 17 Letter, 3.) One of those cases, *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.,* 2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014), states that both individuals <u>and</u> corporations have an interest in their banking records "that gives them standing to move to quash a subpoena served on a non-party financial institution." *Id*. at 5. *Refco* itself cited the following cases, one of which is from this District: *Benistar Admin. Servs., Inc. v. United States,* 2011 WL 7267867 at *1 (N.D.N.Y. Dec. 13, 2011), *aff'd sub nom*. *Benistar Admin Servs., Inc. v. United States,* 2012 WL 96569 (N.D.N.Y. Jan. 12, 2012); *SEC v. Verdiramo,* 2013 WL 5882918 (S.D.N.Y. Oct. 29, 2013); and *Trump v. Hyatt Corp.,* 1994 WL 168021 (S.D.N.Y. Apr. 29, 1994). Thus, there is no basis for Plaintiff to claim that Prime Capital relies on out-of-circuit cases.

Plaintiff also asserts that Prime Capital has made only conclusory statements on standing and has not shown that the subpoenas seek confidential and commercially sensitive documents. (Opp'n, 2.) Again, that is not the case. The above case law establishes that, as a matter of law, bank records are protected information which give rise to standing. Moreover, there can be no doubt

---

[1]   Any capitalized terms not defined below shall have the same meaning as in the January 17 Letter.

January 18, 2024

that Prime Capital's bank records and other financial information are at risk of being disclosed because Plaintiff <u>admits</u> that such documents are exactly what it is seeking from the non-parties through the subpoenas. Thus, Prime Capital has shown that it has standing.

## II.     Plaintiff Does Not Meet the Relevance Standard

In trying to establish relevance, Plaintiff begin by relying on the antiquated standard for relevance from two cases that are dated 1978 and 1971, respectively. (Opp'n, 2.) The correct standard is from Fed. R. Civ. P. 26(b)(1), which requires that discovery requests relate to a party's "claim or defense." The challenged portions of the subpoenas fail that test.

Plaintiff does not cite a single <u>claim for relief</u> to which the financial information sought from the Non-Parties relates. Instead, Plaintiff refers to two isolated parts of the Complaint as justification. *First*, Plaintiff quotes from its preliminary statement (which is not a claim for relief) on the need for the appointment of a receiver. (Opp'n, 2.) The interim receiver, however, is already in place and Plaintiff does not need discovery to assist him. The interim receiver has his own power and ability to find the information that he needs. *Second*, Plaintiff quotes from an allegation in the Complaint that Mr. Roglieri used the ICA deposits for investments and to fund his lifestyle. (*Id.*) Tellingly, however, the Complaint does not seek any relief from Mr. Roglieri himself. Plaintiff, therefore, utterly fails to tie the challenged subpoenas to any claim for relief.

Rather than establishing relevance, Plaintiff admits that it is using the subpoenas as a fishing expedition that is not tied to its actual claims. Plaintiff asserts that it is conducting a general investigation, along with the interim receiver, into Prime Capital's assets and finances. (*See* Opp'n, 3.) That is the interim receiver's job, for as long as he is in that position. Plaintiff also purports to provide the Court with information on the status of its investigation, although it is far from over; both Plaintiff and the interim receiver were continuing to correspond with banks yesterday seeking additional information about the Berone defendants' financial records. In all, the subpoenas are based on mere speculation, untethered to any claims for relief, about what Plaintiff might find if it is permitted to obtained financial information from Non-Parties. Plaintiff, therefore, has not come close to meeting the relevance standard under Rule 26(b)(1).

Finally, in a classic example of mixing apples and oranges, Plaintiff cites to the Declaration of Jeffery Huston (the "Huston Declaration"), which relates to a separate dispute between Mr. Huston's company, 1800 Park Avenue LLC ("1800 Park"), and non-party Prime Commercial Lending, LLC ("PCL"). (Opp'n, 3.) As explained in the letter from Prime Capital's counsel filed with the Court on January 17, 2024 (*see* ECF #24), Prime Capital was only tangentially (and mistakenly) involved in the PCL-1800 Park transaction because 1800 Park sent a $5 million deposit to Prime Capital in error. That same day, Prime Capital sent the $5 million to PCL, the property party. That is evidence of a mistake, not an "intermingling of funds." (Opp'n, 3.)

## III.    Plaintiff's Reliance on the Parties' To-Be-Negotiated Confidentiality Agreement Does Not Solve the Deficiencies in the Subpoenas

Plaintiff claims that any concerns about the confidentiality of the information sought from Non-Parties can be addressed through a confidentiality agreement. That agreement would not cure

2

January 18, 2024

the patent irrelevance of the requests to the Non-Parties. Plaintiff's counsel, moreover, stated in the "meet and confer" call yesterday that they would challenge confidentiality designations.

And Prime Capital has good reason to be very suspicious of any promises by Plaintiff to maintain confidentiality. The Huston Declaration states that he had obtained the December 2023 bank statement for PCL's KeyBank account. (ECF #23, ¶ 23.) It stands to reason that Mr. Huston obtained the bank statement from Plaintiff, which subpoenaed KeyBank and received documents from the bank relating to PCL.[2] The Court, therefore, should not allow Plaintiff to evade the relevance standard by relying on the existence of a confidentiality agreement.

Accordingly, we respectfully request that the Court grant the protective order set forth in the January 17 Letter.

Respectfully submitted,

*/s/ Pieter Van Tol*

Pieter Van Tol
Partner
pieter.vantol@hoganlovells.com
D 1 212 909 0661

Enc.

---

[2] Prime Capital's counsel repeatedly asked counsel for Compass how Mr. Huston obtained PCL's banking records, but they have ignored those requests. It is also telling that Compass filed the Huston Declaration, not counsel for Mr. Huston, which further suggests that Compass provided the information to Mr. Huston. In the Opposition, Compass asserts that it "has agreed to treat bank accounts as confidential" until there is a formal confidentiality agreement (Opp'n, 4), but, if Compass in fact provided the PCL banking records to Mr. Huston, it is evident that Compass is not abiding by its agreement.