

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

January 18, 2024

**Via ECF**

Honorable Mae A. D'Agostino
United States District Judge
United States District Court
Northern District of New York
445 Broadway
Albany, NY 12207

Re:   *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et al.*, 24-cv-00055

Dear Judge D'Agostino:

On behalf of Defendant Prime Capital Ventures, LLC ("Prime Capital"), we write in response to Plaintiff's January 15, 2024 pre-motion letter requesting a pre-motion conference (ECF # 11) and asserting that Hogan Lovells US LLP ("Hogan Lovells") has a conflict because it represents Prime Capital in defending this case against Compass-Charlotte 1031 LLC ("Compass") while representing a different company (Camshaft CRD 1, LLC or "Camshaft") with a different claim against Prime Capital in a different jurisdiction.

Plaintiff's allegation has no merit because, in accordance with New York Rule of Professional Conduct 1.7(b)(4), Hogan Lovells obtained informed consents from both Camshaft and Prime Capital before undertaking to represent Prime Capital in this matter while also representing Camshaft against Prime Capital in the other matter in Florida.  Written evidence of consent is attached as **Exhibit A** and **Exhibit B** hereto.

Compass does not claim that it is or ever has been a client of Hogan Lovells.  While local case law permits parties in Compass' position to bring perceived conflicts to the attention of the Court, client duty-based disqualification claims always fail when the party seeking disqualification never was a client.  That is clearly stated in the "standing" cases Plaintiff cited in its letter.

> While defendants technically do have standing to make a disqualification motion, their motion is wholly untenable on the merits.  *SMI Industries*, the very case that is central to defendants' claim to standing, is ultimately fatal to their disqualification motion.  In *SMI Industries*, as here, the moving party claimed that even though it was not a former client of the law firm it sought to disqualify, it was entitled to enforce the former client's rights under Canon 4 since it had taken an assignment of certain intellectual property from the former client.  The court found this argument to be baseless:

January 18, 2024

> In the present case the court fails to see how the plaintiff's receipt of assets from [the former client] confers 'former client' status upon it within the meaning of Canon 4. No attorney-client relationship has ever existed between plaintiff and the [opposing firm] and therefore no potential violation of Canon 4 can occur in this case. Were this court to accept plaintiff's arguments it would open the courts to a deluge of spurious disqualification motions without advancing any of the policies which underlie Canon 4.

*Planning & Control, Inc. v. MTS Group, INC.*, 1992 WL 51569, at *3 (S.D.N.Y. March 11, 1992) (quoting *SMI Industries Canada Ltd. v. Caelter Industries, Inc.*, 586 F. Supp. 808, 815 (N.D.N.Y. 1984)).[1] There, as here, "[h]aving invoked *SMI Industries* in order to gain standing," plaintiff "cannot now ignore that court's holding in an effort to prevail on their motion." *Planning & Control, Inc.*, 1992 WL 51569, at *3.

Likewise unavailing is Plaintiff's contention that the perceived conflict is "unwaivable." The only thing that is unwaivable under New York Rule 1.7 is a representation the involves "the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." N.Y. Rule 1.7(b)(3). This case and the separate litigation between Prime Capital and Camshaft are not "the same litigation or other proceeding."[2] They are different cases with different plaintiffs in different forums and with factually different claims. There is no basis for disrupting Prime Capital and Camshaft's choice of counsel in their respective matters, especially given that each has consented to the representation of the other.

Finally, as this Court knows from its past experience:

> Since disqualification motions interfere with a party's right to counsel of its choice and are often made for tactical reasons, they are "viewed with disfavor," *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001) (citation omitted), and the party seeking disqualification must meet a "heavy burden of proof in order to prevail," *Gormin v. Hubregsen*, No. 08 Civ. 7674, 2009 WL 508269, *2 (S.D.N.Y. Feb. 27, 2009) (citation and internal quotation marks omitted). "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice*

---

[1] These cases were applying the former client conflicts provisions of the Code of Professional Responsibility, which was in effect in New York until 2009, when it was replaced by the Rules of Professional Conduct.

[2] The word "same" in this rule modifies both "litigation" and "other proceeding before a tribunal." The classic example of a non-litigation proceeding before a tribunal is arbitration. As comment [17] to New York Rule 1.7 explains, "[p]aragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal." Rule 1.0(w) defines "Tribunal" to mean "a court, an arbitrator in an arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity." Separate proceedings involving different parties are not the same.

January 18, 2024

*LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

*John Nagel Co. v. Goldin*, 2017 WL 4043936, at *9 (N.D.N.Y. Sept. 12, 2017) (Mae A. D'Agostino, US District Judge); *accord Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (the Second Circuit shows "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice" and "disqualification motions are often interposed for tactical reasons … [a]nd even when made in the best of faith ... inevitably cause delay.").

Plaintiff's letter is obviously a tactical maneuver intended to disrupt the orderly resolution of this case. The Court should shut it down promptly to avoid unnecessary delays and expenditures of resources by the parties and the Court.

Respectfully submitted,

*/s/ Pieter Van Tol*

Pieter Van Tol
Partner
pieter.vantol@hoganlovells.com
D 1 212 909 0661

Enc.