UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
COMPASS-CHARLOTTE 1031, LLC

                        Plaintiff,

        - against -                                    **Case No. 24-cv-55 (MAD/DJS)**

PRIME CAPITAL VENTURES, LLC, BERONE
CAPITAL FUND, LP, BERONE CAPITAL
PARTNER, LLC, BERONE CAPITAL LLC,
BERONE CAPITAL EQUITY FUND I, LP,
405 MOTORSPORTS LLC F/K/A BERONE
CAPITAL EQUITY PARTNERS, LLC,

                        Defendants.
-------------------------------------------------------------------

## **FIRST REPORT OF TEMPORARY RECEIVER**

To:    Hon. Mae D'Agostino, United States District Court Judge

        Paul A. Levine, Esq, Temporary Receiver (the "Receiver"), respectfully reports to the
Court as follows.

## **PRELIMINARY STATEMENT**

        1.      By order entered in the late afternoon on January 12, 2024, the Court appointed
the Receiver.  Doc No. 8.

        2.      As each day passes in this very serious case, the mounting evidence shows why a
receiver should remain in place.

        3.      Since nearly the minute of his appointment, the Receiver has been actively
engaged in the case which has involved, as will be detailed below, review of voluminous
documentation, the extensive docket in the case which has developed in less than a week, a
review of the docket in the related involuntary bankruptcy case, the nearly constant back and

forth between counsel for the parties, the Receiver and banks and other targets of numerous subpoenas and, literally, hundreds of emails including extensive responses to multiple subpoenas served by Plaintiff's counsel pursuant to the Court's order on a highly expedited basis.

4.     The Receiver is attempting, of course, to be as accurate as possible in this first report to the Court and any errors that may be contained are entirely unintentional.   It is the Receiver's purpose to provide the Court with an overview and the Receiver's impressions gathered from his initial work.

5.     This first report will detail the steps the receiver has taken in the holiday shortened week since his appointment.

6.     The report will also detail some preliminary information the Receiver has been able to obtain; information that in the Receiver's view that without question supports the continuation of his office.

### THE RECEIVER'S INITIAL WORK

7.     Immediately upon his appointment, the Receiver did the following in the late afternoon of Friday January 12th:

a.     Communicated with Plaintiff's attorneys who identified several banks that the Receiver should contact to freeze accounts.

b.     The Receiver did, in fact, contact via email the banks identified by Plaintiff's counsel late Friday on the eve of a holiday weekend.

c.     The Receiver also reviewed the Court's order to show cause, the complaint, the declaration and exhibits in support of the motion to appoint a receiver.

d.     Did internet research to learn more about the parties and individuals involved.

8.      Over the long holiday weekend, the Receiver continued to review materials and field numerous contacts from the parties.

9.      Indeed, on his way to visit family in Boston on Saturday the 13th, the receiver participated in a lengthy call with counsel for certain parties and otherwise continued to work on the case.

10.      On Sunday January 14th, the Receiver sent an email request to Prime's attorney for information and documents.  The email requested:

- The location and be given access to the paper files (to the extent they exist) of all defendants.
- The location and be given necessary passwords and other login information for the computer networks for all defendants.
- The name and contact information for any IT vendors.
- The name of any person with offsite computer access to the Defendants' computer networks.
- The name and contact information for any law firms who have represented the Defendants as well as any accountants, auditors and / or tax preparers.
- The lease to the premises.
- The identity and any necessary login information for all bank, brokerage and other financial accounts maintained by all defendants.
- Any lists of current payables, current accounts receivable and any other pressing obligations of any defendant.
- The most current financial statements for each defendant, whether externally or internally prepared, even if just from a program like Quick Books or manually prepared.
- The last filed tax returns for each defendant.
- All loan agreements or other agreements by and by and between any third party by which any defendant agreed to locate and obtain financing for any third party.
- All loan documents reflecting any loans owed by Defendants to any third parties.
- All agreements between the defendants.
- Titles to all real estate and any vehicles owned by the defendants including, but not limited to, the house in Virginia Beach.
- Copies of any lease agreements for the house in Virginia Beach.
- Mortgage and any other financing documents concerning the house in Virginia Beach.

- Tax bills, utility bills, insurance documents all concerning the house in Virginia Beach.
- Documents concerning any lawsuits or other non-court claims (i.e. arbitrations) being pursued by the defendants.
- With respect to your law firm and Cullen & Dykeman

  - A copy of your law firm's retainer agreement, and the retainer agreement with Cullen & Dykeman, with any defendant.
  - Evidence of the amount of retainer, if any, your law firm was paid and / or Cullen Dykeman was paid.
  - Evidence showing the source (i.e. bank or other financial account) from which any retainer was paid.
  - Subject to any privilege, but while reserving my right to assert that I can waive the privilege as receiver, any documents provided by the defendants to your law firm.
  - Please note that this request is made, in addition to the defendants, directly to your law firm.

- Documents evidencing current employees so I can identify who they are and what they do.
- Documents concerning payroll, employee benefits such as, but not limited to, health insurance, retirement plans, disability plans etc.

11.    The Receiver spent all of Monday the 15th in his office working on the case.

12.    The week of January 15, 2023 involved ongoing communications with the parties, a review of subpoenas being served by Plaintiff, interacting with representatives of the subpoenaed parties, fielding several inquiries from anxious parties concerning the disposition of millions of dollars they had entrusted to Prime, reviewing document production made by several banks and others, meeting with Prime's counsel and Mr. Roglieri, contacting Berone's principals, preparing this report and developing a strategy to recover monies and other assets of Prime improperly diverted from the company.

13.    As the Court is aware there have been substantial and numerous filings on the docket.  The Receiver has necessarily had to review these filings.

4

14.     The Receiver also was provided the closing files for the purchase of Prime's Virginia Beach house.  He is taking steps to encumber the title to that house in order to preserve it for possible liquidation.

## MEETING WITH MR. ROGLIERI AND COUNSEL

15.     On January 16, 2023, the Receiver met with Mr. Roglieri and Prime's counsel at its offices located at 66 South Pearl Street, Albany.

16.     Those offices also house Mr. Roglieri's other companies Prime Commercial Lending LLC, National Alliance of Commercial Loan Brokers, Commercial Capital Training Group and Finance Marketing Group.

17.     At the time of the Receiver's visit, several persons were undergoing training through the Commercial Capital Training Group.

18.     According to Mr. Roglieri, the lessee at the premises is Prime Commercial Lending LLC.

19.     He stated that Prime has no employees and its business associates are all independent contractors.

20.     When asked if he could access papers files for Prime at the offices, Mr. Roglieri stated that no such files existed at that location.

21.     When asked if he could access Prime's computer records from the 66 South Pearl Street offices, Mr. Roglieri, incredibly in the Receiver's judgment, stated that he could not.  He stated that if needed documents his lawyers would email them or Kimmy Humphries (who is at the Virginia Beach house described below and who Mr. Roglieri described as a business associate) would email the document.

22.     Mr. Roglieri stated that Prime has not filed any tax returns; even though its tax return for 2022 is beyond any allowable extension.

5

23.     He stated that the company has a new accountant, a Steve "Hutchington" in Virginia.

24.     As to bank accounts, Mr. Roglieri stated that the company has one account at RBC bank with $7,000,000 in it, one account at KeyBank with $1,500 in it, an account at Farmers State Bank with $27,000 in it and that its account at Citibank was closed.

25.     He stated that Prime had no brokerage accounts.

26.     As to the Berone entities, which he described as a hedge fund, Mr. Roglieri described the joint venture agreement which is docketed at Doc. No. 1-25. He stated that Prime had paid an initial "subscription fee" of $20,000,000.

27.     When asked for a copy of Prime's financial statement, Mr. Roglieri stated that he did not have access to one at the meeting but would provide one. It has not been provided to date.

28.     Indeed, none of the documents requested by the Receiver in his email to Prime's counsel sent on January 14, 2023 have been provided as of the date of this report.

### INITIAL FINDINGS AND FACTS REVEALED

29.     The report will identify for the Court certain issues that are of immediate concern to the Receiver.  The following is by no means a complete list and the Receiver anticipates as his investigation progresses, much more will be revealed.

### Berone

30.     This case was brought against Prime Capital Ventures, LL as well as Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP and 405 Motor Sports LLC f/k/a Beron Capital Equity Partners LLC (collectively "Berone").

31.     The Receiver was successful on Thursday January 18th in reaching Jeremiah Beguesse and Fabian Stone, Berone's principals.   Mr. Beguesse explained that he had just returned to Atlanta having been visiting his mother out of the country.

32.     Fair to say that Mr. Beguesse expressed shock and surprise that his entities are involved in this case in any fashion.

33.     He expressed to the Receiver that Prime Capital Ventures LLC is merely a client.

34.     When I explained to him that attached to the complaint in the case was a Joint Venture Agreement between "Berone Capital and Prime Capital Ventures, LLC" he said that it cannot be accurate as his company did not start doing business with Prime until October or November 2022 and that to do so would be a "conflict of interest" because Prime was a client.

35.     A copy of the Joint Venture Agreement is at Doc. No. 1-25.  The agreement is purportedly signed by Fabian Stone on behalf of Berone and Kris Roglieri on behalf of Prime.

36.     After we finished our call, I immediately sent Mr. Beguesse a copy of the agreement via email.

37.     He almost immediately replied and stated, in part,

> After review, I have not seen that document presented as Exhibit 25 - Joint Venture Agreement (JVA) with Prime Capital Ventures, LLC. Fabian can you please confirm that this document exist? [sic]
>
> Also, we have no knowledge or communications in reference to Compass-Charlotte 1031 LLC and Prime Capital Ventures, LLC dealings.

38.     Fabian Stone then replied and he stated, in part,

> That is correct, I have no knowledge of this document or any agreements made with Prime, outside of the client docs with us.

39. · As stated above, I met with Kris Roglieri and Prime's attorney Pieter Van Tol, Esq. on January 16th at Prime's offices. At that meeting, Mr. Roglieri told me that Prime had a Joint Venture Agreement with Berone.

40. This situation of course raises concerns as to whether the Joint Venture Agreement and the signatures thereon are genuine and who is telling the truth about the relationship between Berone and Prime.

41. I also asked Mr. Beguesse if he knew about the alleged $52 million that was represented to be housed at Berone as reflected on an account statement that Prime provided to Plaintiff that was allegedly from Berone for the month of December 2023. Doc No. 1, Complaint at ¶ 125 and Doc. No. 1-39. He stated Berone only had $7.2 million "under management."

42. As with the Joint Venture Agreement, this discrepancy raises very serious concerns regarding who, how and for what purposes the alleged account statement was provided and whether the statement is genuine.

43. A review of the Citibank account statements does not show that ICA deposits were wired to Berone.

44. · As the Receiver was finalizing this report this morning, he received an email from Mr. Beguesse which disputes much of what Mr. Roglieri has been representing about Berone's alleged role in these matters. He disputes:

    a. That Berone ever entered into the alleged Joint Venture Agreement attached at Doc. 1-25 to the complaint. He states it was "electronically forged."

    b. As importantly, he states that "Berone has never produced and/or provided the attached RBC statement reflecting the amount of $50+ million. The statement attached and produced as an exhibit was never provided to Prime

8

Capital Ventures LLC by Berone at any time as Berone has never been in possession of $50+ million-dollar transaction(s) with Prime. This information can and has been confirmed and verified by our Custodian.  Once again, Berone has never been privy to this document prior to January 18,2024.

A copy of the email is attached hereto as Exhibit "A."

### Alleged Misuse of Trust Funds

45.     Pursuant to a Deposit Agreement dated December 22, 2023, 1800 Park Avenue LLC wired $5,000,000 to Prime Commercial Lending, LLC ("PCL").  As set forth in the Declaration of Jeffrey Huston filed at Doc. No. 23, the funds were to be held in trust for later use in a loan transaction and were not to be encumbered in any fashion.  KeyBank records produced pursuant to a subpoena show the funds going into Prime Capital Venture LLC's account, then immediately were transferred over to PCL's account and were then dissipated and used for purposes in violation of the trust. These included the funding of retainers for two law firms which represented Prime in its involuntary bankruptcy case and one of which, Hogan Lovells, is counsel for Prime in this case (it received $400,000).  Other uses included $84,000 to "Wrist Afficiando" (a purveyor of luxury watches) and $101,000 to Xo Global, LLC, which arranges private airplane travel; more on this sort of use of funds is set forth below.

### Alleged Violation of Intercreditor Agreement

46.     The Receiver was contacted by SP Alpha Opportunity Fund, LLC ("SP") regarding an Intercreditor Agreement dated November 6, 2023 pursuant to which SP and another party would lend to CoNextions Medical Corporation (the "Borrower") a portion of an ICA deposit due under the Borrower's agreement with Prime.

47.     The Intercreditor Agreement expressly provides that Prime would not disburse any of the funds in the ICA until obligations owed SP and the other party were satisfied in full.

48.    According to SP's representatives who the Receive spoke to, SP has not been paid in full and it appears from statements received pursuant to Plaintiff's subpoenas to RBC Bank that the funds were in fact disbursed elsewhere.

### Alleged Misuse of ICA Deposits

49.    Under its business model, Prime was obligated to use ICA deposits for interest payments on loans to be made by Prime.  Doc. 1-39 §3.6.

50.  .  Through Plaintiff's subpoenas, the Receiver has received evidence that certain deposits made to Prime's Citibank account were not used exclusively for such purposes but, in fact, covered very significant overdrafts in the account and was used to refund deposits to other clients or for other improper purposes as follows:

- o  April 7, 2023 - 526 Murfreesboro wires in $4,312,500.  At the time that wire was received, the Citibank statement had a negative balance of ($4,094,514.75).

- o  April 27, 2023 - Compass-Charlotte wires in $15,902,250.  At the time that wire was received, the Citibank statement had a negative balance of ($6,525,669.33). In addition, $1,000,000 was used to pay RM Auctions, a seller of luxury automobiles (see below).

- o  5/24/2023 - Newlight Technologies wires in $2,500,000 as an ICA deposit.  On 5/25/2023, Truss Financial LLC is sent $6,500,000, leaving balance in account of only $751,385.21.

- o  Citibank May 2023 statement shows $7.5 million in an ICA deposit from CamShaft and $3.9 million being disbursed to repay $3.9 million to Truss Financial which had been suing Prime

- o  May 31, 2023 KeyBank Account XX2233 shows $10.6 million coming in from Piper Capital and same day wires with $3 million to Truss Financial and $2 million to Cmth Holdings

51.    A review of bank statements also shows hundreds of thousands of dollars being transferred from Prime to Mr. Roglieri's company Commercial Capital Trading Group.

52.     In addition, Prime's KeyBank statements shows hundreds of thousands of dollars going to a personal account owned by Kris and Tina Roglieri.

53.     It appears that Prime simply used the deposits for purposes not allowed under the parties' agreements.

### The House in Virginia Beach

54.     On January 5, 2023 Prime entered into a contract to purchase a luxury home located at 600 Linkhorn Drive, Virginia Beach, Virginia (https://www.rein.com/homes-for-sale/600-Linkhorn-DR-Virginia-Beach-VA-23451-338889174).     The contract price was $3,750,000.  The sale closed on or about January 31, 2023.

55.     At my meeting with Mr. Roglieri, he stated that the house was purchased as an investment and that there was no mortgage (i.e. it was purchased with cash).

56.     He stated that the taxes and insurance were paid current.

57.     The Receiver has been provided information showing that the taxes are, in fact, in arrears in the amount of $38,905.26.

58.     The Receiver has asked for proof of insurance but has not yet received that information.

59.     Mr. Roglieri state that Kimmy (a/k/a Kimberly) Humphry lives in the house and pays the utilities but does not pay rent or the insurance.

60.     He stated that Ms. Humphrey is a business associate working with Prime and the other related entities.

### Luxury Car and Watch Expenditures and Private Air Travel

61.     From a review of Citibank statements, it appears that Prime spent monies to transport an automobile in May 2023 and paid CFR Classic $35,251.   CFR transports automobiles.

62.   Later the same month, $125,000 was received into the Citibank account from Timepiece Trading LLC.  Time Piece Trading deals in luxury watches.

63.   The Citibank account also shows that on April 27, 2023, $1,000,000 was transferred to RM Auctions.   RM Auctions deals in classic and luxury auto sales (https://rmsothebys.com/en/auctions/az24?gclid=Cj0KCQiAtaOtBhCwARIsAN_x-3IxTxhHUBJeEx62-WfuPToU5YVck2LYsKM0syC5xTwsU6QMKWW8NCQaAsd1EALw_wcB).

64.   Prime's KeyBank account statements ending in account no. 2233 show the following:

- purchases from Wrist Afficionado for (i) $88,000 on February 14, 2023; (ii) $66,300 on January 18, 2023; and (iii) $95,810 on June 22, 2022.

- private air charters from XO Global including:

    o   October 12, 2023 - $100,628
    o   October 10, 2023 - $37,900
    o   September 22, 2023 - $151,000
    o   September 15, 2023 - $28,628
    o   August 15, 2023 - $42,818
    o   August 4, 2023 - $31,600

65.   The Receiver is also aware of a lawsuit involving FUPME, LLC as plaintiff (New York State Supreme Court, Albany County, Index No. 901648-23).  According to the complaint, Mr. Roglieri is its sole member and manager.  Doc. No. 1-36.

66.   The complaint alleges that FUPME paid a defendant in the lawsuit $2,344,440 for the balance (the initial down payment alleged to have been $850,600) of the purchase of a "Mercedes Hyper Car" and that the funds were wired to the account of a law firm hired by that party, Scott Oliver Law, LLC.  Doc. No. 1-36 at ¶6.  Prime's Citibank statement for December 2022 shows nearly this exact amount ($2,344,454) being paid to that firm.

67.     The point being that it appears that Mr. Roglieri, at a time when his company Prime is undertaking significant obligations to numerous parties in the many millions of dollars and is taking their monies for specific purposes to be using in connection the supposed loans, nevertheless used company funds to make personal purchases in the nature of luxury watches, exotic automobiles, luxury travel by private plane and the purchase of a luxury home.

### Conclusion

68.     The Receiver is aware that Prime has moved to dismiss the case as to it, citing to an arbitration provision in its contract with Plaintiff. The Receiver of course defers to the Court's judgment on such matters.

69.     However, based on more than 28 years continuous service as bankruptcy trustee, numerous prior receivership appointments and more than 34 years as a creditors' attorney and commercial litigator the Receiver is convinced that this case cries out for a fulsome and immediate investigation and that there are substantial monies that can be recovered for later distribution as the Court may determine.

70.     While the Receiver is reasonably certain that accounts that have been identified have been frozen, he is not at all certain that other accounts do not exist.

71.     Should he remain in his position, it is the Receiver's intent to hire a forensic accountant to fully review and investigate the various bank accounts and hundreds of transfers at issue, in order to trace funds an identify potential avenues of recovery.

72.     Delay may allow assets to be concealed and / or dissipated.

73.     Indeed, in only a week's time, significant evidence of misuse of client monies, misuse of corporate funds and other misconduct has come to light.

74.    This case cries out for the relief which the Court has granted, an independent receiver to follow the facts wherever they may lead, to parties and nonparties, to safeguard and recover assets and monies while the case in chief is being litigated.

75.    The Receiver strongly urges the Court to not vacate its order appointing the Receiver.

76.    Further, should I remain in place, I ask that the Court expressly confirm that I have full management authority over each entity and that my authority include holding the attorney client privilege such that I may be provided full access to attorney client communications between the defendants and their law firms to better discharge my duties.

WHEREFORE it is respectfully requested that the Court consider this report in determining the pending matters before it and grant such other and further relief as is just, necessary and proper.

Dated: January 19, 2024

Respectfully submitted,

/s/Paul A. Levine
Paul A. Levine, Esq.
RECEIVER
LEMERY GREISLER LLC
Office and P.O. Address
677 Broadway, 8th Floor
Albany, New York 12207
Ph:  (518) 433-8800
Fax:  (518) 433-8823

plevine@lemerygreisler.com

# EXHIBIT "A"

**Paul Levine**

| | |
|---|---|
| **From:** | Jeremiah Beguesse <jeremiah@beronecapital.com> |
| **Sent:** | Friday, January 19, 2024 10:35 AM |
| **To:** | Esser, Will; Fabian Stone; Paul Levine |
| **Cc:** | Fenlon, Christopher V. |
| **Subject:** | Re: Receiver Appointed Over Prime Capital Ventures LLC and Berone Capital Fund LP and other Berone Entities |

All,

After reviewing the overwhelming amount of information and documents, Berone Capital LLC, its members, affiliates and any of our entities (hereinafter referred to as Berone) state the following:

Firstly, Berone has never drafted, reviewed, agreed, produced and/or executed a Joint Venture Agreement and/or any managing member agreement with Prime Capital Ventures LLC at any time.  Berone has no knowledge that such document was produced and/or circulated by Prime Capital Ventures LLC to any party indicating such joint venture/managing member agreement.  Berone has never been made privy to this document/agreement prior to January 18,2024 via this email and exhibit 25. Please note, the document produced is electronically forged and has no authority and/or validity as Berone does not have any joint venture and/or managing member agreement with Prime and/or any other entities to that matter since Berone incorporation in August 2021.

Based on the information provided, as of January 18, 2024 ,all parties in this matter which to include Court Appointed receiver Paul Levine, Plaintiff and its counsel Will Esser, Christopher Fenlon have been made aware that Berone  has not and do not have such joint venture/managing member agreement with Prime. Yet with such knowledge, Plaintiff continues to file subpoenas with the Court to include Berone on matters and/or entities that Berone has and does not have a relationship with and/or can provide documentation re: Berone. Based on the bogus assumptions and false presumptions stated in the Verified Complaint claiming that Berone has engaged and/or is currently engaging as an active party in fraudulent activities with Prime and/or any of Prime's clients are knowingly false and have caused great damage to Berone, its reputation, incurring business and punitive damages.

Secondly, Berone has never produced and/or provided the attached RBC statement reflecting the amount of $50+ million. The statement attached and produced as an exhibit was never provided to Prime Capital Ventures LLC by Berone at any time as Berone has never been in possession of $50+ million-dollar transaction(s) with Prime. This information can and **has** been confirmed and verified by our Custodian.  Once again, Berone has never been privy to this document prior to January 18,2024.

At this time, Berone respectfully request that receiver Paul Levine, Plaintiff and its counsel Will Esser, Christopher Fenlon confirm in writing that they have been made aware that the Joint Venture /managing member agreement being used to induce the courts to give jurisdiction over Berone is fraudulent. With such knowledge and proof presented to Counsel and its obligation to present it to the Court, Plaintiff and the Courts should voluntarily dismiss Berone and its affiliates as named Defendants and/or party to this and/or any other matters pertaining to Prime Capital Venture LLC, its entities and/or members.

Thank you for your attention to this matter.



**Jeremiah Beguesse**

**Founder | Chief Investment Officer**

**Office : (678) 619-1982**
**Email  :** jeremiah@beronecapital.com

Neither Berone Capital LLC nor any of its affiliates (collectively, "Berone Capital") is responsible for any recommendation, solicitation, offer or agreement or any information about any transaction, customer account or account activity in this communication. Confidential or time-sensitive security-related communications should not be transmitted to Berone Capital LLC via the Internet as there can be no assurance that messages transmitted by electronic mail will not be corrupted, lost, deleted or modified. Berone Capital LLC reserves the right to refrain from processing or executing mail until verification of the information is obtained in another format acceptable to Berone Capital LLC.

This is not an offer to sell securities, which may be done only after proper delivery of a prospectus and client suitability is reviewed and determined.

This e-mail and attachment(s) may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this message is strictly prohibited. If received in error, please notify the sender immediately and delete/destroy the message and any copies thereof.

**From:** Esser, Will <willesser@parkerpoe.com>
**Sent:** Thursday, January 18, 2024 3:14 PM
**To:** Fabian Stone <stone@beronecapital.com>; Jeremiah Beguesse <jeremiah@beronecapital.com>; Paul Levine <plevine@lemerygreisler.com>
**Cc:** Fenlon, Christopher V. <cfenlon@hinckleyallen.com>
**Subject:** RE: Receiver Appointed Over Prime Capital Ventures LLC and Berone Capital Fund LP and other Berone Entities

Mr. Stone and Mr. Beguesse,

Prime Capital has alleged that you provided them with the attached RBC account statement showing that you were holding $52 million for them.  Do you have any response to that contention?

Will

**Will Esser**

Partner



620 South Tryon Street | Suite 800 | Charlotte, NC 28202

Office :  704.335.9507    | Fax :  704.334.4706    |   map

2

Visit our website at

www.parkerpoe.com

**From:** Fabian Stone <stone@beronecapital.com>
**Sent:** Thursday, January 18, 2024 3:04 PM
**To:** Jeremiah Beguesse <jeremiah@beronecapital.com>; Paul Levine <plevine@lemerygreisler.com>
**Cc:** Esser, Will <willesser@parkerpoe.com>; Fenlon, Christopher V. <cfenlon@hinckleyallen.com>;
pieter.vantol@hoganlovells.com
**Subject:** Re: Receiver Appointed Over Prime Capital Ventures LLC and Berone Capital Fund LP and other Berone Entities

***Caution: External email***

Hi Jeremiah and All,

That is correct, I have no knowledge of this document or any agreements made with Prime, outside of the client docs with us.

Thanks,

Fabian Stone

Get Outlook for iOS

**From:** Jeremiah Beguesse <jeremiah@beronecapital.com>
**Sent:** Thursday, January 18, 2024 4:01:51 PM
**To:** Paul Levine <plevine@lemerygreisler.com>; Fabian Stone <stone@beronecapital.com>
**Cc:** Esser, Will <willesser@parkerpoe.com>; Fenlon, Christopher V. <cfenlon@hinckleyallen.com>;
pieter.vantol@hoganlovells.com <pieter.vantol@hoganlovells.com>
**Subject:** RE: Receiver Appointed Over Prime Capital Ventures LLC and Berone Capital Fund LP and other Berone Entities

Paul,

Thank you for taking the time to return my call and sending these documents over. As of today we are all caught up to communications.

Per our conversation there are substantial questions we have concerning this case. To our knowledge, the last communication we confirmed receipt on was regarding a bankruptcy case re: our client Prime Capital Ventures. Our client then informed us that the case was dismissed.

After review, I have not seen that document presented as Exhibit 25 - Joint Venture Agreement(JVA) with Prime Capital Ventures, LLC. Fabian can you please confirm that this document exist?

Also, we have no knowledge or communications in reference to Compass-Charlotte 1031 LLC and Prime Capital Ventures, LLC dealings.
Please advise what is needed to remove us as defendants in this case.
Thank you for your attention to this matter.

3



**Jeremiah Beguesse**
Founder | Chief Investment Officer

**Office : (678) 619-1982**
**Email  :** jeremiah@beronecapital.com

Neither Berone Capital LLC nor any of its affiliates (collectively, "Berone Capital") is responsible for any recommendation, solicitation, offer or agreement or any information about any transaction, customer account or account activity in this communication. Confidential or time-sensitive security-related communications should not be transmitted to Berone Capital LLC via the Internet as there can be no assurance that messages transmitted by electronic mail will not be corrupted, lost, deleted or modified. Berone Capital LLC reserves the right to refrain from processing or executing mail until verification of the information is obtained in another format acceptable to Berone Capital LLC.

This is not an offer to sell securities, which may be done only after proper delivery of a prospectus and client suitability is reviewed and determined.

This e-mail and attachment(s) may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this message is strictly prohibited. If received in error, please notify the sender immediately and delete/destroy the message and any copies thereof.

**From:** Paul Levine <plevine@lemerygreisler.com>
**Sent:** Thursday, January 18, 2024 2:01 PM
**To:** Fabian Stone <stone@beronecapital.com>; Jeremiah Beguesse <jeremiah@beronecapital.com>
**Cc:** Esser, Will <willesser@parkerpoe.com>; Fenlon, Christopher V. <cfenlon@hinckleyallen.com>; pieter.vantol@hoganlovells.com
**Subject:** RE: Receiver Appointed Over Prime Capital Ventures LLC and Berone Capital Fund LP and other Berone Entities

Jeremiah:

As we discussed, here is the complaint in this case and other papers including the joint venture agreement of August 2022.  Please review and call me to discuss further.  Thank you.

Paul A. Levine, Esq.

Member
Lemery Greisler LLC
677 Broadway, 8th Floor
Albany, New York 12207
Tel: 518-433-8800
Direct Dial: 518-831-5924
Cell: 518-331-7445
Fax: 518-433-8823
PLevine@lemerygreisler.com
www.lemerygreisler.com

This message is intended for the exclusive use of the recipient and may contain privileged and confidential communications. If you are not the intended recipient, or a person responsible for delivering this message to the recipient, you are not authorized to read, copy, print, or transfer this message and any attachments.  If you inadvertently received this message, please notify us immediately by email and discard any paper copies and delete all electronic files of the message and any attachments.

Internal Revenue Service Circular 230 notice: Any discussion of a federal tax issue contained in this email, including attachments, is not intended to and cannot be used for the purpose of (i) avoiding penalties under federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters.

**From:** Paul Levine
**Sent:** Wednesday, January 17, 2024 4:02 PM
**To:** Stone@beronecapital.com; jeremiah@beronecapital.com
**Cc:** Esser, Will willesser@parkerpoe.com; Fenlon, Christopher V. cfenlon@hinckleyallen.com; pieter.vantol@hoganlovells.com
**Subject:** Receiver Appointed Over Prime Capital Ventures LLC and Berone Capital Fund LP and other Berone Entities

Messrs. Beguesse and Stone:

As you should know by now, I have been appointed receiver by the US District Court, Northern District of New York (Hon. M. D'Agostino) with regards to the entities listed below. Please see the attached order.

The Defendants are:
- PRIME CAPITAL VENTURES, LLC
- BERONE CAPITAL FUND, LP
- BERONE CAPITAL PARTNERS LLC
- BERONE CAPITAL LLC
- BERONE CAPITAL EQUITY FUND I, LP
- 405 MOTORSPORTS LLC f/k/a Berone Capital EquityPartners LLC

You should be aware that defendant Prime Capital Ventures LLC has made a motion to vacate the receivership order but, as of today, that request has not been granted and I remain as the Court appointed receiver.

You should read the order carefully. The Court has given me "exclusive dominion and control over the all of the assets, books and records, business operations and business affairs of Defendants" among other powers.

Please immediately confirm receipt of this email and contact me to discuss an orderly compliance with the Court's order.

Thank you.

Paul A. Levine, Esq.

Member
Lemery Greisler LLC
677 Broadway, 8th Floor
Albany, New York 12207
Tel: 518-433-8800
Direct Dial: 518-831-5924
Cell: 518-331-7445
Fax: 518-433-8823
PLevine@lemerygreisler.com
www.lemerygreisler.com

This message is intended for the exclusive use of the recipient and may contain privileged and confidential communications. If you are not the intended recipient, or a person responsible for delivering this message to the recipient, you are not authorized to read, copy, print, or transfer this message and any attachments. If you inadvertently received this message, please notify us immediately by email and discard any paper copies and delete all electronic files of the message and any attachments.

Internal Revenue Service Circular 230 notice: Any discussion of a federal tax issue contained in this email, including attachments, is not intended to and cannot be used for the purpose of (i) avoiding penalties under federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters.

This email has been scanned for spam and viruses. Click here to report this email as spam.
CAUTION: This email originated from outside of the Firm. Do not click links or open attachments unless you recognize the sender and have confirmed that the content is safe.