UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

COMPASS-CHARLOTTE 1031, LLC,

                          Plaintiff,

  -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity Partners LLC

                          Defendants.

Case No.: 24-cv-55

_____

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF EMERGENCY MOTION FOR APPOINTMENT OF A
RECEIVER AND FOR EXPEDITED DISCOVERY**

**PRELIMINARY STATEMENT**

Plaintiff Compass-Charlotte 1031 LLC ("Compass-Charlotte") submits this Reply in further support of its Emergency Motion for the Appointment of a Receiver and for Expedited Discovery, and pursuant to the Court's Order to Show Cause (Dkt. No. 8).[1]

To avoid further disclosure of what is likely just the tip of the iceberg of its wrongdoing, Defendant Prime Capital Ventures, LLC ("Prime") opposed the Emergency Motion and sought to vacate the receivership through its own emergency motion (Dkt. No. 12). In opposition, Prime principally raises two arguments: (1) the arbitration clause in the parties' agreement prohibits this Court from appointing a receiver; and (2) the grounds for a receiver are not met because Berone Capital Fund LLP ("Berone Capital") has an account for the benefit of Prime with approximately $52 million. Dkt. No. 12. Prime is wrong on both points. The arbitration agreement, applicable arbitral rules, and New York law all clearly support the Court's authority to grant provisional remedies in aid of arbitration, which includes a receivership. Despite this, Prime argues the Court does not have equitable authority to appoint a receiver and that such authority is somehow vested exclusively in an arbitrator. Prime points the Court to no valid support for its position.

Further, the past few days have confirmed just how critical the receiver appointment is in this action. The limited third-party discovery taken to date has revealed that Prime lied about key evidence in support of its arguments, used ICA[2] deposits from third parties seeking loans to pay other creditors, and that ICA deposits were used by Prime's agents to support their lavish lifestyles. Perhaps most significantly, recent information has disclosed that there is not $52 million

---

[1] The Letter Brief filed by Compass-Charlotte in response to Prime's emergency motion to (1) Vacate *Ex Parte* Order Regarding Interim Receiver and Expedited Discovery; (2) Dismiss Complaint; and (3) Compel Arbitration, Dkt. No. 17, was directed only to the interim relief sought in Prime's proposed order to show cause.

[2] Capitalized terms not defined herein shall have the same meaning as in Plaintiff's Memorandum of Law in Support of Emergency Motion for Appointment of a Receiver and for Expedited Discovery, Dkt. No. 6.

1

at Berone Capital for the benefit of Prime, and indeed, personnel from Berone Capital have stated the "account statement" previously offered by Prime is not in fact a Berone Capital account statement. Instead, the evidence reflects that Prime's business is a sham, which only reinforces Compass-Charlotte's need for provisional relief and Plaintiff's Emergency Motion should be granted in its entirety.

## ARGUMENT

I. **THIS COURT HAS THE AUTHORITY TO APPOINT A RECEIVER.**

Prime's argument that the arbitration agreement bars this Court's authority to appoint a receiver misconstrues the language of the arbitration agreement and misstates this Court's equitable authority to appoint a receiver.[3]

**A. The Compass-Prime Agreement's Arbitration Provision Expressly Vests this Court with Authority to Appoint a Receiver.**

First, Prime contends that the broad arbitration provision in the Compass-Prime Agreement "bars" this Court from appointing a receiver. Dkt. 12 at 14. Indeed, Prime goes so far as to assert that the arbitration agreement at issue dictates that "***the courts have no role in the parties' disputes***." Dkt. 21 at 1 (emphasis added). That argument ignores the plain language of the arbitration agreement. In the agreement the parties expressly carved out ***for the Court*** the authority to issue "provisional remedies." *See* Dkt. No. 1-29, Section 13.8 ("This clause shall not preclude

---

[3] In addition to opposing the appointment of the Receiver, Prime also moved to compel arbitration and dismiss the Complaint. That issue is not before the Court. Prime, moreover, lacks the authority to seek such relief. The Court's Order vests the Receiver, not the previous owners of Prime and its members, with the power and authority to assert claims, demands, and causes of action as well as to operate and manage Prime's business until further order of Court. Dkt. No. 8 at 2-3 ("The Receiver's authority hereunder shall be, and hereby is, vested in and extended to … (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based"). Nowhere in its motion does Prime state that the Receiver has authorized the filing of those motions or claims. Further, these provisions are in the Order to prevent Prime's assets from being further dissipated and taking positions that may not serve Prime's interest but rather the interests of third parties, such as Prime's owner. Indeed, it is unclear who is directing Prime's counsel. The Court's Order limited Prime to an opposition to the appointment of the receiver, which at this time, is the only issue before the Court.

Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction").

There is no doubt that the appointment of a receiver has long been recognized by the Second Circuit as a provisional remedy. *See Underground Electric Rys. Co. of London v. Owsley*, 176 F. 26, 34 (2d. Cir. 1909) ("The appointment of a receiver is not the ultimate end and object of litigation, but is a ***provisional remedy***") (emphasis added); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 1990 WL 117993, *1 (E.D.N.Y., S.D.N.Y. Aug. 6, 1990) ("provisional remedies include injunction and receivership"). Black's Law Dictionary includes prejudgment receivership in its definition of "provisional remedy." *See* Black's Law Dictionary (11th ed. 2019) ("provisional remedy" defined as "temporary remedy awarded before judgment and pending the action's disposition, such as a temporary restraining order, a preliminary injunction, ***a prejudgment receivership***, or an attachment. Such a remedy is intended to maintain the status quo by protecting a person's safety or preserving property.") (emphasis added).

Courts award provisional remedies (like the appointment of a receiver) to maintain the status quo, especially where the parties themselves expressly bargained for such relief. *See Wells Fargo Bank, N.A. v. Star Texas Gasoline & Oil Distributors, Inc.*, 2015 WL 419638, *3 (S.D. Tex. Jan. 29, 2015) (finding plaintiff stated claim for appointment of receiver where bargained-for arbitration clause provided for provisional remedies); *see also RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 230 (5th Cir. 1988) (stating "the First, Second, Fourth, and Seventh Circuits permit preliminary injunctions to maintain the status quo pending arbitrations," and enforcing bargained-for contractual language contemplating preserving the status quo).

Here, the arbitration clause bargained for by the parties in the Compass-Charlotte Agreement expressly preserves the right to seek provisional remedies from this Court, and clearly

3

reflects the parties' intent to maintain the status quo. Lest there be any doubt regarding the parties' intent to allow the Court to award provisional remedies the arbitration agreement also adopted the Judicial Arbitration and Mediation Services, Inc.'s ("JAMS") Comprehensive Arbitration Rules and Procedures.  Dkt. No. 1-29, Section 13.8.  The JAMS rules provide that an arbitration under JAMS "***shall not preclude Parties from seeking provisional remedies*** in aid of arbitration from a ***court of appropriate jurisdiction***."  (emphasis added).  This should end the inquiry.  The parties bargained for the right to seek provisional remedies in aid of arbitration, and the applicable arbitral rules provide for the same.

      The out-of-jurisdiction cases upon which Prime relies to the contrary are readily distinguishable and not persuasive.  In *Kattula v. Coinbase Global, Inc.*, 2023 WL 4373385 (N.D. Ga. July 6, 2023), the arbitration clauses at issue contained no language carving out provisional remedies like the Compass-Charlotte Agreement does.  *See Kattula v. Coinbase Global, Inc.*, Case No. 1:22-cv-3250 (N.D. Ga.), Dkt. No. 62 (*Kattula* Affidavit in Support of Motion to Compel Arbitration), Exs. 1-9.  That case also concerned defendant's alleged failure to safeguard certain user cryptocurrency accounts and timely respond to user support requests regarding such accounts. *Kattula*, 2023 WL 4373385, at *1.  No fraudulent scheme of any kind was alleged, except for defendant's apparent failure to *detect* fraud by not safeguarding accounts or fraudulently inducing plaintiffs to enter the arbitration agreement.  *Kattula*, Case No. 1:22-cv-3250, Dkt. No. 16 (*Kattula* First Amended Complaint) ¶¶ 116, 169.  Here, Compass-Charlotte seeks much more urgent relief, and has asserted allegations of serious fraud, necessitating the need for the immediate appointment of a receiver to prevent the dissipation of Defendants' assets.  Further, the court in *Kattula* did not reach the question raised by Prime:  whether the Court had the authority to appoint a receiver.

4

Likewise, in *Chase v. Check*, 158 F.R.D. 59, 65-66 (E.D. Pa. 1994), none of the arbitration provisions in the stock purchase or employment agreements carved out provisional remedies, and the Court expressly characterized the case as a "garden-variety business dispute." Again, in *Chase* the court did not assess the question whether it had the authority to appoint a receiver, and given the alleged facts in *Chase* a receiver appointment would not be warranted. As the facts in the Verified Complaint and those described below make clear, the dispute at issue here is anything but "garden-variety." The first report of the interim Receiver makes that evident. Dkt. No. 35 at ¶¶ 73-74 (noting that in just a week he had uncovered "significant evidence of misuse of client monies, misuse of corporate funds and other misconduct" and that an independent receiver is necessary "to safeguard and recover assets and monies while the case in chief is being litigated.").

Faced with this express language in the arbitration agreement, Prime tries to manufacture a distinction by suggesting that the phrase "in the aid of arbitration" in the agreement somehow precludes appointment of a receiver from the list of potential provisional remedies. Dkt. No. 21 at 1. Prime provides no legal support for this proposition. And none exists. On the contrary, courts have noted that appointment of a receiver prior to arbitration is appropriate to protect the legal rights of the parties to the arbitration, *i.e.*, in aid of the arbitration. *See Syphers v. Scardino*, 1985 WL 4283, *6 (E.D. Pa. Dec. 5, 1985); *Falcon Ventures LLC v. Haystack Ventures Int'l LLC.*, 2017 WL 6940538, *6 (C.D. Cal. July 24, 2017) (In deciding whether to appoint a receiver prior to arbitration noting that the "Ninth Circuit has long recognized the authority of district courts 'to issue equitable relief in aid of arbitration.'") (quoting *Toyo Tire Holdings of Am. Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010)).

Similarly, Prime contends that a Court-appointed receiver would not "aid" arbitration but would rather "interfere" in the arbitration because only the arbitrator has the authority to appoint

a receiver. Dkt. No. 21 at 1. Again, this position lacks any legal authority and is wrong. Prime's reliance on *Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 539-41 (S.D.N.Y. 2014) is inapposite. There the court merely affirmed that the arbitrator had authority to appoint a receiver – after the arbitration – to ensure enforcement of the award. *Id.* The decision does not stand for the proposition that only the arbitrator had authority to appoint a receiver. On the contrary, rather than hold that an arbitrator has the *exclusive* authority to appoint a receiver, *Stone* noted that "the FAA, the rules of the American Arbitration Association, and New York law do not specifically address whether arbitrators may appoint receivers." *Id.* at 539. Indeed, far from holding that the arbitrator has **exclusive** authority to appoint a receiver, the court in *Stone* stated that the defendant had a "colorable argument that New York law prohibits arbitrators from placing corporations into receivership" and that in *Stone* the "receiver" was in essence "more akin to a collection agent" than a receiver. *Id.* 540 & n.6. In any event, there is no doubt that this Court has the equitable authority to award such a provisional remedy notwithstanding the arbitration agreement. *See e.g., Wells Fargo Bank, N.A.*, 2015 WL 419638, *3 (S.D. Tex. Jan. 29, 2015); *Syphers*, 1985 WL 4283, *6 (E.D. Pa. Dec. 5, 1985).

**B. Controlling Law Permits this Court to Appoint a Receiver.**

Not only is this provisional remedy of a receivership expressly permitted under the parties' agreement and governing arbitration rules, they are also permitted by applicable case law. The Second Circuit has held that federal courts have both the jurisdiction and authority to grant provisional remedies in the context of pending arbitrations. *See General Mills, Inc. v. Champion Petfoods USA, Inc.*, 2020 WL 915824 (S.D.N.Y. Feb. 26, 2020) (analyzing Second Circuit case law); *Bahrain Telecommunications4 Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 180 (D. Conn. 2007) (same); *see also Borden v. Meiki Milk Products Co., Ltd.*, 919 F.2d 822, 826 (2d Cir. 1990) ("an arbitration clause does not deprive the promisee of the usual provisional remedies") (citing

6

*Murray Oil Products Co. v. Mitsui & Co.*, 146 F.2d 381 (2d Cir. 1944)).  This is the same outside of the Second Circuit.  *See Falcon Ventures LLC*, 2017 WL 6940538 at *6; *RGI Inc.*, 858 F.2d at 229 (First, Second, Fourth, and Seventh Circuits permit preliminary injunctions to maintain status quo pending arbitration).

Thus, whether under the plain language of the arbitration agreement, or under the JAMS rules, even if this Court were to find arbitration to be the appropriate venue for the ultimate dispute, this Court has authority to appoint a receiver as a provisional remedy in aid of such arbitration.[4]

## II. THE APPOINTMENT OF THE RECEIVER WAS NECESSARY AND APPROPRIATE TO PROTECT COMPASS-CHARLOTTE'S INTERESTS.

### A. The Order to Show Cause Was Not Issued *Ex Parte*.

Throughout its brief, Prime consistently refers to the Order to Show Cause as being issued "*ex parte*."  Consistent with its behavior to date, this allegation is false.  As Prime is aware, Compass-Charlotte's Complaint and supporting papers were served in accordance with and pursuant to Local Rule 7.1(e).[5]  *See* Dkt. No. 6-1, Ex. A.  That Local Rule states, in pertinent part: "the moving party must give reasonable advanced notice of the application for an Order to Show Cause to the other parties, except in those circumstances where the movant demonstrates, in a detailed and specific affidavit, good cause why reasonable advanced notice cannot be used." Local Rule 7.1(e).  The Order to Show Cause expressly notes that Compass-Charlotte "complied with Local Rule 7.1(e)," and the Complaint's supporting affidavit does not address a need for notice not to be given.  Dkt. No. 8 at p. 1.  Thus, Compass-Charlotte's Application for Order to Show

---

[4] Prime's push for this dispute to be moved to arbitration at this time misses the mark.  This Court clearly has the authority to appoint a receiver (and perhaps has the exclusive authority to appoint a receiver).  The appointment of the receiver is the only issue before the Court at this time.  Whether or not the merits of this dispute ultimately belong in arbitration does not impact the receivership decision.  Further, as long as the Receiver is appointed, ***only*** the receiver (and not Prime and its former counsel) has the right to direct the litigation and disposition of any claims, including any claims subject to an arbitration agreement.

[5] Indeed, Prime itself utilized this same Local Rule to give notice of their Opposition Motion.

Cause was issued with reasonable advanced notice. Merely because the Court issued the Order quickly after Compass-Charlotte's papers were filed does not, by itself, make the Order *ex parte*. Because the Order to Show Cause held Compass-Charlotte complied with Local Rule 7.1(e), Prime's assertions that the order was issued "*ex parte*," and thus heightened standards should apply to this Motion's disposition is incorrect. *See* Fenlon Decl. at ¶¶ 4-7.[6]

### B. The Limited Discovery Taken To Date Confirms The Receiver Should Remain In Place.

Compass-Charlotte has received limited discovery from parties who it subpoenaed pursuant to the Court's Order. The limited discovery taken to date confirms that the Emergency Motion should be granted and the Receiver should remain in place.[7]

In its Opposition, Prime's central argument against the appointment of a receiver is that there is over $52 million in an RBC Partnership account. *See* Dkt. No. 12 at 17-19, 22 (arguing the allegations of fraud "cannot be squared with the fact that the Berone Statement shows that Berone Capital Fund holds funds in the amount of over $52 million for Prime Capital"). In support of its argument, Prime attaches as Exhibit M to the Van Tol Declaration a December 1-26, 2023 account statement allegedly provided by Berone Capital which purports to show $52,364,000 in an RBC Capital Markets account in the name of "Berone Capital Fund LP" (the "Alleged RBC Statement"). *See* Dkt. No. 13-13. Discovery taken to date shows the Alleged RBC Statement account statement, whose provenance and authorship is unclear, is – without question – inaccurate.

On January 17, 2024, RBC Capital Markets, LLC ("RBC") produced account statements for the Partnership Account in the name of "Berone Capital Fund LP" (Account XX0011) (the

---

[6] "Fenlon Decl." refers to the Declaration of Christopher V. Fenlon, submitted herewith.

[7] As set forth in the Receivers First Report (Dkt. No. 35), Prime has not complied with the Receiver's requests for documents and information, as expressly required in the Order to Show Cause (Dkt. No. 8). *See* Dkt. No. 37, ¶ 28.

8

"RBC Partnership Account"). While the Alleged RBC Statement purports to show a balance in the account of over $52 million, the December 2023 account statement produced by RBC for the RBC Partnership Account shows a balance of just over $2 million. *See* Declaration of William L. Esser IV ("Esser Decl.") ¶¶ 6-7. In other words, there is no account for the primary benefit of Prime at Berone Capital with $52 million. *Id.* Indeed, Berone Capital itself has now indicated that there is no such balance, and never was any such balance. *See* Dkt. No. 37, ¶ 44, Ex. A. Other account statements produced by RBC show that millions have been wired into and out of the RBC Partnership Account in recent months, but from April 1, 2023 through December 31, 2023, the balance in the RBC Partnership Account was always below $3 million. Esser Decl. ¶ 10. Given this evidence, it is apparent that Prime must have known that it had never wired anything close to $52 million to Berone Capital.

Prime's defense that relies on a document that discovery has proven to be false, and which Prime itself should have known at the very least was highly dubious given that it had not wired ICA deposits anywhere near that amount demonstrates the need for the Emergency Motion to be granted. Indeed, conspicuously throughout their Opposition, Prime does not affirmatively state that is has an account at Berone with $52 million in it. But rather Prime states: "from Prime's perspective, there is written evidence from Berone Capital that Prime has the benefit of approximately $52 million." Dkt. No. 12 at 17. By this clever language Prime avoids acknowledging what it knows to be true – it does not have $52 million in an account for its benefit at Berone Capital.

Lest there be any doubt, Compass-Charlotte is not the only party who recognizes the need for a receiver to be appointed over Prime and Berone Capital LLC. In an action filed on January 16, 2024, in New York State Supreme Court, New York County, ER Tennessee LLC ("ER

9

Tennessee") seeks the return of tens of millions of dollars from Prime and Berone Capital LLC. *See ER Tennessee LLC v. Prime Capital Ventures LLC & Berone Capital LLC*, Index No.: 650231/2024 (N.Y. Sup. Ct., New York Cnty.). The facts alleged by ER Tennessee have a very similar fact pattern to this case, including that ER Tennessee provided $15 million to Prime for bridge financing on behalf of a borrower, Prime was supposed to hold the money in an ICA account at RBC, Prime transferred $7 million out of the account, and Prime never provided the financing. ER Tennessee moved by order to show cause to appoint a receiver and the motion has a return date of February 5, 2024. *See ER Tennessee LLC*, Index No.: 650231/2024, Doc. No. 24.

Compass-Charlotte's motion, along with the expedited discovery and report of the receiver conclusively show that a receiver is not only warranted, but necessary. Prime is been operating a Ponzi scheme. The receiver is vital to find the deposits, prevent Prime from further dissipating or secreting its assets, and maintain the status quo. Absent a receivership here, arbitration or any other dispute resolution is meaningless.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the relief sought in the Emergency Motion, and deny Defendant Prime's application for an order to show cause vacating the Order to Show Cause.

DATED:   January 19, 2024
         Albany, New York                    **HINCKLEY, ALLEN & SNYDER LLP**

                                    By:   */s/ Christopher V. Fenlon*
                                          Christopher V. Fenlon
                                          James L. Tuxbury (*pro hac vice*)
                                          Kieran T. Murphy
                                          30 South Pearl St., Suite 901
                                          Albany, NY 12207-3492
                                          T: 518-396-3100
                                          F: 518-396-3101
                                          E: cfenlon@hinckleyallen.com

10

              jtuxbury@hinckleyallen.com
              kmurphy@hinckleyallen.com

            **PARKER, POE, ADAMS & BERNSTEIN LLP**

By:  */s/ William L. Esser*
    William L. Esser, IV (*pro hac vice*)
    Eric H. Cottrell (*pro hac vice pending*)
    620 South Tyron St., Suite 800
    Charlotte, NC 28202
    T: 704-335-9507
    F: 704-334-4706
    E: willesser@parkerpoe.com
      ericcottrell@parkerpoe.com

      *Attorneys for Plaintiff*
      *Compass-Charlotte 1031, LLC*