**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COMPASS-CHARLOTTE 1031, LLC,**

                                        **Plaintiff,**

          **vs.**                                                **1:24-CV-55**
                                                                 **(MAD/CFH)**
**PRIME CAPITAL VENTURES, LLC,**
**BERONE CAPITAL FUND, LP, BERONE CAPITAL**
**PARTNERS LLC, BERONE CAPITAL LLC,**
**BERONE CAPITAL EQUITY FUND I, LP, and**
**405 MOTORSPORTS LLC,**

                                        **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **HINCKLEY, ALLEN & SNYDER LLP** | **CHRISTOPHER V. FENLON, ESQ.** |
| 30 South Pearl Street, Suite 901 | **KIERAN T. MURPHY, ESQ.** |
| Albany, New York 12207 | **JAMES L. TUXBURY, ESQ.** |
| Attorneys for Plaintiff | |
| | |
| **PARKER POE ADAMS &** | **WILL ESSER, ESQ.** |
| **BERNSTEIN LLP** | **ERIC H. COTTRELL, ESQ/** |
| 620 South Tyron Street, Suite 800 | |
| Charlotte, North Carolina 28202 | |
| Attorneys for Plaintiff | |
| | |
| **HOGAN LOVELLS US LLP** | **PIETER H.B. VAN TOL, III, ESQ.** |
| 390 Madison Avenue | |
| New York, New York 10017 | |
| Attorney for Defendant Prime Capital | |
| Ventures, LLC | |

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On January 12, 2024, Plaintiff Compass-Charlotte 1031, LLC ("Plaintiff") filed a complaint and an emergency motion seeking appointment of a receiver and expedited discovery. *See* Dkt. Nos. 1, 6. Plaintiff alleges a breach of contract claim against Defendant Prime Capital Ventures, LLC ("Prime Capital"), and fraud in the inducement, conversion, and unfair and deceptive trade practice claims against all Defendants. *See* Dkt. No. 1.

The Court ordered Defendants to show cause why the Court should not appoint a Receiver pursuant to Federal Rule of Civil Procedure 66 and authorize Plaintiff to take expedited discovery. *See* Dkt. No. 8. The Court appointed a temporary receiver, Paul Levine, Esq. of the law firm of Lemery Greisler, LLC, pending a hearing on Plaintiff's emergency motion. *See id.* On January 14, 2024, Attorney Pieter H.B. Van Tol, III of Hogan Lovells US LLP appeared on behalf of Prime Capital. *See* Dkt. No. 9. Prime Capital opposed the appointment of a receiver and the taking of expedited discovery. *See* Dkt. Nos. 12, 13, 43. Plaintiff replied. *See* Dkt. Nos. 17, 23, 40, 42, 45. A hearing on Plaintiff's emergency motion was held on January 22, 2024. During the hearing, counsel for Plaintiff and Prime Capital, as well as the Receiver, appeared. To date, no attorney has appeared for any other Defendant.

For the following reasons, Plaintiff's motion to appoint a permanent receiver and take expedited discovery is granted.[1]

## II. BACKGROUND

---

[1] Plaintiff has filed a pre-motion letter seeking to file a motion to disqualify Prime Capital's counsel due to a conflict of interest. *See* Dkt. No. 11. In its response to Plaintiff's emergency motion, which it labeled as an "emergency motion," Prime Capital argues that the complaint must be dismissed because of a binding arbitration agreement. Dkt. No. 12. Whether expedited discovery should be stayed during the pendency of those motions will be left to the discretion of the magistrate judge should the parties seek a stay. Also currently pending is a motion from Prime Capital to quash non-party subpoenas and enter a protective order, which will be decided by the magistrate judge. *See* Dkt. No. 25.

Plaintiff is a limited liability company with its principal place of business in Greenville, North Carolina. *See* Dkt. No. 1 at ¶ 11. Plaintiff is the owner and developer of a piece of commercial property in Charlotte, North Carolina. *See id.* at ¶ 118. Prime Capital is a limited liability corporation with its principal place of business in Albany, New York. *See id.* at ¶ 15. Prime Capital is a commercial financing and lending company that is registered as a Delaware LLC and not registered to do business in New York. *See id.* at ¶¶ 32-44. Plaintiff does not know "exactly who the members of Prime are." *Id.* at ¶ 16. However, it contends that "Berone Capital" is a Managing Member of Prime Capital according to a joint venture agreement, that "[t]here are a number of Berone Capital entities[,] and it is unclear whether one or all of them are the 'Managing Member' for Prime." *Id.* at ¶¶ 19-20. Berone Capital is an asset management firm formed by Jeremiah Beguesse and Fabian Stone. *See id.* at ¶¶ 46-47. Plaintiff alleges that although Berone Capital's website lists various offices, "none of the Berone Capital entities have ever had any actual physical business location or office." *Id.* at ¶¶ 60-61. Plaintiff references a case brought by Prime Capital against Reign Financial International, Inc. ("Reign") in which Prime Capital alleged that its sole member is Kris Roglieri. *See id.* at ¶ 17 (citing *Prime Capital Ventures, LLC v. Reign Financial International, Inc.*, Case No. 23-cv-207, Dkt. No. 1 at ¶ 2 (N.D.N.Y.)). Plaintiff contends that Kimberly Humphrey is the Executive Vice President of Prime. *See id.* at ¶ 123.

Beginning in March 2022, Prime Capital released commercials about successful million-dollar loans. *See id.* at ¶¶ 73-82. Plaintiff alleges that the advertisements were false and created "to induce unsuspecting victims to deposit funds with Prime on the basis that it was going to provide a loan." *Id.* at ¶¶ 83, 88-91. Plaintiff contends that "Roglieri and Prime took the money wired by borrowers and, instead of holding it in segregated interest accounts, used it for other purposes, including alternative investments and to fund Roglieri's flashy lifestyle." *Id.* at ¶ 102.

"Upon information and belief, Prime and Berone never made any loans or lines of credit available to anyone or, if they did, only made a few small loans and defaulted on providing the promised loans to most borrowers." *Id.* at ¶ 103.

In 2023, Plaintiff sought an $80 million loan to build a multi-family apartment building. *See id.* at ¶ 118. Prime Capital communicated to Plaintiff through a Commitment to Fund Letter that it would be able to fund a $70 million loan. *Id.* at ¶ 124. "Prime promised to fund $75,725,000 'via a non-recourse, asset-backed Line of Credit' with a term of 60 months and an interest rate of 7.5%." *Id.* at ¶ 124 (citation omitted). Plaintiff and Prime Capital entered into a Development Line of Credit agreement whereby Prime Capital agreed to loan Plaintiff $79,511,250. *See id.* at ¶ 126. The agreement was signed by Mr. Roglieri. *See id.* at ¶ 127. On April 27, 2023, Plaintiff wired Prime Capital $15,902,250 as an interest credit account ("ICA") payment. *Id.* at ¶ 130. The money was deposited into a Citi Bank account. *See id.* at ¶ 131. Prime Capital never advanced the agreed-upon loan. *See id.* at ¶ 135. After Plaintiff sought confirmation about the location of its deposit, Mr. Roglieri and Ms. Humphrey told Plaintiff that the money was being held at the Royal Bank of Canada ("RBC") with a hedge fund. *See id.* at ¶ 136. Plaintiff contends that Prime Capital has "admitted" that Plaintiff is entitled to the return of its deposit but has not produced the money. *Id.* at ¶ 137.

On December 19, 2023, Plaintiff and other creditors filed a Chapter 7 involuntary bankruptcy petition against Prime Capital. *See In re Prime Capital Ventures, LLC*, No. 23-11302, Dkt. No. 1 (Bankr. N.D.N.Y.). The creditors filed an emergency motion to appoint an interim trustee, which the bankruptcy court granted. *See id.*, Dkt. Nos. 4, 13.

Plaintiff alleges that during the bankruptcy proceedings, Prime Capital claimed that all of the creditors' deposits were held at RBC. *See* Dkt. No. 1 at ¶ 150. Prime Capital provided the

bankruptcy court with an RBC bank account statement which listed the account as holding over $52 million in the name of "Berone Capital Fund LP for the benefit of: Prime Capital Ventures, LLC" ("Berone Statement").  *Id.* at ¶ 152; *see also* Dkt. No. 1-39.  Plaintiff contends that the Berone Statement is false because the interim bankruptcy trustee communicated with RBC and although RBC acknowledged holding an account for Berone Capital, it was not held for the benefit of Prime Capital and did not contain $52 million.  *See id.* at ¶¶ 153, 160.  Similarly, the interim trustee reviewed a KeyBank account that Prime Capital purported held $2 million, but which only held $2,000.  *See id.* at ¶ 163.  The creditors moved to dismiss the action in bankruptcy court, Prime Capital consented, and the bankruptcy court granted the motion in part and retained jurisdiction over specific aspects of the case.  *See id.* at ¶ 164; *see also In re Prime Capital Ventures, LLC*, No. 23-11302, Dkt. No. 87 at 1-2 (retaining jurisdiction over "1. An application by the Alleged Debtor pursuant to Bankruptcy Code § 303(i) for costs, attorneys' fees and damages, including punitive damages; 2. The Alleged Debtor's application for a bond (Doc. 70); 3. The Interim Trustee's application to employ counsel (Doc. 18) together with compensation of counsel; 4. All matters pertaining to a $5,000,000 deposit into the Alleged Debtor's  KeyBank account no. xxxx2233; and 5. Bankruptcy Rule 2016(b) disclosures by the attorneys representing the Alleged Debtor in this case").  Plaintiff subsequently filed the present action.

On January 19, 2024, the Receiver filed his first status report.  *See* Dkt. No. 37.[2]  The Receiver met with Mr. Roglieri and Prime Capital's attorney, Mr. Van Tol, on January 16, 2023. *See id.* at ¶ 15.  Mr. Roglieri stated that access to Prime Capital's documents could be sought from Ms. Humphrey and that no files were kept at the physical office in Albany, New York.  *See id.* at ¶¶ 20-21.  Mr. Roglieri explained to the Receiver that Prime Capital has not filed any tax returns

---

[2] The Court has attached the Receiver's report to this Memorandum-Decision and Order.

and had retained a new accountant. *See id.* at ¶¶ 22-23. He also stated that Prime Capital had the following financial accounts: $7,000,000 with RBC, $1,500 with KeyBank, and $27,000 with Farmers State Bank. *See id.* at ¶ 24. Mr. Roglieri noted that Prime Capital's account with Citibank was closed. *See id.* He explained that his relationship with "the Berone entities" consisted of a joint venture agreement whereby Prime Capital "paid an initial 'subscription fee' of $20,000,000." *Id.* at ¶ 26. As of the hearing on January 22, 2024, the Receiver stated the documents that he requested from Prime Capital had not been provided. *See id.* at ¶ 28. Prime Capital's counsel stated that Prime Capital intended to fully comply with the requests.

On January 18, 2024, the Receiver e-mailed Messrs. Beguese and Stone, "Berone's principals." *Id.* at ¶ 31. They informed the Receiver that the joint venture agreement between Prime Capital and Berone was fake, and that Prime Capital was a "client" of Berone. *See id.* at ¶¶ 34-38. Mr. Beguese stated that Berone did not have $52 million, but only $7.2 million "under management." *Id.* at ¶ 41.

The Receiver asserted that based on financial records in Prime Capital's Citibank account, the funds "were not used exclusively for [intended] purposes but, in fact, covered very significant overdrafts in the account and was used to refund deposits to other clients or for other improper purposes" such as purchasing a multi-million-dollar house and luxury car and air travel. *Id.* at ¶¶ 50-66.

In its sur-reply, Prime Capital stated that the information learned by the Receiver reflected that Prime Capital had been defrauded and deceived by Berone. *See* Dkt. No. 43-1. Prime Capital argued that there was a lack of clear and convincing evidence that warranted appointing a receiver over it. *See id.* at 10-11.

During the hearing, Prime Capital explained that it entered into a joint venture agreement with Berone Capital Fund LP in 2022 and was not aware of the other named "Berone entities." Mr. Van Tol stated that Prime Capital would send money to Berone through an intermediary, Reign, and that $20 million was used to help secure the more than $15 million ICA payment from Plaintiff.  In its sur-reply, Prime Capital submitted "Account Statement[s]" from Berone Capital "for benefit if Prime Capital Ventures, LLC."  Dkt. No. 43-3 at 22; Dkt. No. 43-8 at 2.  The statements reflect a $20 million deposit.  *See id.*  Plaintiff's counsel argued that the $20 million related to other entities, Onward and Reign, and was irrelevant to its ICA payment.  Plaintiff's counsel also argued that the bank records indicate that the $52 million is nowhere to be found.

## III. DISCUSSION

### A.    Appointment of a Receiver

Plaintiff seeks the appointment of a receiver over Defendants to maintain the status quo of Defendants' assets, business, accounts etc.  *See* Dkt. No. 6.  Prime Capital argues that an arbitration provision in the credit agreement between Plaintiff and Prime Capital negates the Court's ability to appoint a receiver.  *See* Dkt. No. 12 at 15, 21.  The arbitration clause states that

> Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Albany County, New York, before one arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures or by ADR Services pursuant to its Arbitration Rules, at the election of the party initiating the arbitration.

Dkt. No. 1-29 at 29.  It also notes that "[t]his clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction."  *Id.*

Plaintiff first notes that the parties' arbitration agreement states that "[t]his clause shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.'"  Dkt. No. 17 at 2.  Plaintiff contends that appointment of a receiver is a provisional remedy that the Court can grant pending arbitration.  *See id.* at 2-3 (collecting cases). Additionally, Plaintiff states that the arbitration agreement is administered by "JAMS" and "Rule 24(e) of those JAMS arbitration rules states that '[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.'"  *Id.* at 2.

Prime Capital responds that the provisional remedies clause to the arbitration agreement is limited to those remedies which are "in aid of arbitration."  Dkt. No. 21 at 1.  Prime Capital argues that "a receivership would actually interfere with an arbitration, rather than aid it, because it would usurp the power of the arbitrator to fashion such remedies.  The courts have held that arbitrators have full power to order the appointment of a receiver."  *Id.*  Prime Capital does not respond to Plaintiff's reference to the JAMS or provisional remedy case law.  *See id.*  During the hearing, Prime Capital's counsel did not respond to Plaintiff's mention of the JAMS.

Prime Capital cites two cases as instructive: *Kattula v. Coinbase Global, Inc.*, No. 1:22-CV-3250, 2023 WL 4373385 (N.D. Ga. July 6, 2023) and *Chase v. Check*, 158 F.R.D. 59, 65-66 (E.D. Pa. 1994).[3]  *See* Dkt. No. 12 at 21.  Neither are persuasive.  In *Kattula*, the court granted the defendants' motion to compel arbitration "[b]ecause the [p]laintiffs and Coinbase [] effectively delegated the issue of arbitrability to the arbitrator and because neither the arbitration provisions nor the delegation clauses are unconscionable."  2023 WL 4373385, at *6.  The court then denied

---

[3] This case is only available online through LexisNexis.

the plaintiffs' motion to appoint a receiver as moot.  *See id.*  The court did not perform any

analysis on the receivership issue.

In *Chase*, the court considered the issue of "what extent [] a plaintiff who has executed an

arbitration agreement with some, but not all, of the defendants [may] be compelled to arbitrate

those claims against non-signatory defendants[.]"  *Chase*, 158 F.R.D. at 60.  The court concluded

that "all of [the various individual defendants in both actions] are agents of the Pennsylvania

corporations and partnerships and thus their disputes are subject to arbitration in accordance with

the arbitration agreements that cover those entities."  *Id.* at 64.  Thus, the court stayed the action

"pending arbitration of all claims."  *Id.*  The court did not mention the appointment of a receiver.

The Supreme Court has instructed that the Federal Arbitration Act "requires that [the

Court] interpret [a] contract as written.  When the parties' contract delegates the arbitrability

question to an arbitrator, a court may not override the contract.  In those circumstances, a court

possesses no power to decide the arbitrability issue."  *Henry Schein, Inc. v. Archer & White Sales,*

*Inc.*, 586 U.S. —, 139 S. Ct. 524, 529 (2019).  "To be sure, before referring a dispute to an

arbitrator, the court determines whether a valid arbitration agreement exists.  But if a valid

agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court

may not decide the arbitrability issue."  *Id.* at 530 (citing 9 U.S.C. § 2).  During the hearing, the

parties agreed that a binding arbitration clause exists between Plaintiff and Prime Capital.

However, the arbitration clause does "not preclude Parties from seeking provisional

remedies in aid of arbitration."  Dkt. No. 1-29 at 29.  As Plaintiff states, Black's Law Dictionary

defines "provisional remedy" as "[a] temporary remedy awarded before judgment and pending the

action's disposition, such as a temporary restraining order, a preliminary injunction, *a*

*prejudgment receivership*, or an attachment.  Such a remedy is intended to maintain the status quo

by protecting a person's safety or preserving property." Dkt. No. 17 at 2 (quoting Black's Law Dictionary (11th ed. 2019)).

"[C]ourts have historically entertained requests for provisional remedies during the pendency of arbitrations and have viewed the judicial consideration of such requests as consistent with, and not contrary to, the spirit of the Federal Arbitration Act and a party's right to submit a dispute to arbitrators and not courts." *Arnold Chase Fam., LLC v. UBS AG*, No. 3:08-CV-00581, 2008 WL 3089484, *3 (D. Conn. Aug. 4, 2008); *see also Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, No. 20-CV-181, 2020 WL 915824, *13 (S.D.N.Y. Feb. 26, 2020) (concluding that although the issue before the court was whether the arbiter would decide the merits of the underlying claims, the preliminary injunction would stand as a provisional remedy).

Numerous courts have concluded that deciding a motion for a preliminary injunction or appointment of a receiver is allowable despite the existence of an arbitration clause where the arbitration clause contains an exception for provisional remedies. *See Kihagi v. Umpqua Bank*, No. 19-CV-04284, 2019 WL 6175023, *4 (C.D. Cal. Aug. 15, 2019) (concluding that "[the d]efendant's actions in the receivership proceeding were by no means inconsistent with its right to arbitrate other disputes"); *Wells Fargo Bank, N.A. v. Star Texas Gasoline & Oil Distributors, Inc.*, No. 2:14-CV-453, 2015 WL 419638, *3 (S.D. Tex. Jan. 29, 2015) ("Determining whether the credit agreements strictly entitle Wells Fargo to appointment of a receiver pending arbitration injects this Court no further into the merits of the underlying loan"); *Ray v. Chafetz*, 236 F. Supp. 3d 66, 84 (D.D.C. 2017) (quoting *Kelleam v. Maryland Cas. Co. of Baltimore, Md.*, 312 U.S. 377, 381 (1941)) ("[T]he appointment of a receiver must be ancillary 'to some primary relief which is sought and which equity may appropriately grant.' In other words, a receivership 'is not an end in itself'"); *Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Const. Co.*, 598 F. Supp. 754, 758

(S.D.N.Y. 1984) (collecting cases) ("The fact that this dispute is to be arbitrated does not deprive the Court of its authority to provide provisional remedies").

Prime Capital argues that the arbitration clause in such cases does not limit the provisional remedies to being "in aid of arbitration" as the present clause does.  Dkt. No. 21 at 1.  Prime Capital cites *Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527 (S.D.N.Y. 2014) to support the contention that "[t]he courts have held that arbitrators have full power to order the appointment of a receiver." *Id.*  It is true that the *Stone* court concluded that the arbiter could appoint a receiver. *See Stone*, 64 F. Supp. 3d at 539-41.[4]  However, neither *Stone*, nor any other case presented by Prime Capital states that if there is an arbitration clause in place, a Court cannot appoint a receiver as a provisional remedy.

Also, contrary to Prime Capital's contention, appointment of a receiver would not hinder arbitration.  Rather, the purpose of the Receiver is to maintain the status quo of the parties and locate missing funds, which could allow an arbiter to fashion an appropriate remedy.  Thus, the Court concludes that the existence of the arbitration clause in the credit agreement does not negate the Court's authority to appoint a receiver.

Federal Rule of Civil Procedure 66 "govern[s] an action in which the appointment of a receiver is sought or a receiver sues or is sued." FED. R. CIV. P. 66.  "A '[r]eceiver acts only as an agent of th[e] [c]ourt, and his fiduciary duty is to act in the best interests of the receivership property,' not in the best interests of any other party." *KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, No. 1:19-CV-1562, 2020 WL 1157650, *2 (N.D.N.Y. Mar. 10, 2020) (quoting

---

[4] During the hearing, Plaintiff's counsel argued that *Stone* does not stand for the proposition that an arbiter can always appoint a receiver and that the facts in *Stone* are distinguishable from the present case.  As the Court is granting Plaintiff's request to appoint a receiver, the Court declines to address the extent of an arbiter's authority to do so.

*Lawsky v. Condor Capital Corp.*, No. 14-CV-2863, 2015 WL 4470332, *11 (S.D.N.Y. July 21, 2015)). "'[T]he appointment of a receiver is considered to be an extraordinary remedy,' and . . . should be employed cautiously and granted only when clearly necessary to protect [the] plaintiff's interest in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)) (additional quotation and quotation marks omitted). "[A] decision to appoint or not to appoint a receiver is committed to the sound discretion of the trial court." *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citing *Rosen*, 106 F.3d at 34). The following factors are considered in establishing the need for a receivership:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to [the] plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, [the] plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Id.* (quoting 12 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2983 (1999)).

Plaintiff argues that appointment of a receiver is warranted because it has sufficiently alleged a fraudulent scheme, Prime Capital is approaching insolvency, any harm to Prime Capital by the appointment of a receiver does not outweigh the harm that Plaintiff would suffer without such appointment, and that Plaintiff is likely to succeed on the merits of its breach of contract claims. *See* Dkt. No. 6.

Prime Capital argues that Plaintiff's fraud allegations lack any factual support because "the Berone Statement shows that Berone Capital Fund holds funds in the amount of over $52 million

for Prime Capital." Dkt. No. 12 at 25.  Prime Capital contends that Plaintiff has not shown that Prime Capital is moving towards insolvency because of the $52 million statement, and that Plaintiff has other available remedies such as arbitration.  *See id.* at 26-27.  Prime Capital states "[t]here is no harm to Compass because it may pursue remedies for damages.  By contrast, the harm to Prime Capital and its business, which is now controlled by an interim receiver, is evident and continuing."  *Id.* at 27.  Rather, it argues that the appointment of receiver impedes current and future business transactions.  *See id.* at 27-28.  Prime Capital asserts that Plaintiff cannot allege irreparable harm because Plaintiff seeks only monetary damages.  *See id.* at 28-29.  Finally, Prime Capital avers that "[a] receivership is not necessary to protect Compass' interests in this action. Compass seeks money damages and the Berone Statement shows that Berone Capital Fund holds $52 million for the benefit of Prime Capital."  *Id.* at 29.  During the hearing and in its sur-reply, Prime Capital argued that appointment of a receiver over Prime Capital is not appropriate because the evidence reveals that it is a victim of Berone's fraudulent conduct.  *See* Dkt. No. 43.

Prime Capital's initial defense to Plaintiff's request for a receiver was primarily sounded in the Berone statement.  *See* Dkt. No. 12.  Plaintiff alleges in its complaint that the interim bankruptcy trustee sought to verify the $52 million Berone statement which indicated that funds were held in RBC.  *See* Dkt. No. 1 at ¶¶ 152, 160.  The trustee "informed the Bankruptcy Court that while RBC did hold an account in the name of Berone Capital, that account was not held for the benefit of Prime and only held a miniscule amount of funds."  *Id.* at ¶ 160.  In response to Prime Capital's motion to quash non-party subpoenas, Plaintiff notes

> in response to a subpoena sent to the Royal Bank of Canada ("RBC") seeking information about Defendant Berone Capital LLP, RBC has provided account statements that confirm, contrary to Prime's representations: (1) Prime never wired $50 million to Berone; and (2) there is no (and never has been any) account at

> RBC associated with Berone Capital with $50 million in it for the
> benefit of Prime.  Whoever created the RBC account statement
> relied on by Prime, and whatever such statement is supposed to
> represent, the account was not held for benefit of Prime and never
> had $50 million in it.

Dkt. No. 30 at 3.  Plaintiff has submitted Citibank records which reflect Plaintiff's $15 million

ICA payment.  *See* Sealed Dkt. No. 45-1 at 14.  When the amount was deposited into Prime

Capital's account, the account had a negative balance.  *See id.*  Mr. Roglieri told the Receiver that

the Citibank account is now closed.  *See* Dkt. No. 37 at ¶ 24.  Mr. Roglieri also stated that Prime

Capital has three bank accounts, totaling $7,028,500.  *See id.*

Prime Capital argues that conclusory, unsupported allegations of fraud cannot support the

appointment of a receiver.  *See* Dkt. No. 12 at 26.  The Court agrees.  However, Plaintiff's

allegations are more than conclusory.  As explained in Plaintiff's filings and the Receiver's first

status report, the whereabouts of Plaintiff's $15 million (let alone the more than $52 million from

multiple entities) is unknown because it is not in RBC being held by Berone for the benefit of

Plaintiff, nor is it in the now-closed Citibank account.  *See* Dkt. Nos. 37, 40.  Although Prime

Capital contends that it was defrauded by Berone, it has not produced any records between Prime

Capital and Berone to corroborate such a statement.  *See* Dkt. No. 43.  The evidence leans in

Plaintiff's favor insofar as it indicates that the money has yet to be located and might continue to

be lost.[5]  Further, although it is true that Plaintiff has arbitration available to it as an alternative

---

[5] In its sur-reply, Prime Capital repeatedly notes that the evidence Plaintiff relies on was not
attached to Plaintiff's emergency motion and is based on hearsay.  *See* Dkt. No. 43-1.  Prime
Capital does not present an argument or case law that either fact matters to the Court's
consideration of the emergency motion.  Rather, "[t]he admissibility of hearsay under the Federal
Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage.  To hold
otherwise would be at odds with the summary nature of the remedy and would undermine the
ability of courts to provide timely provisional relief."  *Mullins v. City of New York*, 626 F.3d 47,
52 (2d Cir. 2010); *see also Chestnut Hill NY, Inc. v. City of Kingston*, No. 1:23-CV-01024, 2023
WL 6796622, *2 n.4 (N.D.N.Y. Oct. 13, 2023).

remedy, that does not outweigh each of the other factors that are in Plaintiff's favor. *See Varsames*, 96 F. Supp. 2d at 365.

Prime Capital's argument that Plaintiff will suffer no harm and Prime Capital will suffer harm to its business is disingenuous. Plaintiff is being harmed because it is missing over $15 million and the failure to appoint a receiver could result in that money never being returned if it still exists. Although Prime Capital might be prejudiced by the halting of current or future business deals, that harm does not outweigh the potential for Plaintiff to never see its money returned.

"It is true that courts generally do not find irreparable harm where money damages would be an adequate remedy." *Janvey v. Alguire*, No. 3:09-CV-724, 2010 WL 11619267, *7 (N.D. Tex. June 10, 2010) (citation omitted). "However, this rule does not inhere when 'any judgment ultimately obtained . . . would be unenforceable.'" *Id.* (quoting *Productos Carnic, S.A. v. Central Am. Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980)). "For example, 'when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate. . . .'" *Id.* (quoting *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496-97 (4th Cir. 1999)); *see Alpha Cap. Anstalt v. Shiftpixy*, Inc., 432 F. Supp. 3d 326, 340 (S.D.N.Y. 2020) (quotations and quotation marks omitted) ("[A] finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency. In order to utilize this exception to the general rule that a monetary injury does not constitute irreparable harm, however, a movant must show that the risk of insolvency is likely and imminent"); *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999)

(collecting cases) ("[C]ourts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents"); *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 Fed. Appx. 779, 781 (2d Cir. 2010) ("[W]e have held that a finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency").  Plaintiff has provided evidence that "the risk of insolvency is likely and imminent" because $52 million is not being held in RBC by Berone for the benefit of Prime Capital or in a Citibank account.  *Alpha Cap.*, 432 F. Supp. 3d at 340.  Thus, it is possible that a judgment in Plaintiff's favor would be inadequate.

Plaintiff is also likely to succeed on the merits.  "'To state a claim for breach of contract under New York law, the complaint must allege: [(1)] the formation of a contract between the parties; [(2)] performance by the plaintiff; [(3)] failure of defendant to perform; and [(4)] damages.'"  *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 237 (N.D.N.Y. 2021) (additional quotation marks omitted) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017)).  Neither party disputes the first two prongs.  To demonstrate a dispute about whether Prime Capital breached the contract, Prime Capital points the Court to a motion for judgment on the pleadings that it filed in the bankruptcy proceeding.  *See* Dkt. No. 12 at 29; *see also* Dkt. No. 13-6.  In that motion, Prime Capital argued that there is a dispute as to the amount of money owed to Compass and as to the liability against a different creditor, New Light.  *See* Dkt. No. 13-6 at 18-20.  There is no dispute as to liability between Prime Capital and Plaintiff. *See id.*  The dispute seems to be only the amount of damages that Plaintiff can recover.  *See id.* At this stage, Plaintiff has sufficiently established its likelihood of success on the merits, which supports appointment of a receiver.

As Prime Capital states, a court in the Southern District of New York has explained that "ordinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver." *Owens v. Gaffken & Barriger Fund LLC*, No. 08-CV-8414, 2009 WL 773517, *2 (S.D.N.Y. Mar. 24, 2009) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 312 (1999)); *see also Cottam v. Glob. Emerging Cap. Grp., LLC*, No. 16-CV-4584, 2017 WL 11667637, *3 (S.D.N.Y. Dec. 29, 2017) (declining to appoint receiver where party did not seek any equitable relief). The *Owens* court relies on *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999). *See Owens*, 2009 WL 773517, at *2; *see also* Dkt. No. 12 at 29.

In *Grupo*, the district court entered a preliminary injunction, enjoining debtors "from dissipating, disbursing, transferring, conveying, encumbering or otherwise distributing or affecting any [petitioner's] right to, interest in, title to or right to receive or retain, any of the [Notes]." *Grupo Mexicano*, 527 U.S. at 312-13. The Supreme Court explained that insofar as there is a fear of "debtors' trying to avoid paying their debts, or seeking to favor some creditors over others . . . [t]he law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." *Id.* at 322. The Supreme Court held that "[b]ecause such a remedy was historically unavailable from a court of equity, . . . the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id.* at 333.

As Prime Capital's attorney stated during the hearing, Plaintiff did not seek a preliminary injunction requiring that specific property remain unmoved. The Court is not issuing "a preliminary injunction preventing [Prime Capital] from disposing of [its] assets." *Grupo*

*Mexicano*, 527 U.S. at 333.  Rather, the Court is appointing a receiver to retain exclusive control over all of the Defendants' assets, should they exist, because Plaintiff has sufficiently evidenced fraudulent conduct, imminent danger of the property being lost, a probability of harm to Plaintiff by denial of the appointment, and probable success in the action.  *See Varsames*, 96 F. Supp. 2d at 365.

Prime Capital has not presented a case to the Court which states that under such circumstances, appointment of a receiver is inappropriate.  Insofar as Prime Capital now argues that it is a victim of Berone's fraud, such a contention supports the appointment of a receiver to help answer the million-dollar questions of whether Plaintiff's ICA payment still exists and where it is located.  Based on the foregoing, the Court grants Plaintiff's request for the appointment of a permanent receiver.

**B.     Receiver's Authority**

A receiver's "authority is wholly determined by the order of the appointing court." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988) (citation omitted).  The Second Circuit has "'expressed strong reservations as to the propriety of allowing a receiver to liquidate [an estate].'"  *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (quoting *Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965)).  "In addition, because receivership should not be used as an alternative to bankruptcy, [the Second Circuit has] disapproved of district courts using receivership as a means to process claim forms and set priorities among various classes of creditors." *Id.* (citing *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 437-38 (2d Cir. 1987)). "More fundamentally, the authority of a receiver is defined by the entity or entities in the receivership.  '[T]he plaintiff in his capacity of receiver has no greater rights or powers than the corporation itself would have.'"  *Id.* (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25

(1st Cir. 1990)).  "A receiver may commence lawsuits, but 'stands in the shoes of the corporation

and can assert only those claims which the corporation could have asserted.'"  *Id.* (quoting *Lank v.*

*N.Y. Stock Exch.*, 548 F.2d 61, 67 (2d Cir. 1977)).

"While a receiver must be impartial between parties, that impartiality does not extend to

[the] relationship with the receivership estate as receivers owe a fiduciary duty to the owners of

the property under [the receiver's] care[.]"  *Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-

CV-25046, 2020 WL 5819809, *2 (S.D. Fla. Sept. 30, 2020) (quoting *SEC v. Schooler*, No. 3:12-

CV-2164, 2015 WL 1510949, *3 (S.D. Cal. Mar. 4, 2015)).  The receiver "must protect and

preserve the receivership's assets for the benefit of the persons ultimately entitled to it."  *Id.*

(quotation omitted).  "As neutral officers of the court, receivers must avoid the appearance of

impropriety or partiality in their actions."  *Id.* (quoting *Schooler*, 2015 WL 1510949, at *3).

The Court concludes that the permanent Receiver shall have the following powers and

duties:

1. The Receiver shall have and retain and is hereby granted exclusive dominion and

control over all of the assets, books and records, operations and business affairs of

Defendants.

2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all

of Defendants' real property, equitable property, tangible and intangible personal property,

interest, or assets of any nature, wherever located.

3. The Receiver is authorized to take any and all actions the Receiver, in his sole

discretion, deems appropriate in order to ascertain the amount and location of Defendants'

assets.

4. The Receiver shall have the duties and responsibilities of a receiver under law, shall be

answerable and account to the Court for the Receiver's activities, and shall maintain a

detailed accounting of his activities, including without limitation, any and all funds

collected and used for any purpose.

5. The Receiver shall not be liable for any debts or liabilities of Defendants.

**C.     Expedited Discovery**

Plaintiff argues that expedited discovery is necessary to prevent irreparable harm by the

dissipation of funds.  *See* Dkt. No. 6 at 17-18.  Prime Capital argues that "[t]he prejudice to Prime

Capital is manifest because it would be engaging in discovery in a case that has no business being

before this Court in light of the parties' arbitration agreement."  Dkt. No. 12 at 30.  It also

contends that "Compass has not shown why it needs discovery on Prime Capital's assets when the

only evidence before the Court on the current record—as opposed to half-baked allegations in the

Complaint—is that there is over $52 million being held for the benefit of Prime Capital."  *Id.* at

31.

To determine whether expedited discovery is warranted, "[s]everal courts in [the

Southern] District have applied a four-part test derived from *Notaro v. Koch*, 95 F.R.D. 403, 405

(S.D.N.Y. 1982)," but "many recent cases reject *Notaro* and apply a more flexible 'good cause'

test."  *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (collecting cases).

"Courts may find that there is good cause when 'the need for expedited discovery, in consideration

of the administration of justice, outweighs the prejudice to the responding party.'"  *North Atlantic

Operating Co., Inc. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 367 (E.D.N.Y. 2013)

(quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).

> The *Notaro* test requires considering: "(1) irreparable injury, (2)
> some probability of success on the merits, (3) some connection
> between the expedited discovery and the avoidance of the

> irreparable injury, and (4) some evidence that the injury that will
> result without expedited discovery looms greater than the injury that
> the defendant will suffer if the expedited relief is granted."

*Id.* (quoting *Notaro*, 95 F.R.D. at 405).

As explained, based on Plaintiff's complaint and the evidence before the Court, Plaintiff's ICA deposit, which it is entitled to receive based on Prime Capital's alleged breach of contract, is missing. Plaintiff would likely succeed on the merits of its claims and expedited discovery might help avoid irreparable injury in the loss or disappearance of funds. Thus, the factors weigh in favor of expedited discovery. *See JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F. Supp. 2d 278, 282-83 (S.D.N.Y. 2009) (granting expedited discovery to "determine the location of any missing [] Collateral"); *Fed. Trade Comm'n v. Campbell Cap. LLC*, No. 18-CV-1163, 2018 WL 5776354, *1 (W.D.N.Y. Oct. 25, 2018) (appointing a receiver and ordering expedited discovery); *Superb Motors Inc. et al., v. Deo et al.*, No. 23-CV-6188, 2024 WL 198398, *5 (E.D.N.Y. Jan. 18, 2024) (quotation omitted) ("Expediting discovery at this juncture would prevent further financial ruin to [the p]laintiffs' business and avoid any possibility in which the Deo Defendants can 'sell or otherwise dispose of the cars without the apparent authority or right to do so.' Thus, to maintain the *status quo ante* and avert considerable harm to [the p]laintiffs' business, it is necessary that the parties engage in expedited discovery").

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submission and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to appoint a permanent receiver and seek expedited discovery (Dkt. No. 6) is **GRANTED**; and the Court further

**ORDERS** that Prime Capital's motion to vacate the Court's show cause order and temporary appointment of the receiver (Dkt. No. 12) is **DENIED**; and the Court further

**ORDERS** that Prime Capital's motion to file a sur-reply (Dkt. No. 43) is **GRANTED** and the sur-reply (Dkt. No. 43-1) has been accepted as filed, reviewed by the Court, and considered as part of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Paul Levine, Esq. of the law firm of Lemery Greisler, LLC, shall be appointed to serve as the permanent Receiver for Defendants; and the Court further

**ORDERS** that the Receiver shall have the following powers and duties:

1. The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants.

2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located.

3. The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets.

4. The Receiver shall have the duties and responsibilities of a receiver under law, shall be answerable and account to the Court for the Receiver's activities, and shall maintain a detailed accounting of his activities, including without limitation, any and all funds collected and used for any purpose.

5. The Receiver shall not be liable for any debts or liabilities of Defendants.

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules

**IT IS SO ORDERED.**

Dated: January 24, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge