UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                              Plaintiff,

  -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity Partners LLC

                              Defendants.

Case No.: 22-cv-55 (MAD/CFH)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISQUALIFY LAW FIRM HOGAN LOVELLS US LLP
AS DEFENDANT PRIME CAPITAL VENTURES, LLC'S COUNSEL**

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**RELEVANT FACTS** ................................................................................................................ 2

**STANDARD OF REVIEW** ...................................................................................................... 6

**ARGUMENT** ............................................................................................................................ 7

    I.    THE *PER SE* TEST APPLIES BECAUSE HOGAN LOVELLS CONCURRENTLY REPRESENTS PRIME AND CAMSHAFT. .................................................................................................................. 7

    II.    HOGAN LOVELLS CANNOT MEET THE HEAVY BURDEN OF AVOIDING DISQUALIFICATION… ....................................................................................................... 9

        A. It is Not "Obvious" That Hogan Lovells Can Adequately Represent Both Camshaft and Prime .................................................................................................................. 10

        B. The "Informed Consent" Received by Hogan Lovells is Inadequate ............................ 11

**CONCLUSION** ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Vill. of Keesville*,
  2008 WL 3413867 & n.9 (N.D.N.Y. Aug. 8, 2008) .................................................................. 7

*Akagi v. Turin Housing Dev. Fund Co., Inc.*,
  2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017) ........................................................................... 8

*Anderson v. Nassau Cnty. Dep't. of Corr.*
  376 F. Supp. 2d 294 (E.D.N.Y. 2005) .................................................................................... 11

*Bd. of Ed. of N.Y. City v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979) .................................................................................................. 7

*British Airways, PLC v. Port Auth. of N.Y. & N.J.*,
  862 F. Supp. 889 (E.D.N.Y. 1994) .......................................................................................... 8

*Cinema 5, Ltd. v. Cinerama, Inc.*,
  528 F.2d 1384 (2d Cir. 1976) .............................................................................................. 7, 8

*Discotrade Ltd. v. Wyeth-Ayerst Intern., Inc.*,
  200 F.Supp.2d 355 (S.D.N.Y.2002) ...................................................................................... 13

*Evans v. Artek Sys. Corp.*,
  715 F.2d 788 (2d Cir.1983) ..................................................................................................... 6

*Filippi v. Elmont Union Free School Dist. Bd. of Educ.*,
  722 F. Supp. 2d 295 (E.D.N.Y. 2010) ................................................................................... 12

*Fisons Corp. v. Atochem N. Am., Inc.*,
  1990 WL 180551 (S.D.N.Y. Nov. 14, 1990) ......................................................................... 10

*General Cigar Holdings, Inc. v. Altadis, S.A.*,
  144 F. Supp. 2d 1334 (S.D. Fla. 2001) .................................................................................. 10

*Gerffert Co., Inc. v. Dean*,
  2011 WL 683963 (E.D.N.Y. Feb. 16, 2011) ............................................................................ 8

*Glueck v. Jonathan Logan, Inc.*,
  653 F.2d 746 (2d Cir. 1981) .................................................................................................... 9

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*,
  618 F.3d 204 (2d Cir. 2010) ............................................................................................ 6, 8, 9

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) ............................................................................................ 6, 7, 8

*Hull v. Celanese Corp.*,
  513 F.2d 568 (2d. Cir. 1975) ................................................................................................... 6

*In re Vebeliunas*,
  231 B.R. 181 (Bankr. S.D.N.Y. 1999) ..................................................................................... 9

*Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.*,
  2015 WL 1062167 (S.D.N.Y. Mar. 9, 2015) ........................................................................... 6

*Merck Eprova AG v. ProThera, Inc.*,
  670 F. Supp. 2d 201 (S.D.N.Y. 2009) ..................................................................................... 6

*Pierce & Weiss, LLP v. Subrogation Partners, LLC*,
  701 F. Supp. 2d 245 (E.D.N.Y. 2010) ..................................................................................... 8

*Planning & Control, Inc. v MTS Group, Inc.*,
  1992 WL 51569 (S.D.N.Y. 1992) ............................................................................................... 7
*SMI Industries Canada Ltd. v. Caelter Industries, Inc.*,
  586 F. Supp. 808 (N.D.N.Y. 1984) ............................................................................................ 7
*U.S. v. Stein*,
  410 F. Supp. 2d 316 (S.D.N.Y. 2006) ...................................................................................... 13
*Unified Sewerage Agency of Wash. Cnty., Or. v. Jelco Inc.*,
  646 F.2d 1339 (9th Cir. 1981) ................................................................................................ 10

**PRELIMINARY STATEMENT**

This case concerns the uncovering of an apparent multi-state, multi-million dollar fraudulent scheme perpetrated by some or all of the Defendants, including Prime Capital Ventures, LLC ("Prime"), throughout at least the past two years. As set forth in the Verified Complaint (Dkt. No. 1), Compass-Charlotte 1031, LLC ("Plaintiff" or "Compass-Charlotte") is one of many plaintiffs who have sued Prime in various federal and state courts for Defendants' failure to return tens of millions of dollars in ICA[1] deposits that were wired by the plaintiffs as part of efforts to secure future lines of credit from Prime. Recent third-party discovery has uncovered that Prime never had the money capable of securing such lines of credit, did not maintain the ICA deposits, and has dissipated nearly all of the ICA deposits it received for the personal gain of its principal and others—including to purchase luxury cars, extravagant watches, beach-front homes, and to pay off older counterparties.

In the present lawsuit brought by Compass, Prime is represented by Hogan Lovells US LLP ("Hogan Lovells"). Hogan Lovells also currently represents Prime in an involuntary bankruptcy proceeding originally brought by Compass-Charlotte and two other Prime counterparties. However, Hogan Lovells also actively represents Camshaft CRE 1, LLC ("Camshaft") in a lawsuit ***against its client Prime***, entitled *Camshaft CRE 1, LLC v. Prime Capital Ventures, LLC*, 2023-023173-CA-01 (Cir. Ct., Miami-Dade Cnty., Fla.) (the "Camshaft Prime Lawsuit"). The Camshaft Prime Lawsuit was filed on September 15, 2023 (prior to the bankruptcy and present action) and describes the same facts and allegations of misconduct against Prime as found in the present Compass-Charlotte Verified Complaint.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Verified Complaint. Dkt. No. 1.

Hogan Lovells' concurrent representations of adverse parties (Camshaft and Prime) in related cases is a *per se* violation of the ABA and New York Rules of Professional Conduct and mandates disqualification. Hogan Lovells argues that there is no conflict because Camshaft shares Prime's interest in continuing Prime's business operations so Prime can pay off its debts to Camshaft. That, however, does not obviate the clear-cut conflict. Nor is Camshaft's "interest" that Prime continue its Ponzi scheme a legitimate basis to allow Hogan Lovells to continue its conflicted representation.

Hogan Lovells also claims it obtained written informed consent waivers from both clients that allows their conflicted representations. Again, Hogan Lovells is wrong. The so-called "informed consents" are not complete, and were not made prior to Hogan Lovells undertaking the conflicted representations. In other words, the vague, after-the-fact emails do not excuse Hogan Lovells' clear violation of the ABA and New York Rules of Professional Conduct. Disqualification is appropriate and necessary.

## RELEVANT FACTS

The following are the relevant facts regarding Hogan Lovells' conflicted representations in the various disputes at issue.

First, on September 15, 2023, Hogan Lovells, on behalf of its client Camshaft, filed the *Camshaft* complaint against Prime in Florida state court. *See* Tuxbury Decl. Ex. A.[2] The *Camshaft* complaint alleges ***virtually identical facts*** to those alleged by Compass-Charlotte in this case: Camshaft paid a $13,400,000 ICA deposit to Prime pursuant to a letter of credit agreement; Prime failed to provide a line of credit; Camshaft demanded return of its ICA deposit; and Prime failed

---

[2] "Tuxbury Decl." refers to the Declaration of James L. Tuxbury, and exhibits thereto, filed alongside this Motion.

2

to return a the ICA deposit to Camshaft.  *Id.*[3]  The Camshaft Prime Lawsuit sued for breach of contract and asked for specific performance, injunctive relief and an award of Hogan Lovells' attorneys' fees and costs.  *Id.*[4]  Prime failed to respond to the Camshaft Prime Lawsuit, thereby admitting the allegations of the complaint.

On December 19, 2023, Compass-Charlotte joined with other creditors seeking the return of their ICA deposits and filed an involuntary bankruptcy petition against Prime in this District's Bankruptcy Court.  *See In re Prime Capital Ventures, LLC*, 23-11302 (Bankr. N.D.N.Y.) (the "Prime Bankruptcy Case").  Prior to filing that action, counsel for Compass-Charlotte had contacted Camshaft's Hogan Lovells counsel on December 5, 2023 and asked if Camshaft wanted to join the involuntary bankruptcy petition.  Hogan Lovells, on behalf of Camshaft, said it would consider the request.  Hogan Lovells did not disclose that it would also be representing Prime in that proposed involuntary bankruptcy.  *See* Tuxbury Decl. Ex. B.

Compass-Charlotte filed the involuntary bankruptcy petition at 11:11 a.m. on December 19, 2023.  At 2:34 p.m. that day, counsel for Compass-Charlotte emailed Hogan Lovells a copy of the involuntary bankruptcy petition, as well as its Emergency Motion to Appoint an Interim Trustee over Prime.  *Id.*

At 6:49 p.m. on December 19, 2023 (***after*** receiving notice of the bankruptcy filing against Prime), Hogan Lovells filed a motion on behalf of Camshaft entitled "Plaintiff's Motion for Entry of Final Judgment" (the "Judgment Motion").  *See* Tuxbury Decl. Ex. C.  In the Judgment Motion, Hogan Lovells seeks:  (a) a final judgment against Prime in the amount of $12,400,000.00; (b) "a

---

[3] According to the *Camshaft* complaint, a $1,000,000 advance was returned, but the remaining $12,400,000 remains due and owing.  *Id.* ¶ 35.

[4] Hogan Lovells, on behalf Camshaft, did not file an arbitration, nor did Prime seek to move that litigation into arbitration.

3

final injunction in favor of Camshaft requiring specific performance from Prime to return the ICA Payment . . . within seven (7) calendar days of the issuance of this Final Judgment;" and (c) an attorneys' fee award of all of Hogan Lovells' attorneys' fees and costs incurred in suing Prime. That motion remains pending before the Miami-Dade court, as reflected on the docket on that court's online site. *See* Tuxbury Decl. Ex. D.

In the Prime Bankruptcy Case, the petitioning creditors' emergency motion to appoint an interim trustee was granted by the Bankruptcy Court on December 21, 2023. Prime Bankruptcy Case Doc. 13. Prime was represented at the hearing on that motion by counsel from Cullen and Dykman LLP. On Saturday December 30, 2023 at 4:33 p.m., Hogan Lovells filed a substitution of counsel in the Prime Bankruptcy Case, replacing Prime's former counsel and purporting to represent Prime. Within less than two hours (at 6:21 p.m. that evening), counsel for Compass-Charlotte immediately notified Hogan Lovells that a potential conflict of interest existed with respect to that substitution, given Hogan Lovells' existing representation of Camshaft in Florida. *See* Tuxbury Decl. Ex. E. Given the clear nature of the conflict, counsel stated: "I have to believe that this was an oversight in Hogan's conflicts system." Notwithstanding this notice, Hogan Lovells continues to represent Prime in the Prime Bankruptcy Case.

On January 7, 2024, faced with the multiple misstatements and misrepresentations by Prime directly to the Bankruptcy Court and to creditors, and the fact that the Bankruptcy Court lacked ability to more fully go after Defendant Berone Capital (which was not a debtor before it), the petitioning creditors filed a motion to dismiss the Prime Bankruptcy Case so that they could pursue recovery of their deposits in a different forum where they hoped to quickly try to track down what happened to the missing $50+ million in ICA deposits. *See* Prime Bankruptcy Case Doc. 74. That motion to dismiss was granted on January 9, 2024. *See* Prime Bankruptcy Case

4

Doc. 87. While that petition was dismissed, action continues before the bankruptcy court, and Hogan Lovells continues to represent Prime in that action.

The instant litigation followed, with the Verified Complaint filed on January 12, 2024. Dkt. No. 1. On January 14, 2024, Pieter Van Tol of Hogan Lovells filed a notice of appearance purporting to represent Prime in this matter. On January 15, 2024, Compass-Charlotte put this Court on notice of the potential conflict of interest that was originally raised in the Prime Bankruptcy Case a few weeks prior. Dkt. No. 11. In response, on January 18, 2024, Hogan Lovells stated that there is "no merit" to any ethical concerns because "Hogan Lovells obtained informed consents from both Camshaft and Prime Capital before undertaking to represent Prime Capital *in this matter* while also representing Camshaft against Prime Capital in the other matter in Florida." Dkt. No. 33 (emphasis added).

Camshaft's "informed consent" referred to in Hogan Lovells January 18, 2024 letter was a two-word e-mail from Camshaft dated December 29, 2023, referencing its apparent oral consent to the conflict regarding Hogan Lovells' representation of Prime in the *involuntary bankruptcy*. *Id*. Ex. A. The consent from Camshaft given does *not* pertain to the above-captioned litigation and does *not* disclose any facts giving rise to the conflict apparent in this case.

Hogan Lovells points to a similarly vague "informed consent" email dated January 17, 2024 (three days after Hogan Lovells made an appearance in this lawsuit), in which Prime allegedly consented to Hogan Lovells' concurrent representation of Camshaft in the Florida litigation. Dkt. No. 33, Exhibit B. Again, this informed consent merely references a prior oral communication, provides no further details about the conflict, and was only given *after* Compass-Charlotte made the Court aware of the conflict and *after* Prime took on the representation.

5

At the January 22 hearing on Compass-Charlotte's motion for emergency relief, this Court raised concerns about Hogan Lovells' conflicted representations and proposed the parties agree upon a schedule for a motion to disqualify. Following the hearing, counsel for Compass-Charlotte asked Hogan Lovells to voluntarily withdraw in light of the conflict. *See* Tuxbury Decl. Exs. F-G. To date, Hogan Lovells has refused to withdraw.

## **STANDARD OF REVIEW**

Disqualification is warranted where an attorney's conduct "taints" the underlying proceedings in any way. *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). When deciding motions to disqualify, courts "must balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Hempstead Video*, 409 F.3d at 132). Courts in the Second Circuit have "not hesitated to disqualify counsel when the circumstances warranted it," *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir.1983), and have held that "any doubt should be resolved in favor of disqualification." *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d. Cir. 1975)); *see also Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.*, 2015 WL 1062167, *7 (S.D.N.Y. Mar. 9, 2015) ("Court must resolve any doubts in favor of disqualification").[5]

---

[5] The fact that certain Hogan Lovells lawyers represent Camshaft in Florida and other Hogan Lovells lawyers represent Prime in New York is of no import. An individual lawyer's conduct is imputed to his firm based on the presumption that "associated attorneys share client confidences." *Hempstead Video*, 409 F.3d 127 at 133 (quotations omitted). Where one member of a law firm is required to decline employment or to withdraw from employment for ethical reasons, no partner, associate, or other lawyer affiliated with such law firm may accept or continue such employment. *See* N.Y. Rules Prof. Con. 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so.").

6

**ARGUMENT**

I. **THE *PER SE* TEST APPLIES BECAUSE HOGAN LOVELLS CONCURRENTLY REPRESENTS PRIME AND CAMSHAFT.**

Hogan Lovells is unquestionably engaged in a concurrent representation through its active representation of both Camshaft and Prime in the three pending litigations (Camshaft Prime Lawsuit, Prime Bankruptcy Case, and the instant litigation). That concurrent representation creates a major conflict of interest and Hogan Lovells lacks any legitimate excuse for those conflicted representations. Therefore, Hogan Lovells must be disqualified from acting in its capacity as Prime's counsel.[6]

With limited exceptions, disqualification of counsel has been ordered in two sets of cases: "(1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of [their] client;" "or [] (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving [their] present client an unfair advantage." *Bd. of Ed. of N.Y. City v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Where the ethical concern pertains to the first category—*i.e.*, conflicts of interest—"the standard for disqualification varies depending on whether the representation is concurrent or successive." *Hempstead Video*, 409 F.3d at 133. Concurrent representation refers to an attorney who simultaneously represents one existing client in a matter adverse to another existing client. *See, e.g.*, *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976). It also includes the simultaneous representation of clients in different, active

---

[6] Compass-Charlotte has standing to bring this Motion. This Court has recognized that a plaintiff has standing (and an affirmative ethical duty) to raise the disqualification of an attorney with which it does not have an attorney-client relationship. *See SMI Industries Canada Ltd. v. Caelter Industries, Inc.*, 586 F. Supp. 808, 815 (N.D.N.Y. 1984); *Adams v. Vill. of Keesville*, 2008 WL 3413867, *10 & n.9 (N.D.N.Y. Aug. 8, 2008). Indeed, the Court has held that an attorney's professional obligation as an officer of the court "confers standing on any attorney to challenge a lawyer's representation of a client when he is privy to facts which justify disqualification." *SMI Industries Canada*, 586 F. Supp. at 815; *see also Planning & Control, Inc. v MTS Group, Inc.*, 1992 WL 51569, *2-3 (S.D.N.Y. 1992) (same).

7

matters that have clearly adverse interests.  *See, e.g.*, *Akagi v. Turin Housing Dev. Fund Co., Inc.*, 2017 WL 1076345, *1 (S.D.N.Y. Mar. 22, 2017) (finding a concurrent representation where law firm "represented and sued the same client" in different actions).

Where a conflict of interest arises from concurrent representation, a "*per se* rule" applies. *See, e.g.*, *Gerffert Co., Inc. v. Dean*, 2011 WL 683963, *7 (E.D.N.Y. Feb. 16, 2011).  The Second Circuit views the concurrent representation of adverse parties as "*prima facie* improper." *Cinema 5 Ltd.*, 528 F.2d at 1387.  This is true **regardless of whether the two matters are related**.  *Id.*; *see also GSI Commerce*, 618 F.3d at 210 (in concurrent representation cases, "it will not suffice to show that the two matters upon which an attorney represents existing clients are unrelated."); *see also British Airways, PLC v. Port Auth. of N.Y. & N.J.*, 862 F. Supp. 889, 893 (E.D.N.Y. 1994) (*per se* or *prima facie* rule applies "when the attorney whose disqualification is sought is actively suing his client in other related, or non-related actions.").  The actual substance of the underlying matters is considered only in situations involving **successive** representations—*i.e.*, where the attorney is adverse to his **former** client.  *See, e.g.*, *Hempstead*, 409 F.3d at 133 (analyzing successive conflicts using a "substantial relationship" test).  Thus, "an attorney's simultaneous representation of one existing client in a matter adverse to another existing client" is considered an "established ground for disqualification," regardless of the matters' substance or allegations. *GSI Commerce*, 618 F.3d at 209.  This is so attorneys can "avoid even the 'appearance' of representing conflicting interests" because even if "no actual conflict may exist, the appearance of one can still undermine the faith in the judicial system and its fairness." *Pierce & Weiss, LLP v. Subrogation Partners, LLC*, 701 F. Supp. 2d 245, 253 (E.D.N.Y. 2010).

Here, not only is Hogan Lovells engaged in the concurrent representation of two clients with adverse interests, it is actively representing clients with directly adverse interests in cases that

are ***identical in form and substance***.  As described above and in the Verified Complaint, Compass-Charlotte alleges (*inter alia*) that Prime breached the Compass-Prime Agreement by failing to return Compass-Charlotte's ICA deposit after Compass-Charlotte invoked the Agreement's termination clause for Prime's failure to provide the promised line of credit.  The Camshaft Prime Lawsuit is premised on identical facts:  Camshaft alleges that Prime breached a line of credit agreement it had with Camshaft by failing to return Camshaft's ICA deposit after Camshaft invoked the agreement's termination clause for Prime's failure to provide a promised line of credit.  *See* Tuxbury Decl. Ex. A.  On one end, Hogan Lovells is representing an entity seeking the return of money from Prime pursuant to a line of credit agreement (comparable to the agreement involving Compass); on the other end, Hogan Lovells is representing Prime to prevent exactly that (against a party (Compass) that is ***identically*** situated to Hogan Lovells' other client, Camshaft).[7]

## II.  HOGAN LOVELLS CANNOT MEET THE HEAVY BURDEN OF AVOIDING DISQUALIFICATION.

A lawyer that concurrently represents adverse parties may escape disqualification only by "show[ing], at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of [their] representation."  *GSI Commerce*, 618 F.3d at 209 (citations omitted) (emphasis in original).  That burden is considered "so heavy that it will rarely be met." *Id.* (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir. 1981)).  In order to satisfy this burden, the non-moving party must establish that "(1) it is obvious that [they] can adequately represent the interest of each [adverse party] and (2) [they] obtained the consent of each to the

---

[7] Lest there be any doubt that disqualification is necessary given this conflicted representation, Hogan Lovells continues to represent Prime in the Prime Bankruptcy Case, a proceeding in which Camshaft would be an adverse creditor.  In the bankruptcy setting, the mere ***appearance*** of impropriety or the ***potential*** for a conflict of interest is, by itself, sufficient grounds to disqualify an attorney.  *See In re Vebeliunas*, 231 B.R. 181, 193 (Bankr. S.D.N.Y. 1999) (noting that section 327(a) of the Bankruptcy Court has retained the impropriety standards that were eliminated in the most recent addition of the ABA's Model Rules) (citations omitted).  Thus, there is no question that Hogan Lovells should be disqualified from the continued representation of Prime in the pending litigations.

representation after full disclosure of the import of his representation." *Fisons Corp. v. Atochem N. Am., Inc.*, 1990 WL 180551, *4 (S.D.N.Y. Nov. 14, 1990).

### A. It is Not "Obvious" That Hogan Lovells Can Adequately Represent Both Camshaft and Prime.

Controlling law is clear that, before a client can consent to a concurrent representation, "a finding must be made that the attorney can adequately represent both clients." *Fisons Corp.*, 1990 WL 180551, at *6 (citing *Unified Sewerage Agency of Wash. Cnty., Or. v. Jelco Inc.*, 646 F.2d 1339, 1347 (9th Cir. 1981)). To make such a finding, Courts consider certain factors such as "[1] the nature of the litigation; [2] the type of information to which the lawyer may have had access; and [3] whether the client was in a position to protect his interests or know whether he will be vulnerable to disadvantage as a result of multiple representation. . . ." *Id.*

In *Fisons*, the Court held attorneys could adequately represent adverse parties because "the nature of the litigations [were] very different." Here, as discussed above, the nature of the instant litigation and the Compass Prime Lawsuit are identical in almost every respect. Indeed, Hogan Lovells is currently representing parties on opposite sides of a litigation. *C.f. General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1340 (S.D. Fla. 2001) (finding adequate representation where "the interests of all the companies are identical"). No rational argument exists whereby Hogan Lovells can posit it can adequately represent both Prime and Camshaft in such a way that the loyalties of both parties are maintained. Hogan Lovells represents Camshaft in a suit against Hogan Lovells' other client Prime for breach of a letter of credit agreement. An attorney cannot adequately represent two clients on opposite sides of litigation. The fact that Hogan Lovells is representing Prime in the present action and Prime is unrepresented in the Camshaft Prime Lawsuit is of no import. Hogan Lovells is actively representing adverse parties

10

involved in litigation with virtually identical claims. For that reason alone, Hogan Lovells cannot meet its extremely high burden.

**B.    The "Informed Consent" Received by Hogan Lovells is Inadequate.**

Even if Hogan Lovells is somehow able to convince the Court that it can adequately represent clients with complete opposite interests in identical litigations, it cannot establish that it properly obtained informed consent from either Prime or Camshaft.

"[F]ull disclosure and consent of the client ***prior to*** commencing the adverse representation" is the only way to properly obtain informed consent in this context. *Anderson v. Nassau Cnty. Dep't. of Corr.*, 376 F. Supp. 2d 294, 299 (E.D.N.Y. 2005) (emphasis added) (disqualifying firm that obtained consent for concurrent representation ***after taking on the representation***, because the consent's timing "support[ed] the appearance of impropriety."). For consent to be "informed," a lawyer must first have "communicated information adequate for the person to make an informed decision" and "adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives." *See* N.Y. Rules Prof. Con. 1.10(j). Additionally, to be proper, the New York Rules of Professional Conduct mandate that any informed consent be in writing, and must make the client aware of "relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client." *See* N.Y. Rules Prof. Con. 1.7, cmts. 18, 20 ("the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing").

First, any informed consent that was previously given by Camshaft in the Prime Bankruptcy Case was clearly not "informed," as that term is understood under the relevant ethics rules. The "consent" email provided by Hogan Lovells in response to Compass-Charlotte's letter

11

motion notifying this Court of the conflict, Dkt. No. 33, Ex. A., admits the consent was not given in writing.  *Id.* ("[y]ou have already confirmed ***orally*** that you waive any conflicts with respect to HL's representation of Prime.")  *Id.* (emphasis added).  More importantly, the email in no way outlines the relevant circumstances under which Camshaft's interests could be adversely affected.  Instead, the email merely cross references an oral communication without any detail regarding what relevant information and circumstances was conveyed to Camshaft to allow for any informed consent.  *See, e.g.*, *Filippi v. Elmont Union Free School Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 310-312 (E.D.N.Y. 2010) (purported consent insufficient since it was not clear whether the party "understood the material and reasonably foreseeable ways that the potential conflict could adversely affect" it, and the Court holding it "is not satisfied that the [party] provided informed, written consent to the instant conflict ***and all its attendance circumstances***.") (emphasis added).

Second, even if Hogan Lovells obtained "informed consent" from Camshaft with respect to the Prime Bankruptcy Case (which it did not), it did not do so prior to the commencement of, nor did it describe the subject matter of, the ***instant*** litigation and, thus, was entirely improper as a matter of law.  The Verified Complaint was filed on January 12, 2024.  At the in-person hearing before the Hon. Mae A. D'Agostino on January 22, 2024 regarding Plaintiff's Motion for Emergency Relief, Hogan Lovells represented to the Court that it was ***in the process*** of "obtaining written proof" that Camshaft consented to Hogan Lovells' representation of Prime in the instant litigation.  Tuxbury Decl. Ex. H at 23:18-25.  Said otherwise, Hogan Lovells has already conceded it did not obtain written authorization from Camshaft regarding the instant litigation prior to filing a notice of appearance in this case.  Thus, any "informed consent" offered by Prime in opposition to this Motion must be disregarded outright.[8]

---

[8] It must also be noted that the reasoning set forth for why Camshaft allegedly gave Hogan Lovells consent to litigate both cases is gravely concerning.  At the January 22 hearing, Hogan Lovells represented that "it makes perfect sense

12

The same is true for the purported "informed consent" offered by Prime. Prime's "consent" email provided by Hogan Lovells in response to Compass-Charlotte's letter motion notifying this Court of the conflict, Dkt. No. 33, Ex. B., is dated January 17, 2024. Not only does this "consent" post-date the filing of Hogan Lovells' notice of appearance in this case, but it also post-dates Compass-Charlotte's letter motion notifying this Court of the conflict—which was filed on January 15, 2024. Therefore, it wasn't until this Court was made aware of the conflict that Hogan Lovells went and obtained "consent" from Prime. Such is unacceptable, as a matter of law. *See Discotrade Ltd. v. Wyeth-Ayerst Intern., Inc.*, 200 F. Supp. 2d 355, 360 (S.D.N.Y. 2002) (counsel disqualified because, *inter alia*, "it is clear from the documentary record that [counsel] knew it had not secured an effective waiver **before** filing this lawsuit.") (emphasis added).

Finally, disqualifying Hogan Lovells would not prejudice or otherwise harm Prime in any way. This case is in its infancy, with the Verified Complaint filed only two weeks ago, and Prime is now under the control of a permanent Receiver. *See U.S. v. Stein*, 410 F. Supp. 2d 316, 328 (S.D.N.Y. 2006) (correlating prejudice due to disqualification with "the length of the representation and/or counsel's familiarity with the case"). Further, prior to December 30, 2023, Prime had alternative counsel in the Prime Bankruptcy Case.

## CONCLUSION

For the foregoing reasons, the law firm Hogan Lovells US LLP should be (1) disqualified from further representing Defendant Prime Capital Ventures, LLC; (2) prevented from any recovery Prime might obtain through this suit; and (3) ordered to pay counsel for Plaintiff its

---

from a litigation point of view to have someone like Prime open, doing business with access to capital" because, in the past, when other creditors in Camshaft's position sued Prime, "they recovered on their judgment." Tuxbury Decl. Ex. H at 25:4-12. What Hogan Lovells is essentially asking this Court to do is to allow the firm to represent both Prime and Camshaft, so that Hogan Lovells can continue to argue for the removal of the Receiver and to bar discovery, in order to allow Prime to continue its pattern and practice of paying off existing creditors with newly obtained ICA deposit funds (*i.e.* a classic Ponzi scheme).

13

reasonable attorneys' fees for having to bring this Motion. The Court should also grant any further relief it deems just and proper.

DATED: January 26, 2024
Albany, New York

**HINCKLEY, ALLEN & SNYDER LLP**

By: */s/ Christopher V. Fenlon*
*/s/ James L. Tuxbury*
Christopher V. Fenlon
James L. Tuxbury (*pro hac vice*)
Kieran T. Murphy
30 South Pearl St., Suite 901
Albany, NY 12207-3492
T: 518-396-3100
F: 518-396-3101
E: cfenlon@hinckleyallen.com
  jtuxbury@hinckleyallen.com
  kmurphy@hinckleyallen.com

**PARKER, POE, ADAMS & BERNSTEIN LLP**

William L. Esser, IV (*pro hac vice*)
Eric H. Cottrell (*pro hac vice*)
620 South Tyron St., Suite 800
Charlotte, NC 28202
T: 704-335-9507
F: 704-334-4706
E: willesser@parkerpoe.com
  ericcottrell@parkerpoe.com

*Attorneys for Plaintiff*
*Compass-Charlotte 1031, LLC*