**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                     :

COMPASS-CHARLOTTE 1031, LLC,       :

          Plaintiff,        :

                  :

          v.             :     Case No. 24-cv-00055 (MAD/CJH)

                  :

PRIME CAPITAL VENTURES, LLC      :
BERONE CAPITAL FUND, LP,         :
BERONE CAPITAL PARTNERS LLC,    :
BERONE CAPITAL LLC,            :
BERONE CAPITAL EQUITY FUND I, LP,  :
and 405 MOTORSPORTS LLC f/k/a Berone  :
Capital Equity Partners LLC,         :

                  :

          Defendants.     :
---------------------------------------------------------------x

### PRIME CAPITAL'S MEMORANDUM OF LAW IN SUPPORT EMERGENCY MOTION FOR STAY OF ORDER APPOINTING RECEIVER

HOGAN LOVELLS US LLP
Pieter Van Tol (Bar Roll No. #508405)
Chris Bryant (admitted *pro hac vice*)
Peter Bautz (*pro hac vice* application
forthcoming)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com
peter.bautz@hoganlovells.com

*Attorneys for Defendant Prime Capital
Ventures, LLC*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT .........................................................................................................................4

    I.      Applicable Legal Standards ............................................................................4

    II.     The Court Should Stay the Receivership Order Pending Appeal ...........................5

        A.    Prime Capital Has a Strong Likelihood of Success on the Merits of Its Appeal ................................................................................................ 5

            (1)    The Parties' Bargained-For Rights Under the Binding Arbitration Agreement Will Be Rendered a Nullity by the Receivership ....................................................................... 5

            (2)    Compass Did Not Satisfy the Strict "Clear and Convincing" Evidence Standard for the Appointment of a Receiver ................ 9

                [a]    The Presence of Legal Remedies Bars the Appointment of a Receiver and a Finding of Irreparable Harm to Compass ................................................................... 9

                [b]    There Was No Showing of Fraudulent Conduct .............. 14

                [c]    Plaintiff's Lack of Success on Merits ............................. 17

                [d]    There Is No Loss of Property Here .................................. 18

                [e]    Balancing of Harm ........................................................ 19

        B.    Prime Capital Will Suffer Irreparable Harm in the Absence of a Stay ............................................................................................... 20

        C.    Compass Would Not Suffer Substantial Injury if a Stay Were Issued ............................................................................................. 22

        D.    A Stay Would Be in the Public Interest .................................................. 22

    III.    In the Alternative, the Court Should Grant a Temporary Stay Until the Court of Appeals Decides Prime Capital's Motion for a Stay .............................23

CONCLUSION....................................................................................................................23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied Building Prods. Corp. v. George Parsons Roofing & Siding, Inc.*,
2017 WL 2964018 (E.D.N.Y. Mar. 31, 2017) ........................................................................13

*Alpha Cap. Anstalt v. Shiftpixy*,
432 F. Supp. 3d 326 (S.D.N.Y. 2020) ....................................................................................11

*Baliga v. Link Motion, Inc.*,
2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) ................................................................12, 13

*Bank of New York Mellon v. Worth*,
2015 WL 1780719 (D. Conn. Apr. 20, 2015) .........................................................................23

*Bionpharma Inc. v. CoreRx, Inc.*,
2022 WL 580767 (S.D.N.Y. Feb. 24, 2022) ...........................................................................23

*Brenntag Int'l Chemicals, Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) ............................................................................................12, 13

*Citibank v. Nyland (CF8) Ltd.*,
839 F.2d 93 (2d Cir. 1988) ....................................................................................................19

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ...............................................................................................................22

*Cottam v. Global Emerging Capital Grp. LLC*,
2017 WL 11667637 (S.D.N.Y. Dec. 29, 2017) ............................................... 9-10, 10, 16, 17

*CRP/Extell Parcel I, L.P. v. Cuomo*,
394 Fed. App'x 779 (2d Cir. 2010) .......................................................................................11

*Cutler v. 65 Sec. Plan*,
831 F. Supp. 1008 (E.D.N.Y. 1993) ......................................................................................20

*Federal Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*,
813 F. Supp. 234 (S.D.N.Y. 1993) ........................................................................................20

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) ...............................................................................................9, 10, 11, 13

*Insussary v. Adminstaff Companies, Inc.*,
1999 WL 305102 (S.D.N.Y. May 14, 1999) ..........................................................................20

*Janvey v. Alguire*,
    2010 WL 11619267 (N.D. Tex. June 10, 2010) ....................................................13

*John E. Andrus Memorial, Inc. v. Daines*,
    600 F. Supp. 2d 563 (S.D.N.Y. 2009)...................................................................21

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)...................................................................21

*Kihagi v. Umpqua Bank*,
    2019 WL 6175023 (C.D. Cal. Aug. 15, 2019)........................................................7

*Marmet Health Care Center, Inc. v. Brown*,
    565 U.S. 530 (2012) ..............................................................................................8

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983)...................................................................................................8

*Nam v. Permanent Mission of the Republic of Korea to the United Nations*,
    2023 WL 2456646 (S.D.N.Y. Mar. 10, 2023) ..................................................4, 22

*Netsphere, Inc. v. Baron*,
    703 F.3d 296 (5th Cir. 2012) ...........................................................................10, 17

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................................1, 2, 4

*Noel Pane v. City of Greenburgh*,
    2012 WL 12886971 (S.D.N.Y. March 21, 2012) ................................................22

*On-Time Disposal, Inc. v. North Jersey Recycling, LLC*,
    2015 WL 5544434 (S.D.N.Y. Sept. 17, 2015).....................................................17

*Owens v. Gaffken & Barriger Fund LLC*,
    2009 WL 773517 (S.D.N.Y. March 24, 2009) ...........................................9, 10, 11

*Plummer v. Quinn*,
    2008 WL 383507 (S.D.N.Y. Feb. 12, 2008).........................................................22

*Ray v. Chafetz*,
    236 F. Supp. 3d 66 (D.D.C. 2017) .........................................................................7

*Regeneron Pharms., Inc. v. U.S. Dep't of Health & Human Servs.*,
    510 F. Supp. 3d 29 (S.D.N.Y. 2020).....................................................................21

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)..................................................................................21

*SEC v. Republic Nat'l Life Insurance Co.*,
　378 F. Supp. 430 (S.D.N.Y. 1974) ...................................................................19, 21

*Srour v. New York City*,
　2023 WL 7091903 (S.D.N.Y Oct. 26, 2023) .......................................................4, 23

*Thapa v. Gonzales*,
　460 F.3d 323 (2d Cir. 2006).................................................................................45

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*,
　866 F. Supp. 2d 247 (S.D.N.Y. 2012)...................................................................18

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Property LLC*,
　2012 WL 2033548 (S.D.N.Y. June 5, 2012) ....................................................20, 23

*U.S. ex rel. Rahman v. Oncology Associates*,
　198 F.3d 489 (4th Cir. 1999) ...............................................................................13

*Uniformed Fire Officers Ass'n v. de Blasio*,
　973 F.3d 41 (2d Cir. 2020)....................................................................................4

*United States v. Ianniello*,
　824 F.2d 203 (2d Cir. 1987)..................................................................................19

*Varsames v. Palazzolo*,
　96 F. Supp. 2d 361 (S.D.N.Y. 2000)......................................................................19

*Vis Vires Group, Inc. v. Endonovo Therapeutics, Inc.*,
　149 F. Supp. 3d 376 (E.D.N.Y. 2016) ...................................................................13

*Wells Fargo Bank, N.A. v. Star Texas Gasoline & Oil Distributors, Inc.*,
　2015 WL 419638 (S.D. Tex. Jan. 29, 2015) .........................................................6, 7

*Zyppah, Inc. v. Ace Funding Source, LLC*,
　2019 WL 6647912 (S.D.N.Y. Nov. 6, 2019) .....................................................18, 19

**Statutes**

11 U.S.C. § 303(i) ....................................................................................................22

28 U.S.C. § 1292(a)(2)................................................................................................4

**Other Authorities**

Fed. R. App. P. 8(a) ............................................................................................24, 25

Fed. R. Civ. P. 62(c) ..............................................................................................1, 4

Local Rule 7.1(e) .......................................................................................................1

Defendant Prime Capital Ventures, LLC ("Prime Capital"), by its counsel, respectfully submits this memorandum of law, along with the Declaration of Pieter Van Tol ("Van Tol Declaration"), in support of Prime Capital's emergency motion (the "Emergency Motion"), pursuant to Local Rule 7.1(e) and Fed. R. Civ. P. 62(c), for a stay pending Prime Capital's appeal of the Court's order, dated January 24, 2024 (the "January 24 Order") granting the motion by Plaintiff Compass-Charlotte 1031 ("Compass" or "Plaintiff") for the appointment of a receiver and related relief.  In the alternative, Prime Capital respectfully requests that the Court enter a temporary stay until the U.S. Court of Appeals rules on any application by Prime Capital for a stay pursuant to the Federal Rules of Appellate Procedure.

## PRELIMINARY STATEMENT

The U.S. Supreme Court has held that the two "most critical" factors for a stay are (1) the movant's likelihood of success on the merits; and (2) irreparable harm to the movant in the absence of a stay.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Here, Prime Capital has a strong likelihood of success on the merits of its appeal regarding the appointment of the Receiver, and a continued receivership will have a devastating impact on Prime Capital's business and its arbitral rights pursuant to the arbitration agreement between Compass and Prime Capital.

*First*, the arbitration agreement does not permit the appointment of a receiver here; the receivership will not aid the arbitration and instead it will likely deprive Prime Capital of its bargained-for arbitral rights because the Receiver agrees with Compass that he may waive arbitration with respect to Plaintiff's claims.  Even if the arbitration agreement does allow for a receivership, this case does not satisfy the six-factor test for the drastic remedy of a receiver, which must be shown under the high standard of "clear and convincing" evidence.  Most importantly, Compass asserts legal claims only and seeks money damages against Prime Capital, but it has no equitable interest in Prime Capital's property.  Plaintiff <u>freely admits</u> that it sought a receiver so it

1

could secure assets for the payment of any future money judgment. Precedent from the Supreme Court expressly bars such a use of equitable relief, including a receivership. Compass also cannot show that its money damages would be uncollectible and thus it will be irreparably injured because (a) it has not established, as a matter of fact, that Prime Capital's insolvency is likely or imminent; and (b) in any event, Plaintiff also has recourse to the Berone defendants (collectively, "Berone") for money damages. Finally, Plaintiff's claim sounds in breach of contract and Compass has not shown that Prime Capital engaged in any fraudulent conduct justifying a receivership. To the contrary, the evidence demonstrates that Berone defrauded Prime Capital.

*Second*, Prime Capital would suffer significant irreparable harm in the absence of a stay. Receiverships divest defendants of their property and control over their business, which is inherently destructive and cannot be remedied through damages. It is also well settled in this Circuit that the type of injury that results from a receivership, which includes a loss of business relationship/opportunities and good will, as well as reputational damage, constitutes irreparable harm. The longer the receivership continues, the greater the irreparable harm will be to Prime Capital. Moreover, the receivership is a direct threat to Prime Capital's rights under the arbitration agreement. The Supreme Court has held, in an analogous context, that denials of the right to arbitration are irreparable harm *per se*, and require the issuance of a stay pending appeal.

The other two factors in the stay analysis—*i.e.*, whether the non-movant would suffer "substantial harm" from a stay and the public interest, *id.* at 434—similarly weigh heavily in favor of a stay of the receivership pending appeal. A stay would not result in substantial harm to Compass. Indeed, there would be no injury to Plaintiff because it was barred from seeking a receivership in the first place under these circumstances, and it could still move forward with its damages claims. A stay would also serve the public interest because there is a strong public policy favoring arbitration, and a stay would help protect Prime Capital's arbitral rights.

The Court, therefore, should grant a stay of the receivership pending appeal.  If, however, the Court does not grant such a stay, it should at least enter a temporary stay pending the determination of Prime Capital's stay motion by the Court of Appeals.

## **BACKGROUND**

In the January 12, 2024 Order to Show Cause (the "January 12 OSC"), the Court appointed the Receiver on an interim basis until the adjudication of Plaintiff's motion for a permanent receiver.  (*See* ECF No. 8.)  The Court also granted Plaintiff's request for expedited discovery on an interim basis pending a later ruling.  (*See id.*)  In addition, the Court set a hearing for January 22, 2024 (the "January 22 Hearing") to determine whether to convert the interim receiver into a permanent receiver and to continue with expedited discovery.  (*See id.*)

In its supporting papers, Compass clearly stated that the purpose of a receiver was to secure assets for later recovery in connection with its claims for money damages against Prime Capital.  (*See, e.g.*, ECF Nos. 6, 9-10 (stating that a receiver is necessary to prevent Prime Capital from transferring assets in its possession, thereby "depriving [Plaintiff] of its ability to recover its contractually-entitled ICA deposit"); ECF No. 6-1, ¶ 8 (referring to the risk of dissipation of assets "to frustrate Plaintiff's ability to recover on the merits of its claims"); *id.*, ¶ 9 ("Thus, good and sufficient cause exists to proceed by Order to Show Cause to protect Plaintiff's future judgment.").)  Compass requested expedited interim discovery request for the same purpose.  (*See* ECF No. 6 at 13 ("Plaintiff also requests expedited discovery in this matter to identify the amount and location of Defendants' assets."); *id.* at 14 ("Thus, expedited discovery is imperative to prevent

the dissipation of assets and protect [Compass] from irreparable injury.").)  Plaintiff's expedited discovery thus far has focused on the location and securing of assets.  (*See* ECF No. 58 at 2.)[1]

In the January 24 Order, the Court appointed the Receiver permanently and ordered that expedited discovery could continue.  (*See generally* ECF No. 56.)[2]  On January 26, 2024, Prime Capital filed a Notice of Appeal from the January 24 Order.  (ECF No. 60.)  Such an interlocutory appeal is permitted under 28 U.S.C. § 1292(a)(2).

## **ARGUMENT**

### I.   **Applicable Legal Standards**

A recent decision from the Southern District of New York described the standard for a stay pursuant to Rule 62(c) as follows:

> Federal Rule of Civil Procedure 62 grants district courts the discretion to issue a stay pending appeal.  "The factors relevant to granting a stay pending appeal are the applicant's 'strong showing that he is likely to succeed on the merits,' irreparable injury to the applicant in the absence of a stay, substantial injury to the nonmoving party if a stay is issued, and the public interest."  *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  While "[t]he first two factors are the most critical," *id.*, the Second Circuit has also held that "these criteria [are] somewhat like a sliding scale," *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).  "[T]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay.  Simply stated, more of one excuses less of the other."  *Id.* (internal quotation marks omitted).

*Srour v. New York City*, 2023 WL 7091903, at *1 (S.D.N.Y Oct. 26, 2023) (alterations in original);

*see also Nam v. Permanent Mission of the Republic of Korea to the United Nations*, 2023 WL

2456646, at *2 (S.D.N.Y. Mar. 10, 2023) (applying same standard and granting stay).

---

[1]   The Receiver similarly views his task as marshalling assets and preserving them so Plaintiff can use those assets to pay any future money judgment it may obtain.  (*See* ECF No. 37 ¶¶ 69, 71, 74.)

[2]   In a text order today, the Court stayed discovery pending the resolution of Prime Capital's appeal.  (ECF No. 68.)

As demonstrated below, Prime Capital has satisfied the two most critical factors for a stay pending appeal as well as the other two factors.

## II.      **The Court Should Stay the Receivership Order Pending Appeal**

### A.      **Prime Capital Has a Strong Likelihood of Success on the Merits of Its Appeal**

The appointment of the Receiver was not "in aid of arbitration," as Compass argued and the Court held.  Instead, the receivership has already interfered with Prime Capital's arbitral rights, and it will likely result in a waiver of arbitration (over Prime Capital's objection).  Moreover, Compass did not satisfy the strict "clear and convincing" standard for the drastic remedy of receivership. The appointment of a receiver here violates Supreme Court precedent because the receivership has effectively (and improperly) acted as an injunction against Prime Capital for the purpose of securing assets for a monetary recovery by Compass, which it has readily and repeatedly admitted.  This case is also ill-suited for receivership because (a) Plaintiff has sufficient legal remedies and no irreparable injury; (b) Plaintiff has not shown the requisite interest in Prime Capital's property (such as in a foreclosure), nor any fraudulent conduct by Prime Capital relating to the property at issue; (c) the evidence shows that Berone defrauded Prime Capital on the amount of the funds held for Prime Capital's benefit; and (d) Plaintiff's claims sound in breach of contract, and the courts have ruled that contract claims do not support the appointment of a receiver.

#### (1)      *The Parties' Bargained-For Rights Under the Binding Arbitration Agreement Will Be Rendered a Nullity by the Receivership*

Compass does not deny that there is a valid and binding agreement in Section 13.8 of the Credit Agreement requiring the parties to arbitrate their disputes (including the claims against Prime Capital in the Complaint).  (*See* Van Tol Decl., Ex. B, 4:24-5:6.)  Plaintiff, however, argues that the Court was justified in appointing the Receiver because the arbitration provision also states that the parties may seek "provisional remedies" from a court and such remedies include

5

receiverships.  There are two problems with this argument, both of which relate to the fact that the parties may resort to provisional remedies only if they are "in aid of arbitration."

*First*, Compass did not cite—and Prime Capital has been unable to find—a <u>single</u> case where a court held that the drastic remedy of receivership (with all its far-reaching consequences) is "in aid of arbitration."  Instead, Compass took a general approach and argued that, because receivership is often listed as a provisional remedy in treatises and cases, the parties here must have contemplated a receivership when they included a reference to "provisional remedies" in Section 13.8.  (*See, e.g.*, ECF No. 17, 2-3.)  That argument, however, ignores the central issue of whether the receivership here is actually "in aid of arbitration" (which is discussed below).

Compass also relied heavily on a case from Texas, *Wells Fargo Bank, N.A. v. Star Gasoline & Oil Distributors, Inc.*, 2015 WL 419638 (S.D. Tex. Jan. 29, 2015), and the JAMS rules in support of its contention that the arbitration provision here permits the appointment of a receiver.  (*See* ECF No. 40 at 3.)  The *Star Texas* case, however, is distinguishable from this case and in fact supports Prime Capital's argument.  In *Star Texas*, the arbitration agreement (which was in a loan agreement between sophisticated parties) provided as follows:

> The arbitration requirement does not limit the right of any party to ... (iii) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the <u>appointment of a receiver</u>, before during or after the pendency of any arbitration proceeding.

*Wells Fargo Bank,* 2015 WL 419638, at *3 (emphasis added).  Thus, unlike the parties here, the parties in *Star Texas* expressly agreed under the plain terms of their arbitration agreement that a party could seek the appointment of a receiver.  Notably, the *Star Texas* court stated that it "intimates no view on whether a receivership is available" in the absence of the express provision in the arbitration clause.  *Id.* at *4.  Additionally, the arbitration provision in *Star Texas* was not limited by the key phrase "in aid of arbitration" and, to the contrary, it set forth no limitations on

the provisional remedies.  The parties in this case are also sophisticated, and they could have chosen to include a reference to receivership.  They did not.[3]

The citation to the JAMS Comprehensive Arbitration Rules and Procedures (the "JAMS Rules") is similarly unavailing.  Those rules state that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate."  (ECF No. 56 at 7-8.)  Thus, the JAMS rules simply (and generally) provide that a party may seek provisional remedies in court without undermining its right to arbitrate.  They do not refer to receivership and they do not overcome the parties' agreed-upon and strict limitation of provisional remedies here to those "in aid of arbitration."[4]

In sum, the arbitration provision in this case does not authorize a receivership.  It only allows the parties to resort to the courts for the narrowest purposes.  Such an interpretation of the arbitration clause here also comports with the broad language of that provision, which states that the parties waive their right to have disputes heard by a court.  (*See* ECF No. 1-29 § 13.8.)  As discussed below, the standard for receivership requires the Court to assess whether fraudulent conduct by Prime Capital has occurred and whether Plaintiff's claims have a likelihood of success. *See infra*, 14-18.  Such an inquiry into Plaintiff's claims is antithetical to the waiver provision in the arbitration clause.

---

[3]     Another case cited by the Court, *Kihagi v. Umpqua Bank*, 2019 WL 6175023 (C.D. Cal. Aug. 15, 2019), involved similar language expressly allowing for the appointment of a receiver. *Id.* at *2.

[4]     The Court cited four other cases (in addition to *Star Texas* and *Kihagi*) in finding that the receivership here is "in aid of arbitration" (*see* ECF No. 56, 10), but they are all distinguishable. With the exception of *Ray v. Chafetz*, 236 F. Supp. 3d 66 (D.D.C. 2017), the additional cases only refer to provisional remedies generally and they do not mention receivership.  *Ray* also does not support the appointment of a receiver here because, in that case, the arbitrator denied the appointment of a receiver during the arbitration and the court refused to appoint one after the arbitration had ended.  *See id.* at 84-85.  This case involves very different facts.

*Second*, the appointment of the Receiver violates the arbitration clause because the receivership in this case is not "in aid of arbitration." The Supreme Court has made it clear that district courts should remove impediments to arbitration, in keeping with strong and oft-articulated public policy in favor of arbitration. *See, e.g., Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (stating that the Federal Arbitration Act "reflects an emphatic federal policy in favor of arbitral dispute resolution"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting the "liberal federal policy favoring arbitration agreements"). Here, however, the receivership (and related expedited discovery) has already interfered with the Prime Capital's rights under the parties' arbitration agreement and, in the near future, the receivership will likely nullify Prime Capital's arbitral rights altogether.

To begin with, Compass has used the expedited discovery granted by the Court in the January 12 OSC for a singular goal: to identify the assets of Prime Capital and Berone so the Receiver may freeze them for recovery by Compass if it succeeds on its damages claims. The expedited discovery, therefore, is intertwined with the receivership and the violation of Supreme Court precedent barring the use of equitable relief to secure a money judgment. *See infra*, 10-11. The expedited discovery has also trampled on Prime Capital's bargained-for rights in the arbitration agreement, which places multiple limits on the parties' rights to discovery and does not contemplate the use of discovery to secure a future money judgment. (*See* ECF No. 58.)

Even more critically, Compass has informed the Court that the Receiver could decide to waive (read: <u>will</u> waive) Prime Capital's right to arbitrate Compass' claims against it. Counsel for Compass stated that at the January 22 Hearing that Plaintiff will engage in arbitration <u>only</u> if the Receiver decides that Prime Capital should arbitrate its dispute. (*See* Van Tol Decl., Ex. B, 5:19-22 ("With [the] receiver in place, the determination of the adjudication of claims vis-a-vis Compass and Prime will be within the purview of the receiver.").) In an e-mail the next day, Plaintiff's

counsel repeated the assertion that the Receiver will determine whether Prime Capital will arbitrate.  (ECF No. 57-2.)  The Receiver did not disagree with either statement.

Compass' plan is clear.  Compass brought this action and asked for the appointment of a receiver and expedited discovery, without even informing the Court at the time that a binding and undisputed arbitration agreement between two parties exists, so it could (a) use the expedited discovery to find assets and secure a future money judgment; and (b) then use the Receiver as a means of evading arbitration with Prime Capital.  Thus, Compass has abused the discovery and receivership process to undermine arbitration, not aid it.

In light of Compass' recent revelations regarding its end game, Prime Capital has a strong likelihood of success on the merits of its claim that a receivership is not "in aid of arbitration."

### (2)  *Compass Did Not Satisfy the Strict "Clear and Convincing" Evidence Standard for the Appointment of a Receiver*

The six-factor analysis for the appointment of receivers shows that Compass fell well short of demonstrating, by "clear and convincing" evidence, that the Court should appoint the Receiver. Two of the factors—the availability of legal remedies and irreparable harm—are dispositive and they are discussed initially below.  The other four factors also support the conclusion that the appointment of the Receiver was not warranted here.

### [a]  The Presence of Legal Remedies Bars the Appointment of a Receiver and a Finding of Irreparable Harm to Compass

*Legal Remedies and Equitable Relief*

"Ordinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver."  *Owens v. Gaffken & Barriger Fund LLC*, 2009 WL 773517, at *2 (S.D.N.Y. March 24, 2009) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 312 (1999)).  Here, Compass has only legal claims.  *See Cottam v. Global Emerging Cap. Grp. LLC*, 2017 WL 11667637, at *3 (S.D.N.Y. Dec. 29, 2017) ("As an initial

matter, the Court is without the power to appoint a receiver in this case because Plaintiff did not request any equitable relief in his complaint.") (citing *Grupo Mexicano*, 527 U.S. at 312).[5]

The Court distinguished *Grupo Mexicano* on the grounds that the Supreme Court held that the courts have "no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." (ECF No. 56 at 17 (quoting *Grupo Mexicano*, 527 U.S. at 333).)  The Court then concluded that the receivership here is different from the preliminary injunction in *Grupo Mexicano* because the Receiver is not preventing the disposition of assets.  (*See id.* at 17-18.)

The *Owens* court, however, rejected such a distinction.  *Owens* relied on *Grupo Mexicano* because the court found that the receivership in the case before it was akin to the preliminary injunction in *Grupo Mexicano*.  *See Owens*, 2009 WL 773517, at *2.  Quoting from the plaintiffs' brief, the court noted that they sought a receiver "for the improper purpose of 'ensur[ing] that the Fund will not dissipate assets [which dissipation] could frustrate the [p]laintiffs['] ability to collect on any judgment that may be rendered in their favor.'"  *Id.* (alterations in original); *see also Cottam*, 2017 WL 11667637, at *3 (applying *Grupo Mexicano* in receivership case); *Netsphere, Inc. v. Baron*, 703 F.3d 296, 309 (5th Cir. 2012) (discussing *Grupo Mexicano* and stating that "the limits of equity there described are relevant to the receivership remedy, too").

The receivership here has the same purpose as in *Grupo Mexicano* and *Owens*.  The record shows that, like the parties in *Grupo Mexicano* and *Owen*s, Compass sought the receivership to preserve assets in relation to its money damages claims.  Indeed, the Receiver sees his role the

---

[5]    The Court cited *Cottam* favorably in the January 24 Order.  (*See* ECF No. 56 at 17.)  In *Owens*, the court noted that the plaintiffs had an unjust enrichment claim, but that "the appointment of a receiver is not an appropriate form of preliminary equitable relief based on the specific claims made in this case."  2009 WL 773517, at *2.  Those claims arose out of the plaintiffs' allegations of fraud, for which they sought compensatory and punitive damages.  *See id.* at *1,

same way.  (*See, e.g.*, ECF No. 37 ¶ 71 (Receiver states that his task is to "trace funds an[d] identify avenues of recovery").)  And, in fact, the Receiver has marshalled assets (and has said that he will seek to attach even the assets of non-Defendants) to preserve them for recovery by Plaintiff.  In other words, the receivership in this case has the <u>same</u> function as the preliminary injunction in *Grupo Mexicano*.  Therefore, *Grupo Mexicano* and *Owens* apply here with full force.

*Lack of Irreparable Harm*

The Court held that the usual rule—that there is no irreparable harm where a party seeks money damages—does not apply here because "it is <u>possible</u> that a judgment in Plaintiff's favor would be inadequate."  (ECF No. 56 at 16; emphasis added.)  The cases cited by the Court, however, have held that the exception to the general rule only applies if the movant has made a showing that insolvency is "likely and imminent."  *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010); *see also Alpha Cap. Anstalt v. Shiftpixy*, 432 F. Supp. 3d 326, 340 (S.D.N.Y. 2020) (same).  In *CRP/Extell*, the Second Circuit held that "[b]ecause plaintiff-appellant has failed to establish that the harm at issue in this case is anything more than a possibility, we cannot say that the district court abused its discretion in denying preliminary injunctive relief."  394 Fed. App'x at 782; *see also Alpha*, 432 F. Supp. 3d at 341 (holding that there was no irreparable harm because the movant "has not proven indisputably" that the defendant "is insolvent or on the brink of insolvency").  Thus, the Court's finding that it is "possible" that the judgment for Compass would be inadequate falls well short of the Second Circuit standard.  Indeed, it is the same conclusion that the *CRP/Extell* court cited as inadequate to support a preliminary injunction.[6]

---

[6]     The Receiver stressed in his initial report that his work had just begun and that it was incomplete.  (*See* ECF No. 37 ¶ 4.)   He added that a forensic accountant would be necessary for this case.  (*Id*. ¶ 71.)  Thus, the factual development as of the January 24 Order did not allow for a finding that Prime Capital's insolvency is either likely or imminent.

In addition, the Court's conclusion regarding the potential unenforceability of a judgment against Prime Capital rests on the premise that $52 million is not being held in an RBC Capital Markets account by Berone for the benefit of Prime Capital.  (ECF No. 56 at 16.)  The relevant issue, however, is narrower: whether Prime Capital or Berone could satisfy a judgment of approximately $16 million in favor of Compass, <u>not</u> whether they could satisfy a judgment that includes other creditors.[7]  The record demonstrates that, in late October 2022, Prime Capital paid $20 million to Berone in connection with the loan program.  (*See* ECF No. 42 (Esser Decl.) ¶ 8.)[8] Compass has sued Berone in this action and obtained Berone's bank records, and it has not made any showing that it could not collect its deposit from Berone or that Berone's insolvency is likely and imminent.

This fact distinguishes the situation here from another case cited by the Court, *Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999).  (*See* ECF No. 56 at 15-16.)  In *Brenntag*, the Second Circuit stated that "we recognize the danger in finding irreparable harm where alternative, solvent defendants are available."  175 F.3d at 250; *see also Baliga v. Link Motion, Inc.*, 2022 WL 3699339, at *6 (S.D.N.Y. Aug. 25, 2022) (noting that plaintiff could satisfy judgment against another defendant).  The *Brenntag* court held that the claims against alternative defendants were not as strong and straightforward as the claim against the defendant that was the subject of the injunction.  175 F.3d at 250.  Here, the opposite is true.  Berone has not defended itself in this action and, as noted above, Compass has been tracking Berone's assets.  Thus, just as

---

[7]     The Court noted at the January 22, 2024 hearing that Prime Capital's other creditors are not before Court, stating that: "Well, it is for me a two-party dispute. … It's Compass versus Prime Capital Venture, LLC, for me."  (Van Tol Decl., Ex. B, 39:9-15.)

[8]     While the Esser Declaration states that approximately $15 million of the $20 million was wired out of the RBC Capital Markets account over the next month, that $15 million went to other Berone accounts or people affiliated with Berone.  (*Id.*)

the plaintiff in *Baliga* could satisfy judgment against another defendant, so too could Compass recover a judgment in this case from Berone.[9]

The other authority cited by the Court is an out-of-Circuit case, *Janvey v. Alguire*, 2010 WL 11619267 (N.D. Tex. June 10, 2010).  (Jan. 24 Order, 15.)  *Janvey* is distinguishable from this case for two reasons.  *First*, *Janvey* involved a claim under the Texas Uniform Fraudulent Transfer Act, which the court described as "equitable in nature."  *See id.* at *1, 6.  There is no equivalent claim here.  *Second*, *Janvey* concluded that any money judgment would be unenforceable, and this finding was based on an extensive record, including admissions by the defendant.  *See id.* at *5, 7.  There is no such record in this case.  *Janvey*, therefore, is inapplicable.

*   *   *   *   *

Thus, as a threshold matter, the receivership was not warranted here because Compass has adequate legal remedies and could not use equitable relief to secure a money judgment.  The other four factors discussed below also weigh heavily against the appointment of a receiver.

---

[9]     Several courts in this Circuit and elsewhere have also questioned whether the holding in *Brenntag* is still good law after the U.S. Supreme Court's ruling in *Grupo Mexicano*.  For example, in *Vis Vires Group, Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376 (E.D.N.Y. 2016), the court stated that *Grupo Mexicano* appears "to cast doubt on the continued vitality of the broad exception for insolvency outlined in *Brenntag*."  *Id.* at 392.  The *Vis Vires* court noted that "other courts have interpreted [*Grupo Mexicano*] to stand for the principle that courts cannot issue preliminary injunctions based solely on the insolvency of debtors where the plaintiffs' underlying claims primarily seek monetary damages."  *Id.* at 393 (citing cases).  One of the cases cited by *Vis Vires* is *U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489 (4th Cir. 1999), in which the Fourth Court cited *Grupo Mexicano* and stated that: "A debt claim leads only to a money judgment and does not in its own right constitute an interest in specific property.  Accordingly, a debt claim does not, before reduction to judgment, authorize prejudgment execution against the debtor's assets."  *Id.* at 496; *see also Allied Building Prods. Corp. v. George Parsons Roofing & Siding, Inc.*, 2017 WL 2964018, at *2 (E.D.N.Y. Mar. 31, 2017) (questioning the relevance and viability of *Brenntag* in light of the U.S. Supreme Court's decision in *Grupo Mexicano*).

13

### [b]        There Was No Showing of Fraudulent Conduct

The Court found that Compass had sufficiently alleged fraudulent conduct by Prime Capital because the whereabouts of Plaintiff's approximately $16 million deposit "is unknown" and Prime Capital "has not produced any records between Prime Capital and Berone to corroborate" the assertion that Berone defrauded Prime Capital.  (ECF No. 56 at 14 (citing ECF No. 43).)  However, the filing cited by the Court is the sur-reply filed by Prime Capital, and it shows that Berone repeatedly sent false bank account statements to Prime Capital.

For example, below is first page of the November 2022 statement that Berone emailed to Prime Capital in early December 2022 (at Prime Capital's request) purporting to show that Berone held $20 million in an RBC Capital Markets account ending in 0011 for the benefit of Prime:



**ACCOUNT STATEMENT**
November 1, 2022 - November 30, 2022

Account number:
 0011
Page 1 of 5

BERONE CAPITAL FUND LP
for benefit of :

Prime Capital Ventures, LLC
66 South Pearl Street
10th Floor
Albany NY  12207
UNITED STATES
Attn:  Kris Roglieri

Partnership Account

Your Financial Advisor
Jeremiah Beguesse
3595 Canton RD
Suite 312-223
Marietta GA  30066
Telephone:    (678) 619-1984
E-mail:        jeremiah@beronecapital.com

**ACCOUNT VALUE SUMMARY**

|  | THIS PERIOD | THIS YEAR |
|---|---|---|
| Beginning account value | $ 20,000,000.00 | $ 20,000,000.00 |
| Deposits | 20,000,000.00 | 20,000,000.00 |
| Withdrawals | 0.00 | 0.00 |
| Taxable income | 0.00 | 0.00 |
| Change in asset value | 0.00 | 0.00 |
| Ending account value | $ 20,000,000.00 | $ 20,000,000.00 |
| Estimated annualized income | | $ 19,492.00 |

*Please see "About Your Statement" on page 2 for further information.*

**YOUR MESSAGE BOARD**

*RBC Clearing & Custody is a division of RBC Capital Markets, LLC (RBC CM), Member NYSE/FINRA/SIPC. RBC CM provides brokerage, back-office, and related services to investment advisors. RBC CM is the custodian of your brokerage account, and this statement is provided solely for that account.*

*If you have any questions, please reach out to your financial advisor.*

(ECF No. 43-3.)  To the contrary, documents recently produced in this case show that the above statement was apparently forged by Berone; the true statement, which shows only $5.5 million, is below:





**ACCOUNT STATEMENT**

NOVEMBER 1, 2022 - NOVEMBER 30, 2022

Account number:
█████0011
Page 1 of 11

BERONE CAPITAL FUND LP
3595 CANTON RD / STE 312−223
MARIETTA GA  30066

YD0GA
BC1

**ACCOUNT VALUE SUMMARY**

|  | THIS PERIOD | THIS YEAR |
|---|---|---|
| Beginning account value | $11,011,554.01 | $0.00 |
| Deposits | 441,303.00 | 21,441,303.00 |
| Withdrawals | −5,900,020.00 | −15,914,799.45 |
| Taxable income | 11,001.56 | 12,942.85 |
| Change in asset value | 7,489.80 | 31,881.97 |
| Ending account value | $5,571,328.37 | $5,571,328.37 |
| | | |
| Estimated annualized income | | $10,164.00 |

*Please see "About Your Statement" on page 2 for further information.*

**Partnership Account**

**Your Financial Advisor**
Jeremiah Beguesse
3595 Canton RD
Suite 312-223
Marietta GA  30066
Telephone:   (678) 619-1984
E-mail:      jeremiah@beronecapital.com

**YOUR MESSAGE BOARD**

*RBC Clearing & Custody is a division of RBC Capital Markets, LLC (RBC CM), Member NYSE/FINRA/SIPC. RBC CM provides brokerage, back-office, and related services to investment advisors. RBC CM is the custodian of your brokerage account, and this statement is provided solely for that account.*

(ECF No. 43-4.)

The November 2022 statement was not an isolated incident.  In the spring of 2023, Prime Capital asked Berone for additional statements verifying that Berone continued to hold Prime Capital's $20 million investment.  In April 2023, Berone sent another three statements to Prime Capital for the same account for the period January through March 2023 purporting to show that Berone was holding the following amounts for Prime Capital's benefit: $19,236,000 (January 2023); $18,724,000 (February 2023); and $18,600,000 (March 2023).  (*See* ECF 43-6, 43-7, 43-8.)  Again, according to the true statements produced in this case, those amounts were in fact

15

substantially lower: $5,121,798.79 (January 2023); $5,101,976.68 (February 2023); and $2,878,076.03 (March 2023). (*See* ECF 43-9, 43-10, 43-11.)[10]

Therefore, as of April 2023, when Compass made its ICA deposit of approximately $16 million, Prime Capital believed in good faith that it had more than such an amount in the RBC Capital Markets account ending in 0011. The fact that Berone—without informing Prime Capital and instead assuring it that the money was still there—had taken large amounts out of the account demonstrates that Berone defrauded Prime Capital, not that Prime Capital defrauded anyone.

Both Plaintiff and the Receiver have pointed to Prime Capital's use of the Compass deposit in May 2023 to make payments to other borrowers, and Prime Capital's previous purchases of property, cars and other luxury items as evidence of fraudulent conduct. To the contrary (and as discussed below, *see infra*, 17-18, there is nothing in the agreement between Compass and Prime Capital that required Prime Capital to segregate the Compass deposit and leave it untouched. Even if there were, the transfers of the funds deposited by Plaintiff would be, at most, evidence of a breach of contract. With regard to the various purchases, the Receiver noted in his initial report that Prime Capital purchased the Virginia Beach, Virginia property as an investment. (*See* ECF No. 37 ¶ 55.) The investigation is ongoing, but it is likely that other purchased items are Prime Capital investments as well or compensation for Mr. Roglieri (the sole member of Prime Capital). Neither of those are indicia of fraud. Finally, Plaintiff has not pointed to any evidence that Prime Capital has fraudulently hidden or disposed of any assets since this case was initiated. *See Cottam*, 2017 WL 11667637, at *4 (noting this factor in refusing to appoint a receiver).

---

[10]     Prime Capital discovered Berone's fraud only after RBC Capital Markets produced documents on January 16, 2024 in response to a subpoena, and it was able to compare those bank records with what Berone provided earlier.

Under the circumstances, there was no showing that Prime Capital engaged in fraudulent conduct justifying the imposition of a receivership. Instead, this case is more like *Cottam*, where the court denied the motion to appoint a receiver and noted that "Plaintiff's complaint sounds more clearly in breach of contract than fraud." *See id.*

### [c]    Plaintiff's Lack of Success on Merits

In the January 24 Order, the Court focused on the breach of contract claim, concluding that Plaintiff has a likelihood of success on the merits that "supports appointment of a receiver." (ECF No. 56 at 16.) As an initial matter, the mere allegation of a breach of contract does not support the appointment of a receiver; the movant must demonstrate that it has a security interest in the property that will be dissipated. *Netsphere*, 703 F.3d at 308; *see also On-Time Disposal, Inc. v. North Jersey Recycling, LLC*, 2015 WL 5544434, at *3 (S.D.N.Y. Sept. 17, 2015) ("Typically, the appointment of a receiver is appropriate where a <u>secured creditor</u> has sufficiently demonstrated that his security may be dissipated.") (emphasis added).

*On-Time Disposal* illustrates how strictly the courts apply this requirement. In that case, the plaintiff asked the court to enter a judgment against the defendants for failure to abide by the terms of a settlement agreement, and to appoint a receiver for one of the defendants, North. The court granted the judgment and held that plaintiff had a security interest against North's assets, but denied the appointment of a receiver because the plaintiff had not shown that North's assets might be dissipated. *See id.* at *3-4. Here, Compass has not shown that it has a security interest in Prime Capital's assets, let alone that such a security interest will be dissipated.

In any event, the Court's assessment of the likelihood of success on the contract claim is based on a conclusion that "[t]he dispute seems to be only the amount of damages that Plaintiff can recover." (ECF No. 56, 16.) The evidence, however, shows that Prime Capital disputes (1) the performance by Compass; (2) whether Prime Capital failed to perform; and (3) the amount of

damages.  Prime Capital provided the Court with the Declaration of Kris Roglieri, dated January

7, 2024 (ECF No. 43-13), which points out that the three petitioning creditors in the involuntary

bankruptcy (including Compass) have no grounds for alleging that their deposit had to be

segregated.  (*See id.* ¶¶ 6-8.)  Also, Section 13.7 of the credit agreement between Compass and

Prime Capital states that a borrower may send a termination letter and declare a default only if it

has met the closing conditions.  (ECF No. 1-29 § 13.7.)  Like the other two petitioning creditors,

Compass did not meet the closing conditions and had no right to issue a termination letter.  (*See*

ECF No. 13-6, 4-5, 7.)[11]  Moreover, Compass has alleged in this action that Prime Capital is liable

for extra-contractual damages, but the credit agreement includes an express limitation on liability

stating that Compass releases all claims for "any special, indirect, consequential or punitive

damages."  (ECF No. 1-29 §14.13.)  Prime Capital, therefore, disputes both the liability and

damages elements in Plaintiff's breach of contract claim.

　　　　Accordingly, to the extent the breach of contract claim is even relevant to the receivership

analysis, Compass has not shown a likelihood of success on the merits.

### [d]　　　There Is No Loss of Property Here

　　　　The court in *Zyppah, Inc. v. Ace Funding Source, LLC*, 2019 WL 6647912 (S.D.N.Y. Nov.

6, 2019), made several findings that are relevant here.  The *Zyppah* court stated that:

> [T]his case does not implicate the purpose of a receiver because the dispute is not
> about ownership or control over property.  For example, receivers are typically
> appointed in foreclosure actions.  *See, e.g.*, *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue
> Prop. LLC*, 866 F. Supp. 2d 247, 255 (S.D.N.Y. 2012) (collecting cases).  In such
> cases, courts have reasoned receivers were necessary to protect the lenders'
> property interest in collateral.  In other words, the receiver was utilized "to protect
> the value of an asset that is the subject of the litigation."  *United States v. Ianniello*,
> 824 F.2d 203, 205 (2d Cir. 1987).

---

[11]　　　Prime Capital discovered this defense to Compass' claim after the Bankruptcy Court
dismissed the involuntary petition, and will raise it in the arbitration.

*Id.* at *2.  It added that:

> Here, Plaintiffs have not asserted a specific property interest in the Entity
> Defendants' assets.  Instead, Plaintiffs principally seek a receiver for the purposes
> of ensuring that the Entity Defendants are capable of paying damages should
> judgment be entered against them.  Following this logic, receivers ostensibly could
> be appointed in any breach of contact action with judgment proof defendants.  The
> Court declines to set such a broad-sweeping precedent.

*Id.* (citations omitted).

*Zyppah* relied on *Varsames v. Palazzolo*, 96 F. Supp. 2d 361 (S.D.N.Y. 2000), which is a case that the Court also cited in the January 24 Order.  *Varsames* involved real property, and the court noted that "[t]he purpose of a receivership is to protect a party's interest in property pending resolution of a dispute over ownership or control between it and another party with a claim to the property."  *Id.* at 366; *see also Citibank v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (noting, in action involving a dispute over ownership of real property, that receivership should be "granted only when clearly necessary to protect plaintiff's interests in the property"); *SEC v. Republic Nat'l Life Ins. Co.*, 378 F. Supp. 430, 437 (S.D.N.Y. 1974) ("The party seeking a receivership must show that it has some <u>legally recognized right in that property</u> that amounts to more than a mere claim against the defendant involved.") (emphasis added).

 This case, like *Zyppah*, does not involve a dispute over a property interest or recognized right in collateral or real property.  Thus, Compass cannot satisfy the second factor in the receivership analysis, which is "imminent danger of the property being lost, concealed, injured, diminished in value, or squandered."  *Varsames*, 96 F. Supp. 2d at 365.

### [e]     Balancing of Harm

The harm that a receivership has caused, and will continue to cause, to Prime Capital far outweighs any legally cognizable benefit to Compass.  Compass does not have a right to freeze Prime Capital's assets to secure a future money judgment.  As a result, Compass would be in the

same position vis-à-vis its legal rights if the Court had denied the motion for the appointment of a receiver. Prime Capital, by contrast, will suffer grave prejudice—both as a matter of fact and as a matter of law—if the receivership continues. *See infra*, 20-22. The balancing factor, therefore, also weighed heavily against the appointment of a receiver.

*   *   *   *   *

The law and evidence here do not support the appointment of the Receiver. Thus, an application of the six factors for receiverships, in conjunction with the limitations imposed by the arbitration agreement, demonstrate that Prime Capital has a strong likelihood of success on appeal.

### B.  Prime Capital Will Suffer Irreparable Harm in the Absence of a Stay

The courts have repeatedly noted that receiverships substantially interfere with the property rights of the company involved and greatly disrupt operations. *See U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 2012 WL 2033548, at *2 (S.D.N.Y. June 5, 2012) ("The appointment of a receiver will result in a permanent change in the control of the defendants' property, and thus cause substantial disruption for the defendants."); *Insussary v. Adminstaff Cos., Inc.*, 1999 WL 305102, at *3 (S.D.N.Y. May 14, 1999) (noting that "the appointment of a receiver may cause unprecedented and inappropriate disruption of [the company's] day-to-day operations" and could cause a loss of clients); *Cutler v. 65 Sec. Plan*, 831 F. Supp. 1008, 1019 (E.D.N.Y. 1993) (noting that "receivership interferes with an individual's property rights by ousting him from control"); *Federal Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 813 F. Supp. 234, 235 (S.D.N.Y. 1993) ("A receivership is a drastic remedy dispossessing former owners of assets, imposing substantial additional costs."); *SEC v. Republic Nat'l Life Ins. Co.*, 378 F. Supp. 430, 437 (S.D.N.Y. 1974) ("Receivership may interfere seriously with a defendant's property rights by ousting it from control and even possession."). This loss of property rights and use, and the associated costs, are difficult to measure and are not compensable through money damages.

20

A receivership will also, by its very nature, cause a company to suffer a loss of reputation, business relationships, and good will.  The Second Circuit has held that a finding of irreparable harm can be based on "loss of reputation, good will, and business opportunities."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).  That is because such damages "are difficult to establish and measure."  *Id.*  Accordingly, "[c]ourts have determined that a loss of existing business and a decline in the opportunity for new business may qualify as irreparable harm." *Regeneron Pharms., Inc. v. U.S. Dep't of Health & Human Servs.*, 510 F. Supp. 3d 29, 40 (S.D.N.Y. 2020) (finding irreparable injury based on reputational harm); *see also John E. Andrus Mem'l, Inc. v. Daines*, 600 F. Supp. 2d 563, 571-72 (S.D.N.Y. 2009) (finding irreparable harm due to harm to reputation where "physicians would cease" giving new business to the plaintiff and existing customers "would begin seeking alternative" arrangements); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (finding irreparable harm where conduct would allow competitors to "lur[e] away the business of a number of [the plaintiff's] long-term . . . clients," and noting that "there is little guarantee that, should [the plaintiff] ultimately prevail in this action, these clients would return").

The same is true here.  Mr. Roglieri submitted a declaration pointing out the substantial disruption to Prime Capital's business caused by the involuntary bankruptcy proceeding that Compass improperly commenced.  (*See* ECF No. 43-13.)[12]  That harm has continued and worsened with the receivership.  Therefore, given the nature of the injury that receiverships inherently cause, Prime Capital has shown that it will suffer irreparable harm in the absence of a stay.

---

[12]      Mr. Roglieri's declaration was submitted in connection with Prime Capital's still-pending application for a bond and its potential damages under 11 U.S.C. § 303(i).  Even if the reputational harm here could be calculated, there is no similar redress for a wrongfully filed receivership.

Moreover, the receivership has interfered with, and could nullify, Prime Capital's arbitral rights. The Supreme Court has held that the denial of a <u>potential</u> right to arbitration creates such harm that the courts must enter a stay of proceedings when they have denied a motion to compel arbitration and there is an interlocutory appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023). Here, there is no question that Plaintiff and Prime Capital have agreed to arbitration, and that the receivership is materially impinging on Prime Capital's arbitral rights. Thus, *Coinbase* further demonstrates that the Court should grant a stay pending appeal.

### C.  Compass Would Not Suffer Substantial Injury if a Stay Were Issued

The issuance of a stay would not result in any cognizable harm to Compass. While Compass would no longer have Prime Capital's assets secured for future recovery on a money judgment, that does not constitute an injury (let alone a substantial injury) under the stay analysis because, as discussed above, the courts cannot use equitable remedies for such a purpose. Moreover, Compass could still seek money damages against Prime Capital and/or Berone. *See Nam*, 2023 WL 2456646, at *3 (holding that, because plaintiff sought only money damages, it "will not face substantial harm due to a stay of the trial while this interlocutory appeal is decided"); *Noel Pane v. City of Greenburgh*, 2012 WL 12886971, at *4 (S.D.N.Y. March 21, 2012) ("[Plaintiff] will be able to recover monetary damages as compensation for any injury that she can prove she suffered."); *Plummer v. Quinn*, 2008 WL 383507, at *1 (S.D.N.Y. Feb. 12, 2008) (staying case when money damages could compensate any harm).

### D.  A Stay Would Be in the Public Interest

As discussed above, the receivership directly threatens Prime Capital's arbitral rights. This is contrary to the strong public policy in favor of arbitration. *See supra*, 8 (discussing Supreme Court precedent). The issuance of a stay here would vindicate the public interest in arbitration by allowing Prime Capital to preserve its arbitral rights.

### III.     In the Alternative, the Court Should Grant a Temporary Stay Until the Court of Appeals Decides Prime Capital's Motion for a Stay

It is commonplace for courts to issue a temporary stay, even if they deny a stay pending appeal, to allow parties an opportunity to seek a stay from the Court of Appeals pursuant to Fed. R. App. P. 8(a). *See, e.g.*, *Srour*, 2023 WL 7091903, at *3 (granting temporary stay until decision by Second Circuit on motion for stay); *Bionpharma Inc. v. CoreRx, Inc*., 2022 WL 580767, at *6 (S.D.N.Y. Feb. 24, 2022) (same); *Bank of N.Y. Mellon v. Worth*, 2015 WL 1780719, at *5 (D. Conn. Apr. 20, 2015) (same); *Nesbitt*, 2012 WL 2033548, at *2 (granting temporary stay of receivership order to allow for appeal and noting that such stays are a "good practice endorsed by the Court of Appeals").  Therefore, in the event that the Court denies a stay pending appeal, Prime Capital respectfully requests that the Court enter a temporary stay of its January 24 Order until the Court of Appeals decides the stay issue.

### CONCLUSION

For the foregoing reasons, Prime Capital respectfully requests that the Court grant the Motion and stay the January 24 Order pending appeal or, in the alternative, that the Court temporarily stay the January 24 Order pending a ruling by the Court of Appeals on any motion to stay filed by Prime Capital pursuant to Fed. R. App. P. 8(a).

Dated: January 29, 2024

Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Pieter Van Tol*

Pieter Van Tol (Bar Roll No. #508405)
Chris Bryant (admitted *pro hac vice*)
Peter Bautz (application for *pro hac vice*
forthcoming)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com
peter.bautz@hoganlovell.com

*Attorneys for Defendant Prime Capital*
*Ventures, LLC*