UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COMPASS-CHARLOTTE 1031, LLC,

                           Plaintiff,              Case No.: 1:24-cv-55 (MAD/DJS)

    -against-

PRIME CAPITAL VENTURES, LLC           **VERIFIED THIRD-PARTY**
BERONE CAPITAL FUND, LP                 **COMPLAINT**
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP    (JURY DEMANDED)
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                          Defendants.

_____

PAUL A. LEVINE, AS RECEIVER OF PRIME CAPITAL
VENTURES, LLC,

                  Third-Party Plaintiff,

    -against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
A. HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC and FUPME,
LLC,

                  Third-Party Defendants,

_____

      Plaintiff Paul A. Levine, as Receiver of Prime Capital Ventures, LLC, through his

attorneys, Lemery Greisler LLC, for its Third-Party Complaint against Third-Party Defendants

Kris D. Roglieri ("K. Roglieri"), Tina M. Roglieri ("T. Roglieri"), Kimberly A. Humphrey a/k/a

Kimmy Humphrey ("Kimmy Humphrey"), Prime Commercial Lending, LLC ("Prime

Commercial"), Commercial Capital Training Group, LLC ("CCTG"), The Finance Marketing

Group ("FMG"), National Alliance of Commercial Loan Brokers ("NACLB") and FUPME, LLC ("FUPME") (collectively the "Third-Party Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.      This case involves what appears to be a multi-state fraud scheme with victims holding claims for well over $50 million for return of deposits, which were paid and then not returned.

2.      Pursuant to Memorandum-Decision and Order signed by this Court on January 24, 2024, Paul A. Levine, Esq. of the law firm Lemery Greisler LLC, was appointed to serve as the permanent receiver ("Receiver") for the Defendants Prime Capital Ventures, LLC ("Prime") and Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC (collectively these entities are called "Berone Capital") (collectively the "Defendants") and shall have the following powers and duties:

  a.  The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants.

  b.  The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located.

  c.  The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets.

  d.  The Receiver shall have the duties and responsibilities of a receiver under law, shall answerable and account to the Court for the Receiver's activities, and shall maintain a detailed accounting of his activities, including without limitation, any and all funds collected and used for any purpose.

  e.  The Receiver shall not be liable for any debts or liabilities of Defendants.

3.      The Receiver herein files this Third-Party Complaint to join additional parties to this action as Third-Party Defendants as these additional parties have been involved with, participated in, benefited from, received or may possess funds placed on deposit with Prime that were earmarked as ICA deposits and/or possess assets of Prime, and their addition is further needed to ascertain the amount and location of Defendants' assets so that they can be returned to Plaintiff and other creditors of Prime.

4.      Their participation as Third-Party Defendants is also needed as the Receiver believes causes of action exist in favor of Prime against them to avoid transfers of Prime's assets and to otherwise recover assets and/or monies.

## PARTIES

5.      Prime Capital Ventures, LLC is a Delaware Limited Liability Company having its principal place of business located at 66 Pearl Street, Albany, New York 12207.

6.      Defendant K. Roglieri is, upon information and belief, a domiciliary of the State of New York, and resides at 40 North Road, Queensbury, New York 12804.

7.      Upon information and belief, K. Roglieri is the sole member of Prime.

8.      Defendant T. Roglieri is, upon information and belief, a domiciliary of the State of New York, and resides at 40 North Road, Queensbury, New York 12804.

9.      Defendant Kimmy Humphrey is, upon information and belief, a domiciliary of the Commonwealth of Virginia, and resides at 600 Linkhorn Drive, Virginia Beach, Virginia 23451.

10.      Defendant Prime Commercial is, upon information and belief, a New York Limited Liability Company, having its principal place of business located at 66 Pearl Street, 10th Floor, Albany, New York 12207.

11.     Defendant CCTG is, upon information and belief, a New York Limited Liability Company, having its principal place of business located at 66 Pearl Street, 10th Floor, Albany, New York 12207.

12.     Defendant FMG is, upon information and belief, a New York Limited Liability Company, having its principal place of business located at 66 Pearl Street, 10th Floor, Albany, New York 12207.

13.     Defendant NACLB is, upon information and belief, a New York Limited Liability Company, having its principal place of business located at 66 Pearl Street, 10th Floor, Albany, New York 12207

14.     Defendant FUPME is, upon information and belief, a New York Limited Liability Company, having its principal place of business located at 66 Pearl Street, 10th Floor, Albany, New York 12207.

## **FACTUAL ALLEGATIONS**

15.     K. Roglieri is the Chief Executive Officer ("CEO") of Prime Commercial, and CCTG, as well as a founder and member of NACLB and the sole member and manager of FUPME (*see* Doc. 1 at ¶¶ 33-34; *see also* Docs. 1-4, 1-5 and 1-36).

16.     According to the New York Secretary of State, Prime Commercial was formed as a New York limited liability company on July 26, 2006.

17.     Prime Commercial is a direct lender that provides capital for commercial real estate finance as well as to small, medium and large size businesses through its syndication of relationships with banks, hedge funds, life companies and private investors.

18.     Prime was formed as a Delaware limited liability company on December 14, 2021 (*see* Doc. 1-6).

19.     K. Roglieri informed the Receiver that he is the sole manager of Prime and acts as its CEO.

20.     K. Roglieri also informed the Receiver that Prime has no employees, and its business associates are all independent contractors.

21.     Prime is a dedicated fund related to Prime Commercial and was allegedly created to provide commercial real estate financing for large commercial real estate, energy and infrastructure projects nationally and internationally.

22.     Prime provides financing to third parties in the form of lines of credit.

23.     To provide these lines of credit, Prime requires borrowers to provide 20% cash deposit upfront based on the total project cost (called an "interest credit account" or "ICA deposit"), which Prime holds "as prepaid interest throughout the term of the loan" and as interest payments became due Prime deducts it from the ICA deposit (*see* Doc. 1-20).

### Summary of Known Missing IDA Deposits

24.     Based on a review of the documents and information obtained to date in this matter, the Receiver has discovered that since being operational Prime has entered into numerous agreements with third parties to provide lines of credit and in doing so has received millions of dollars in various ICA deposits, however, Prime has failed to fund a significant  portion of those loans and has also failed to return the ICA deposits on those very same loans.

25.     Below, in estimated chronological order, is a summary of the some of the <u>known</u> instances where Prime has agreed to provide lines of credit and received ICA deposits for the lines of credit but has failed to fund the loans or return the full ICA deposits.[1]

---

[1] These summaries are just some of the known instances, however, the Receiver believes the total amount is much higher.

**Onward Partners, LLC ("Onward") - $4,000,000 Missing**.

26.     Per Federal Court filings, in September 2022, Prime entered into a Business Expansion Line of Credit Agreement with Onward whereby Prime was required to provide a $107 million line of credit (*see* Doc. 1-26).

27.     On September 22, 2022 Onward and its affiliate wired $20 million to Prime to establish an interest credit account (called an "ICA Payment" under their agreement), which was to be used solely to pay interest payments once Prime had extended the line of credit.

28.     Prime was required to make the first advance on the line of credit to Onward by February 9, 2023, but failed to do so, and has failed to do so since then.

29.     Onward demanded its deposit back but has never received the full amount.

30.     Onward to file a federal court lawsuit against Prime and Roglieri in the United States District Court for the District of Utah on November 13, 2023 alleging, among other things, fraud, conversion, unjust enrichment and piercing the corporate veil (*In re Onward Partners, LLC v. Prime Capital Ventures, LLC, 23-cv-833*).

31.     According to the Complaint filed in that case, Onward was able to get Prime to refund $16 million of its ICA Payment, but that Prime still had not refunded the remaining $4 million balance of their ICA Payment.

32.     According to the Onward case docket, K. Roglieri's response to the Onward Complaint was due on December 6, 2023 and Onward's response was due on December 12, 2023. By failing to timely respond, K. Roglieri and Prime have admitted the allegations in the Onward Complaint, including the allegations about their fraud and conversion (*see* Default Certificate against K. Roglieri and Onward Motion for Default Judgment, annexed as Exhibit "A" hereto).[2]

---

[2] Upon information and belief, Prime has not returned the remaining $4 million of their ICA Payment, however, Onward , for some reason, is only seeking a default judgment for $3 million.

**B&R Acquisition Partners - $4,300,000 Missing.**

33.     Upon information and belief, B&R Acquisition Partners ("B&R") commenced a JAMS arbitration Prime in August 2023, and B&R has alleged that it made a $4,300,000 ICA payment on November 30, 2022 for a purported $22,575,000 loan, but that the loan was never made and the deposit never returned.

34.     Upon information and belief, Prime has defaulted in that matter.

**526 Murfreesboro, LLC - $4,312,500 Missing.**

35.     Pursuant to a Declaration of Daniel Cosgrove (the "Cosgrove Declaration") filed in *In re Prime Capital Ventures, LLC, 23-11302* (Bankr. N.D.N.Y.) Dkt. No. 4, Exh. N at ¶¶ 4-6, on April 6, 2023, 526 Murfreesboro, LLC ("526 Mulfreesboro") and Prime entered into a Development Line of Credit Agreement in the maximum amount of $18,112,500 for the purpose of converting a motel into a boutique hotel in Nashville, Tennessee, and as a condition to obtaining the loan from Prime, the line of credit agreement required 526 Mulfreesboro to create an Interest Credit Account by depositing $4,312,500 into Prime's account.

36.     On April 7, 2023, 526 Murfreesboro wired $4,312,500 into Prime's specified bank account. Per the Cosgrove Declaration, Prime did not fund the loan and 526 Murfreesboro has exercised its right to terminate the line of credit and demand return of their Interest Credit Account deposit.

37.     According to the Cosgrove Declaration, Prime has not returned their Interest Credit Account deposit of $4,312,500.

**HCW Biologics Inc. - $5,250,000 Missing.**

38.     Based on a publicly available reports that  HCW Biologics Inc. ("HCW") filed with the United Stated Securities and Exchange Commission ("SEC"), HCW and Prime entered into a

Development Line of Credit Agreement dated April 21, 2023 in the principal amount of $26,250,000, and pursuant to that line of credit HCW was required to wire Prime $5,250,000 to serve as a deposit for the payment of the interest under their agreement (*see* HCW SEC Reports, collectively annexed as Exhibit "B" hereto).

39.     Prime never funded this line of credit and HCW exercised its right to terminate the line of credit agreement.

40.     Upon information and belief, Prime has not returned HCW's $5,250,000 deposit.

**Compass-Charlotte 1031, LLC ("Compass-Charlotte") - $15,902,250 Missing.**

41.     As alleged in the Plaintiff's Complaint in this action, after Compass-Charlotte decided to obtain a loan from Prime, Kimmy Humphrey, the Executive Vice President of Prime (and a key associate of K. Roglieri) traveled to Charlotte, North Carolina and met in person with Compass-Charlotte officers, including touring the site for the multi-family build.

42.     On March 27, 2023, Prime represented that it had the ability to fund a $75 million loan in the form of a "Commitment to Fund Letter." Prime promised to fund $75,725,000 "via a non-recourse, asset-backed Line of Credit" with a term of 60 months and an interest rate of 7.5%. (*see* Doc. 1-28).

43.     Compass-Charlotte (as borrower) then entered into an April 24, 2023 Development Line of Credit with Prime (as lender), whereby Prime was to make a loan for $79,511,250 (the "Compass Prime Agreement") (*see* Doc. 1-29).

44.     The Compass Prime Agreement was signed by K. Roglieri as CEO of Prime.

45.     Pursuant to the terms of the Compass Prime Agreement, Compass-Charlotte wired the sum of $15,902,250 to Prime as an "ICA Payment" on April 27, 2023 to Prime's account at Citi Bank N.A., 388 Greenwich Street, New York, New York (the "Compass Deposit"). The

Compass Deposit was to be held in an "Interest Credit Account" held by Prime. The Compass Prime Agreement specifically provided that "All credits to the Interest Credit Account shall be used . . . for purposes of payment on interest payable on the Advances as and when such interest payments are due and payable" (*see* Doc. 1-29 at Section 3.6).

46.     Prime received the Compass Deposit in its Citi Bank account.

47.     Since April 27, 2023, Prime has had the Compass Deposit, but never advanced any funds or provided a line of credit.  On October 27, 2023, Compass-Charlotte demanded the return of its deposit.

48.     Compass-Charlotte also demanded to know where the Compass Deposit was held and for K. Roglieri, Kimmy Humphrey, and Prime to provide bank account statements showing where the Compass Deposit was held. K. Roglieri and Kimmy Humphrey told Compass-Charlotte that the Compass Deposit was not in the Citi Bank account but was held at the Royal Bank of Canada ("RBC") with a hedge fund and they just needed to get the funds released from a line of credit.  Compass-Charlotte asked for a contact at RBC to confirm the Compass Deposit was there, but Prime refused to provide that information.

49.     Prime has never returned the Compass Deposit.

**Camshaft CRE 1, LLC - $12,400,000 Missing.**

50.     Pursuant to a Complaint filed in the case of *In re Camshaft CRE 1, LLC v. Prime Capital Ventures, LLC, 2023-023173-CA-01* (Circuit Court, Miami-Dade County, Florida), that was filed on September 15, 2023, Camshaft CRE 1, LLC ("Camshaft") made an ICA Payment to Prime on May 12, 2023 in the amount of $13,400,000, and Prime failed to return the deposit (*see* Doc. 1-31).

51.     Prime failed to respond to the Camshaft complaint and on May 19, 2023, Camshaft filed a Motion for Entry of Judgment against Prime in the amount of $12,400,000 and "requiring specific performance from Prime to return the ICA Payment in the sum of Twelve Million Four Hundred Thousand Dollars ($12,400,000.00) to Camshaft within seven (7) calendar days of the issuance of this Final Judgment" (*see* Doc. 1-32).

52.     Accordingly, it appears that Camshaft only got $1 million back of the alleged $13.4 million they provided, and have not been refunded the remaining $12.4 million.

**Newlight Technologies, Inc. - $2,500,000 Missing.**

53.     On December 19, 2023, Compass-Charlotte and other Prime creditors filed an involuntary bankruptcy petition against Prime (*In re Prime Capital Ventures, LLC, 23-11302* (Bankr. N.D.N.Y.) (the "Prime Bankruptcy Case"), which was eventually dismissed upon motion of the petitioning creditors on January 9, 2024.

54.     Pursuant to a Declaration of Michael Collins filed by Newlight Technologies, Inc. ("Newlight") in the Prime Bankruptcy Case, Newlight asserted that on May 23, 2023 (the "Collins Declaration"), Newlight entered into a line of credit agreement with Prime, which was signed by K. Roglieri, in the principal amount of $13,125,000 (*see* Collins Declaration, annexed as Exhibit "C" hereto).

55.     According to the Declaration, Newlight wired $2,500,000 to Prime as an ICA Payment per their agreement, which was to be held by Prime in an "Interest Credit Account" and to be used only "for the purpose of payment of interest payable on the Advances as and when such interest payments are due and payable" under the line of credit agreement.

56.     Prime did not advance any funds to Newlight under the terms of their line of credit agreement and to date, Prime has failed to return Newlight's deposit, despite repeated demand.

**ER Tennessee LLC - $15,000,000 Missing.**

57.     Pursuant to a Complaint filed in the case of *ER Tennessee LLC v. Prime Capital Ventures, LLC and Berone Capital LLC, 650231/2024* (New York County Supreme Court), that was filed on January 16, 2024, ER Tennessee LLC ("ER Tennessee") made an advance of $15,000,000 to Prime pursuant to an Intercreditor Agreement dated August 25, 2023, in furtherance of a Business Expansion Line of Credit Agreement in the total amount of $46,350,000 (*see* ER Tennessee Complaint, annexed as Exhibit "D" hereto).

58.     According to that Complaint, ER Tennessee's $15,000,000 deposit was to be deposited in a locked pledge account at the RBC and segregated from all other accounts and funds deposited therein and only to be used for the purpose of securing the capital for the line of credit.

59.     ER Tennessee alleges that only five days after its advances were deposited in the RBC account, that $7,000,000 were transferred to an account at Farmers State Bank and that in October 2023, $6,000,000 were advanced from RBC under a Credit Access Line, but that money was never paid to ER Tennessee and that Prime has not advanced funds under the terms of its line of credit.

60.     ER Tennessee is seeking to recover its $15,000,000 advance, plus attorney's fees and expenses.

**Motos America Inc.  - $3,000,000 Missing.**

61.     The Receiver was contacted by Motos America Inc. ("Motos") and made aware of a Revolving Business Expansion Line of Credit Agreement dated September 21, 2023 between Motos and Prime in the principal amount of $15,000,000. In accordance with that line of credit agreement, Motos made an ICA deposit to Prime in the amount of $3,000,000.

62.     Motos has advised that Prime never funded that line of credit and as a result, Motos has formally terminated the line of credit pursuant to its terms and requested a full refund of its ICA deposit.

63.     Upon information and belief, Prime has not returned Moto's ICA deposit of $3 million.

**1800 Park Avenue LLC - $5,000,000 Missing.**

64.     Pursuant to the Declaration of Jeffery Houston filed in this action (Doc. 23), 1800 Park Avenue LLC ("1800 Park") approached Prime in October 2023 regarding obtaining a construction loan request to fund a line of credit for over $105 million.

65.     On October 20, 2023, 1800 Park received a "Terms and Contingent Letter of Intent" with Prime for that line of credit, which 1800 Park singed on October 25, 2023, and per that term sheet, 1800 Park was required to fund an ICA deposit to Prime in the amount of $26,277,562.

66.     Prime and 1800 Park then both signed a Commitment Fund Letter dated December 12, 2023, wherein Prime agreed to fund a line of credit in the amount of $98,905,467.

67.     On December 19, 2023, which was after Prime's Bankruptcy Case was commenced, 1800 Park was informed by a representative of Prime Commercial that if they did not make a soft close happen that week, they may lose the deal.

68.     Thereafter, 1800 Park and K. Roglieri, on behalf of Prime Commercial, entered into a Deposit Agreement on December 22, 2023, wherein 1800 Park agreed to provide a $5 million deposit and Prime Commercial agreed to hold the deposit in a separate and distinct account for 1800 Park to later use in a loan transaction, and that the deposit was to be held as a trust fund and not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party.

69.     Per the Deposit Agreement, 1800 Park wired $5,000,000 to the KeyBank account provided by Kimmy Humphrey.

70.     After that, 1800 Park learned of the Prime Bankruptcy Case and demanded return of its $5 million deposit.

71.     Here is a table with a summary of the claims above showing that presently there are **$63,364,750** in the known missing ICA deposits from Prime borrowers:

| Third Party Borrower | ICA Date | ICA Deposit | Net Missing ICA Deposit |
|---|---|---|---|
| Onward | 9/22/2022 | $4,000,000 | $4,000,000 |
| B&R | 11/30/2022 | $4,300,000 | $4,300,000 |
| 526 Mulfreesboro | 4/7/2023 | $4,312,500 | $4,312,500 |
| HCW | 4/21/2023 | $5,250,000 | $5,250,000 |
| Compass-Charlotte | 4/27/2023 | $15,902,250 | $15,902,250 |
| Camshaft | 5/12/2023 | $13,400,000 | $12,400,000 |
| Newlight | 5/23/2023 | $2,500,000 | $2,500,000 |
| ER Tennessee | 8/25/2023 | $15,000,000 | $15,000,000 |
| Motos | 9/21/2023 | $3,000,000 | $3,000,000 |
| 1800 Park | 12/22/2023 | $5,000,000 | $5,000,000 |

**Total - $63,364,750**

**Summary of Known Uses of Missing ICA Deposits**

72.     Under its business model, Prime was obligated to use ICA deposits for interest payments on loans to be made by Prime (*see* Doc. 1-39 § 3.6).

73.     Through the Plaintiff's subpoenas in this action, the Receiver has received evidence that a significant portion of the ICA deposits deposited into Prime's accounts were not used exclusively for such purposes.

74.     Attached as Exhibit "E" hereto are preliminary cursory spreadsheets prepared from the KeyBank and Citibank statements obtained to date showing the transfers from Prime's accounts at KeyBank and Citibank to the accounts of K. Roglieri, T. Roglieri, Prime Commercial, CCTG and NACLB.

75.     A review of these spreadsheets shows a total of **$16,396,702.63** was transferred to the following parties from Prime's accounts:

    a. K. Roglieri's and T. Roglieri's personal account (the "Roglieri Account"):

| | |
|---|---|
| Transfers out to Roglieri Account | $6,580,683.93 |
| Transfers in from Roglieri Account | $670,000.00 |
| **Net to Roglieri Account** | **$5,910,683.93** |

    b. CCTG's Account:

| | |
|---|---|
| Transfers out to CCTG Account | $5,111,625.70 |
| Transfers in from CCTG Account | $288,000.00 |
| **Net to CCTG** | **$4,823,625.70** |

    c. Prime Commercial's Account (the "PC Account"):

| | |
|---|---|
| Transfers out to PC Account | $5,632,893.00 |
| Transfers in from PC Account | $9,500.00 |
| **Net to PC Account** | **$5,642,393.00** |

    d. NACLB's Account:

| | |
|---|---|
| Transfers out to NACLB Account | $20,000.00 |

**Total - $16,396,702.63**

76.     Additionally, the Prime accounts show that there has also been a significant dissipation of Prime's assets as a result of K. Roglieri making substantial luxury purchases with Prime funds related to vehicles, watches, jewelry, antiques and private plane charters.

77.     Based on a review of the KeyBank and CitiBank account statements obtained to date, below is a preliminary summary of some of the identifiable luxury purchases made with Prime funds (once more of the purchases are able to be discerned, these totals will only go up):

**Purchases or Expenditures that Appear related to Vehicles:[3]**

| DATE | AMOUNT OUT | AMOUNT IN | BANK | PAYEE |
|---|---|---|---|---|
| 10/16/22 | $148,688.79 | | KeyBank | AI Design |
| 11/30/22 | $218,447.96 | | CitiBank | Cars USA Shipping |
| 12/9/22 | $88,247.39 | | CitiBank | Capital Ford Inc. |

---

[3] K. Roglieri is a collector of luxury sports cars. A detailed online video showing the many cars in his collection can be viewed here: www.youtube.com/watch?v=Fm_p8upe_S8 and some of his cars appear to be individually listed at https://exclusivecarregistry.com/collection/teamloansharks/cars.

| | | | | |
|---|---|---|---|---|
| **12/12/22** | $2,344,454.00[4] | | CitiBank | Scott Oliver Law<br>(Purchase of Mercedez Benz AMG) |
| **12/15/22** | $10,705.48 | | KeyBank | AI Design |
| **12/27/22** | $16,500.00 | | KeyBank | RENNtech Inc. |
| **1/12/23** | $129,241.89 | | CitiBank | AI Design |
| **2/3/23** | $108,001.77 | | KeyBank | AI Design |
| **2/16/23** | $97,537.50 | | KeyBank | AI Design |
| **2/28/23** | $3,811,000.00 | | CitiBank | Bonhams Butterfields Trust |
| **3/13/23** | $93,544.34 | | CitiBank | AI Design |
| **4/25/23** | $3,500.00 | | KeyBank | Rockland Auto |
| **4/27/23** | $1,000,000.00 | | CitiBank | RM Auctions Inc.<br>(RM Sotheby's) |
| **5/3/23** | $306,800.89 | | CitiBank | AI Design |
| **5/15/23** | $1,000,000.00 | | CitiBank | RM Auctions Inc.<br>(RM Sotheby's) |
| **5/16/23** | $7,500.00 | | KeyBank | Rockland Auto |
| **5/16/23** | $35,251.00 | | CitiBank | CFR Classic LLC |
| **6/6/23** | $62,456.97 | | KeyBank | AI Design |
| **6/7/23** | $304,744.49 | | KeyBank | AI Design |
| **6/27/23** | $46,342.66 | | KeyBank | AI Design |
| **6/28/23** | $203,689.89 | | KeyBank | AI Design |
| **8/25/23** | $228,630.21 | | KeyBank | AI Design |
| **9/13/23** | | $778,364.62 | KeyBank | RM Auctions Inc.<br>(RM Sotheby's) |
| **9/15/23** | $20,000.00 | | KeyBank | Hunter Motorsports |
| **9/18/23** | $37,780.89 | | KeyBank | AI Design |
| **10/23/23** | $77,782.24 | | KeyBank | RENNtech Inc. |
| **10/24/23** | $449,672.93 | | KeyBank | Keeler Motor Car Co |
| **11/2/23** | $91,206.00 | | KeyBank | Keeler Motor Car Co |
| **TOTAL:** | **$10,941,727.29** | **$778,364.62** | | |

(Schedule includes hyperlinks to identified payees)

78.    Thus, from October 16, 2022 through November 2, 2023, at least $10,163,362.67

was spent towards luxury vehicles.[5]

---

[4] This purchase relates to the lawsuit that FUPME filed in Albany County Supreme Court on February 17, 2023, related to K. Roglieri's attempt to buy a Mercedes-Benz AMG One Hypercar, Production Slot #197 for **$2,344,440** (*see* Doc. 1-36 at ¶ 11).

[5] As acknowledged in a YouTube video that can be found here: https://www.youtube.com/watch?v=ItUK_zG7smk - K. Roglieri's Instagram name/handle/moniker is @teamloansharks. Annexed as Exhibit "F" hereto is a publicly available article related to the work that K. Roglieri had AI Design perform on his Maserati MC12 for his/teamloanshark's use in the 2023 Gold Rush Rally, which relates to many of the vehicle charges noted in the summary.

{LG 00724227 4 }

**Purchases Related to Luxury Watches, Jewelry and Antiques:**

| DATE | AMOUNT OUT | AMOUNT IN | BANK | PAYEE |
|---|---|---|---|---|
| 6/22/22 | $95,810.00 | | KeyBank | Wrist Aficionado |
| 8/29/22 | $32,122.05 | | KeyBank | 1st Dibs |
| 11/18/22 | $21,688.29 | | KeyBank | 1st Dibs |
| 11/18/22 | $90,000.00 | | KeyBank | Cedric Dupont |
| 11/28/22 | $25,200.00 | | KeyBank | Cedric Dupont |
| 11/29/22 | $7,700.00 | | KeyBank | Cedric Dupont |
| 11/30/22 | $23,200.00 | | KeyBank | Cedric Dupont |
| 12/7/22 | $124,604.80 | | KeyBank | 1st Dibs |
| 12/12/22 | $85,000.00 | | KeyBank | Prive Porter |
| 12/21/22 | $318,000.00 | | CitiBank | Wrist Aficionado |
| 12/23/22 | $19,000.00 | | KeyBank | Cedric Dupont |
| 1/3/23 | $50,000.00 | | CitiBank | Wrist Aficionado |
| 1/9/23 | $2,225,000.00 | | CitiBank | Platinum Times LLC |
| 1/17/23 | $670,000.00 | | KeyBank | Timepiece Trading |
| 1/18/23 | $121,700.00 | | KeyBank | Giganti and Giganti |
| 1/18/23 | $66,300.00 | | KeyBank | Wrist Aficionado |
| 1/30/23 | $260,000.00 | | KeyBank | Luxury Bazaar |
| 2/14/23 | $88,000.00 | | KeyBank | Wrist Aficionado |
| 3/20/23 | $60,480.00 | | KeyBank | Richemont North |
| TOTAL: | $4,383,805.14 | | | |

(Schedule includes hyperlinks to identified payees)

79.     Thus, from June 22, 2022 through March 20, 2023, at least $4,383,805.14 was spent towards luxury watches, jewelry, antiques.[6]

**Purchases for Private Plane Charters with XO Global:**

| DATE | AMOUNT OUT | AMOUNT IN | BANK |
|---|---|---|---|
| 5/16/23 | $81,820.00 | | CitiBank |
| 5/25/23 | $196,500.00 | | CitiBank |
| 6/3/23 | $50,000.00 | | KeyBank |
| 6/3/23 | $50,000.00 | | KeyBank |
| 6/6/23 | $64,238.00 | | KeyBank |
| 8/4/23 | $31,600.00 | | KeyBank |
| 8/15/23 | $42,818.00 | | KeyBank |
| 9/15/23 | $28,628.00 | | KeyBank |
| 9/22/23 | $151,000.00 | | KeyBank |

---

[6] Annexed as Exhibit "G" hereto is copy of the invoice and communications from Platinum Times Company received in response to a subpoena in this action showing that K. Roglieri purchased a RM 52-10 Tourbillion Skull watch on January 3, 2023 for **$2,275,000.00** with Prime funds. Additional discovery will produce further substantiation.

{LG 00724227 4 }

| 10/10/23 | $37,900.00 | | KeyBank |
| 10/12/23 | $100,628.00 | | KeyBank |
| **TOTAL:** | **$835,132.00** | | |

80.     Thus, from May 16, 2023 through October 12, 2023, at least $835,132.00 of Prime funds was spent on private plane charters with XO Global.

81.     Additionally, during the Receiver's meeting with K. Roglieri, he confirmed that Prime purchased the luxury home located at 600 Linkhorn Drive, Virginia Beach, Virginia (the "Virginia Beach House"). According to the title documents obtained for the Virginia Beach House, the contract price was $3,750,000, and the sale was closed on or about January 31, 2023 (*see* Report of Title, annexed as Exhibit "H" hereto).

82.     Per the Receiver's conversation with K. Roglieri, the house was purchased as an investment and that there was no mortgage (i.e. it was purchased with cash). K. Roglieri also stated that the taxes and insurance were paid current, but the Receiver has been provided information showing that the taxes are, in fact, in arrears in the amount of $38,905.26.

83.     The Receiver was advised by K. Roglieri that Kimmy Humphrey lives in the house and pays the utilities, but does not pay rent or the insurance.

84.     Therefore, from roughly March 11, 2022 through December 22, 2023, at least **$16,396,702.63** of Prime funds were transferred to the accounts of K. Roglieri, T. Roglieri, Prime Commercial, CCTG and NACLB, and from roughly June 22, 2022 through November 2, 2023, K. Roglieri purchased at least **$15,352,299.81** of luxury vehicles, watches, jewelry, antiques and private plane travel with Prime funds – which results in a current total of **$31,749,002.44** of known and identifiable Prime assets that have been misappropriated, with the number to only increase once accounts and information are forensically analyzed.

**FIRST CAUSE OF ACTION**
**Fraudulent Conveyance: Debtor and Creditor Law § 273 & § 276 against K. Roglieri,**
**T. Roglieri, Kimmy Humphrey, Prime Commercial, CCTG, NACLB and FUPME.**

85.     The allegations set forth in the paragraphs above are re-alleged and incorporated herein by reference.

86.     K. Roglieri transferred Prime's money and assets to himself and the rest of the Third-Party Defendants without fair consideration.

87.     At the time of the transfers, Prime was obligated to hold and/or maintain ICA deposits that third-party borrowers entrusted to Prime.

88.     The Third-Party Defendants each participated in or benefitted from the transfers in a manner that left Prime with unreasonably small capital necessary to meet its debt obligations to third-party borrowers, including, but not limited to, Compass-Charlotte, Newlight, 526 Murfreesboro, Camshaft, B&R, Onward, ER Tennessee, HCW and Motos.

89.     The Third-Party Defendants were each beneficiaries from such transfers.

90.     Upon information and belief, the Third-Party Defendants made and received the transfers with the actual intent to hinder, delay and/or defraud Prime's third-party borrowers from collecting their ICA deposits.

91.     The third-party borrowers' ICA deposits would have been available to satisfy the any line of credit agreements made with third-parties.

92.     As a result, the conveyances of Prime's assets were fraudulent conveyances.

93.     Each of the Third-Party Defendants herein are liable by virtue of the fraudulent conveyances in an amount not less than the amount each received in connection with the transfers they received from Prime until Prime and the third-party borrowers are fully compensated for their misappropriated ICA deposits.

94.      Pursuant to Debtor and Creditor Law § 276, Receiver seeks the following relief on behalf of Prime: (a) avoidance of the fraudulent transfers; (b) attaching the proceeds of the funds transferred; and (c) a full and complete accounting of all monies moved out of Prime's accounts.

95.      Pursuant to Debtor and Creditor Law § 276, Plaintiff further requests that the Court allow him to levy and execute upon the amount of transferred funds from Prime now in K. Roglieri's T. Roglieri's, Kimmy Humphrey's, Prime Commercial's, CCTG's, NACLB's, and FUPME's possession.

## SECOND CAUSE OF ACTION
**Breach of Fiduciary Duty/Theft of Corporate Opportunity/Conversion of Corporate Assets/ Waste - against K. Roglieri and Kimmy Humphrey**

96.      The allegations set forth in the paragraphs above are re-alleged and incorporated herein by reference.

97.      K. Roglieri is the manager and sole member of Prime.

98.      Kimmy Humphrey is the Executive Vice President of Prime.

99.      K. Roglieri and Kimmy Humphrey by reason of their positions as sole member and Executive Vice President of Prime, and because of their ability to control the business and corporate affairs of Prime, owed Prime the fiduciary obligations of good faith, trust, loyalty and due care, and were and are required to use their utmost ability to control and manage Prime in a fair, just, honest and equitable manner.

100.      K. Roglieri and Kimmy Humphrey were and are required to act in furtherance of the best interests of Prime and not in furtherance of their personal interest or benefit.

101.      K. Roglieri and Kimmy Humphrey owe Prime the fiduciary duty to exercise good faith and diligence in the administration of the affairs of Prime and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

102.     K. Roglieri and Kimmy Humphrey have breached their fiduciary duties as a member and Executive Vice President of Prime, committed conversion of corporate assets, have stolen corporate opportunities and committed waste of corporate assets.

103.     K. Roglieri and Kimmy Humphrey also owed a duty to each third-party borrower that obtained a line of credit with Prime and submitted an ICA deposit to Prime, to maintain that ICA deposit pursuant to the purposes for which they made the deposit.

104.     K. Roglieri and Kimmy Humphrey breached the duties owed to each third-party borrower whose ICA deposit they utilized for their own personal use.

105.     As a direct and proximate result of K. Roglieri's and Kimmy Humphrey's breaches of fiduciary duties, Prime has sustained damages.

106.     K. Roglieri and Kimmy Humphrey are therefore liable for their actions to Prime for breach of fiduciary duty, theft of corporate opportunity and conversion of corporate assets in and amount to be determined at trial.

107.     Due to the willful, wanton and criminal nature of K. Roglieri's and Kimmy Humphrey's acts, conducted without any regard to Prime's or third-party borrowers' rights, Prime is entitled to punitive damages in an amount which shall be proven at trial.

108.     Moreover, without a preliminary and permanent injunction enjoining K. Roglieri and Kimmy Humphrey from their unlawful acts, Prime will incur an irreparable injury for which there is no adequate remedy at law.

### THIRD CAUSE OF ACTION
**(Piercing the Corporate Veil – K. Roglieri)**

109.     Prime repeats and incorporates by reference the preceding allegations of this Complaint.

110.     Prime is a one-man legal entity, whose sole member and owner is K. Roglieri.

{LG 00724227 4 }

111.    As such, K. Roglieri exercises complete control over the operations of Prime.

112.    Although Prime represents itself as having significant assets – at least sufficient to publicly assert that it has a program to fund $50 million to over $5 billion – in reality Prime is significantly undercapitalized, and used as a façade through which funds are acquired, to be invested or used for K. Roglieri's exclusive benefit.

113.    As described above, K. Ruglieri personally perpetrated the fraudulent scheme to obtain the use and benefit of the funds deposited by third-party borrowers to make ICA deposits.

114.    Upon information and belief, based upon the foregoing, it is reasonable to assume that Prime does not have sufficient assets to pay its liabilities.

115.    Upon information and belief, K. Roglieri controlled Prime to such a degree as to render it a mere agent or instrumentality of K. Roglieri.

116.    Upon information and belief, K. Roglieri exercised his total control over Prime to orchestrate and instrument the fraud and fraudulent concealment set forth herein.

117.    In this case, the observance of Prime's corporate form, as an entity distinct from K. Roglieri, would sanction a fraud, promote injustice, and yield an inequitable result such that a court in equity should intervene.

118.    By reason of the foregoing, the Court in equity should pierce the corporate veil and award judgment in favor of Prime and against K. Roglieri for an amount to be determined by the Court.

**WHEREFORE**, Paul A. Levine, as Receiver of Prime Capital Ventures LLC respectfully requests judgment against the Third-Party Defendants as follows:

A.    On its the First Cause of Action, for (1) judgment against Third-Party Defendants for: (a) avoidance of the fraudulent transfers; (b) attaching the proceeds of the funds transferred;

(c) a full and complete accounting of all monies moved out of Prime's accounts; and (2) judgment against the Third-Party Defendants levying execution on the transferred funds from Prime now in the Third-Party Defendants' possession;

B.       On the Second Cause of Action, judgment on behalf of Prime and against K. Roglieri and Kimmy Humphrey for an accounting and a preliminary and permanent injunction: (1) enjoining K. Roglieri and Kimmy Humphrey from diverting and commingling Prime assets; (2) enjoining K. Roglieri and Kimmy Humphrey from using Prime's money or assets to enrich himself; and (3) enjoining K. Roglieri and Kimmy Humphrey from acting as a manager or Executive Vice President of Prime and appointing Receiver as sole manager of Prime;

C.       On the Third Cause of Action, in equity should pierce the corporate veil and award judgment in favor of Prime and against K. Roglieri for an amount to be determined by the Court;

D.       For trial by jury on all issues so triable; and

E.       Grant Paul A. Levine, Esq. as Receiver of Prime and Third-Party Plaintiff, such other and further relief as the Court deems just and proper.

DATED:       January 27, 2024
             Albany, New York                   LEMERY GREISLER LLC


                                                _____
                                                Paul A. Levine, Esq.
                                                As Receiver for Third-Party Plaintiff
                                                Prime Capital Ventures, LLC
                                                677 Broadway, 8th Floor
                                                Albany, New York 12207
                                                (518) 433-8800
                                                plevine@lemerygreisler.com

## <u>VERIFICATION</u>

**PAUL A. LEVINE, ESQ.,** an attorney duly admitted to practice law before the Courts of the State of New York, hereby declared under the penalties of perjury that:

1. I am the Permanent Receiver of Prime Capital Ventures LLC, the Third-Plaintiff in this action and, as such, am authorized to provide this verification.

2. I have read the foregoing and attached Third-Party Verified Complaint, and know the contents thereof to be true except as to the matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

3. The grounds of my belief as to the matters stated upon information and belief are based on my involvement in this matter and/or based upon publicly filed court pleadings in the Prime Bankruptcy Case and in this case, and/or based on responses to subpoenas in this case, and/or from my own interviews and investigation in this matter, and/or based upon court hearings, and/or based upon information publicly available through online searches.

Executed this ____ day of January, 2024

_____
Paul A. Levine, Esq.

{LG 00725332 1 }