UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COMPASS-CHARLOTTE 1031, LLC,

        Plaintiff,      Case No.:1:24-cv-55
 -against-              (MAD/DJS)

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital
Partners LLC

        Defendants.
_____

PAUL A. LEVINE, as RECEIVER of PRIME CAPITAL
VENTURES, LLC,

       Third-Party Plaintiff,
 -against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC, FUPME, LLC

       Third-Party Defendant,
_____

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S REQUEST FOR
INJUNCTIVE RELIEF, INCLUDING ATTACHMENT PURSUANT TO FED. R. CIV. P.
64 AND EXPEDITED DISCOVERY OF THIRD-PARTY DEFENDANTS**

              LEMERY GREISLER LLC
              Robert A. Lippman, Esq (Bar Roll No.102052)
              60 Railroad Place, Suite 502
              Saratoga Springs, New York 12866
              Tel: (518) 581-8800
              RLippman@Lemerygreisler.com
              Counsel for the Receiver, Paul A. Levine, Esq.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ..................................................................................................1

**ARGUMENT** ..................................................................................................................................3

**CONCLUSION** ............................................................................................................................16

# TABLE OF AUTHORITIES

## STATE CASES

Bailon v. Guane Coach Corp., 912 N.Y.S.2d 188, 189 (N.Y.App.Div.2010) .................................. 9

Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 465 N.E.2d 330, 334 (N.Y.1984) .................... 5

Hess v. Hess, 22 N.E. 956, 956 (N.Y.1889) .................................................................................. 4

Kornblum v. Kornblum, 828 N.Y.S.2d 404, 405 (N.Y.App.Div.2006) ......................................... 7

Mandl v. Mandl, 61 N.Y.S.2d 364, 367 (N.Y. Sup. Ct. 1946) ...................................................... 4

Michaels Elec. Supply Corp. v. Trott Elec. Inc., 231 A.D.2d 695, 647 N.Y.S.2d 839 (2d Dept. 1996). ................................................................................................................................... 4

Rinchey v. Stryker, 28 N.Y. 45, 54 (1863) ................................................................................... 4

## FEDERAL CASES

Allstate Ins. Co. v. TMR Medibill Inc., CV–00–0002 (CPS), 2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000) ...................................................................................................... 10

Bank Leumi Trust Co. of New York v. Istim, Inc., 892 F. Supp. 478, 482 (S.D.N.Y.1995) ..... 6,12

Boyer, 328 Fed. Appx. 711, 715 n. 2 (2d Cir.2009) ..................................................................... 8

Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 221–223 (2d Cir.2006) .................. 5,12

DLJ Mortgage Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308, 318 (E.D.N.Y.2009) .............. 4

DLJ Mortgage Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308, 319 (E.D.N.Y.2009) .............. 6

Helicon Partners, LLC v. Kim's Provision Co., Inc. 2013 WL 1881744 (Bkrtcy. S.D.N.Y. 2013) ..................................................................................................................................... 5

Hypnotic Taxi LLC. V. Bombshell Taxi LLC, 543 B.R. 365 (Bkrtcy. E.D.N.Y. 2016) ............... 5

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F.Supp.2d 482, 485 (S.D.N.Y.2004) ..................................................................................................... 6

Kaiser, 722 F.2d 1574, 1582 (2d Cir.1983) .................................................................................. 8

Marklin v. Drew Properties Corp., 280 F. Supp. 176, 179 (S.D.N.Y.1967) ...................................6

Monteleone v. Leverage Group, No. 08–CIV–1986, 2008 WL 4541124, at *6 (E.D.N.Y. Oct. 7, 2008) ..........................................................................................................................................4

New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., No. 07–CIV–8008 (RJS), 2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008) ..................................................................6

S.E.C. v. Am. Bd. of Trade, Inc., 830 F.2d 431, 426 (2d Cir. 1987) ..............................................3

United States v. Yonkers Bd. of Educ., 856 F.2d 7, 11 (2d Cir. 1988) ..........................................4

U.S. Bank National Assoc. v. Nesbitt Bellvue Prop. LLC, 866 F. Supp.2d 247, 255 (S.D.N.Y. 2012) ..........................................................................................................................................4

Walkovszky v. Carlton, 223 N.E.2d 6, 7–8 (N.Y.1966) (Fuld, J.) ..................................................9

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991) ..........................................................................................................................................9

Worldwide Carriers, Ltd., 301 F. Supp. 64, 67–68 (S.D.N.Y. 1968) ...........................................10

## STATUTES

CPLR 6201 ................................................................................................................................5,8

CPLR 6201(3) .........................................................................................................................5,8,12

CPLR 6212(a) ........................................................................................................................5,6,8

## FEDERAL RULES

Bankruptcy Rule 7064 ..................................................................................................................4

Fed. R. Civ. P. 26, 30, 31, 33, 34, 36 and 45 ...............................................................................13

Fed. R. Civ. P. 26(f) ....................................................................................................................13

Fed. R. Civ. P. 30(a)(2) and 30(d) ...............................................................................................13

Fed. R. Civ. P. 64 ....................................................................................................................1,3,4

Fed. R. Civ. P. 66 ..........................................................................................................................3

Plaintiff Paul A. Levine, Esq. as Receiver of Prime Capital Ventures, LLC, through his attorneys, Lemery Greisler LLC, submits this memorandum of law in support of the Receiver's request that the Court enter an Order to Show Cause, for injunctive relief, including attachment pursuant to Fed. R. Civ. P. 64, and for expedited discovery of the Third-Party Defendants. The Receiver incorporates the allegations and exhibits set forth in the Verified Third-Party Complaint and Declaration of Robert A. Lippman, as if more fully set forth herein.

## **PRELIMINARY STATEMENT**

The underlying facts of the original case brought by Plaintiff, Compass-Charlotte 1031, LLC ("Compass-Charlotte"), describe what appears to be a classic Ponzi scheme, perpetrated by Prime Capital Ventures, LLC ("Prime"), for the enrichment of its sole member and CEO, Third-Party Defendant Kris D. Roglieri ("K. Roglieri"), his wife, Tina Roglieri, Kimberly A. Humphrey, as well as Prime's affiliate entities, Prime Commercial Lending, LLC and other Third-Party Defendants, including Commercial Capital Training Group, The Finance Marketing Group, National Alliance of Commercial Loan Brokers LLC, and FUPME, LLC (aka "F*ck You, Pay Me"). Pursuant to this scheme, Prime represented to borrowers that it could provide non-traditional lending/lines of credit ("LOC") loans to borrowers, whereby the borrowers were required to deposit 20% of the amount financed, often many millions of dollars, into an Interest Credit Account ("ICA Deposits"), to be used to gain access to capital markets and pay the borrower's interest.

Despite the fact that the ICA Deposits, according to the LOC loan documents, were supposed to be invested and used for the payment of interest on the LOC loans for the borrower's benefit, the Receiver's review of the Prime Entity's bank records reveals that significant portions

1

of these deposits were instead converted by K. Roglieri to purchase exotic cars, luxury homes, outrageously expensive wristwatches, travel on private jets, and otherwise fund ostentatious and gross displays of wealth and a lavish lifestyle.  In all, it appears likely that Prime, with the knowing or unwitting assistance of the Third-Party Defendants, transferred and dissipated at least $50 million dollars-worth of ICA Deposits for the enrichment of K Roglieri, his wife and associates.  As a result of the misuse and mismanagement of the funds entrusted to them, Prime defaulted on its obligations to fund the LOC loans to its borrowers, and when these borrowers gave notice the breach and demanded the return of their ICA Deposits, the money was unavailable to repay them.

As succinctly stated by Plaintiff, Compass-Charlotte, Prime has "…repeatedly taken [the ICA] deposits, failed to advance lines of credit, and then failed to return the deposits when contractually required to do so.  Prime has repeatedly and falsely told Compass-Charlotte (and numerous other victims) that the funds are going to be returned any moment or that the wire has already been sent (all with no return of funds). Indeed, Prime… [has] …taken over $50 million of ICA deposits from unsuspecting victims … and now those funds are gone and their location is unknown, ***even after a federal bankruptcy court issued multiple orders attempting to locate the funds…***" See, Plaintiff's Memorandum of Law in Support of Emergency Motion for Appointment of a Receiver and for Expedited Discover, dated January 12, 2024, ECF Doc. No. 6, at pgs. 1-2.

Based on the foregoing, this Court ordered, on January 24, 2024, the immediate appointment of a permanent Receiver in connection with the Defendants, to perform expedited discovery, locate the missing ICA Deposits and granting the Receiver exclusive dominion and control over Defendant's assets, books, records, operations, and business, to aid in the litigation

and/or arbitration proceedings seeking to make the Prime Entities' borrowers whole. (See, ECF Doc. No. 56).

The expedited discovery, including subpoenas issued to banks and financial institutions where the borrowers wired the ICA Deposits, shows that substantial portions of the ICA Deposits were transferred to the Third-Party Defendants named herein.

Moreover, substantial portions of the converted ICA Deposits were used to purchase the aforesaid exotic automobiles, real property, jewelry, wristwatches (one for $2,275,000!), and other chattel, which if not attached pursuant to Fed. R. Civ. P. 64, are likely to be lost or dissipated. Given the large sums of money at stake, and the rate at which K. Roglieri, et al. have demonstrated their ability to spend and encumber it, the Receiver believes it prudent that the Court order immediate injunctive relief, preventing the transfer or encumbrance of the subject assets to preserve the status quo until a full forensic accounting can be performed, aided by expedited discovery against Third-Party Defendants and those parties mentioned in the Third-Party Complaint, and further order of this Court can be had.

## ARGUMENT

**I.    AN ORDER OF PRE-JUDGMENT ATTACHMENT IS NECESSARY AND APPROPRIATE TO PROTECT THE CREDITORS OF THE PRIME ENTITIES.**

This Court has already, pursuant to Fed. R. Civ. P. 66, exercised judicial discretion and authorized the appointment of a Receiver, to prevent the dissipation of assets pending further action by the court." See, S.E.C. v. Am. Bd. of Trade, Inc., 830 F.2d 431, 426 (2d Cir. 1987). The

3

aforesaid appointment was based on this Court's finding[1] that (i) there is reason to believe that Defendant has engaged in fraudulent conduct, and that there is imminent danger that the monies and property sought in this case may be lost, concealed, diminished in value, or squandered, (ii) other legal remedies would be inadequate, (iii) the probability of harm to plaintiff is greater than the injury to the parties opposing the appointment, and (iv) plaintiff can demonstrate probability of success in the action and the possibility of irreparable injury without the receivership. See, U.S. Bank National Assoc. v. Nesbitt Bellvue Prop. LLC, 866 F. Supp.2d 247, 255 (S.D.N.Y. 2012). In furtherance of the afore-stated findings, the Receiver now moves for an order of attachment, to reclaim the missing funds and prevent further loss which might render any final decision by this Court meaningless.

"Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution." DLJ Mortgage Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308, 318 (E.D.N.Y.2009) (citing Monteleone v. Leverage Group, No. 08–CIV–1986, 2008 WL 4541124, at *6 (E.D.N.Y. Oct. 7, 2008); Michaels Elec. Supply Corp. v. Trott Elec. Inc., 231 A.D.2d 695, 647 N.Y.S.2d 839 (2d Dept. 1996)). Fed. R. Civ. P. 64, made applicable in adversary proceedings by Bankruptcy Rule 7064, permits a federal court to issue an order of attachment in the manner provided by the law of the state in which the federal court sits. DLJ Mortgage Capital, supra, at 318. It is well settled under New York law that a plaintiff may attach fraudulently transferred property. See, Hess v. Hess, 22 N.E. 956, 956 (N.Y.1889); Rinchey v. Stryker, 28 N.Y. 45, 54 (1863); Mandl v. Mandl, 61 N.Y.S.2d

---

[1] Law of the case applies to matter expressly decided "as well [as] to everything decided by necessary implication." United States v. Yonkers Bd. of Educ., 856 F.2d 7, 11 (2d Cir. 1988)(citation omitted).

364, 367 (N.Y. Sup. Ct. 1946). In furtherance of these well-established precedents, CPLR 6201 provides that:

> "An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: ...
>
> (3) the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; ..." See, CPLR 6201(3).

Under CPLR 6212(a), for an order of attachment to be granted or confirmed, a plaintiff is required to show, by affidavit and other written evidence, (1) that there is a cause of action and that it is probable that the plaintiff will succeed on the merits; (2) that one of the grounds for attachment provided in CPLR 6201 exist; and (3) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 465 N.E.2d 330, 334 (N.Y.1984); see also, Helicon Partners, LLC v. Kim's Provision Co., Inc. 2013 WL 1881744 (Bkrtcy. S.D.N.Y. 2013).

The cases of Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 221 (2d Cir.2006) and Hypnotic Taxi LLC. V. Bombshell Taxi LLC, 543 B.R. 365 (Bkrtcy. E.D.N.Y. 2016) are instructive and require that each prong of CPLR §6212(a) be analyzed and found to exist, before the provisional remedy of attachment can be granted, namely, whether the applicant has established a likelihood of success on the merits, and whether the remedy is needed to secure payment or obtain jurisdiction.

**A. There is a cause of action, and that it is probable that Plaintiff will succeed on the merits.**

This Court has already found that Plaintiff Compass-Charlotte is likely to succeed on the merits, upon factual allegations that are largely incorporated into the Receiver's Third-Party Complaint. See, Decision and Order, ECF Doc. No. 56, herein, at page 16. Respectfully, for the same reasons as this Court has already found, the Receiver's Third-Party claims, which include not only the Compass-Charlotte's allegations, but also allegations made in verified pleadings by other Prime borrowers who have been subjected to the same Ponzi scheme, in response to which Prime has defaulted, are equally meritorious.[2]

To establish probability of success on the merits under CPLR 6212(a), a plaintiff must show that it is more likely than not that it will succeed on the merits of its claim. DLJ Mortgage Capital, Inc. v. Kontogiannis, 594 F.Supp.2d 308, 319 (E.D.N.Y.2009) (citing New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., No. 07–CIV–8008 (RJS), 2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008)). This requires "proof stronger than that required to establish a prima facie case." Id. However, in evaluating whether this standard has been met, a court must afford the plaintiff the benefit of all legitimate inferences than can be drawn in plaintiff's favor. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F.Supp.2d 482, 485 (S.D.N.Y.2004); Bank Leumi Trust Co. of New York v. Istim, Inc., 892 F.Supp. 478, 482 (S.D.N.Y.1995) (quoting Marklin v. Drew Properties Corp., 280 F.Supp. 176,

---

[2] Both Prime and Roglieri are in default in an action brought by Onward Holdings, LLC, alleging fraud and conversion, in the Federal Central District Court of Utah, Civ. No. 2:23-cv-00833 (see, Exhibit 26 to Plaintiff's Complaint); Prime is also in default in an action brought by Camshaft CRE, 1, LLC, in connection with the breach of a LOC loan agreement and failure to return ICA payment (see, Motion to Disqualify Counsel filed by Compass-Charlotte, Exhibits 3, 5-6); Prime also defaulted in a lawsuit brought by Robert Sturm in the NDNY, 1:23-cv-1033 (although Prime later paid $2 million and that lawsuit was dismissed. See, Declaration of William Esser, dated Jan. 19, 2024, ECF Doc. No. 45).

6

179 (S.D.N.Y.1967) ("[T]he court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the stated facts.")).

As outlined in the underlying Complaint in the originally filed action, and further elaborated upon in the accompanying Third-Party Complaint, the Third-Party Defendants appear to have acted together with Defendants in a multi-state, fraudulent scheme whereby they have absconded with and converted upwards of $50 million dollars of ICA Deposits and used that money to enrich themselves. See, Verified Complaint, ¶¶ 1-138; Verified Third-Party Complaint, ¶¶ 24 – 81; see also, First Report of Temporary Receiver, dated Jan. 19, 2024 (ECF Doc. No. 37), "Initial Findings" at ¶¶ 41, 43-44 (e.g., "Berone has never been in possession of $50+ million-dollar transaction(s) with Prime", at ¶44(a) and Exhibit "A").  The allegations in the aforementioned pleadings, together with the exhibits presented, make out a strong prima facie case of fraud, conversion and breaches of fiduciary duty, including material false misrepresentations to the Prime Entity borrowers, used to induce them into entering into LOC loans, and obtain from them the ICA Deposits, which the Prime Entities failed to segregate, or use for the stated purposes (to secure the capital to fund the LOC), but rather squandered for the benefit of the Defendants and Third-Party Defendants.  Indeed, Defendant has already admitted to other borrows by virtue of having defaulted in related actions that it is in breach of the LOC loan terms and must return the ICA Deposits. See, Ft. Nt. 2, supra.

It is respectfully submitted that while attachment is considered a harsh remedy and courts have strictly construed the statute in favor of those against whom it is employed (see, Kornblum v. Kornblum, 828 N.Y.S.2d 404, 405 (N.Y.App.Div.2006)), under the facts presented here, it is clearly warranted.

7

### B. At least one, if not all of the grounds for attachment provided in section 6201 exist in this case.

The second requirement for obtaining an order of attachment under CPLR 6212(a) is that one or more grounds for attachment provided in CPLR 6201 exist. As stated above, CPLR 6201(3), as relevant here, provides that an order of attachment may be granted where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts..."

Because "[f]raudulent intent is rarely susceptible to direct proof," courts look to "badges of fraud" to establish actual intent. In re Kaiser, 722 F.2d 1574, 1582 (2d Cir.1983). Kaiser provides six telling badges of fraud as guidance, namely:

(i) lack or inadequacy of consideration;

(ii) family, friendship or close associate relationship between the parties;

(iii) the retention of possession, benefit or use of the property in question;

(iv) the financial condition of the party sought to be charged both before and after the transactions in question;

(v) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(vi) the general chronology of the events and transactions under inquiry.

See, Kaiser, 722 F.2d at 1582–83; In re Boyer, 328 Fed. Appx. 711, 715 n. 2 (2d Cir.2009). In this case all six of these badges of fraud are clearly present. Each will be examined in turn.

8

      i.      **The lack or inadequacy of consideration.**

The subpoenaed bank and financial records in this case clearly show the ICA Deposits being systematically and regularly withdrawn and used for the Roglieris' benefit, without any reciprocal consideration being transferred to Prime or its affiliates, and certainly to the detriment of the Prime borrowers. As set forth in the Third-Party Complaint, there is now known to be the staggering figure of $63,364,750.00 missing from the ICA Deposit accounts from Prime borrowers. See, Third-Party Complaint, at ¶¶71-75, and Exhibit "E".

      ii.      **The family, friendship or close associate relationship between the parties.**

The only beneficiaries of the scheme employed by Prime were K. Roglieri and his wife, and the Third-Party Defendant entities which K. Roglieri exercises full control over, and which have been used as instrumentalities to purchase and hold real estate, as in the case of the Virginia Beach house, Jewelry such as the case of the RM Skull $2.275M wristwatch, or exotic cars, held by the FUPME (aka "F*ck You Pay Me") and "TeamLoanSharks" entities. The beneficiaries, persons and entities where the ICA Deposits have been spent are all simply alter-egos, close friends or family members of K. Roglieri. Alter egos own a pool of common assets, and creditors may look to the assets of one to satisfy claims against the other. See, Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir.1991); Walkovszky v. Carlton, 223 N.E.2d 6, 7–8 (N.Y.1966) (Fuld, J.); Bailon v. Guane Coach Corp., 912 N.Y.S.2d 188, 189

(N.Y.App.Div.2010).[3]

### iii. The retention of possession, benefit or use of the property in question.

There is no evidence of any restriction on the Roglieri's ownership and use of the property that they have acquired through the dissipation of the ICA Deposits, and no legitimate explanation for why the luxury items purchased are held in the name of Third-Party Defendant entities. What possible reason could there be for the aforementioned $2.275M dollar RM Skull wristwatch to be owned by Prime?[4] Even if Prime had other employees besides K. Roglieri, the watch was worn by him, and him alone, as a symbol of his supposed wealth and success. See, Second Report of Temporary Receiver, dated Jan. 26, 2024, ECF Doc. Co. 61, at Exhibit "C".

### iv. The financial condition of the party sought to be charged both before and after the transaction in question.

The looting of the ICA Deposits by K. Roglieri, with the knowing or unknowing participation of the Third-Party Defendants, has been so systematic and prevalent that it has rendered Prime unable to fund the loans and fulfil its obligations under the LOC loan agreements with its borrowers or pay back the ICA Deposits following default on the LOC loans to Prime's borrowers. See Third Party Complaint, at ¶23. Prime has failed to file required tax returns beyond

---

[3] It is likewise well settled that the creditor of one alter ego can attach the assets held in the name of the other alter ego. See, e.g., Allstate Ins. Co. v. TMR Medibill Inc., CV–00–0002 (CPS), 2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000) (allowing attachment of non-party's assets because plaintiffs made sufficient showing regarding its reverse corporate veil piercing claim); Worldwide Carriers, Ltd., 301 F. Supp. 64, 67–68 (S.D.N.Y. 1968) (allowing attachment of property held by third party on the basis of an alter ego theory because plaintiff made out at least a prima facie case).

[4] The watch as, on the Receiver's demand, turned over to him on Friday and is now being stored in a safe deposit box at a local bank pending further court order. See, Amended Second Report of Temporary Receiver, dated Jan. 26, 2024, ECF Doc. No. 65.

any applicable extension date, and likewise appears to not have kept proper books and records of its financial affairs because requests for Prime's books and records by the Receiver have gone unanswered. Nevertheless, it is obvious that Prime does not have and cannot explain the whereabouts of at least $50M dollars that it is obligated to repay, and is imminently likely to be held insolvent, and it appear likely that Prime has transferred substantially all of its assets which would be available for execution by a judgment creditor to Roglieri and the other Third-Party Defendants. Whether this was undertaken to remove assets from the reach of creditors, or simply because the Roglieris appetite for ostentatious spending knows no bounds (which appears to be the case), is immaterial.

    **v.    The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors.**

While fraudulent intent is rarely susceptible to direct proof, the systematic looting of Prime and the ICA Deposits for no apparent legitimate purpose, leaving Prime in default of its obligations and without access to the assets to pay back Plaintiff and the other Prime creditors, manifestly satisfies this badge of fraud.

    **vi.    The general chronology of the events and transactions under inquiry.**

Further to the 5th element above, as Prime's creditors began to notice the default in Prime's ability to fund the LOC loans or pay back the ICA Deposits, the looting and transferring out of the ICA funds continued unabated, and the purchasing of exotic goods with the ill-gotten funds became ever-more obscene.

In short, the badges of fraud are numerous and glaring, and CPLR 6201(3) is satisfied.

**C. The amount demanded exceeds all known counterclaims.**

We are not aware of any Counterclaims alleged by Prime against the Plaintiff or other Prime creditors who Prime defaulted against and who are seeking the return of their ICA Deposits. The Third-Party Defendants are likewise unlikely to have viable counterclaims against Prime's borrowers. In this regard, it should be noted that the Court is only bound to consider such counterclaims as the Third-Party Plaintiff concedes as just. See, Bank Leumi Trust Co. of New York v. Istim, Inc., 892 F. Supp. 478, 482 (S.D.N.Y. 1995).

**D. The need for the attachment.**

Having established that the statutory requirements are met, it is necessary to consider whether there is a need for an order of attachment. See, Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214 221–223 (2d Cir.2006). This Court has already found that the risk of Prime's insolvency is "likely and imminent," as despite K. Roglieri's apparently false and misleading testimony in bankruptcy court that the ICA Deposits from Prime borrowers were sent to Berone Capital, at least $52 million has gone missing and is not being held by either RBC or Citibank for the benefit of Prime Capital.[5] See, Decision and Order, EFC Doc. No. 56, herein, at page 16. The facts before the Court compel the conclusion that without an attachment over Third-Party Defendants assets, there is a genuine risk that any award made by this Court will be rendered

---

[5] See, Complaint of Compass-Charlotte, at Exhibit 41.

12

meaningless, as the ICA deposits have been lost and dissipated, and converted to chattel held in multiple jurisdictions under numerous title holders. See, Third Party Complaint, at ¶¶ 24-79.

## II.  EXTENDING EXPEDITED DISCOVERY POWERS OVER THIRD-PARTY DEFENDANTS IS VITAL SO THAT THE RECEIVER CAN FOLLOW THE MONEY AND THIS COURT CAN FASHION APPROPRIATE RELIEF

The Court has broad discretion to regulate discovery. (citation omitted). Given the revelations that have already come to light in this case, and the tangled web of transactions and purchases made with the ICA Deposits, the Receiver must be provided with broad latitude to track down, and recover, the subject assets.  This Court has already agreed that the Receiver should be given expedited discovery in connection with Defendants and necessary third-parties.  The Receiver now seeks that same power in connection with the Third-Party Defendants, as may be necessary under Fed. R. Civ. P. 26, 30, 31, 33, 34, 36 and 45, without the requirements of a pre-discovery meeting pursuant to FED. R. CIV. P. 26(f), and without regard to the limitation of FED. R. CIV. P. 30(a)(2) and 30(d).

The need for expedited discovery vested with the Receiver is all the more necessary here, where the Defendants and Third-Party Defendants have incorporated very limited party discovery terms in an arbitration agreement, which would limit the Plaintiff and others similarly situated to, just one discovery request limited to 25 demands, and three depositions. See, ¶ 13.8 of the Credit Agreement, Exhibit "G" to Affidavit in Support of Emergency Motion to Vacate, ECF Doc. No. 13, attachment 7.[6]  Given the sheer number of payees who received ICA Deposit monies for cars Luxury watches, jewelry, antiques and private plane charters, (See, Third-Party Complaint, ¶77),

---

[6] The arbitration agreement also does not explicitly provide for third-party discovery by subpoena or otherwise.

13

not to mention the number of banks and financial institutions where the funds were transferred from and moved between, it should be patently obvious that the discovery limitations imposed by the arbitration agreements are wholly inadequate to follow the money and uncover the full extent to which the ICA Deposits were misused.

Moreover, there is no real argument to be made that the expedited discovery sought will harm the Third-Party Defendants. Indeed, if the Third-Party Defendants use of the ICA Deposits was permissible and legitimate, the expedited discovery should reveal this, and more swiftly bring this matter to a conclusion in their favor. On the other hand, if the expedited discovery helps to uncover fraudulent transfers and aids in the recovery of lost assets, and in so doing mitigates injury to the Prime Entity creditors, this Court should find it reasonable and grant the Receiver the tools needed to accomplish his mandate.

Time is surely of the essence and should be in the interest of all parties to this dispute. However, it should be noted that, as set forth in the Receiver's Second Report (ECF Doc. No. 35), Prime has failed and refused to comply with the Receiver's requests for documents which could support Prime's claims and defenses, for example confirming Prime's claim that it wired Berone Capital $52 million dollars, and rather than being the agent of fraud, Prime is actually a victim in this case. Given the apparent unwillingness of Prime to cooperate and the lack of corroboration that can be found for Prime's claims, the Receiver's need to conduct independent discovery, expeditiously and without the limitations of any arbitration agreements, is manifest.

## CONCLUSION

Wherefore, for the reasons set forth herein, Receiver hereby asks that the Court grant the Order to Show Cause and Temporary Restraint on the dissipation of the assets at issue in this action, together with the right to conduct expedited discovery in connection with the Third-Party Defendants, and such other and further relief as this Court deems just and equitable.

Dated: January 29, 2004
       Saratoga Springs, New York

                               Respectfully Submitted,
                               Lemery Greisler LLC

                               Robert A. Lippman, Esq
                               Bar Roll No.102052
                               Counsel for the Receiver, Paul A. Levine, Esq.
                               60 Railroad Place, Suite 502
                               Saratoga Springs, New York 12866
                               (518) 581-8800
                               RLippman@Lemerygreisler.com