UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

COMPASS-CHARLOTTE 1031, LLC,

                             Plaintiff,                Case No.:1:24-cv-55 (MAD/DJS)

   -against-

PRIME CAPITAL VENTURES, LLC                 **LOCAL RULE 7.1(e)**
BERONE CAPITAL FUND, LP                    **DECLARATION OF**
BERONE CAPITAL PARTNERS LLC            **ROBERT A. LIPPMAN, ESQ.**
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                       Defendants.

_____

PAUL A. LEVINE, as RECEIVER of PRIME CAPITAL
VENTURES, LLC,

               Third-Party Plaintiff,

   -against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
A. HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC, FUPME, LLC,

            Third-Party Defendants,

_____

     I, Robert A. Lippman, Esq., hereby declare the following under penalty of perjury, pursuant

to 28 U.S.C. §1746:

     1.     I am an attorney duly admitted to the practice of law before the courts of the State

of New York and am admitted to practice before this Court, and a member of the law firm Lemery

Greisler LLC, counsel to the Receiver in this action.

{LG 00725184 7 }

2.      On January 24, 2024, by Memorandum-Decision and Order, Paul A. Levine, Esq. was appointed as permanent Receiver for Defendants in this action, Prime Capital Ventures, LLC ("Prime"), Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC (collectively, the "Defendants"), and given the following powers and duties:

a.      The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants.

b.      The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located.

c.      The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets.

d.      The Receiver shall have the duties and responsibilities of a receiver under law, shall be answerable and account to the Court for the Receiver's activities, and shall maintain a detailed accounting of his activities, including without limitation, any and all funds collected and used for any purpose.

e.      The Receiver shall not be liable for any debts or liabilities of Defendants.

(*see* Memorandum-Decision and Order, Document No. 56).

3.      I now respectfully submit this declaration in support of Receiver's motion to obtain injunctive relief, preventing the further dissipation, transfer or encumbrance of Third-Party Defendants' assets, to preserve the status quo pending a full forensic accounting and this Court's ruling on the claims made by Plaintiff, Compass-Charotte 1031, LCC ("Compass-Charlotte" or "Plaintiff"), and as may occur, other creditors of Defendants and their affiliated entities.

4.      The Order to Show Cause submitted herewith seeks to attach and enjoin the funds and assets of Prime that Third-Party Defendants appear to have fraudulently converted to their personal use, after representing to various borrowers that their upfront Interest Credit Account ("ICA") deposits were required and would be used solely for the payment of interest due on lines of credit ("LOC") loans that were never advanced to the borrowers as promised.

5.      Upon information and belief, the Third-Party Defendants have engaged in or participated in, knowingly (in the case of K. Roglieri) or unknowingly, the dissipation of funds placed on deposit with Prime, and may possess or have transferred funds, or have converted funds to hard assets, that the Receiver believes should be ultimately returned to Plaintiff and, as the Court may determine, other Prime creditors.

6.      This Court has already found, by way of background, that the risk of Prime's insolvency is likely and imminent, as $50+ million is not being held in RBC by Berone Capital for the benefit of Prime in a Citibank account, and it is possible that a judgment in Plaintiff's favor would be inadequate, and that Plaintiff Compass-Charlotte is likely to succeed on the merits (*see,* Memorandum-Decision and Order, Document No. 56, at page 16).

7.      As set forth in the accompanying Third-Party Complaint, the relevant facts of which are incorporated herein by reference, compelling evidence exists to believe that Prime, and Prime Commercial Lending, LLC ("Prime Commercial" and together with Prime, the "Prime Entities"),

{LG 00725184 7 }

entities which were ostensibly set up to provide financing to borrowers, are in fact being used by their sole member/manager/CEO, Kris Roglieri ("K. Roglieri"), as instrumentalities to perpetrate an elaborate and fraudulent Ponzi scheme, to enrich K. Roglieri, as well as his wife, Tina Roglieri (together with K. Roglieri, the "Roglieris") his assistant, Kimberly A. Humphrey, and the other Third-Party Defendants, at the expense of borrowers, including Plaintiff Compass-Charlotte, and many others, who entrusted and transferred tens of millions of dollars to Prime and Prime Commercial, under the belief that ICA deposits would be used solely to support the payment of interest on loans, including by investing the ICA deposits to get access to capital.

8.     Review of subpoenaed bank records indicates that rather than the ICA deposits being held and used for the purposes stated in the loan documents between the Prime Entities and their borrowers, namely, to be used as prepaid interest throughout the term of the subject loans, the ICA deposits were used to purchase valuable real estate, exotic collectable luxury automobiles, obscenely expensive jewelry (such as a certain Richard Mille Skull 52-01 Tourbillon Skull watch purchased by Prime from Platinum Times for $2,275,000.00 and which is now in the Receiver's possession), antiques, chartered flights on private jets, and otherwise converted to the Roglieris' personal use and enrichment.

9.     Additionally, ICA deposits appear to have been routinely transferred from Prime's bank accounts to certain of the Third-Party Defendant entities, to wit, a total of $5,632,893 was transferred from Prime's KeyBank and CitiBank accounts, to Prime Commercial Lending's account, KeyBank 4465; a total of $5,111,625.70 was transferred from Prime's KeyBank and CitiBank accounts to Commercial Capital Training Group's KeyBank account ending in 4541; total of $20,000 was transferred from Prime's CitiBank account to National Alliance Of Commercial Loan Brokers LLC's account, KeyBank 2134; and at total of at least $5,910,689.93

was transferred from Prime' KeyBank account, in cash, directly into the pockets of the Roglieris (*see* Third-Party Complaint, at ¶¶ 71-84, and Exhibit "E" - Excel Spreadsheet entitled "Prime Transfers to Affiliates"), submitted herewith.

10.     The aforementioned use of the ICA deposits and transfers to the Roglieris personally were in violation of the terms of the loan documents executed with the Prime Entities' borrowers, and also violate the implied fiduciary duties imposed on the Prime Entities and upon K. Roglieri as CEO (*see,* Third-Party Complaint, Second Cause of Action), to segregate and use the ICA deposits solely in the manner agreed to, for borrower's benefit and to support the LOC loans.

11.     At the same time that the ICA deposits were being converted by the Roglieris to their personal use and benefit, the Prime Entities were defaulting on their obligations to fully fund the LOC loans and advance the promised financing to Plaintiff and the borrowers, as summarized in the Third-Party Complaint, at ¶¶ 25-70.

12.     When the Borrowers demanded the return of the ICA deposits, Defendants and Third-Party Defendants refused.

13.     Recent bankruptcy proceedings, subpoenas of bank records and other expedited discovery which the Court has allowed and Prime through its attorneys is attempting to delay and quash, reveal that in addition to the ICA deposits being used to enrich the Roglieris' ostentatious lifestyle, they were also used to pay back certain older obligations to borrowers who sued to recover their deposits with newer depositor's money, a classic "rob from Peter to pay Paul" Ponzi scheme.

14.     Prime's claim that it invested borrower ICA deposits with any of the Berone entities cannot be substantiated from Prime's bank records of deposits and transfers, or from the Berone records that the Receiver has been able to obtain.

15.     Significantly, a $52 million dollar deposit of ICA funds that the Prime Entities claim to have deposited with Royal Canadian Bank ("RBC") in the name of Berone Capital Fund, LP, appears to only contain, after accounting for a portion of monies being pledged as collateral for a loan, a net of $2 million, and never had a balance over $3 million dollars, and the account statement for that account which Prime provided, according to RBC, appears to have been fraudulent. To date, the monies derived from the RBC loan are not accounted for.

16.     Likewise, there is a sharp dispute between Prime and the Berone entities as to the existence of a Joint Venture Agreement, which Berone claims is the product of forgery and Prime claims is genuine.

17.     The Receiver has given Prime opportunity to address the above concern, by serving demands for documents to Prime's counsel, seeking, *inter alia*, "all documents and other proof of the monies that [Prime] allegedly sent to any and all Berone entities." (*See*, Second Report of Temporary Receiver, dated January 26, 2024, ECF Document No. 61, at Exhibits "A" and "B" thereto). The Receiver set a deadline for compliance with the aforementioned demands at the end of business on January 24, 2024, a date which is reasonable, as this issue was central to the previously filed involuntary bankruptcy proceeding and had been ordered to be produced by the Bankruptcy Court. Prime should have had evidence of the ICA deposits and transfers to the Berone entities readily at hand. However, Prime has failed to comply with the Receiver's discovery requests. As such, this Court can have little faith in Prime's proper handling of the ICA deposits

entrusted to it, and there is a strong inference that the transfer to Berone is fictitious, and the ICA deposits were fraudulently converted.

18.     Fed. R. Civ. P. 64 provides "…[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." The provisional remedy of attachment under New York Debtor and Creditor Law, §278 and NY C.P.L.R. 6212(a) is therefore specifically authorized, as further set forth in the Memorandum of Law in Support of Injunctive Relief, submitted herewith.

19.     There is strong reason to believe, given the wanton breaches of fiduciary duty that appear evident, that without immediate attachment of the missing and misapplied assets to preserve the status quo, the assets will be dissipated and lost and any final judgment in this action would be rendered meaningless.

20.     Clearly, the services of a forensic accountant will be needed to follow the money and address the pressing issues before this Court and the Receiver has identified a qualified firm to provide such services and is reviewing its proposed retainer agreement.  Until such time as that work can be completed, and either this Court, or an arbitrator can finally resolve the issues, the status quo must be preserved.

21.     I therefore ask that the Court enjoin any transfer or encumbrance of Prime's and Third-Party Defendants' assets and directing that such assets be turned over to the Receiver for later disposition as this Court may direct.

22.     To the extent that it appears the ICA deposits have been converted to the Roglieris, dissipated to the Third-Party Defendants, or lost through mismanagement, the Receiver should be

given the same powers of expedited discovery and seizure over the Third-Party Defendants and their assets as the Court has already seen fit to grant to the Receiver over the original Defendants.

23.     Given what is undeniably wholesale improper use of Prime's monies for grossly excessive nonbusiness related luxury purchases and other unexplained purposes, I ask that the Receiver be authorized to incur reasonable and necessary expenses to seize, take possession of and store the assets of Defendants and Third-Party Defendants, pending further order of this Court.

24.     Given the foregoing, good and sufficient cause exists to move this Court by Order to Show Cause.

25.     In accordance with Local Civil Rule 7.1.(e), reasonable advance notice of this application for relief has been provided to all parties, by email on January 28, 2024.  A copy of that notice is attached hereto as Exhibit "A".

26.     I declare under penalty of perjury that the foregoing is true and correct.  Executed this 29th day of January 2024.


DATED:        January 29, 2024
              Albany, New York

              Robert A. Lippman, Esq

# EXHIBIT A

## Robert Lippman

| | |
|---|---|
| **From:** | Robert Lippman |
| **Sent:** | Sunday, January 28, 2024 7:59 PM |
| **To:** | Van Tol, Pieter; Fenlon, Christopher V.; Tuxbury, James L.; Murphy, Kieran T.; Esser, Will; Cottrell, Eric H.; thiggs@joneshacker.com; jharwick@joneshacker.com; Bryant, Chris; Bautz, Peter |
| **Cc:** | Peter Damin; Paul Levine |
| **Subject:** | Compass v. Prime Capital, et al. -- Advance Notice of Order to Show Cause |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| **Categories:** | Contains something useful |

Deal Counsel,

Pursuant to N.D.N.Y. Local Rule 7.1(e), taker notice that Lemery Greisler LLC, on behalf of the Receiver, Paul A. Levine, Esq., will move the Court by Order to Show Cause for Temporary Injunctive Relief of Attachment, by the end of business on Monday, January 29, 2024, against the assets of PRIME CAPITAL VENTURES, LLC ("Prime"), as well as the following individuals and entities who will be made Third-Party Defendants in this action: KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY HUMPHREY a/k/a "KIMMY" HUMPHREY, JEREMIAH E. BEGUESSE, FABIAN STONE, PRIME COMMERCIAL LENDING, LLC, COMMERCIAL CAPITAL TRAINING GROUP, THE FINANCE MARKETING GROUP, NATIONAL ALLIANCE OF COMMERCIAL LOAN BROKERS LLC, FUPME, LLC., which assets, including exotic automobiles, real estate, wristwatches, jewelry and antiques, were, or appear likely to have been, purchased directly or indirectly with Interest Credit Account ("ICA") funds received from Prime's borrowers (aka "Creditors"), and whose purchase appear to be solely for the benefit and use of the Roglieris and/or Kimmy Humphrey, and has resulted in the loss and/or dissipation of the ICA deposits, to the detriment and loss of Prime's Creditors.

Given the disqualification motion currently pending and Mr. Van Tol's notice earlier today of Prime's a proposed Order to Show Cause shortening the time for a determination of Prime Capital's accompanying emergency motion for a stay pending appeal, we propose an opposition date to our OSC of nine days, or February 7, 2024, for the reasons already elaborated upon by Mr. Tuxbury in his email earlier this evening.  Please let us know whether you agree to such date for opposition to the Receiver's papers at the earliest so that we can report to the Court as to whether the parties have consensus on this.

**Robert A. Lippman, Esq.**
*Member*
**LEMERY GREISLER LLC**
60 Railroad Place, Suite 502
Saratoga Springs, New York 12866

Direct Dial: (518)831-5262 | Front Desk: (518)581-8800 | Fax: (518)581-8823
RLippman@Lemerygreisler.com
www.lemerygreisler.com

1



This message is intended for the exclusive use of the recipient and may contain privileged and confidential communications. If you are not the intended recipient, or a person responsible for delivering this message to the recipient, you are not authorized to read, copy, print, or transfer this message and any attachments.  If you inadvertently received this message, please notify us immediately by email and discard any paper copies and delete all electronic files of the message and any attachments.

Internal Revenue Service Circular 230 notice: Any discussion of a federal tax issue contained in this email, including attachments, is not intended to and cannot be used for the purpose of (i) avoiding penalties under federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters.