UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                                  Plaintiff,

   -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity Partners LLC

                                  Defendants.

Case No.: 24-cv-55 (MAD/CFH)

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISQUALIFY LAW FIRM HOGAN LOVELLS US LLP AS DEFENDANT PRIME CAPITAL VENTURES, LLC'S COUNSEL**

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| **I.** | **COMPASS-CHARLOTTE HAS STANDING TO BRING A MOTION TO DISQUALIFY.** | 1 |
| **II.** | **HOGAN LOVELLS CANNOT ADEQUATELY REPRESENT BOTH CAMSHAFT AND PRIME.** | 3 |
| **III.** | **THE "INFORMED CONSENT" RECEIVED BY HOGAN LOVELLS IS INADEQUATE.** | 7 |
| **IV.** | **CONCLUSION** | 9 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akagi v. Turin Hous. Dev. Fund Co., Inc.*,
  2017 WL 1076345 (S.D.N.Y. March 22, 2017) ................................................................. 5, 7

*Altschul v. Paine Webber, Inc.*,
  488 F. Supp. 858 (S.D.N.Y. 1980) ...................................................................................... 1, 3

*Anderson v. Nassau Cnty. Dep't. of Corr.*,
  376 F. Supp. 2d 294 (E.D.N.Y. 2005) ..................................................................................... 8

*Cohen v. Strouch*,
  2011 WL 1143067 (S.D.N.Y. Mar. 24, 2011) ................................................................ 1, 2, 6

*Discotrade Ltd. v. Wyeth-Ayerst Intern., Inc.*,
  200 F. Supp. 2d 355 (S.D.N.Y.) ............................................................................................. 7

*First NBC Bank v. Murex, LLC*,
  259 F. Supp. 3d 38 (S.D.N.Y. 2017) ...................................................................................... 3

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) .................................................................................................. 3

*Murchison v. Kirby*,
  201 F. Supp. 122 (S.D.N.Y. 1961) ......................................................................................... 2

*Raiola v. Union Bank of Switz., LLC*,
  230 F. Supp. 2d 355 (S.D.N.Y. 2002) .................................................................................... 2

*Tadier v. Am. Photocopy Equip. Co.*,
  531 F. Supp. 35 (S.D.N.Y. 1981) ........................................................................................... 3

*U.S. v. Rogers*,
  9 F.3d 1025 (2d Cir. 1993) .................................................................................................... 2

**Rules**

N.Y. Rules of Prof. Con. 1.7 ........................................................................................................ 5

Non-Party law firm Hogan Lovells US LLP ("Hogan Lovells" or "Hogan") admits that it has a conflict of interest in simultaneously representing Prime Capital Ventures, LLC ("Prime") and Camshaft CRE 1, LLC ("Camshaft").[1]  Yet, it contends that the Court should overlook this conflict for three reasons:  (a) Plaintiff Compass-Charlotte 1031, LLC ("Compass-Charlotte") lacks standing to seek disqualification; (b) Hogan can adequately represent both clients concurrently; and (c) the clients allegedly waived the conflict based upon "informed consent." Each of these arguments fail and Compass-Charlotte's Motion to disqualify Hogan should be granted.

## I.  COMPASS-CHARLOTTE HAS STANDING TO BRING A MOTION TO DISQUALIFY.

First, Hogan asserts that Compass-Charlotte lacks standing to seek Hogan's disqualification because Compass-Charlotte has never been a Hogan client. Opp. at 6-8.  However, Compass-Charlotte clearly has standing to bring the Motion because courts in this Circuit have expressly held that "[c]ompetence to raise disqualification is not limited to former or aggrieved clients." *Altschul v. Paine Webber, Inc.*, 488 F. Supp. 858, 860 & n.1 (S.D.N.Y. 1980) (citation and quotation marks omitted).  The court in *Altschul* further stated that "***Ethical misconduct is a matter of public concern implicating the integrity of the bar and any party who is aware of the facts which give rise to the issue is duty bound to present the matter to the proper forum***." *Id.* (internal quotations and citations omitted) (emphasis added).

Further, the decision in *Cohen v. Strouch*, 2011 WL 1143067 (S.D.N.Y. Mar. 24, 2011), is instructive on the propriety of the present Motion.  There, the plaintiff was involved in a car accident with the defendant, who was driving within the scope of her employment.  The plaintiff

---

[1] Shortly before Compass-Charlotte filed this reply brief, Hogan Lovells made an appearance to represent Kris Roglieri and Kimberly "Kimmy" Humphrey personally as well as other third-party defendant companies, all of whom have been sued by the Receiver on behalf of Prime to recover over $30 million that was taken from Prime.  *See* Dkt. No. 103.  This appearance only further heightens the conflict situation and provides additional grounds for disqualification.

1

filed suit in federal court against the defendant and her employer seeking damages for negligence. The passenger in plaintiff's vehicle separately brought suit in state court, arising out of the same car accident, against the plaintiff and the same defendants seeking to recover for her injuries. The law firm representing the plaintiff in the federal action also represented the passenger in the concurrent state court action. The defendants in the federal court action filed a motion to disqualify the law firm for the conflict. Exactly like Hogan Lovells here, the plaintiff argued that the defendants lacked standing because they were not current or former clients of the law firm. The district court did away with the argument, holding that "attorneys are officers of the court, and are obligated to adhere to all disciplinary rules and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule." *Cohen*, 2011 WL 1143067, at \*4. The district court further held that, "[e]ven when the interests of their client are unaffected by a violation of ethical disciplinary rules, opposing counsel should call them to the attention of the court. ***Any lack of standing is moot, since the court should exercise its inherent power to preserve the integrity of the adversary process when possible conflicts arise***." *Id.* (internal citation and quotation marks omitted) (emphasis added). The district court ultimately granted defendants' motion to disqualify the law firm. *Id.* at \*6.

None of the cases cited by Hogan Lovells in opposition involve anything approaching the situation here—where the same law firm represents two clients directly adverse to each other in related civil litigation. *See Murchison v. Kirby*, 201 F. Supp. 122, 122 (S.D.N.Y. 1961) (involved unspecified alleged ethical violations); *U.S. v. Rogers*, 9 F.3d 1025, 1026 (2d Cir. 1993) (turned on a criminal defendant's Sixth Amendment right to counsel where counsel was ultimately disqualified); *Raiola v. Union Bank of Switz., LLC*, 230 F. Supp. 2d 355, 360 (S.D.N.Y. 2002) (involved the appeal of an arbitration award where the claimant argued the arbitration panel

2

improperly permitted UBS's counsel to cross-examine the respondent because it had previously represented him in another matter). Moreover, Hogan Lovells cites *Tadier v. Am. Photocopy Equip. Co.*, 531 F. Supp. 35, 36 (S.D.N.Y. 1981) for the premise that "this court is highly doubtful that defendant has standing to seek the disqualification of plaintiffs' attorney." Opp. at 7. But *Tadier* expressly stated that "there is, however, authority indicating a contrary conclusion[,]" and considered the disqualification motion on the merits in light of that authority. 531 F. Supp. at 36 (citing *Altschul*, 488 F. Supp. at 860 & n.1).

Even the cases Hogan cites support the legal principle that "any doubt should be resolved in favor of disqualification" and that "a motion to disqualify is committed to the sound discretion of the district court." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017) (granting motion for disqualification of counsel as "the interest in assuring the integrity of this litigation must be paramount") (internal quotations and citations omitted). Thus, any argument that "Compass is not, nor has it ever been, a client of Hogan Lovells" is of no import here. Opp. at 7. Compass-Charlotte's counsel had an ethical obligation to bring this Motion before the Court, and this Court has authority to exercise its inherent power "to preserve the integrity of the adversary process." *Murex*, 259 F. Supp. 3d at 55; *see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (same).

## II.  HOGAN LOVELLS CANNOT ADEQUATELY REPRESENT BOTH CAMSHAFT AND PRIME.

Hogan Lovells admits—as it must—that its concurrent representation of Camshaft and Prime is in fact a clear conflict of interest. Opp. at 9. However, Hogan Lovells argues that it can "adequately represent" both Prime and Camshaft simultaneously because the facts and allegations in the two lawsuits are "significantly different." Opp. at 15. Hogan Lovells even represented to this Court that the *Camshaft* case was a "straightforward breach of contract action" without

3

allegations of fraud against Prime. *Id.* This is disingenuous. Instead, the underlying facts and allegations of the Camshaft and Compass lawsuits are virtually identical. Consider the following:

| **Compass-Charlotte** | **Camshaft** |
|---|---|
| Entered into Development Line of Credit Agreement with Prime (April 24, 2023).[2] | Entered into Development Line of Credit Agreement with Prime (May 12, 2023). |
| The purpose of the line of credit was to develop real estate (apartments).[3] | The purpose of the line of credit was to develop real estate (single-family planned unit development). |
| Wired Prime a multi-million dollar ICA Deposit ($15,902,250 in April 2023).[4] | Wired Prime a multi-million dollar ICA Deposit ($13,400,000 in May and June 2023). |
| The ICA Deposit was wired to Prime's CitiBank Account.[5] | The ICA Deposit was wired to Prime's CitiBank Account. |
| The ICA Deposit was immediately used by Prime for other purposes unrelated to providing a line of credit to Compass.[6] | The ICA Deposit was immediately used by Prime for other purposes unrelated to providing a line of credit to Camshaft. |
| Prime never provided the Development Line of Credit. | Prime never provided the Development Line of Credit. |
| Terminated the Development Line of Credit and demanded return of its ICA Deposit.[7] | Terminated the Development Line of Credit and demanded return of its ICA Deposit. |
| Prime failed to return the ICA Deposit despite numerous demands.[8] | Prime failed to return the ICA Deposit despite numerous demands. |
| Sued Prime for return of its ICA Deposit. | Sued Prime for return of its ICA Deposit. |
| Sought a provisional remedy against Prime (emergency appointment of receiver). | Sought a provisional remedy against Prime (emergency preliminary injunction). |
| Questioned whether Prime "ever ran a legitimate business at all."[9] | Questioned Prime's "fundamental operational, financial, and legal soundness." |

---

[2] *Compare* Dkt. No. 1 (Verified Complaint) ¶ 126 *with* Declaration of William L. Esser IV ("Esser Decl."), submitted herewith, Ex. 3 (Affidavit of William C. Morton in Support of Camshaft's Emergency Motion for Injunction, Case No. 2023-023173-CA-01, Filing No. 18295869) (hereinafter, the "Morton Aff.") ¶ 5.

[3] *Compare* Dkt. No. 1 ¶ 118 *with* Morton Aff. ¶ 6.

[4] *Compare* Dkt. No. 1 ¶ 130 *with* Morton Aff. ¶ 8.

[5] *Compare* Dkt. No. 1 ¶ 130 *with* Dkt. No. 37 (Receiver's First Status Report) ¶ 50.

[6] Dkt. No. 37 ¶ 50.

[7] *Compare* Dkt. No. 1 ¶ 135 *with* Morton Aff. ¶ 16.

[8] *Compare* Dkt. No. 1 ¶ 169 *with* Morton Aff. ¶ 23.

[9] *Compare* Dkt. No. 1 ¶ 10 *with* Dkt. No. 67-3 (*Camshaft* Complaint) ¶ 14.

| **Compass-Charlotte** | **Camshaft** |
|---|---|
| Alleged misrepresentations by Prime regarding Prime's ability to fund lines of credit.[10] | Alleged misrepresentations by Prime regarding Prime's ability to fund lines of credit. |
| Alleged Prime fraudulently said it was wiring the ICA deposit back and then never sent it.[11] | Alleged Prime fraudulently said it was wiring the ICA deposit back and then never sent it. |
| Alleged that Prime's failure to return the ICA deposit caused it significant damages.[12] | Alleged that Prime's failure to return the ICA deposit caused it significant damages. |
| Knew that the U.S. Attorney for the Northern District of New York was investigating Prime and wanted to speak with it as a victim.[13] | Knew that the U.S. Attorney for the Northern District of New York was investigating Prime and wanted to speak with it as a victim. |

These are identical facts in all material respects.

Given the allegations in Camshaft's complaint against Prime—that was filed by Hogan Lovells—it is impossible for Hogan Lovells to "adequately represent" both Prime and Camshaft on opposite sides of this identical fact pattern. Indeed, N.Y. Rule of Professional Conduct 1.7 specifically provides that a conflict waiver is not a cure-all, but also requires an objective reasonableness standard—*i.e.* that a "lawyer ***reasonably*** believes that the lawyer will be able to provide competent and diligent representation to each affected client." N.Y. Rules Prof. Con. 1.7(b)(1) (emphasis added); *see also Akagi v. Turin Hous. Dev. Fund Co., Inc.*, 2017 WL 1076345, *15 (S.D.N.Y. March 22, 2017) (disqualifying law firm and discussing objective reasonableness standard).

In interpreting the N.Y. Rules of Professional Conduct, the Southern District of New York found:

> New York law also requires a belief under a reasonable lawyer standard that the attorney will be able to provide competent and diligent representation to each

---

[10] *Compare* Dkt. No. 1 ¶¶ 124, 128-29, 172 *with* Dkt. No. 67-3 ¶ 14 ("misrepresentation of its ability to successfully close transactions" and "misrepresentation of its ability to fulfill its contractual duties").

[11] *Compare* Dkt. No. 1 ¶ 137 *with* Morton Aff. ¶ 24 ("Prime previously erroneously advised Camshaft that part of the ICA Payment had been sent, including providing Camshaft with a fake Federal ID Reference number . . .").

[12] *Compare* Dkt. No. 1 *with* Morton Aff. ¶ 25 ("Prime's default presents the imminent threat of putting Camshaft completely out of business. Camshaft faces a serious threat of having to declare bankruptcy.").

[13] Esser Decl. ¶¶ 20-21, Ex. 5.

5

affected client.  ***When one party's interest could adversely affect the other, a court may conclude that such a belief would not be reasonable***.

*Cohen*, 2011 WL 1143067, at *5 (emphasis added) (cleaned up).

No reasonable lawyer would believe that they could simultaneously provide competent and diligent representation to both Camshaft and Prime under the present circumstances.  These two representations involve the same allegations regarding the same business dealings.  For example, in the *Camshaft* case, Hogan Lovells filed a complaint in which it questions the "fundamental, operational, financial, and legal soundness" of Prime.  *See* Esser Decl. Ex. 1 ¶ 14.  Yet, ***at the exact same time*** in this case, Hogan Lovells argues the ***exact opposite***—that "Prime Capital has operated a successful business with a total of 38 loan transactions in an aggregate amount of over a $1 billion."  Dkt. No. 13-5 at 7.  These contradictory factual positions cannot be reconciled and are directly adverse to each other, rendering it impossible for Hogan Lovells to concurrently represent Camshaft and Prime.

Furthermore, Hogan Lovells knew that the U.S. Attorney was investigating Prime and considered Camshaft and Compass-Charlotte to both be victims of Prime's scheme.  Esser Decl. ¶¶ 20-31.  Yet, Hogan Lovells nevertheless subsequently asked Camshaft to provide a waiver so that Hogan Lovells could simultaneously represent Prime opposite the same factual allegations for which Camshaft sued it.  What client would ever give informed consent on that basis (and what reasonable lawyer looking out for its client's best interests would ever ask)?  Indeed, how can Hogan Lovells come to this forum and represent that Prime is the "victim" of a fraud, when (a) Hogan Lovells simultaneously argues to the *Camshaft* court that Prime's very "fundamental, operational, financial, and legal soundness" is in question, and (b) Hogan Lovells was informed of a criminal investigation into Prime before Hogan even took on Prime's representation?

6

**III.     THE "INFORMED CONSENT" RECEIVED BY HOGAN LOVELLS IS INADEQUATE.**

Even if Hogan Lovells could meet the objective standard that it could provide adequate representation to its concurrent conflicted clients, its "informed consent" waivers are inadequate. In support for its contention that Camshaft and Prime collectively rendered "informed consent" for Prime's concurrent representation, Hogan Lovells refers to boilerplate language contained in standard engagement letters, and otherwise relies on general assertions in self-serving affidavits attesting that Hogan Lovells adequately explained the material risks that representing both Camshaft and Prime will inevitably cause. Opp. at 12. Such surface-level reassurances cannot reasonably pass muster under the current circumstances.

First, the boilerplate language in Hogan Lovells' engagement letter provides that "You agree that we are free to represent other clients (including future clients) in matters that involve you or are adverse to you ***as long as those matters are not the same as or substantially related to matters in which we represent you,*** or have represented you." *Id.* (emphasis added). At the outset, for the reasons set forth above, Hogan Lovells cannot reasonably argue that this litigation is not substantially related to the ongoing litigation between Prime and Camshaft in Florida. Thus, Hogan Lovells' engagement letter prohibits the representation of both Camshaft and Prime.

Second, Hogan Lovells attacks the line of cases referred to in Compass-Charlotte's opening Motion that informed consent must be given ***prior to*** the commencement of a representation in order to be considered "informed," and wrongly claims that Compass-Charlotte relied on only one case (*Discotrade Ltd. v. Wyeth-Ayerst Intern., Inc.*, 200 F. Supp. 2d 355 (S.D.N.Y.)) to support this proposition. Opp. at 14-15. But Compass-Charlotte cited many other cases holding that informed consent must be given ***prior to*** formal representation—Prime itself cites to one such case in its opposition brief. *See* Opp. at p. 11 (citing *Akagi.*, 2017 WL 1076345, at *1 (law firm "did not obtain . . . informed consent" before filing a lawsuit against its current client); *see also*

7

*Anderson v. Nassau Cnty. Dep't. of Corr.*, 376 F. Supp. 2d 294, 299 (E.D.N.Y. 2005) ("[F]ull disclosure and consent of the client ***prior to*** commencing the adverse representation" is the only way to properly obtain informed consent) (emphasis in original).  Unsurprisingly, Prime does not cite a single case where a court found retroactive "informed consent" acceptable during the concurrent representation of related cases.  Nor could it, because such a policy flies in the face of the objective nature underlying the consent rules in the N.Y. Rules of Professional Conduct.  Once the representation commences, retroactive "informed consent" is neither "informed" nor freely given.

At bottom, if Hogan Lovells actually disclosed and explained to Camshaft all the facts needed for "informed consent" as it claims, then that raises the question of why Camshaft would ever agree.  Camshaft had already been publicly sued for hiding over $500 million.  *See GLAS Trust Co. LLC v. Camshaft Capital Fund LP*, Case No. 2023-022640-CA-01 (Miami Dade Cnty.). Its principal, William Morton, had been publicly accused of putting luxury automobiles in his name personally at the same time.  *See* Esser Decl. ¶¶ 7-9, Ex. 2.  Compass-Charlotte sued Prime for similar behavior.  If Camshaft was indeed informed that the U.S. Attorney was investigating Prime and nevertheless agreed to let Hogan Lovells simultaneously represent Prime, that raises serious questions about the relationship between Camshaft and Prime, and potentially Camshaft's role in Prime's operations.  Indeed, Hogan Lovells invites this inquiry when it asserts in its opposition that Camshaft, which supposedly has a stand-alone independent transaction with Prime, would benefit from Prime's continued business operations (*i.e.*, Prime continuing its fraudulent scheme). Opp. at 16.  Hogan Lovells clearly should have known that this type of scrutiny on Camshaft would not exist ***but for*** Hogan Lovells' decision to embark on a concurrent representation of both Camshaft and Prime.  And that very knowledge should have led Hogan

8

Lovells (or any reasonable lawyer) to conclude that it could not adequately represent both Camshaft and Prime, due to the unwanted attention and scrutiny that such concurrent representation would cause for Camshaft.

### IV.  CONCLUSION

For the foregoing reasons and for the reasons set forth in the Motion, Compass-Charlotte's Motion should be granted and Hogan Lovells US LLP should be (1) disqualified from further representing Defendant Prime Capital Ventures, LLC; (2) prevented from any recovery Prime might obtain through this suit; and (3) ordered to pay counsel for Plaintiff its reasonable attorneys' fees for having to bring this Motion.  The Court should also grant any further relief it deems just and proper.

DATED: February 7, 2024
Albany, New York

**HINCKLEY, ALLEN & SNYDER LLP**

By: /s/ Christopher V. Fenlon
/s/ James L. Tuxbury
Christopher V. Fenlon
James L. Tuxbury (*pro hac vice*)
Kieran T. Murphy
30 South Pearl St., Suite 901
Albany, NY 12207-3492
T: 518-396-3100
F: 518-396-3101
E: cfenlon@hinckleyallen.com
   jtuxbury@hinckleyallen.com
   kmurphy@hinckleyallen.com

**PARKER, POE, ADAMS & BERNSTEIN LLP**

William L. Esser, IV (*pro hac vice*)
Eric H. Cottrell (*pro hac vice*)
620 South Tyron St., Suite 800
Charlotte, NC 28202
T: 704-335-9507
F: 704-334-4706
E: willesser@parkerpoe.com
   ericcottrell@parkerpoe.com

*Attorneys for Plaintiff
Compass-Charlotte 1031, LLC*