UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                                Plaintiff,

-against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital
Partners LLC

                                Defendants.

Case No.: 1:24-cv-55

---

## **DECLARATION OF WILLIAM L. ESSER IV**

I, William L. Esser IV, hereby declare as follows:

1. I am over 18 years of age, under no disability which would keep me from making this declaration. I have knowledge of the facts set forth herein based upon my own personal knowledge or based upon the attached exhibits and referenced public record documents.

2. I am an attorney and Partner with the law firm of Parker Poe Adams & Bernstein LLP. I am counsel for plaintiff Compass-Charlotte 1031, LLC ("Compass-Charlotte") and have been admitted *pro hac vice* in this matter.

3. The June 1, 2023 engagement letter filed by Hogan Lovells (Dkt. No. 92-1) states that it is with seven different Camshaft entities (Camshaft Capital Advisors LLC, Camshaft Capital Fund, LP, Camshaft CRE 1, LLC, Camshaft LP, Camshaft LLC, Camshaft Consulting LLC and Camshaft Holdings VI LLC) (collectively "Camshaft"). The engagement letter states that the engagement covers "general business and hedge fund regulatory advice."

## I. The First *Camshaft* Lawsuit Against Prime

4.  Per Miami-Dade County Clerk online court records, Hogan Lovells, on behalf of Camshaft, filed a lawsuit against Prime Capital Ventures, LLC ("Prime") on July 14, 2023 (Case No. 2023-019591-CA-01) (the "First Camshaft Prime Lawsuit"). A copy of the complaint filed in the First Camshaft Prime Lawsuit is attached hereto as Exhibit 1.

5.  In that complaint, Hogan Lovells, on behalf of Camshaft, alleged that Prime's personnel were "highly unqualified" and showed "an extreme lack of managerial experience". Id. at ¶ 13. Hogan, on behalf of Camshaft, also alleged that:

> Camshaft also came to learn that personnel formerly affiliated with Prime, and former clients of prime, harbor significant concerns about Prime, including (i) the quality and qualifications of its leadership and management, (ii) its operational capabilities, (iii) misrepresentation of its capability to successfully close transactions, (iv) misrepresentation of its ability to fulfill its contractual duties, including certain breaches of its fiduciary duties, and (v) its fundamental operational, financial, and legal soundness.

Id. at ¶ 14. Camshaft also alleged that Prime had promised many times to return Camshaft's ICA deposit "but repeatedly refused to provide Camshaft with a date by which it would return the ICA Payment to Camshaft." Id. at ¶ 21. Camshaft sought specific performance for "return of the ICA Payment" and "other damages resulting from Prime's breach." Id. at ¶ 36. It attached an email between Kris Roglieri at Prime and William Morton at Camshaft regarding termination of the line of credit agreement.

6.  Per the Miami docket, the First Camshaft Prime Lawsuit was dismissed without prejudice on July 31, 2023 (just a few days after the July 28, 2023 Termination and Confidentiality Agreement and General Release between Prime and Camshaft). Dkt. No. 67-3 at 17.

## II. The Missing $500 Million Lawsuit against Camshaft

7.  On September 5, 2023, three of the Camshaft entities were sued in Miami-Dade court in a case captioned *GLAS Trust Company LLC v. Camshaft*

2

*Capital Fund LP*, 2023-022640-CA-01 (the "GLAS Camshaft Lawsuit"). Hogan Lovells represents Camshaft in that case.

8. The GLAS Camshaft Lawsuit complaint is not available on the Miami court's docket (it appears to have been placed under seal). However, numerous online news sources reported about it, including Bloomberg and others. A copy of a September 12, 2023 story from Yahoo Finance related to the lawsuit complaint is attached hereto as Exhibit 2.

9. The story is entitled "*Byju's Hid $533 Million in Hedge Fund Once Run from Miami IHOP, Lenders Allege*". Among other things, the article describes allegations from the lawsuit including:

> Byju's last year transferred more than half a billion dollars to Camshaft Capital Fund, the investment firm founded by William C. Morton when he was just 23 years old, some Byju's lenders claim in a lawsuit. Morton's fund received the money despite an apparent lack of formal training in investing, according to the lenders. What's more, luxury cars - a 2023 Ferrari Roma, a 2020 Lamborghini Huracan EVO, and a 2014 Rolls-Royce Wraith - have been registered in Morton's name since the transfer occurred, according to court papers.

### III. The Second *Camshaft* Lawsuit against Prime

10. On September 15, 2023, Hogan Lovells, on behalf of Camshaft, filed its second lawsuit against Prime (Case No. 2023-023173-CA-01) (the "Second Camshaft Prime Lawsuit"). A copy of the complaint in the Second Camshaft Prime Lawsuit is filed at Dkt. No. 67-3. That complaint includes, among others, the same allegations about Prime's misrepresentations, breaches of fiduciary duties and lack of "fundamental operational, financial and legal soundness." Dkt. No. 67-3 at ¶ 14.

11. On September 27, 2023, Hogan Lovells, on behalf of Camshaft, filed an Emergency Motion for Preliminary Injunction against Prime (the "First Prime Injunction Motion"). A copy of that emergency motion is attached hereto as Exhibit 3. The Affidavit of William C. Morton ("Morton Affidavit" or "Morton Aff.") is attached to the First Prime Injunction Motion.

12. The First Prime Injunction Motion and Morton Affidavit state that Camshaft entered into an agreement with Prime to get a line of credit "for the

3

purpose of a single-family planned unit development." Id. at ¶ 2. Camshaft gave Prime $13.4 million as an ICA Payment and then Prime failed to provide the line of credit. Id. at ¶ 5. Camshaft stated that, without a return of its ICA Payment, it "will not be able to move forward with the Project, which not only puts Camshaft in jeopardy, but will also cause damage to other parties involved in the Project." Morton Aff. at ¶ 12.

13. In the First Prime Injunction Motion and Morton Affidavit, Hogan Lovells (on behalf of Camshaft) stated that Prime was "noncommunicative, nonresponsive, and unprofessional." First Prime Injunction Motion at ¶ 10. Hogan Lovells also stated that Prime had "<u>erroneously advised Camshaft that part of the funds had been sent, including providing Camshaft with a fake Federal ID Reference number that Camshaft's bank, JP Morgan Chase & Co., was not able to validate.</u>" Id. at ¶ 23 (emphasis added). Hogan Lovells further stated that Prime failed to return the ICA payment "[d]espite Camshaft's repeated inquiries" and a formal default letter drafted by Hogan Lovells. Id. at ¶ 22.

14. Hogan Lovells (on behalf of Camshaft) also stated that "without the injunctive relief requested, Camshaft faces the serious threat of having to declare bankruptcy and go completely out of business." Id. at ¶ 26; *see also* id. at 12 ("Prime's material breach of the Agreements presents the imminent threat of putting Camshaft completely out of business."); id. at p. 15 ("Camshaft's primary general contractor for the Project will likely be unable to remain operating or avoid bankruptcy due to Camshaft's inability to proceed with the Project, which has been caused directly by Prime's failure to timely return the ICA Payment.").

15. On October 13, 2023, Hogan Lovells filed a second document entitled "Emergency Motion for Entry of Preliminary Injunction" in which it argued that the Miami-Dade court should immediately enter preliminary injunction against Prime since Prime failed to respond to the First Prime Injunction Motion (the "Second Prime Injunction Motion"). A true and correct copy of the Second Prime Injunction Motion is attached hereto as <u>Exhibit 4</u>.

16. According to the docket in the Second Camshaft Prime Lawsuit (Dkt. No. 67-6), both the First Prime Injunction Motion and the Second Prime Injunction Motion have not been ruled upon and remain pending before the Miami-Dade court.

### IV. Involuntary Bankruptcy and U.S. Attorney Investigation

17. On December 4, 2023, I reached out to David Massey at Hogan Lovells. A copy of my email communication with Mr. Massey is filed at Dkt. No. 67-4.

4

18. On December 5, 2023, I emailed Mr. Massey to see if Camshaft wanted to join in an "involuntary bankruptcy petition against Prime. My client is similarly situated and out $16 million and there are quite a number of other parties in similar situation." Id. Mr. Massey never indicated that Camshaft wanted to join so I proceeded without its involvement.

19. The involuntary bankruptcy against Prime was filed on December 19, 2023 and I immediately sent Mr. Massey copies of the emergency motion for an interim trustee filed against Prime. The emergency motion in bankruptcy alleged against Prime many of the same things that Hogan Lovells alleged against Prime in its still pending complaint and injunction motions on behalf of Camshaft. Among other things, the emergency motion alleged that "Prime appears to be part of a much bigger commercial loan fraud operation which has stolen millions of dollars" and listed Camshaft as one of the parties from whom Prime had taken ICA deposits and not returned them. *In re Prime Capital Ventures, LLC*, 23-11302 (Bankr. N.D.N.Y.) (the "Prime Bankruptcy"), Doc. 4 at pp. 1, 22.

20. On December 20, 2023 (the day after the Prime Bankruptcy was filed), I notified David Massey via email that "The U.S. Attorney's office is interested in talking to victims as well if you or your client will talk with them." (emphasis added). A true and correct copy of this email chain is attached hereto as Exhibit 5.

21. Mr. Massey responded back "Ok great, I will pass that along as well. Is that the NDNY office?" To which I responded "Yes." Id.

22. I assumed that, based upon that communication, Hogan Lovells and Camshaft would contact the U.S. Attorney's office and share details regarding their interactions with Prime. I had every reason to believe that Hogan Lovells and Camshaft would do this given the allegations about Prime in the pending *Camshaft* complaint and the pending injunction motions, especially the very serious allegation that Prime had provided Camshaft with a fake Federal ID reference number to purportedly show that Prime had wired funds back to Camshaft.

### V. Hogan Lovells' Denial of Any U.S. Attorney Investigation of Prime

23. Hogan filed its notice of appearance in this case on Sunday, January 14, 2024 (Dkt No. 9). Compass-Charlotte filed its pre-motion letter regarding Hogan Lovells' conflict issue on Monday, January 15, 2024 (Dkt No. 11). The alleged engagement letter between Prime and Hogan Lovells has a signature date by Mr. Roglieri of January 15, 2024, after Hogan had already appeared in this action for Prime. Dkt No. 92-2 at 3.

24. On January 22, 2024, the Court held a hearing and expressed significant concerns about Hogan's concurrent representation of Prime and Camshaft. Dkt No. 67-10. Compass-Charlotte subsequently filed its motion for disqualification after the Court expressed those concerns. Dkt. No. 67.

25. Following the January 22 hearing, I met with Pieter Van Tol, the Receiver, and other counsel in a conference room at the Court. In that meeting, we discussed the hearing and asked if Hogan Lovells would withdraw after hearing the Court's serious expressions of concern. Mr. Van Tol indicated that Hogan Lovells would not withdraw. He also asserted that Berone Capital was the bad actor and had defrauded Prime. Mr. Van Tol further stated that the FBI and SEC were investigating Berone Capital, but also stated that there was no criminal investigation of any kind as to Prime and Mr. Roglieri.

26. This statement from Mr. Van Tol surprised me as I had clearly informed Hogan Lovells in my December 20, 2023 email that "The U.S. Attorney's office is interested in talking to victims as well if you or your client will talk with them." *See* Ex. 5.

27. I have reviewed the information filed on behalf of Hogan Lovells in response to Compass-Charlotte's Disqualification Motion, and do not see any mention of either Camshaft or Prime being informed of the U.S. Attorney investigation at any time in connection with Hogan Lovells' request for conflict waivers.

28. After Hogan Lovells was informed of the U.S. Attorney investigation, it nevertheless had Kris Roglieri (for Prime) execute and submit a January 7, 2024 Declaration under penalty of perjury in the Bankruptcy Court in support of a motion for bond. *See* Prime Bankruptcy Doc. 71. The accuracy of some of the sworn statements by Mr. Roglieri in that declaration are now in dispute and raise the question of whether Mr. Roglieri (through Hogan Lovells) provided inaccurate information in a sworn declaration (at a time when Mr. Roglieri's actions were being reviewed by the U.S. Attorney's office). Compare id. at ¶ 4 ("Prime Capital employs a staff of 26 employees.") *with* Receiver's First Report, Docket No. 37 at ¶ 19 (Mr. Roglieri informed the receiver "that Prime has no employees . . .")

29. Moreover, the allegations filed by Hogan Lovells in that bond motion (Prime Bankruptcy Doc. 69) are directly contrary to its simultaneously filed complaint for Camshaft. In the bond motion, Hogan Lovells asserts that "Over the last two years, Prime Capital has operated a successful business with a total of 38 loan transactions in an aggregate amount of over a $1 billion." Simultaneously, in

6

the pending Second Camshaft Complaint (Dkt. No. 67-3 at ¶ 14), Hogan Lovells challenges Prime's "fundamental operational, financial, and legal soundness."

30. In a February 2, 2024 email, Mr. Van Tol informed me, the Receiver, and numerous other counsel that "As you may be aware, the FBI executed search warrants at the homes of Kris Roglieri and Kimberly Humphrey today (among other search warrants), and they are in the process of getting criminal defense counsel (not our firm)."

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of February, 2024.

_____

William L. Esser IV