UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

Case No.: 1:24-cv-55

Plaintiff,

-against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity Partners
LLC

**DECLARATION
OF MATTHEW A.
FISTONICH**

Defendants.

---

I, Matthew Fistonich, hereby declare as follows:

1.     I am over 18 years of age, under no disability which would keep me from making this declaration and have personal knowledge of the facts set forth herein based upon my own personal involvement.

2.     I am the Managing Member of SP Harbor QOZB LP ("SP Harbor").

3.     Beginning in April 2023, SP Harbor began having discussions with Prime Capital Ventures, LLC ("Prime") regarding the possibility of Prime providing SP Harbor with a Development Line of Credit in excess of $50,000,000.

4.     Most of my communications/conversations occurred with Kimberly "Kimmy" Humphrey who presented herself as a Vice President at Prime. However, from time to time I did speak with Kris Roglieri ("Mr. Roglieri"), and he was often cc'd on email communications between Prime and SP Harbor.

5.     On or about June 20, 2023, Prime issued a Commitment to Fund Letter, pursuant to which it committed to provide a line of credit to SP Harbor in the sum of $52,815,000.  One of the requirements to obtain the actual line of credit was that SP Harbor would have to place on deposit in a bank account held by Prime, the sum of $10,563,000 (the "ICA").  These monies were to be used to pay

Prime earned interest and other charges. A copy of the Commitment to Fund Letter is annexed hereto as Exhibit "A".

6. On July 26, 2023 myself and another SP Harbor partner, Clif Erwin, flew to New York and met with Kris Roglieri ("Mr. Roglieri") and Greg Caito to discuss the terms of the anticipated financing.

7. Thereafter during the remainder of the Summer of 2023, the parties continued to negotiate the terms of a Development Line of Credit (the "LOC").

8. In late September 2023, the essential terms of the LOC were agreed to. Pursuant to the terms of the final agreement, Prime promised that it would provide to SP Harbor a LOC in the amount of $52,815,000.00 at an interest rate of 7.75%.

9. As stated above, one of Prime's primary requirements to loan SP Harbor the monies, was that SP Harbor had to place on deposit with Prime the sum of $10,563,000 (the "Deposit").

10. However, as of October 1, 2023, SP Harbor did not have the full Deposit monies immediately available to transfer to Prime. Mr. Roglieri then advised that if the deposit was not soon made, the existing terms of the proposed LOC was in jeopardy.

11. The promised interest rate of 7.75% was very attractive to SP Harbor as the U.S. Prime Rate of Interest at the time was 8.5%. *See* https://fedprimerate.com/wall_street_journal_prime_rate_history.htm

12. Not wanting to lose the potential financing, SP Harbor requested and Prime agreed that the Deposit could be separated into an initial deposit of $2.5 million, followed by the balance of the Deposit to be paid within 45 business days thereafter. The terms of this agreement were memorialized in an **Amended Restated Deposit Agreement** (the "Deposit Agreement"). I signed for SP Harbor and Kris Roglieri signed for Prime. A true and correct copy of the Deposit Agreement is attached hereto as Exhibit B.

13. Among other things, the Deposit Agreement provided for the following (emphasis added):

> a. That SP Harbor would immediately wire Prime "a **refundable** earnest money deposit in the amount of Two Million Five Hundred

Thousand and No/100 Dollars ($2,500,000.00") (the "Deposit Amount")" (Exhibit B, ¶1(a));

b.   That the $2.5 million deposit would be "deposited by Lender [Prime] with Deposit Bank [Key Bank], in a **segregated account** described on Exhibit B, attached hereto"; (Exhibit B, ¶1(a))

c.   That Prime would "cause Deposit Bank [Key Bank] to hold and release, the Deposit Amount as provided in" the Deposit Agreement, including immediately returning the Deposit Amount to SP Harbor upon receipt of Return Instructions; (Exhibit B, ¶2(a)) and

d.   That Prime would "**not deliver custody or possession of any of the Deposit Amount to anyone** except pursuant to the express terms of this Agreement" (Exhibit B, ¶3)

14.   Each of these provisions of the Deposit Agreement were critical terms for SP Harbor as it wanted to ensure that its $2.5 million was held separately from any other funds and not used for any other purpose until SP Harbor had decided to move forward with financing from Prime, rather than exercising its right to terminate the deal.

15.   Absent these terms, SP Harbor would not have sent $2.5 million to Prime.

16.   On October 5, 2023, SP Harbor wired $2.5 million to Prime's KeyBank account XX2233 (the "Prime KeyBank Account") per the wire instructions provided by Prime which were attached to the Deposit Agreement.

17.   In mid- December 2023, I was advised by a third party that Prime was a defendant in a litigation which alleged among other things fraud by Prime.

18.   Not wanting to expose SP Harbor to any potential fraud, on December 18, 2023 I sent an email to Kris Roglieri and Kimmy Humphrey requesting the return of $2.5 million deposit.  On December 19, 2023, Prime responded that the deposit would be returned.  A copy of an email exchange with Kris Roglieri and Kimmy Humphrey is annexed hereto as Exhibit C.

19.   On December 21, 2023, having not received a refund of the Deposit Amount, I sent a written demand letter to Prime by email to Kris Roglieri and Greg

Caito, Esq. and by overnight mail requesting the return of the Deposit. A true and correct copy of the demand letter is annexed as Exhibit D.

20. Shortly thereafter I became aware that an involuntary bankruptcy proceeding was filed against Prime. My attorneys were told by Prime's attorneys that the monies could not be returned due to the bankruptcy stay and the subsequent involvement of a receiver.

21. I am now aware that numerous actions have been commenced against Prime which allege among other things fraud. In one such action entitled ER Tennessee, LLC v Prime Capital Ventures, LLC et al. Index No. 650231/2024, Supreme Court of the State of New York, County of New York, the Federal Court Receiver – Paul Levine filed documents opposing the appointment of a receiver in the State Court proceeding. One of the submissions by the Receiver was a KeyBank bank statement (the "Prime KeyBank Account"). A copy of the Prime KeyBank Account statement is attached hereto as Exhibit E.

22. That statement shows that SP Harbor's $2.5 million deposit was received into the Prime KeyBank Account on October 5, 2023.

23. This statement seems to demonstrate that despite Prime's agreement and covenant, that deposit monies would be held in a "segregated account" that the Prime KeyBank Account was not a "segregated account" but instead appears to have been a regular operating account for Prime.

24. According to that statement, Prime KeyBank Account had a balance of $473,173.60 before receipt of the $2.5 million wire from SP Harbor.

25. Although Prime and Kris Roglieri had just promised that they would "**not deliver custody or possession of any of the Deposit Amount to anyone**", that promise appears to have been knowingly false since Prime immediately used SP Harbor's $2.5 million deposit for other purposes.

26. In fact, the account statement shows that on October 5, 2023 (the day the SP Harbor wire was received), Prime transferred out $62,000 from the Prime KeyBank Account, thus leaving $411,173.60 of prior funds, plus the $2.5 million from SP Harbor.

27. The very next day after receiving the wire, the account statement shows that Prime began improperly dissipating the SP Harbor deposit in direct contradiction of its promise that it would "**not deliver custody or possession of any of the Deposit Amount to anyone**."

28.     From October 6, 2023 to October 10, 2023, the account statement shows that Prime dissipated the entirety of SP Harbor's $2.5 million deposit. Substantial wires out by Prime include the following:

    a.  October 6 - $500,000

    b.  October 6 - $1,577,570.14 - 3D Lundy Ltd.

    c.  October 10 - $37,900 - XO Global LLC

    d.  October 10 - $114,298.88 - Visbeen Architect

    e.  October 10 - $333,333.33 - SK Law Group

    f.  October 10 - $36,799 -  Miscellaneous transfers

29.     Prime's use of SP Harbor's funds was directly contrary to the terms of the Deposit Agreement in which Prime explicitly agreed that it would "**not deliver custody or possession of any of the Deposit Amount to anyone**." (Exhibit B, ¶3)

30.     Had I known that Prime and Kris Roglieri had no intention of honoring the terms of the Deposit Agreement, I would never have signed the Deposit Agreement or wired the $2.5 million to Prime.

31.     SP Harbor urges the Court to maintain the receiver appointed in this action so that a full and complete investigation of Prime can occur and that SP Harbor and the other potential victims of this fraud obtain some of their money back.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ⁷·ᵗʰ day of February 2024.

_____

Matthew Fistonich

# EXHIBIT A



## Commitment to Fund Letter

June 20, 2023

("Project"):  Multi-family residential development; San Pedro CA

Dear Sirs,

Prime Capital Ventures ("Provider") is pleased to inform SP Harbor QOZB LP ("Client") that we will commit to fund FIFTY MILLION THREE HUNDRED THOUSAND DOLLARS ($50,300,000) via a non-recourse, asset-backed Line of Credit ("LOC") to be used at the Client's discretion within the scope of the Agreement.  Funds are to be used for the acquisition and/or refinancing and development of the Project and are based on the following terms and conditions:

|  |  |  |
|---|---|---|
| **Debt:** | | |
| ***Est. Principal Amount:*** | $52,815,000 | |
| Project LOC Amount: | $50,300,000 | |
| Interest Credit Account (ICA): | $10,563,000 | *(pre-paid interest)* |
| Term: | 60 months | |
| Rate: | 7.5% | *I/O* |
| Pre-Payment Penalty: | None | |
| | | |
| **Sponsor Contribution:** | | |
| Contribution Amount: | $10,563,000 | *cash* |
| | | |
| **Equity:** | | |
| Equity Contribution Amount: | $0 | |
| Preferred Rate: | NA | |
| Equity Split: | NA | *(LP/GP)* |
| Promote Fee: | NA | |
| Additional Terms: | RFR at buyout | |
| | | |
| **Deposit:** | | |
| Underwriting/Due Diligence: | $40,000 | |
| | | |
| **Other Fees:** | Paid out of loan proceeds. | |
| Lender Fee: | 5% | |
| | | |
| **Schedule:** | | |
| Delivery: | TBD; 60 to 90 banking days after ICA payment & contract completion per draw schedule | |



Terms & Conditions:

1. This agreement must be countersigned by June 27, 2023 to be valid.
2. Upon issuance of this Commitment to Fund Letter, the Due Diligence deposit is deemed earned by Prime Capital Ventures
3. Upon signing of this Commitment to Fund Letter, Prime Capital Ventures will begin to prepare and issue loan documents in accordance with this agreement.
4. Terms and funding are contingent upon fully executed loan documents and ICA payment.

Regards,

By:

*Kris Roglieri*

Kris Roglieri
CEO
Prime Capital Ventures, LLC

By:

DocuSigned by:

ET18787918FE4E2...

Name: Matthew Fistonich
Title: Matthew Fistonich
Company: SP Harbor QOZB
Date: 6/21/2023

Prime Capital Ventures
66 South Pearl St. 10th Floor
Albany, NY. 12207
www.primecommerciallending.com

# EXHIBIT B

## AMENDED AND RESTATED DEPOSIT AGREEMENT

THIS AMENDED AND RESTATED DEPOSIT AGREEMENT (this "Agreement") is made and entered into as of October 3, 2023, by and between **SP HARBOR QOZB LP**, a Delaware limited partnership, (the "Borrower"), and **PRIME CAPITAL VENTURES, LLC**, a Delaware limited liability company, (the "Lender" and, together with the "Borrower", sometimes referred to individually as a "Party" and collectively as the "Parties")

### RECITALS

WHEREAS, on September 29, 2023 the Parties entered into a certain Deposit Agreement, which agreement is hereby amended and restated by this Agreement;

WHEREAS, concurrently herewith, the Parties entered into or shall enter into that certain Development Line of Credit (the "Credit Agreement"), and certain other related documents (collectively, the "Loan Documents"), each dated as of the date hereof for a loan of up to Fifty-Two Million Eight Hundred Fifteen Thousand and 00/100 Dollars ($52,815,000.00) (the "Loan"). Pursuant to the Loan Documents, Borrower is obligated to deliver a refundable earnest money deposit in the amount of Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00) (the "Deposit Amount"). Initially capitalize terms used herein but not defined herein shall have the meanings ascribed to such terms in the Credit Agreement.

WHEREAS, as a condition precedent to proceeding with transaction contemplated under the Credit Agreement, Borrower is obligated to deposit an amount equal to Ten Million Five Hundred Sixty-Three Thousand and 00/100 Dollars ($10,563,000.00) or twenty percent (20%) of the amount of the Loan (the "ICA Payment"), with or for the benefit of Lender.

WHEREAS, Borrower has requested that Lender provide forty-five (45) additional Business Days to make the ICA Payment, to lock the interest rate under the Credit Agreement to an amount equal to 7.75% and to not increase the amount of the ICA Payment due under the Credit Agreement to any amount more than 20% and Lender is willing to accommodate such request so long as Borrower pays to Lender a refundable amount equal to the Deposit Amount, all in accordance with and subject to, the terms of this Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows, with the understandings and agreements set forth in the Recitals above being incorporated into the agreement among the Parties:

1.  Deposit Amount.

    (a)    Simultaneously with the execution and delivery of this Agreement, Borrower is depositing with Key Bank (the "Deposit Bank") the Deposit Amount in immediately available funds pursuant to the account details and wire instructions set forth on Exhibit A, attached hereto and incorporated herein by this reference. The Lender hereby acknowledges receipt of the Deposit Amount. The Deposit Amount shall be deposited by Lender with Deposit Bank, in a segregated account described on Exhibit A, attached hereto (the "Deposit Account"), subject to the terms and conditions of this Agreement.

    (b)    The amount of the ICA Payment shall at all times be no greater than 20% of the Loan.

2.  Disposition and Termination of the Deposit Amount.

    (a)    Deposit Amount. The Parties shall act in accordance with, and Lender shall cause Deposit Bank to hold and release, the Deposit Amount as provided in, this Section 2(a) as follows:

(i)     If Lender receives Release Instructions from Borrower within forty-five (45) Business Days of the date hereof, the Lender shall promptly (or shall cause Deposit Bank to promptly), but in any event within fifteen (15) Business Days after receipt of Release Instructions, disburse all or part of the Deposit Amount to the Lender in accordance with such Release Instructions. The Parties agree and acknowledge that all such amounts shall be applied to Borrower's ICA Payment obligations under the Loan Documents.

(ii)    If Lender receives Return Instructions from Borrower within forty-five (45) Business Days of the date hereof, the Lender shall promptly (or shall cause Deposit Bank to promptly), but in any event within fifteen (15) Business Days after receipt of Return Instructions, disburse all or part of the Deposit Amount to the Borrower in accordance with such Return Instructions. The Parties agree and acknowledge that in the event that Borrower delivers Return Instructions to Lender, the transaction contemplated by the Loan Documents shall be deemed terminated and following Borrower's receipt of the Deposit Funds in accordance with the Return Instructions, no Party shall have any remaining obligations to the other.

(iii)   If Borrower does not deliver Release Instructions or Return Instructions following the expiration of forty-five (45) Business Days of the date hereof, the Lender shall release (or cause Deposit Bank to release) promptly, but in any event within fifteen (15) Business Days following the expiration of forty-five (45) Business Days of the date hereof, all of the Deposit Amount to the Borrower in accordance with written instructions from Borrower, which Deposit Amount shall be delivered to Borrower by wire transfer or cashier's check, at which time the transaction contemplated by the Loan Documents shall be deemed terminated and following Borrower's receipt of the Deposit Funds in accordance with Borrower's written instructions, no Party shall have any remaining obligations to the other.

(b)     <u>Certain Definitions.</u>

(i)     "<u>Business Day</u>" means any day that is not a Saturday, a Sunday or other day on which banks are not required or authorized by law to be closed in New York, New York.

(ii)    "<u>Release Instructions</u>" means the written instruction delivered to Lender by certified mail in accordance with Section 4 below executed by an authorized signer of Borrower directing the Lender to disburse all or a portion of the Deposit Amount to Lender, as applicable.

(iii)   "<u>Return Instructions</u>" means the written instruction delivered to Lender by certified mail in accordance with Section 4 below executed by an authorized signer of Borrower directing the Lender to disburse all or a portion of the Deposit Amount to Borrower, as applicable.

(iv)    "<u>Person</u>" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or a governmental entity or any department, agency or political subdivision thereof.

3.      <u>Covenant of Lender.</u>  The Lender hereby agrees and covenants with that it shall perform all of its obligations under this Agreement and shall not deliver custody or possession of any of the Deposit Amount to anyone except pursuant to the express terms of this Agreement or as otherwise required by law and shall cause the Deposit Funds to be delivered in accordance with Release Instructions or Return Instructions, as applicable. Lender agrees and acknowledges that the rate under the Loan Documents shall remain at 7.75% for a period of forty-five (45) Business Days from the date hereof.

4.      <u>Notices.</u>  All notices, requests, demands and other communications required under this Agreement shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) on the day of transmission if sent by electronic mail ("e-mail") with a PDF attachment executed by an authorized signer of the Party/ Parties to the e-mail address given below, and written confirmation of receipt is obtained promptly after completion of the transmission, (iv) by overnight delivery with a reputable national overnight delivery service, or (v) by mail or

2

by certified mail, return receipt requested, and postage prepaid. If any notice is mailed, it shall be deemed given five (5) Business Days after the date such notice is deposited with the United States Postal Service. If notice is given to a Party, it shall be given at the address for such Party set forth below. It shall be the responsibility of the Parties to notify each other in writing of any name or address changes.

if to Borrower, then to:

SP Harbor QOZB LP
c/o CedarWood Asset Management
550 W B St, 4th Floor
San Diego, CA 92101
Attention:      Matthew Fistonich, Clifton Erwin
E-mail:          mattf@cedarwam.com, cerwin@cedarwam.com

with a copy (which shall not constitute notice) to:

Hanson Bridgett LLP
777 S. Figueroa St., Suite 4200
Los Angeles, CA 90017
Attention:      Alex Grigorians, Esq.
E-mail:          agrigorians@hansonbridgett.com

or, if to Lender, then to:

Prime Capital Ventures, LLC
c/o Prime Commercial Lending
66 South Pearl Street 10th floor
Albany, NY 12207
Attention:      Kris D. Roglieri
E-mail:          kris@primecommerciallending.com

with a copy (which shall not constitute notice) to:

Prime Capital Ventures, LLC
c/o Prime Commercial Lending
66 South Pearl Street 10th floor
Albany, NY 12207
Attention:      Greg Caito, Esq.
E-mail:          gcaito@primecommerciallending.com

5.      Termination.  This Agreement shall terminate on the first to occur of (a) the distribution of all of the Deposit Amount in accordance with this Agreement or (b) delivery to the Lender of a written notice of termination executed jointly by Borrower and Lender after which this Agreement shall be of no further force and effect except that the provisions of Section 5 hereof shall survive termination.

6.      Miscellaneous.  The provisions of this Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by all of the parties hereto.  Neither this Agreement nor any right or interest hereunder may be assigned in whole or in part by any party without the prior consent of the other parties.  This Agreement shall be governed by and construed under the laws of the State of New York. Each party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York.  The parties hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising from or relating to this

3

Agreement.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the parties to this Agreement may be transmitted by facsimile or electronic transmission in portable document format (.pdf), and such facsimile or .pdf will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.  If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.  The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party shall comply with applicable laws and regulations.  Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.  Nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity any legal or equitable right, remedy, interest or claim under or in respect of this Agreement or any funds escrowed hereunder.  In any controversy, claim, or dispute between the parties hereto arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to receive from the other party reasonable expenses, attorney fees, and costs.  Time is of the essence of this Agreement.

       7.    <u>Further Assurances</u>.  Following the date hereof, each Party shall deliver to the other Party such further information and documents and shall execute and deliver to the other such further instruments and agreements as any other party shall reasonably request to consummate or confirm the transactions provided for herein, to accomplish the purpose hereof or to assure to any other party the benefits hereof.

       8.    <u>Use of Electronic Records and Signatures</u>.  As used in this Agreement, the terms "writing" and "written" include electronic records, and the terms "execute," "signed" and "signature" include the use of electronic signatures. Notwithstanding any other provision of this Agreement or the attached Exhibits and Schedules, any electronic signature that is presented as the signature of the purported signer, regardless of the appearance or form of such electronic signature, may be deemed genuine by Lender in Lender's sole discretion, and such electronic signature shall be of the same legal effect, validity and enforceability as a manually executed, original, wet-ink signature; provided, however, that any such electronic signature must be an actual and not a typed signature. Any electronically signed agreement, instruction or other document shall be an "electronic record" established in the ordinary course of business and any copy shall constitute an original for all purposes. The terms "electronic signature" and "electronic record" shall have the meaning ascribed to them in 15 USC § 7006. This Agreement and any instruction or other document furnished hereunder may be transmitted by facsimile or as a PDF file attached to an email.

       9.    <u>Return of Funds.</u>  If the Deposit Bank releases any funds, including but not limited to the Deposit Amount or any portion of it, to a Party and subsequently determines, in its sole discretion, that the payment or any portion of it was made in error, the Party shall, upon notice, promptly refund the erroneous payment.  Any such erroneous payment by the Deposit Bank, and the Party's return thereof to the Deposit Bank, shall not affect any obligation or right of either the Deposit Bank or the Parties.  Each of the Parties agrees not to assert discharge for value, bona fide payee, or any similar doctrine as a defense to the Deposit Bank's recovery of any erroneous payment.

*   *   *   *   *

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

Borrower:

**SP HARBOR QOZB LP,**
a Delaware limited partnership

By: _Matthew A. Fistonich_ _____

Name:   Matthew A. Fistonich
Title:    Managing Member

Lender:

**PRIME CAPITAL VENTURES, LLC,**
a Delaware limited liability company

By: _____

Name: Kris D. Roglieri
Title: CEO

**EXHIBIT A**
DEPOSIT BANK AND ACCOUNT NUMBER



## Wire Instructions

| | |
|---|---|
| **Bank:** | Key Bank |
| **Address:** | 127 Public Square |
| | Cleveland, OH 44114 |
| **Account Holder:** | Prime Capital Ventures, LLC |
| **Account #:** | ▬▬▬2233 |
| **Routing #:** | 021300077 |
| **SWIFT:** | KEYBUS33ALB |
| **IBAN:** | KEYBUS33 |

EXHIBIT C

 **Gmail**

Matt Fistonich <mattf@cedarwam.com>

---

**SP Harbor QOZB Wiring Instructions**

---

**kris@primecommerciallending.com** <kris@primecommerciallending.com>
To: Matt Fistonich <mattf@cedarwam.com>
Cc: Clifton Erwin <cerwin@cedarwam.com>, Kimmy Humphrey <kimmy@primecommerciallending.com>, Greg Caito <gcaito@primecommerciallending.com>

Tue, Dec 19, 2023 at 11:43 AM

Hello Matt

I want to let you know we received your email and have begun that process.

Thank you

Kris D. Roglieri

Sent from my iPhone

> On Dec 18, 2023, at 1:50 PM, Matt Fistonich <mattf@cedarwam.com> wrote:

Kris & Kimmy,

I have attached the wiring instructions to return the $2,500,000 deposit.  Please confirm when the wire has been initiated.



**Matthew Fistonich**
CEO
Cedarwood Asset Management

✉ mattf@cedarwam.com
☎ 619-254-5642
🌐 cedarwam.com
📍 550 W B St, 4th Floor,
San Diego, CA 92101

The content of this email is confidential and intended for the recipient specified in the message only. It is strictly forbidden to share any part of this message with any third party, without the written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

The content of this email is confidential and intended for the recipient specified in the message only. It is strictly forbidden to share any part of this message with any third party, without the written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.
<SP Harbor QOZB Wiring Instructions.pdf>

# EXHIBIT D

December 21, 2023

VIA ELECTRONIC MAIL
AND VIA OVERNIGHT DELIVERY

Prime Capital Ventures, LLC                    Prime Capital Ventures, LLC
c/o Prime Commercial Lending                  c/o Prime Commercial Lending
66 South Pearl Street 10th floor              66 South Pearl Street 10th floor
Albany, NY 12207                              Albany, NY 12207
Attention: Kris D. Roglieri                   Attention: Greg Caito, Esq.
E-mail: kris@primecommerciallending.com       E-mail: gcaito@primecommerciallending.com

Re:      Demand for Return of Deposit; Release Instructions

Dear Messrs. Roglieri and Caito:

Reference is made to that certain Amended and Restated Deposit Agreement (the *"Deposit Agreement"*) dated as of October 3, 2023, by and between SP Harbor QOZB LP, a Delaware limited partnership, (the *"Borrower"*), and Prime Capital Ventures, LLC, a Delaware limited liability company (the *"Lender"*) in accordance with which Borrower deposited with Lender a refundable earnest money deposit in the amount of Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00) (the *"Deposit Amount"*) in connection with an anticipated financing transaction. Initially capitalize terms used herein but not defined herein shall have the meanings ascribed to such terms in the Deposit Agreement.

Pursuant to Section 2(a)(iii) of the Deposit Agreement, if Borrower does not deliver Release Instructions or Return Instructions on or before [December 11, 2023], Lender is obligated to release the Deposit Amount to the Borrower by wire transfer or cashier's check by [January 3, 2024].

As you are aware, Borrower has not previously delivered Release Instructions or Return Instructions. As of the date of this letter, Borrower has not received the Deposit Amount. Accordingly, this letter serves as formal demand that Lender return the Deposit Amount in accordance with Section 2(a)(iii) of the Deposit Agreement by [January 3, 2024].

If you have already arranged for the return of the Deposit Amount, please provide the undersigned with wire details or a copy of the cashier's check. We look forward to resolving this matter and reserve all rights.

Thank you,

Matthew A Fistonich
Managing Member, SP Harbor QOZB

# EXHIBIT E



**KeyBank**

KeyBank
P.O. Box 93885
Cleveland, OH 44101-5885

**Business Banking Statement**
October 31, 2023
page 1 of 4

PRIME CAPITAL VENTURES
66 S PEARL ST FL 10
ALBANY NY 12207-1533

*Questions or comments?*
Call our Key Business Resource Center
1-888-KEY4BIZ (1-888-539-4249)

*Enroll in Online Banking today at Key.com.*
*Access your available accounts, transfer funds and view your transactions right from your PC.*

Key Business Reward Checking
PRIME CAPITAL VENTURES

| | |
|---|---:|
| Beginning balance 9-30-23 | $516,229.10 |
| 9 Additions | +15,712,500.00 |
| 69 Subtractions | -14,880,691.78 |
| Net fees and charges | -264.00 |
| **Ending balance 10-31-23** | **$1,347,773.32** |

### Additions

| Deposits | Date | Serial # | Source | | |
|---|---|---|---|---|---:|
| | 10-5 | | Wire Deposit | Sp Harbor Qozb L | $2,500,000.00 |
| | 10-11 | | Wire Deposit | Prime Capital Ve | 5,000,000.00 |
| | 10-16 | | Wire Deposit | Wlgt Holdings Ll | 150,000.00 |
| | 10-16 | | Wire Deposit | Prime Capital Ve | 1,000,000.00 |
| | 10-16 | | Wire Deposit | Berone Capital F | 1,865,000.00 |
| | 10-17 | | Wire Deposit | Eagles Nest Deve | 50,000.00 |
| | 10-18 | | Wire Deposit | Sqrl Holdings | 4,462,500.00 |
| | 10-26 | | Wire Deposit | 1800 Park Ave Ll | 85,000.00 |
| | 10-27 | | Wire Deposit | Conextions Inc | 600,000.00 |
| | | | **Total additions** | | **$15,712,500.00** |

### Subtractions

| Withdrawals | Date | Serial # | Location | | |
|---|---|---|---|---|---:|
| | 10-2 | | Wire Withdrawal | Fellers Snider B | $1,850.00 |
| | 10-2 | | Wire Withdrawal | Chris Snyder    4 | 10,000.00 |
| | 10-2 | | Wire Withdrawal | Royal Abstract N | 31,205.50 |
| | 10-5 | | Wire Withdrawal | Mike Timko | 5,000.00 |
| | 10-5 | | Wire Withdrawal | Mirror Lake Con | 7,000.00 |
| | 10-5 | | Internet Trf To DDA | | 50,000.00 |
| | 10-6 | | Internal Wire Wd | | 500,000.00 |

KeyBank 🔑

Business Banking Statement
October 31, 2023
page 2 of 4

## Subtractions
(con't)

| Withdrawals Date | Serial # | Location | |
|---|---|---|---|
| 10-6 | | Wire Withdrawal 3D Lundy Ltd | 1,577,570.14 |
| 10-6 | | Internet Trf To | 2,000.00 |
| 10-6 | | Internet Trf To | 3,000.00 |
| 10-10 | | Wire Withdrawal Nubridge Commerc | 28,350.00 |
| 10-10 | | Wire Withdrawal Aspen Commercial | 35,000.00 |
| 10-10 | | Wire Withdrawal Xo Global Llc | 37,900.00 |
| 10-10 | | Wire Withdrawal Visbeen Architec | 114,298.88 |
| 10-10 | | Wire Withdrawal Sk Law Group Pll | 333,333.33 |
| 10-10 | | Internet Trf To DDA | 2,500.00 |
| 10-10 | | Internet Trf To DDA | 2,599.00 |
| 10-10 | | Internet Trf To DDA | 3,000.00 |
| 10-10 | | Internet Trf To DDA | 4,000.00 |
| 10-10 | | Internet Trf To DDA | 5,000.00 |
| 10-10 | | Internet Trf To DDA | 22,000.00 |
| 10-11 | | Internal Wire Wd | 1,428.00 |
| 10-11 | | Internal Wire Wd | 7,000.00 |
| 10-11 | | Wire Withdrawal Cocapital Fundin 4 | 25,000.00 |
| 10-11 | | Withdrawal Branch     New York | 50.00 |
| 10-11 | | Internet Trf To DDA | 1,000.00 |
| 10-12 | | Wire Withdrawal Xo Global | 100,628.00 |
| 10-12 | | Wire Withdrawal Matthew Thacker | 5,000,000.00 |
| 10-12 | | Internet Trf To DDA | 8,000.00 |
| 10-13 | | Wire Withdrawal Sheppard Mullin | 25,000.00 |
| 10-13 | | Internet Trf To DDA | 20,000.00 |
| 10-16 | | Wire Withdrawal Ai Design | 148,688.79 |
| 10-16 | | Wire Withdrawal Sheppard Mullin | 193,321.31 |
| 10-16 | | Wire Withdrawal South Land Title | 400,000.00 |
| 10-16 | | Internal Wire Wd | 650,000.00 |
| 10-16 | | Internet Trf To DDA | 7,000.00 |
| 10-16 | | Internet Trf To DDA | 16,000.00 |
| 10-16 | | Internet Trf To DDA | 20,000.00 |
| 10-16 | | Internet Trf To DDA | 20,000.00 |
| 10-16 | | Internet Trf To DDA | 28,000.00 |
| 10-16 | | Internet Trf To DDA | 63,460.00 |
| 10-17 | | Wire Withdrawal Indigo Pharmaceu | 200,000.00 |
| 10-18 | | Internet Trf To DDA | 200.00 |
| 10-19 | | Wire Withdrawal Hill Ward Hender 9480 | 7,500.00 |
| 10-19 | | Internet Trf To DDA | 1,500.00 |
| 10-19 | | Internet Trf To DDA | 5,000.00 |
| 10-19 | | Internet Trf To DDA | 10,500.00 |
| 10-19 | | Internet Trf To DDA | 12,400.00 |
| 10-19 | | Internet Trf To DDA | 16,000.00 |
| 10-19 | | Internet Trf To DDA | 35,000.00 |
| 10-20 | | Wire Withdrawal Fenix Fam Inc | 12,000.00 |
| 10-20 | | Wire Withdrawal Miami Vip Marine 1 | 14,375.00 |
| 10-20 | | Wire Withdrawal Mark Palines | 21,526.66 |
| 10-20 | | Wire Withdrawal Farmers State De | 140,000.00 |
| 10-20 | | Direct Withdrawal, Jams Inc     Jams Inc | 4,000.00 |
| 10-23 | | Wire Withdrawal Renntech Inc | 77,782.24 |



KeyBank



Business Banking Statement
October 31, 2023
page 3 of 4

## Subtractions
(con't)

| Withdrawals Date | Serial # | Location | |
|---|---|---|---|
| 10-23 | | Internet Trf To DDA | 4,000.00 |
| 10-24 | | Wire Withdrawal  Girvin  Ferlazzo | 14,090.00 |
| 10-24 | | Wire Withdrawal  Chris Snyder | 20,000.00 |
| 10-24 | | Wire Withdrawal  Indigo Pharmaceu [ | 200,000.00 |
| 10-24 | | Internal Wire Wd | 449,672.93 |
| 10-24 | | Internet Trf To DDA | 2,460.00 |
| 10-25 | | Wire Withdrawal  Sheppard Mullin | 63,000.00 |
| 10-27 | | Internal Wire Wd | 2,000.00 |
| 10-27 | | Internal Wire Wd | 7,000.00 |
| 10-27 | | Wire Withdrawal  Clarke Capital P f | 4,000,000.00 |
| 10-31 | | Internet Trf To DDA | 12,500.00 |
| 10-31 | | Internet Trf To DDA | 16,000.00 |
| 10-31 | | Internet Trf To DD | 24,000.00 |
| | | **Total subtractions** | **$14,680,691.78** |

## Fees and charges

| Date | | Quantity | Unit Charge | |
|---|---|---|---|---|
| 10-11-23 | Kn Inatwire | 1 | 30.00 | -$30.00 |
| 10-11-23 | Kn Dmwire | 1 | 234.00 | -234.00 |
| | **Fees and charges  assessed this period** | | | **-$264.00** |

## Account messages

*Important updates to your Deposit Account Fees and Disclosures have been made.
Wire Transfer Services: We've updated the description in the disclosure for
three of our wire transfers. 1) Standing wire transfer orders are automated and
recurring wire transfers to a specified recipient for a fixed amount of money
that occur at fixed intervals. You will be charged $10.00 for each wire
transfer initiated under the standing wire transfer order. 2) Book to Book Wire
Transfers are domestic outgoing wire transfers to a KeyBank account and are
$4.50 per transfer. There are no fees for domestic incoming wires to KeyBank
accounts. 3) Repetitive Outgoing Wire Transfers are those in which debit and
credit transfer parties remain the same (date and dollar amount may be
different) and will be discounted $10.00 from the standard Fedwire Service
Charge prices.*

**KeyBank** ⬧⟶

## CUSTOMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-in-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed below, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

KeyBank
Customer Disputes
NY-31-55-0228
555 Patroon Creek Blvd
Albany, NY 12206

- Tell us your name and Account number;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

| | |
|---|---|
| XFER TO SAV | - Transfer to Savings Account |
| XFER FROM SAV | - Transfer from Savings Account |
| XFER TO CKG | - Transfer to Checking Account |
| XFER FROM CKG | - Transfer from Checking Account |
| PMT TO CR CARD | - Payment to Credit Card |
| ADV CR CARD | - Advance from Credit Card |

**Preauthorized Credits:** If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

**IMPORTANT LINE OF CREDIT INFORMATION**

**What To Do If You Think You Find A Mistake on Your Statement:** If you think there is an error on your statement, write us at: KeyBank N.A, P.O Box 93885, Cleveland, OH 44101-4925.

In your letter, give us the following information:

- Account Information : Your name and account number.
- Dollar Amount : The dollar amount of the suspected error.
- Description of the Problem : If you think there is an error on your bill, describe what you believe is wrong and why you believe it was a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Explanation of Finance Charge:** Your Finance Charge attributable to interest (hereinafter referred to as interest) is computed using the Average Daily Balance method.

**Average Daily Balance method (Balance Subject to Interest Rate):** Your interest is computed on all purchases and cash advances (collectively "advances") from the date each advance is posted until we receive payment in full (there is no grace period). We figure the interest on your line of credit by multiplying the daily periodic rate by the "Average Daily Balance" of your line of credit (including current transactions) and multiplying by the number of days in the billing cycle. To get the Average Daily Balance we take the beginning balance of your line of credit each day, add any new advances or debits, and subtract any payments and credits, any non-financed fees and unpaid interest. This gives us the daily balance. Then we add up all of your daily balances in the billing cycle and divide this total by the number of days in the billing cycle to get your Average Daily Balance.

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

Key Credit Research Department
P.O. Box 94518
Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

page 4 of 4

## BALANCING YOUR ACCOUNT

Please examine your statement and paid check information upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

### INSTRUCTIONS

❶ Verify and check off in your check register each deposit, check or other transaction shown on this statement.

Enter into your check register and SUBTRACT:
- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

Enter into your check register and ADD:
- Deposits or other credits shown on your statement that you have *not* already entered.
- The "Interest earned", if any, shown on your statement.

| ❹ List from your check register any checks or other deductions that are *not* shown on your statement. | | ❺ List any deposits from your check register that are *not* shown on your statement. | |
|---|---|---|---|
| Check # or Date | Amount | Date | Amount |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL → $ | |
| | | | |

| ❻ Enter ending balance shown on your statement. |
|---|
| $ |

| ❼ Add 5 and 6 and enter total here. |
|---|
| $ |

| ❽ Enter total from 4. |
|---|
| $ |

| ❾ Subtract 8 from 7 and enter difference here. |
|---|
| $ |
| This amount should agree with your check register balance. |

| TOTAL → | $ |
|---|---|