**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                       :

COMPASS-CHARLOTTE 1031, LLC,         :
                                         :

             Plaintiff,          :

                                         :

             v.                 :       Case No. 24-cv-00055 (MAD/CJH)

                                         :

PRIME CAPITAL VENTURES, LLC, *et al.*   :

                                         :

           Defendants.        :
---------------------------------------------------------------x
                                         :

PAUL A. LEVINE, as Receiver of Prime Capital   :
Ventures, LLC,

                                         :

           Third-Party Plaintiff,   :

                                         :

             v.                 :

                                         :

KRIS D. ROGLIERI, TINA M. ROGLIERI,    :
KIMBERLY HUMPHREY a/k/a KIMMY      :
HUMPHREY, PRIME COMMERCIAL        :
LENDING, LLC, COMMERCIAL CAPITAL   :
TRAINING GROUP, THE FINANCE         :
MARKETING GROUP, NATIONAL         :
ALLIANCE OF COMMERICIAL LOAN      :
BROKERS LLC and FUPME, LLC,        :

                                         :

           Third-Party Defendants.   :
---------------------------------------------------------------x

 

**THIRD-PARTY DFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS THIRD-PARTY COMPLAINT**

 

*(Counsel listed on next page)*

HOGAN LOVELLS US LLP
Pieter Van Tol (Bar Roll No. #508405)
Christopher Bryant (admitted *pro hac vice*)
Peter Bautz (admitted *pro hac vice*)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com
peter.bautz@hoganlovells.com

*Attorneys for Third-Party Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT .......................................................................................................................4

     I.    Legal Standards..............................................................................................4

          A.    Rule 12(b)(1)............................................................................... 4

          B.    Rule 12(b)(6)............................................................................... 4

     II.    The Court Should Dismiss the Third-Party Complaint............................................6

          A.    The Court Has No Subject-Matter Jurisdiction Over the Third-Party Claims .............................................................................. 6

               1.    The Third-Party Complaint Does Not Include a Jurisdictional Statement ....................................................... 6

               2.    The Third-Party Complaint Is Inextricably Intertwined with Claims by Borrowers, Including Compass, That Are Governed by Arbitration Agreements ........................... 7

               3.    The Court Was Divested of Jurisdiction When Prime Capital Appealed from the Order Appointing the Receiver....................... 9

               4.    The Receiver Lacks Standing to Bring Claims on Behalf of Prime Capital .................................................... 10

          B.    The Third-Party Complaint Fails to State a Claim Upon Which Relief May Be Granted .......................................................... 10

               1.    The Receiver Does Not Plead the Requisite Elements for a Fraudulent Conveyance Claim (Count I)..................................... 10

               2.    The Receiver Does Not Plead the Requisite Elements for the Various Claims in Count II........................................... 15

               3.    The Receiver's Cause of Action for Piercing the Veil in Count III Is Against the Wrong Defendant and Fails to Adequately Assert the Requisite Elements for the Claim ........... 20

CONCLUSION....................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
   678 A.2d 533 (Del. 1996) .................................................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................ 4

*Atlanta Shipping Corp., Inc. v. Chemical Bank*,
   818 F.2d 240 (2d Cir. 1987) .............................................................................. 13

*Auriga Cap. Corp. v. Gatz Properties*,
   40 A.3d 839 (Del. Ch.), *aff'd*, 59 A.3d 1206 (Del. 2012)...................................... 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................ 4

*Bocock v. Innovate Corp.*,
   2022 WL 15800273 (Del. Ch. Oct. 28, 2022) ................................................. 18, 19

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) .................................................................................. 19

*Brown v. New York City Hous. Auth.*,
   2006 WL 1378599 (S.D.N.Y. May 17, 2006) ....................................................... 5

*Broz v. Cellular Info. Sys., Inc.*,
   673 A.2d 148 (Del. 1996) .................................................................................. 18

*Buchwald v. Renco Grp.*,
   539 B.R. 31 (S.D.N.Y. 2015)............................................................................. 20

*Burtch v. Zachem*,
   2023 WL 6140247 (D. Del. Sept. 19, 2023)....................................................... 16

*BYD Co. Ltd. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ........... 5

*Cayuga Indian Nation of New York v. Village of Union Springs*,
   317 F. Supp. 2d 152 (N.D.N.Y. 2004)............................................................... 9-10

*Citibank, N.A. v. Hyland (CF8) Ltd.*,
   839 F.2d 93 (2d Cir. 1988) ................................................................................ 10

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
   2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ...................................................... 22

*Coggins v. Cnty. of Nassau*,
   988 F. Supp. 2d 231 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom.*
   *Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) ................................................. 5

*DeVito Verdi, Inc. v. Legal Sea Foods, Inc.*,
   2021 WL 1600088 (S.D.N.Y. Apr. 23, 2021) ................................................ 6

*DG BF, LLC v. Ray*,
   2021 WL 776742 (Del. Ch. Mar. 1, 2021) ...................................... 22, 23

*Eddystone Rail Co., LLC v. Bank of Am., N.A.*,
   2021 WL 4443371 (S.D.N.Y. Sept. 28, 2021) .............................. 12-13, 13

*F.T.C. v. 1st Guar. Mortg. Corp.*,
   2012 WL 1676746 (S.D. Fla. May 14, 2012) ................................................ 9

*Freeman v. Northwest Acceptance Corp.*,
   754 F.2d 553 (5th Cir. 1985) .............................................................. 20

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982) ............................................................................ 9

*GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
   2020 WL 10508196 (E.D.N.Y. June 28, 2020) .......................................... 14

*I Am Athlete, LLC v. IM EnMotive, LLC*,
   2023 WL 8933592 (Del. Ch. Dec. 27, 2023) ...................................... 22, 23

*In re Lozier*,
   2018 WL 2176280 (Bankr. D. Conn. May 10, 2018) .................................... 5

*In re Molina*,
   2023 WL 9008627 (Bankr. E.D.N.Y. Dec. 28, 2023 ................................... 12

*In re Navidea Biopharmaceuticals Litig.*,
   2019 WL 7187111 (S.D.N.Y. Dec. 26, 2019) ............................................. 5

*In re Topps Co. Shareholder Litig.*,
   924 A.2d 951 (Del. Ch. 2007) ............................................................ 14

*In re Trinsum Grp., Inc.*,
   460 B.R. 379 (Bankr. S.D.N.Y. 2011) ................................................. 13

*In re Walt Disney Co. Deriv. Litig.*,
   906 A.2d 27 (Del. 2006) .................................................................. 19

*Iotex Commc'ns, Inc. v. Iota, Inc.*,
   1998 WL 914265 (Del. Ch. Dec. 21, 1998) ........................................... 17

*Johnson & Johnson v. Coopervision, Inc.*,
   720 F. Supp. 1116 (D. Del. 1989) ...................................................... 20

*Jones v. Farney*,
   2023 WL 7688457 (N.D.N.Y. May 19, 2023) ........................................... 6

*Kamen v. American Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir. 1986) ............................................................. 4

*Lewis v. Vogelstein*,
   699 A.2d 327 (Del. Ch. 1997) ........................................................... 19

*Luce v. Edelstein*,
  802 F.2d 49 (2d Cir.1986) ................................................................. 14

*Malik v. Meissner*,
  82 F.3d 560 (2d Cir. 1996) ................................................................. 4

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*,
  386 F. Supp. 3d 319 (S.D.N.Y. 2019) ................................................ 20

*MicroStrategy Inc. v. Acacia Rsch. Corp.*,
  2010 WL 5550455 (Del. Ch. Dec. 30, 2010) .................................... 21

*Miller Family Trust v. Nielsen*,
  2012 WL 13227085 (C.D. Cal. July 31, 2012) .................................. 20

*Prestancia Mgmt. Grp., Inc. v. Virginia Heritage Found., II LLC*,
  2005 WL 1364616 (Del. Ch. May 27, 2005) ..................................... 18

*Principal Growth Strategies, LLC. v. AGH Parent LLC*,
  2024 WL 274246 (Del. Ch. Jan. 25, 2024) ....................................... 14

*Qingdao Tangbo Garments Co. v. PRG Nouveau, LLC*,
  2020 WL 1435218 (S.D.N.Y. Mar. 24, 2020 ...................................... 14

*Ray v. Ray*,
  2019 WL 1649981 (S.D.N.Y. Mar. 28, 2019), *aff'd*, 799 F. App'x 29 (2d Citr. 2020) ..... 12, 13

*RDLF Fin. Servs., LLC v. Esquire Cap. Corp.*,
  34 Misc. 3d 1235(A) (Sup. Ct. 2012) ................................................ 14

*Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*,
  2013 WL 6795963 (E.D.N.Y. Dec. 23, 2013) ................................... 12

*Sample v. Morgan*,
  914 A.2d 647 (Del. Ch. 2007) ........................................................... 18

*Suero v. NFL*,
  2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) .................................. 6

*Sullivan v. Kodsi*,
  373 F. Supp. 2d 302 (S.D.N.Y. 2005) ............................................... 14

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
  216 F.Supp.2d 198 (S.D.N.Y.2002) .................................................. 14

*Verdantus Advisors, LLC v. Parker Infrastructure P'rs, LLC*,
  2022 WL 611274 (Del. Ch. Mar. 2, 2022) ......................................... 23

*Waite v. Schoenbach*,
  2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) .................................... 13

*Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ......................................................... 21

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  901 A.2d 106 (Del. 2006) .................................................................. 18

*Yu v. GSM Nation, LLC*,
  2017 WL 2889515 (Del. Ch. July 7, 2017) ................................................... 20, 22, 23

**Statutes**

N.Y. Debt. & Cred. §§ 273, 276 ........................................................................... 10, 11

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................ 4, 12

Fed. R. Civ. P. 8(a)(1) ................................................................................................ 1, 6

Fed. R. Civ. P. 9 ............................................................................................................. 2

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 1, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

Fed. R. Civ. P. 12(b)(7) ................................................................................................. 1

Fed. R. Civ. P. 19 ...................................................................................................... 1, 20

Fed. R. Civ. P. 62(a) ...................................................................................................... 9

Fed. R. Civ. P. 62(c) ...................................................................................................... 9

Fed. R. Civ. P. 82 ........................................................................................................... 9

Local Rule 5.2(a)(5) ..................................................................................................... 15

Third-Party Defendants Kris D. Roglieri, Kimberly Humphrey (a/k/a Kimmy Humphrey), Prime Commercial Lending, LLC ("Prime Commercial"), Commercial Capital Training Group ("CCTG"), The Finance Marketing Group ("FMG")[1], National Alliance of Commercial Loan Brokers LLC ("NACLB"), and FUPME, LLC ("FUPME") (collectively, the "Third-Party Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion (the "Motion"), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(b)(7), and 19 to dismiss the Third-Party Complaint filed by the receiver in this case (the "Receiver") on January 29, 2024 (Dkt. No. 71) for lack of subject-matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to join a necessary party.[2]

## PRELIMINARY STATEMENT

The Third-Party Complaint suffers from numerous deficiencies as a matter of law.

*First*, the Receiver has not established—and, indeed, cannot establish—that the Court has subject-matter jurisdiction over his claims. The Third-Party Complaint fails to include a jurisdictional statement, in violation of Fed. R. Civ. P. 8(a)(1). In addition, the Third-Party Complaint effectively seeks an adjudication of the same claims that are subject to valid and binding arbitration clauses, which means that the Receiver's prosecution of this case will vitiate Prime Capital's arbitral rights. There is also no jurisdiction here because Prime Capital's appeal divested the Court of jurisdiction to determine the issues that the Receiver has raised in the Third-Party Complaint, which are bound up with Prime Capital's appeal. While the Court retains limited jurisdiction to decide other pending motions, its jurisdiction does not extend to the claims in the

---

[1]     FMG is not a corporation and is a trade name only. (*See* Corporate Disclosure Statement filed earlier today.)

[2]     The definition of "Third-Party Defendants" here does not include Tina Roglieri, who has separate counsel.

Third-Party Complaint (or the related motion seeking attachment).  Moreover, even if all of the above obstacles could be surmounted, the Receiver lacks standing to bring the Third-Party Complaint because the Court intentionally excluded the power to assert legal claims on Prime Capital's behalf from the January 24, 2024 Order (the "January 24 Order") appointing the Receiver.  Thus, the Court may (and should) dismiss the Third-Party Complaint without even reaching the merits.

*Second*, even if the Court finds that it has subject-matter jurisdiction, the Third-Party Complaint fails for multiple other reasons:

*Count I*.  The Receiver's claims for return of allegedly fraudulent conveyances do not meet the pleading requirements under New York Debtor and Creditor Law ("DCL").  Count I consists of conclusory, non-specific allegations that fail to identify (a) which transfers are at issue; and (b) why they purportedly violate the DCL.  The allegations regarding an actual intent to defraud creditors also lack the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), and the Receiver does not plead any "badges of fraud" in relation to his claim.  The allegations regarding constructive transfers appear to cite the elements from a predecessor statute, and fail to allege that the transfers were not for reasonably equivalent value. The Third-Party Complaint also does not include anything other than conclusory (and inadequate) allegations on Prime Capital's solvency at the time of the transfer.

*Count II*.  The Receiver's claims for breach of fiduciary duty and other alleged corporate misfeasance are similarly insufficient as a matter of law.  The Third-Party Complaint assumes, without specific allegations, that all the transfers listed therein had no corporate purpose (such as investment, compensation and/or business-related uses).  The allegation regarding the property in Virginia Beach illustrates the problem with Count II.  The Receiver acknowledges that the property

is a Prime Capital investment, yet he asserts, without any specific factual allegations, that Mr. Roglieri breached his fiduciary duty by using Prime Capital Funds to purchase the house (which has appreciated in value) and Ms. Humphrey breached her fiduciary duty by living there.  That allegation fails the plausibility requirement for claims at the motion to dismiss stage.  The lack of specificity regarding the purpose for the other transfers likewise dooms those allegations.

*Count III*.  The Receiver's veil-piercing claim fails because it is not against Prime Capital, which is a necessary party.  Moreover, the Receiver does not satisfy the strict pleading requirements for veil-piercing claims.  The Third-Party Complaint simply alleges, without sufficient detail, that Prime Capital is a sham and a façade used to defraud borrowers.  To the extent the Receiver makes any allegations regarding fraud, he cites to Prime Capital's purported violations of credit agreements with borrowers.  Allegations of a breach of contract cannot support a fraud theory.  The Receiver's allegations regarding the other factors for a veil-piercing claim are "upon information and belief," which the Delaware courts have repeatedly rejected.

In sum, the Third-Party Complaint does not pass muster and should be dismissed.

## BACKGROUND

The Court appointed the Receiver, on an interim basis, on January 12, 2024.  The order (the "January 12 Order") appointing the Receiver stated, among other things, that:

> 2.      The Receiver's authority hereunder shall be, and hereby is, vested in and extended to … (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured or un-matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.

(Dkt. No. 8 at 2-3.)  The January 24 Order, in which the Court appointed the Receiver on a permanent basis, removed the above language regarding the Receiver's authority to assert claims,

demands, or causes of action.  (*See* Dkt. No. 56 at 22.)  Thus, the Receiver's current duties are limited, and they do not extend to an assertion of legal claims on Prime Capital's behalf.

## ARGUMENT

### I.   Legal Standards

#### A.   Rule 12(b)(1)

A party alleging subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists and conclusory allegations will not suffice.  *See Malik v. Meissner*, 82 F.3d 560, 562-63 (2d Cir. 1996).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

#### B.   Rule 12(b)(6)

The U.S. Supreme Court has held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief."  *Id.* at 679.  Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Therefore, a

complaint that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

Moreover, in deciding the Motion, the Court is not required to accept as true any allegation in the Third-Party Complaint that is contradicted by a document that the Receiver relies upon or is integral to his allegations. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 243 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) (stating that "a court need not accept as true [pleadings] that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely. . ."); *Brown v. New York City Hous. Auth.*, 2006 WL 1378599, at *1 (S.D.N.Y. May 17, 2006) ("Where allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the Court is not obliged to credit the allegations in the complaint."). Specifically, the Court may disregard any allegations regarding the credit agreements between the borrowers and Prime Capital that are inconsistent with, or not supported by, the language in those contracts. *See, e.g.*, *In re Lozier*, 2018 WL 2176280, *2-4 (Bankr. D. Conn. May 10, 2018) (finding the defendant had a valid and perfected security interest based on documents attached to the complaint, despite allegations in the complaint to the contrary); *In re Navidea Biopharmaceuticals Litig.*, 2019 WL 7187111, at *5 (S.D.N.Y. Dec. 26, 2019) (dismissing portions of claims because they were contradicted by language in relevant contract).

**II.**     **The Court Should Dismiss the Third-Party Complaint**

    **A.**     **The Court Has No Subject-Matter Jurisdiction Over the Third-Party Claims**

There are four separate grounds for a finding that the Court lacks subject-matter jurisdiction here.  If the Court accepts any of them, it may dismiss the Third-Party Complaint without reaching the merits of the third-party claims.

    **1.**     **The Third-Party Complaint Does Not Include a Jurisdictional Statement**

The Receiver omitted any jurisdictional statement from the Third-Party Complaint, which violates the pleading requirements in Fed. R. Civ. P. 8(a)(1).  The Receiver's failure to include a jurisdictional statement is sufficient grounds to dismiss the Third-Party Complaint.  *See Jones v. Farney*, 2023 WL 7688457, at *2 (N.D.N.Y. May 19, 2023) (recommending dismissal when complaint failed to clearly identify jurisdiction and claims); *Suero v. NFL*, 2022 WL 17985657, at *5 (S.D.N.Y. Dec. 16, 2022) (the plaintiff's failure to plead jurisdictional facts requires dismissal or amendment).  While the Third-Party Complaint alleges the principal place of business of five Third-Party Defendants that are limited liability corporations, it does not allege the citizenship of the LLC members.  Such a failure is fatal.  *See id.* (citing *DeVito Verdi, Inc. v. Legal Sea Foods, Inc.*, 2021 WL 1600088, at *1-2 (S.D.N.Y. Apr. 23, 2021) ("Where a complaint does not plead the citizenship of an LLC party's members, it fails to plead diversity jurisdiction.")).  The Receiver, therefore, fails to allege the basis for the Court to assert subject-matter jurisdiction over the claims in the Third-Party Complaint.  Accordingly, those claims should be dismissed.

      **2.**      **The Third-Party Complaint Is Inextricably Intertwined with Claims by Borrowers, Including Compass, That Are Governed by Arbitration Agreements**

In the Third-Party Complaint, the Receiver alleges that the Third-Party Defendants misappropriated ICA deposits from borrowers paid pursuant to credit agreements between Prime Capital and the borrowers.   (*See* Dkt. No. 71, ¶¶ 3, 73-84.)

Prime Capital uses a standard credit agreement, which is exemplified by the Development Line of Credit Agreement between Prime Capital and Plaintiff Compass-Charlotte 1031, LLC ("Compass") as of April 24, 2023 ("DLOC").  (*See* Dkt. No. 1-29.)  With regard to ICA deposits, the DLOC states as follows:

> C.      Within twenty-four (24) hours after the fully executed Loan Documents are received by Lender and Borrower, Borrower has agreed to pay to Lender, pursuant to Section 3.6 hereof, the aggregate amount of Fifteen Million Nine Hundred Two Thousand Two Hundred Fifty Dollars and 00/100 Dollars ($15,902,250.00) (the "ICA Payment"), by bank wire to Lender.  <u>An account on the books and records of Lender shall be created to serve as an Interest Credit Account (the "Interest Credit Account" or "ICA").  A credit equal to the ICA Payment shall be noted in the ICA for purposes of satisfying interest payments under the Loan.</u>

> **Section 3.6. Reserves.**  Following the signing of this Agreement, Borrower shall remit the ICA Payment in accordance with the terms and time period set forth in Recital C. Upon the funding of the First Advance, the ICA Payment shall remain part of the Interest Credit Account and subject to the provisions of this Agreement, and not refundable to Borrower unless otherwise specifically provided for in this Agreement. <u>All credits to the Interest Credit Account shall be used, absent the occurrence of an Event of Default, for purposes of payment on interest payable on the Advances as and when such interest payments are due and payable.</u> Upon exit and payoff of the LOC, absent the occurrence of an Event of Default, if there is a remaining balance in the ICA, the excess amount shall be applied to the unpaid principal balance outstanding under the Promissory Note or, if it exceeds such unpaid principal, refunded to Borrower.

(*Id.*, Recital C and § 3.6; emphasis added.)

Compass has argued in this case that Prime Capital was required to segregate its ICA deposit under the above language and the Receiver has adopted this argument as well in the Third-

Party Complaint.  (*See* Dkt. No. 71, ¶¶ 23-24, 72.)  Prime Capital disagrees with such an interpretation, and believes that it is only required to provide a credit on its books and record for the ICA deposit (as expressly stated in Recital C and Section 3.6).  (*See* Dkt. No. 43-13, ¶ 8.)

In addition, Compass contends that it was entitled to send a termination letter and demand the return of its ICA deposit, but Section 3.6 notes that the deposits are only refundable under the terms of the DLOC.  The relevant language in Section 13.7 of the DLOC states as follows:

> (a)   <u>So long as all conditions precedent to an Advance have been met pursuant to the terms of this Agreement</u>, if Lender fails to fund the First Advance in accordance with the terms and conditions of this Agreement and the Promissory Note, Borrower shall have the option to terminate this Agreement and request a full refund of the ICA Payment.  Upon the occurrence of such default, Borrower shall deliver written notice in the form of a notarized termination letter, a copy of which is attached hereto as Exhibit F (the "Termination Letter"), to Lender by certified mail.

(Dkt. No. 1-29, § 13.7; emphasis added.)

The Receiver has also adopted the argument of Compass and other borrowers because the Third-Party Complaint repeatedly refers to borrowers' demands for the return of the ICA deposits.  (*See, e.g.*, Dkt. No. 71, ¶¶ 29, 36, 47, 56.)  As Prime Capital has pointed out elsewhere, Compass did not satisfy the closing conditions and, therefore, it could not invoke Section 13.7.  The same is true for other borrowers that did not satisfy the closing conditions.  (*See* Dkt. No. 13-6 at 5, 7, 14.)  That issue, however, will be resolved in arbitration.

Thus, the Third-Party Complaint necessarily implicates issues that are subject to a valid and binding arbitration agreement, and must be determined in another forum.  Allowing the Receiver to obtain a determination of disputed issues in this case would vitiate Prime Capital's bargained-for arbitral rights, in violation of the strong federal policy favoring arbitrations.

### 3.   The Court Was Divested of Jurisdiction When Prime Capital Appealed from the Order Appointing the Receiver

The Court does not have jurisdiction over the Receiver's claims in the Third-Party Complaint because Prime Capital has appealed from the January 24 Order appointing the Receiver. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), the U.S. Supreme Court noted that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* at 58. The power of the Receiver to take any action in this case, particularly litigation purportedly on behalf of Prime Capital, is a central issue on appeal. In an analogous case, *F.T.C. v. 1st Guar. Mortg. Corp.*, 2012 WL 1676746 (S.D. Fla. May 14, 2012), the court refused to hear a motion regarding the preservation of assets because an appeal from the receiver's appointment was pending. *Id.* at *1. The Court should take the same approach with the Receiver's claims here.

Rule 62(c) is not to the contrary. It states that an order appointing a receiver (among other things) is not stayed upon the filing of an interlocutory appeal "[u]nless the court orders otherwise." Fed. R. Civ. P. 62(c). Rule 62(c) is referring to the fact that the 30-day automatic stay in Rule 62(a) does not apply to appeals from receivership orders. *See* Fed. R. Civ. P. 62(a) ("Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."). Rule 62(c) does not speak to the Court's jurisdiction, which is governed by *Griggs* and related cases. Indeed, Rule 82 of the Federal Rules of Civil Procedure states that "[t]hese rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." Fed. R. Civ. P. 82. Instead, Rule 62(c) is a limited exception to the *Griggs* rule, and it allows for injunctive relief during the pendency of an appeal solely to maintain the status quo. *See Cayuga Indian Nation of New York v. Village of*

*Union Springs*, 317 F. Supp. 2d 152, 154 (N.D.N.Y. 2004).  Here, the Third-Party Complaint goes well beyond the status quo and seeks other relief against the Third-Party Defendants, which, as discussed above, requires an adjudication of issues that are reserved for arbitration pursuant to the valid and binding arbitration clause.

### 4. The Receiver Lacks Standing to Bring Claims on Behalf of Prime Capital

Even if the Court determines that the claims by the Receiver do not interfere with Prime Capital's arbitral rights and that the Court is not divested of jurisdiction, the Receiver lacks the authority to bring the claims in the Third-Party Complaint.  As discussed above, the January 24 Order delineates the Receiver's "powers and duties," and they do <u>not</u> include the assertion of claims on Prime Capital's behalf.  (*See* Jan. 24 Order, 19-20.)  The January 12 Order referred to broader powers for the Receiver when he was the interim receiver, but the Court removed that provision when it entered the January 24 Order.  *See supra*, 3-4.

The Court noted in the January 24 Order that "[a] receiver's 'authority is wholly determined by the order of the appointing court.'" (Dkt. No. 56 at 18 (quoting *Citibank, N.A. v. Hyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988) (internal citation omitted).)  Thus, the Receiver cannot rely on general powers or case law; his authority is limited by the January 24 Order, which does not permit the Receiver to bring claims on behalf of Prime Capital.

### B. The Third-Party Complaint Fails to State a Claim Upon Which Relief May Be Granted

#### 1. The Receiver Does Not Plead the Requisite Elements for a Fraudulent Conveyance Claim (Count I)

In Count I, the Receiver asserts that all the Third-Party Defendants violated New York's fraudulent conveyance statute, DCL §§ 273 and 276.  While the Third-Party Complaint is

confusing and unclear, it appears that the Receiver is making a claim under both Section 273(a)(1) (actual intent) and 273(a)(2) (constructive).

Section 273 states as follows:

(a)    A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)    with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.Y. Debt. & Cred. § 273.

*Insufficient Identification of Transfers*

As an initial matter, the Third-Party Complaint does not identify the transfers that the Receiver claims are fraudulent conveyances.  The Third-Party Complaint vaguely refers to transfers by Mr. Roglieri (Dkt. No. 71, ¶ 86), but it does not set forth which of those transfers allegedly violate Sections 273 and 276.  While Count I in the Third-Party Complaint incorporates, by reference, the preceding allegations, those allegations are merely a listing and summary of transfers, without providing any information about which the transfers are the subject of the fraudulent conveyance claim and why they are purportedly fraudulent conveyances.

*Constructive*

With respect to the allegations of constructive fraud under 273(a)(2), the Third-Party Complaint fails to allege that the Prime Capital did not receive "reasonably equivalent value" ("REV") in exchange for the transfers.  The failure to plead this element requires dismissal of the Receiver's claim.  *See, e.g., In re Molina*, 2023 WL 9008627, at \*11 (Bankr. E.D.N.Y. Dec. 28, 2023) (holding that complaint did not adequately allege that debtor received REV in exchange for payments).  The Third-Party Complaint instead alleges, without any detail and in conclusory fashion, that Mr. Roglieri made transfers "without fair consideration."  (Dkt. No. 71, ¶ 86.)  The Receiver merely parrots language from the predecessor statute that is not found in Section 273 currently and, in any event, such an allegation is facially insufficient even under the old statute. *See Ray v. Ray*, 2019 WL 1649981, at \*6 n.11 (S.D.N.Y. Mar. 28, 2019) (plaintiff's general allegations that transfers "were made for less than fair consideration" were mere recitations of the statutory language and insufficient to satisfy Fed. R. Civ. P. 8), *aff'd*, 799 F. App'x 29 (2d Cir. 2020); *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, 2013 WL 6795963, at \*9 (E.D.N.Y. Dec. 23, 2013) (stating that the complaint did not "allege with any degree of specificity … the basis upon which plaintiff believes that the transfers were made without consideration").

The Third-Party Complaint also alleges that the transfers left Prime Capital with "unreasonably small capital" necessary to meet its debt obligations to nine listed borrowers (Dkt. No. 71, ¶ 88), but it fails to allege how much capital Prime Capital had at the time the alleged debt obligations arose.  "To enable a court to evaluate the sufficiency of a complaint's insolvency allegations on a motion to dismiss, the court looks for some sort of balance sheet test or information provided that the court can use to infer that the transferor's liabilities exceeded their assets at the time the transfers took place."  *Eddystone Rail Co., LLC v. Bank of Am., N.A.*, 2021 WL 4443371,

at *7 (S.D.N.Y. Sept. 28, 2021) (internal quotations and brackets omitted); (citation omitted); *see also In re Trinsum Grp., Inc.*, 460 B.R. 379, 393 (Bankr. S.D.N.Y. 2011) (finding complaint insufficient where it contained "net income and net cash flow figures" and alleged that "revenue declined" and "debt levels rose" by specified percentages).  Where, as here, the complaint only recites the statutory language on solvency, the courts have not hesitated to dismiss fraudulent conveyance claims.  *See Eddystone*, 2021 WL 4443371, at *7 ("simple statements that [the debtors] "were insolvent or were rendered insolvent" … is simply not enough"); *Ray*, 2019 WL 1649981 at *6 n.11 (allegations that "[plaintiff] was thereby rendered insolvent" were insufficient); *Waite v. Schoenbach*, 2010 WL 4456955, at *7 (S.D.N.Y. Oct. 29, 2010) ("Plaintiff's allegations that the 'transfers ... rendered Defendants insolvent' are conclusory allegations that are insufficient to withstand a motion to dismiss.") (citation omitted).  Therefore, the Receiver's conclusory allegations regarding insolvency provide additional grounds to dismiss the constructive fraud claim.

*Actual Intent*

The Second Circuit has held that claims for actual fraudulent conveyances must be alleged in compliance with Fed. R. Civ. 9(b).  *E.g.*, *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987).  The Third-Party Complaint lacks any particularity.  The Receiver merely alleges, "upon information and belief," that the Third-Party Defendants made and received the transfers with "actual intent to hinder, delay and/or defraud" the borrowers of Prime Capital from collecting their deposits.  (Dkt. No. 71, ¶ 90.)  That allegation, which is nothing more than a recitation of the statutory language, is insufficient on its face.  Courts construing "actual intent" claims have relied on the Second Circuit's particularity standard:

> [A]llegations of fraud cannot ordinarily be based upon information and belief.
> Instead, the complaint must specify the "particulars" of the alleged fraud—

13

> including, for example, the time, place, particular individuals involved, and specific
> conduct at issue.

*Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306 (S.D.N.Y. 2005) (quoting *United Feature Syndicate,*
*Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 221 (S.D.N.Y.2002) (citing *Luce v.*
*Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986) (internal quotation marks omitted)).  Here, the Third-
Party Complaint contains none of the required particulars for pleading actual fraudulent
conveyance.

Section 273(b) sets forth the eleven factors that are used in determining whether there is
"actual intent," but the Third-Party Complaint does not include a single one of them.  Again, this
pleading deficiency dooms the Receiver's claim.  *GWG MCA Cap., Inc. v. Nulook Cap., LLC*,
2020 WL 10508196, at *18 (E.D.N.Y. June 28, 2020) (dismissing actual fraudulent transfer claim
when plaintiff "fail[ed] to allege any such 'badges of fraud.'"); *Qingdao Tangbo Garments Co. v.*
*PRG Nouveau, LLC,* 2020 WL 1435218, at *11 (S.D.N.Y. Mar. 24, 2020 (dismissing claim when
Complaint did not allege with particularity any badges of fraud); *RDLF Fin. Servs., LLC v. Esquire*
*Cap. Corp.*, 34 Misc. 3d 1235(A), at *10 (Sup. Ct. 2012) (dismissal when parties failed to allege
actual fraud "or even any 'badges of fraud.'").

*   *   *   *   *

In summary, the Third-Complaint does not allege (or fails to properly allege) the elements
for a cause of action under Section 273.  The Court, therefore, should dismiss the Receiver's
fraudulent conveyance claim in Count I in its entirety.[3]

---

[3]    The Receiver also relies on Section 276, but that statute sets forth the remedies for a
violation of Section 273 and it is inapplicable because the Section 273 claims should be dismissed
as a matter of law.

### 2.      The Receiver Does Not Plead the Requisite Elements for the Various Claims in Count II[4]

In Count II, the Receiver slaps together a hodgepodge of claims for breach of fiduciary duty, theft of corporate opportunity, conversion of corporate assets, and waste against Mr. Roglieri and Ms. Humphrey.  (*See* Dkt. No. 71, ¶¶ 96-108.)  As with Count I, the Receiver does not plead the required elements for these claims.

*Breach of Fiduciary Duty*

The Receiver alleges that Mr. Roglieri and Ms. Humphrey breached their fiduciary duties to Prime Capital by allegedly: (1) not acting in furtherance of Prime Capital's best interests and instead acting in their personal interest; and (2) not exercising good faith and diligence in the administration of Prime Capital's affairs and in the use of its property and assets.  (*See id.*, ¶¶ 100-101.)  These boilerplate allegations are not accompanied by any specifics.

In the "Factual Allegations" section, the Third-Party Complaint lists payments from Prime Capital to Mr. Roglieri's joint personal account as well as allegations of the use of Prime Capital's funds for vehicles, watches, jewelry, antiques, and private plane charters.  (*See id.*, ¶¶ 76-80, 84.)  There are also allegations that Prime Capital's funds were used for the purchase of a house in Virginia Beach, Virginia, as an investment, in January 2023.  (*See id.*, ¶¶ 81-82.)[5]  The Receiver then alleges that Ms. Humphrey "lives in the house and pay the utilities, but does not pay rent or the insurance."  (*Id.*, ¶ 83.)

---

[4]      Under the "internal affairs" doctrine, Delaware law applies to the Receiver's claims in Count II.  *See, e.g., Principal Growth Strategies, LLC. v. AGH Parent LLC*, 2024 WL 274246, at *6 (Del. Ch. Jan. 25, 2024); *In re Topps Co. Shareholder Litig.*, 924 A.2d 951, 958-59 (Del. Ch. 2007).

[5]      In accordance with Local Rule 5.2(a)(5), we have not included the address for the Virginia Beach house.  The Receiver, however, revealed Ms. Humphrey's and Mr. Roglieri's addresses in the Third-Party Complaint, just as he improperly divulged Mr. Roglieri's address in his Supplemental Declaration filed on February 2, 2024.  (*See* Dkt. No. 90.)

Starting with Ms. Humphrey, the Third-Party Complaint does not provide any details to support an allegation of breach of fiduciary duty. It does not state how or why Ms. Humphrey's use of the Virginia Beach house as a residence could possibly breach a duty. And such an allegation would be facially implausible. The Virginia Beach house is a Prime Capital investment, and there is no allegation that Ms. Humphrey's use of it as a residence has in any way reduced its value. The courts will dismiss breach of fiduciary claims where, as here, there are no specific allegations against a defendant. *See, e.g.*, *Burtch v. Zachem*, 2023 WL 6140247, at \*3 (D. Del. Sept. 19, 2023) (dismissing claim for lack of specific allegations regarding a purported breach of fiduciary duty by <u>each</u> defendant).

With regard to Mr. Roglieri, the breach of fiduciary duty claim seems to rest on Prime Capital's transfers to Mr. Roglieri's personal account and related companies, and the purchases of various items, such as vehicles, watches, jewelry, antiques and private plane travel. (*See* Dkt. No. 71, ¶¶ 75-80.) The underlying premise of this claim is that the foregoing payments were made from ICA deposits and that those deposits had to be segregated. That premise fails the plausibility test, however, because the Prime Capital credit agreement does not state anywhere that ICA deposits must be segregated. Thus, the Receiver's allegation is contradicted by the relevant agreements to which it relates. *See supra*, 8.

To the extent the Receiver alleges that the use of <u>other</u> Prime Capital funds to make payments to Mr. Roglieri's personal account and purchase various items was a breach of Mr. Roglieri's fiduciary duty, the Third-Party Complaint fails to allege specifically how or why those payments and purchases were a breach. Mr. Roglieri is the sole member of Prime Capital, and it would make sense that he received compensation for his work and the profits that he brought to the company. The Receiver has not alleged that any such compensation exceeded the value that

16

Mr. Roglieri provided.  Moreover, the Receiver has not alleged that the purchases of vehicles, watches, jewelry and antiques brought no value to Prime Capital.  The Receiver concedes that the Virginia Beach house was an investment by Prime Capital, and he provides no information in the Complaint to suggest that the foregoing items were anything other than investments.  Similarly, the Receiver does not allege that the private plane travel was for a non-corporate purpose.  Without allegations that Mr. Roglieri deprived Prime Capital of value through the payments to himself and the purchases alleged in Paragraphs 76 through 80 of the Third-Party Complaint, the Receiver has not sufficiently alleged a breach of fiduciary duty by Mr. Roglieri.  *See, e.g.*, *Iotex Commc'ns, Inc. v. Iota*, *Inc.*, 1998 WL 914265, at \*4 (Del. Ch. Dec. 21, 1998) ("Speculative conclusions unsupported by fact do not allege breaches of fiduciary duty.").

The Receiver also lists certain payments in the Third-Party Complaint that are from Prime Capital to Mr. Roglieri's related companies, CCTG, Prime Commercial, and NACLB.  (Dkt. No. 71, ¶ 75(b)-(d).)  Once again, however, the Third-Party Complaint is devoid of any allegations regarding the purpose of those payments.  The Receiver is well aware that other companies, such as Prime Commercial, provide services to Prime Capital that would justify inter-company transfers.  Therefore, the Third-Party Complaints fails to plausibly allege that the payments to affiliated companies were improper.

Lastly, the Receiver alleges that Mr. Roglieri and Ms. Humphrey breached a duty to third-party borrowers "to maintain [their] ICA deposit pursuant to the purposes for which they made the deposit."  (*See id.*, ¶¶ 103-104.)  The credit agreements under which borrowers made ICA deposits are commercial contracts; they did not create any fiduciary duty.  The Third-Party Complaint does not identify any other source of a duty between Mr. Roglieri and Ms. Humphrey, on the one hand, and the borrowers, on the other hand.  In the absence of a duty, there can be no claim for breach

of fiduciary duty. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 114 (Del. 2006) (noting that it is "vitally important" that fiduciary obligations not extend to everyday commercial relationships) (citation omitted); *Auriga Cap. Corp. v. Gatz Properties*, 40 A.3d 839, 850 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012) (straightforward commercial agreements do not give rise to fiduciary duties); *Prestancia Mgmt. Grp., Inc. v. Virginia Heritage Found., II LLC*, 2005 WL 1364616, at *6 (Del. Ch. May 27, 2005) (no fiduciary duties in bargained-for commercial relationship).

*Theft of Corporate Opportunity/Conversion of Corporate Assets/Waste*

Claims for theft of corporate opportunity and waste are often joined with a breach of fiduciary claim (as in Count II). *See, e.g.*, *Bocock v. Innovate Corp.*, 2022 WL 15800273, at *17 (Del. Ch. Oct. 28, 2022) ("A corporate opportunity claim is a claim for breach of fiduciary duty."); *id.* at *15 n.127 (noting that waste claims are a form of breach of fiduciary duty). Accordingly, the general deficiencies discussed above with respect to the breach of fiduciary duty claim apply with equal force to the claims for theft of corporate opportunity and waste.

Moreover, the Receiver's claims do not satisfy the elements for claims of theft of corporate opportunity and waste. The corporate opportunity doctrine holds that a fiduciary "may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation." *Id.* at *17 (quoting *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 154 (Del. 1996)). Here, there is no allegation that Mr. Roglieri or Ms. Humphrey tried to take the loan transactions from Prime Capital and pursue those deals themselves. Instead, the Receiver contends that the ICA deposits

were not segregated and were spent for other purposes.  The issues with that theory are discussed elsewhere in this brief, but it also does not support a corporate opportunity claim.

The *Bocock* court summarized the standard for waste claims as follows:

> For a claim of waste to survive a motion to dismiss, a plaintiff must show "economic terms so one-sided as to create an inference that no person acting in a good faith pursuit of the corporation's interests could have approved the terms." *Sample v. Morgan*, 914 A.2d 647, 670 (Del. Ch. 2007).  A "claim of waste will arise only in the rare, 'unconscionable cases where directors irrationally squander or give away corporate assets.'" *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)). This high pleading standard is crucial, as "[a]ny other rule would deter corporate boards from the optimal rational acceptance of risk .... Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, *ex post*, to judge appropriate degrees of business risk." *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).

*Id.* at *22.  Here (and as discussed above), the Receiver has not specifically alleged that the transfers at issue brought no benefit to Prime Capital, either in the form of compensation to Mr. Roglieri, the payment of business-related expenses, or investments.  Under the circumstances, the claim for waste of corporate assets fails.

The Receiver's claim for conversion is also deficient because it does not satisfy any of the elements for such a cause of action, which are (1) a property interest in the disputed property; (2) a right to possession of the property; and (3) the property was converted, in that the defendant wrongfully possessed or disposed of the property as if it were their own.  *E.g.*, *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996).  As discussed above, the Receiver claims that Prime Capital's borrowers hold the property interest in the disputed property, not Prime Capital.  *See supra*, 7-9.  Moreover, even assuming that Prime Capital had a property interest in the disputed property and a right to possession, the Receiver has not alleged why the property is in the wrongful possession of any person or entity other than Prime Capital.  Therefore, the Receiver's conversion claim fails as a matter of law.

*Punitive Damages Sought by Receiver*

The Third-Party Complaint seeks punitive damages for the claims in Count II, but it is well settled that Delaware does not permit punitive damages for breach of fiduciary duty by corporate directors. *See, e.g.*, *Buchwald v. Renco Grp.*, 539 B.R. 31, 52 (S.D.N.Y. 2015). The Receiver, therefore, cannot recover punitive damages from Mr. Roglieri or Ms. Humphrey.

### 3. The Receiver's Cause of Action for Piercing the Veil in Count III Is Against the Wrong Defendant and Fails to Adequately Assert the Requisite Elements for the Claim[6]

Under applicable Delaware law, a litigant seeking to pierce the veil of a Delaware corporate entity usually sues that entity. *See Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1126 (D. Del. 1989) ("[T]he so-called alter ego or veil-piercing doctrine is typically employed by claimants against a defendant corporation as a vehicle for holding the corporation's shareholders or its parent company liable.") (emphasis in original). The Receiver has not done so. Count III is a claim against Mr. Roglieri to pierce the corporate veil of Prime Capital. In *Coopervision*, the court dismissed a veil-piercing claim where, as here, the corporate defendant whose veil would be pierced was not a party, finding that the corporate defendant was a necessary party under Fed. R. Civ. P. 19. *See id.* at 1123-29; *Miller Family Trust v. Nielsen*, 2012 WL 13227085, at \*4 (C.D. Cal. July 31, 2012) "(The Court notes … that where … plaintiffs seek to impose liability on a defendant through a corporate veil-piercing theory, courts have held that the defendant's alleged "alter ego"—*i.e.*, the entity that committed the alleged wrongful act(s)—must be joined under Rule 19." (citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985)). Here, too, Prime Capital is a necessary party and should have been joined as a defendant.

---

[6]   Delaware law applies when a party seeks to pierce the corporate veil of a Delaware LLC like Prime Capital. *See Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 355 n.33 (S.D.N.Y. 2019).

In addition, the Court should dismiss Count III because the Receiver has not met the strict pleading standard under Delaware law for veil-piercing claims. "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017) (citation and internal quotation marks omitted). "[B]ecause Delaware public policy does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010). Therefore, "[i]n order to state a cognizable claim to pierce the corporate veil of [a corporation], plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control of the [corporation]." *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999).

In determining whether veil piercing is appropriate, the courts examine the following factors: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *MicroStrategy*, 2010 WL 5550455, at *11 (internal quotation and citation omitted). However, a party cannot pierce the corporate veil unless "the corporate structure [has] cause[d] fraud or similar injustice" and the corporation is "a sham and exist[s] for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184.

Here, the allegations in Count III fall short on several counts. *First*, the Receiver alleges that Prime Capital engaged in a "multi-state fraud scheme" (Dkt. No. 71, ¶ 1), but, in the Third-Party Complaint, those "fraud" allegations turn out to be a claim for breach of contract. For

example, the Receiver cites to the credit agreements that Prime Capital entered into with borrowers for loans and alleges that Prime Capital often "failed to fund a significant portion of those loans" and "also failed to return the ICA deposits on those very same loans." (*Id.*, ¶ 14.) In other words, the Receiver merely asserts that Prime Capital breached its agreements with borrowers.[7] Those breach of contract claims do not support the conclusory allegation in Count III that Mr. Roglieri "personally perpetrated" a fraudulent scheme through Prime Capital. (*Id.*, ¶ 113.)

*Second*, the Receiver provides no support for his allegation that Prime was a mere façade for the acquisition of assets. (*See id.*, ¶ 112.) The courts have rejected allegations that a corporation is a sham where there are also allegations that the corporation was a "real business." *I Am Athlete, LLC v. IM EnMotive, LLC*, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023); *see also Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *4-6 (Del. Ch. Sept. 5, 2023) (concluding veil-piercing theory was "deficient" where the plaintiff's "own allegations" describing two companies' separate businesses "belie[d] any inference that [the companies] functioned as a single economic entity"); *DG BF, LLC v. Ray*, 2021 WL 776742, at *27 (Del. Ch. Mar. 1, 2021) (rejecting veil-piercing theory where the complaint alleged that the corporation ran an active business and therefore was not a "sham"); *Yu*, 2017 WL 2889515, at *4 (same). The Receiver tries to avoid this line of cases by saying that the transactions listed in the Third-Party Complaint represent a "significant portion" of Prime Capital's loans and that he "believes" the number of transactions could be higher. (*See* Dkt. No. 71, ¶¶ 24-25 and 25 n.2.) At

---

[7]     In the factual allegations, the Receiver recounts nine transactions that failed and where borrowers did not receive a return of their deposits, but nowhere in the recitation does he allege, with supporting facts, how Prime Capital purportedly defrauded any of those borrowers as opposed to allegedly breaching agreements with them. (*See id.*, ¶¶ 26-63.) (We have omitted 1800 Park Place from the list because that transaction was with Prime Commercial.) And the number should be eight transactions because, as the Receiver is fully aware, the demand by Motos America Inc. was recent, and arose well <u>after</u> the Receiver was appointed.

a minimum, the Receiver concedes that <u>some</u> of the loans were funded and the borrowers did not demand a return of their ICA deposits.  Moreover, the Receiver's allegations ignore unrebutted evidence submitted to the Court, in the form of a Declaration from Mr. Roglieri dated January 7, 2024, that Prime Capital has done 38 loans transactions since 2022.  (Dkt. No. 43-14, ¶ 4.)  There is no evidence that the borrowers in 29 transactions (or 30, pre-receivership) requested a refund of their ICA deposits; this fact is wholly inconsistent with the allegation that Prime Capital was not a real business.

*Third*, the Receiver alleges the remaining factors in the veil-piercing analysis—solvency, mere instrumentality and total control—only "upon information and belief."  (Dkt. No. 70, ¶¶ 114-116.)  The Delaware courts have held that such pleading is insufficient where, as here, they are "conclusory and unsupported by any pled facts."  *I Am Athlete*, 2023 WL 8933592, at *5; *see also Verdantus Advisors, LLC v. Parker Infrastructure P'rs*, LLC, 2022 WL 611274, at *2-3 (Del. Ch. Mar. 2, 2022) (allegations that a limited liability company "observed few if any corporate formalities," was "inadequately capitalized," "siphoned funds," and "lack[ed] assets" were "not the exceptionally rare stuff of veil-piercing"); *DG BF*, 2021 WL 776742, at *27 (rejecting conclusory allegations based on "information and belief" that a corporation was undercapitalized and being used as the individual defendants' "personal piggy bank"); *Yu*, 2017 WL 2889515, at *4 (concluding veil-piercing allegations were insufficient to support jurisdiction where the complaint only contained conclusory allegations regarding capitalization).

Given these pleading deficiencies, the Court should dismiss Count III in Third-Party Complaint.

## **CONCLUSION**

For the foregoing reasons, the Third-Party Defendants respectfully request that the Court grant the Motion and dismiss the Third-Party Complaint in its entirety.

23

Dated: February 7, 2024

Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Pieter Van Tol*

Pieter Van Tol (Bar Roll No. #508405)
Chris Bryant (admitted *pro hac vice*)
Peter Bautz (admitted *pro hac vice*)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com
peter.bautz@hoganlovell.com

*Attorneys for Third-Party Defendants*