UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                              Plaintiff,

-against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital
Partners LLC

                              Defendants.

Case No.:1:24-cv-55
(MAD/DJS)

---

PAUL A. LEVINE, as RECEIVER of PRIME CAPITAL
VENTURES, LLC,

                          Third-Party Plaintiff,

-against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC, FUPME, LLC

                          Third-Party Defendant,

---

## MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S REQUEST FOR STAY OF LITIGATION AGAINST RECEIVERSHIP ASSETS

                              LEMERY GREISLER LLC
                              Robert A. Lippman, Esq (Bar Roll No.102052)
                              60 Railroad Place, Suite 502
                              Saratoga Springs, New York 12866
                              Tel: (518) 581-8800
                              RLippman@Lemerygreisler.com
                              Counsel for the Receiver, Paul A. Levine, Esq.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ........................................................................................... 1

**STATEMENT OF FACTS** .................................................................................................... 1

**ARGUMENT** .......................................................................................................................... 5

    A. Stay of Litigation against the Receivership Assets is Necessary and Warranted ........ 7

    B. The Harm to any individual Prime Borrowers from a litigation stay is Outweighed by The Court's interest in the orderly and equitable administration of the receivership for the benefit of all Prime Borrowers ................................................................. 10

    C. This Court's Existing Temporary Restraining Order Should be Expanded to Cover Receivership Assets held by Shark Ventures LLC ....................................................... 11

**CONCLUSION** .................................................................................................................... 12

# TABLE OF AUTHORITIES

## STATE CASES

B&R Acquisition Partners, LLC, et al. v. Prime, Index No. 900844-24 (Supp. Ct. Albany)..........4

Caruso Home Builders, LLC et al. v. Prime, Index No. EF2024312 (Supp. Ct. Saratoga).............4

ER Tennessee LLC v. Prime, et al., Index No. 650231/2024 (Supp. Ct. New York) .....................4

## FEDERAL CASES

Barton v. Barbour, 104 U.S. 126, 137; 26 L.Ed. 672 (1881)........................................................10

Chicago Title & Trust Co. v. Fox Theatres Corp., 69 F.2d 60, 62 (2d Cir.1934) ........................10

Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, 2024 WL 260507 (2024)..........2

In re Baldwin-United Corporation, 770 F.2d 328, 338-39 (2d Cir. 1985)...................................5,6

In re Consolidated Welfare Fund "ERISA" Litigation, 798 F. Supp. 125, 128 (S.D.N.Y. 1992)...8

In re Lehal Realty Assoc., 101 F.3d 272 (2d Cir. 1996).................................................................9

KeyBank National Association v. Monolith Solar Associates LLC, 2020 WL 1157650 (N.D.N.Y. 2020) ..............................................................................................................................................6,7

Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 552 (6th Cir. 2006)...................................6,7

McIntire v. China MediaExpress Holdings, Inc., 113 F.Supp.3d 769 (S.D.N.Y. 2015) ...............10

Onward Holdings, LLC v. Prime and Kris Roglieri, Index. No. 2:23-cv-00833-JCB (D. Utah)....4

S.E.C. Byers, 609 F.3d 87, 91 (2d Cir. 2010).............................................................................6,7,8

S.E.C. v. American Bd. of Trade Inc., 830 F.2d 431, 436 (2d Cir. 1987)........................................8

S.E.C. v. Credit Bancorp., Ltd., 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000)....................................5

SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980).....................................................................6

s., 434 U.S. 159, 172, 98 S. Ct. 364, 54 L.Ed. 2d 376 (1977) .......................................................... 5

Vass v. Conron Bros., 59 F.2d 969, 971 (2d Cir.1932) .................................................................. 10

## FEDERAL STATUTES

11 U.S.C. § 362 .............................................................................................................................. 8

28 U.S.C. §754 ............................................................................................................................... 7

## PRELIMINARY STATEMENT

Paul A. Levine, Esq. as Receiver of Prime Capital Ventures, LLC, through his attorneys, Lemery Greisler LLC, submits this memorandum of law in support of the Receiver's request that the Court enter an Order to Show Cause, for injunctive relief preventing non-parties from initiating or continuing litigation against the entities in receivership, Prime Capital Ventures, LLC ("Prime"), Berone Capital Ventures, LLC, Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, 405 Motorsports LLC f/k/a Berone Capital Euity Partners LLC (the "Berone Defendants"), as well as third party defendants Kris Roglieri, Tina M. Rognieri, Kimberly A. Humphrey, Prime Commercial Lending, LLC, Commercial Capital Training Group, The Finance Marketing Group, National Alliance of Commercial Loan Brokers LLC, and FUPME, LLC, (the "Third-Party Defendants"). The Receiver incorporates the allegations and exhibits set forth in the Affirmation and Declaration of Robert A. Lippman, as if more fully set forth herein.

## STATEMENT OF FACTS

The expedited discovery done to date in this matter, prior to a stay in discovery being imposed as a result of Prime's appeal, likely support the allegations made in the underlying Complaint by Plaintiff, Compass-Charlotte 1031, LLC ("Compass-Charlotte"), which describe a Ponzi scheme, perpetrated by Prime, for the enrichment of its sole member and CEO, Third-Party Defendant Kris D. Roglieri ("K. Roglieri"), his wife, Tina Roglieri, fellow Prime executive officer Kimberly A. Humphrey, as well as the Third-Party Defendants, who are Prime's affiliate entities, against all of whom the Receiver has brought Third-Party claims. It appears manifestly clear that Prime represented to third-party borrowers that it could provide non-traditional lending/lines of credit ("LOC") to them, provided these borrowers deposited 20% of the LOC amount financed

into Interest Credit Accounts (the "ICA Deposits"), which were to be used to gain access to capital markets and pay these borrower's interest. Rather than use the ICA Deposits as required under Prime's loan documents, Roglieri converted at least $63 million dollars of ICA Deposits[1], and likely much more, to feed a seemingly insatiable appetite for exotic cars, jewelry, luxury homes in New York and Virginia, private charter jet travel and the like. As would be expected, when the time came for Prime to make good on the LOC loan commitments to its borrowers, the money wasn't there to fund the loans, and many of the borrowers have now brought legal action to recover their ICA Deposits, pursuant to the terms of the Prime loan documents.

This Court found, in appointing the Receiver, that "the whereabouts of Plaintiff's $15 million (let alone the more than $52 million from multiple entities) is unknown because it is not in RBC being held by Berone for the benefit of Plaintiff, nor is it in the now-closed Citibank account. See Dkt. Nos. 37, 40. Although Prime Capital contends that it was defrauded by Berone, it has not produced any records between Prime Capital and Berone to corroborate such a statement. See Dkt. No. 43. The evidence leans in Plaintiff's favor insofar as it indicates that the money has yet to be located and might continue to be lost." See, ECF Dkt. No. 56 (Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, 2024 WL 260507 (2024)). Based on the foregoing, this Court has likewise ruled that "Plaintiff is likely to succeed on the merits ... [t]he dispute seems to be only the amount of damages that Plaintiff can recover." Id.

Since his appointment, the Receiver's time and attention and that of other attorneys and staff at his law firm, in the furtherance of the duties ordered by this Court[2], has been focused on

---

[1] See, Third-Party Complaint, at ¶¶71-75, and Exhibit "E".
[2] See, EFC Document No. 56 ("...the Court further ORDERS that the Receiver shall have the following powers and duties: 1. The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants. 2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located. 3. The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and

{LG 00728391 3 }                                           2

tracking down all of the LOC transactions that Prime entered into with borrowers who may have a claim on Prime's assets, locating Prime's assets, the majority of which have been transferred out of Prime's bank accounts, tracing assets that appear to have been misappropriated from Prime by Roglieri and the other Third-Party Defendants joined to this case by Receiver, and obtaining attachments and related injunctive relief from this Court, to prevent Prime's assets, wherever found, from being lost or dissipated in such a way as to render any final judgment in this case meaningless. This Court granted Receiver's Order to Show Cause and Temporary Restraining Order on January 30, 2024. See, EFC Dkt. No. 78. To date, the Receiver has identified missing ICA Deposits totaling over $63 million, and at a total of at least $31,749,002.44 of Prime funds improperly diverted to Third-Party Defendants in the form of cash and luxury purchases. See, Third-Party Complaint, at ¶¶71, 74 – 84.

At this time, as set forth in the Receiver's Third Report, dated February 7, 2024 (Dkt. No.107), in addition to the underlying Complaint brought herein by Plaintiff Compass-Charlotte, a cascade of litigation by Prime borrowers seeking to recover their ICA Deposits, along with related relief (including *inter alia*, causes of action for fraud, breach of contract, conversion, and breach of fiduciary duty) exists. Some of these cases were brought earlier than the Compass-Charlotte action, however some were filed later. A summary of the pending actions against Prime *in addition to this case*, is summarized below (hereinafter the "Additional Prime Borrower Proceedings" or "other Proceedings"):

---

location of Defendants' assets. 4. The Receiver shall have the duties and responsibilities of a receiver under law, shall be answerable and account to the Court for the Receiver's activities, and shall maintain a detailed accounting of his activities, including without limitation, any and all funds collected and used for any purpose. 5. The Receiver shall not be liable for any debts or liabilities of Defendants.")

1. <u>ER Tennessee LLC v. Prime, et al.</u>, Index No. 650231/2024 (Supp. Ct. New York); issue not joined; plaintiff alleging four causes of action for (1) $15 million (2) $7 million (3) $13 million and (4) $7 million;

2. <u>Caruso Home Builders, LLC et al. v. Prime</u>, Index No. EF2024312 (Supp. Ct. Saratoga); issue not joined; plaintiff seeking consequential damages for Prime's failure to complete funding of loan;

3. <u>Onward Holdings, LLC v. Prime and Kris Roglieri</u>, Index. No. 2:23-cv-00833-JCB (D. Utah); Default Judgment entered for $3 million[3], pending claim for remaining ICA payment of $4 million and consequential damages of $50 million;

4. <u>Camshaft CRE, 1, LLC v. Prime</u>, Index No. 2023-023173-CA-01 (11th Cir. Florida); pending motion for entry of final judgment; Plaintiff is seeking $12.4 million[4];

5. <u>B&R Acquisition Partners, LLC, et al. v. Prime</u>, Index No. 900844-24 (Supp. Ct. Albany); Entry of Arbitration Award; $4.3 million, plus costs and interest;

6. <u>1800 Park Avenue LLC v. Prime</u>, *case soon to be commenced*; claim for return of $5 million ICA Deposit.

<u>See</u>, Exhibit "A" to Third Report of Permanent Receiver, Dkt. No. 107.

In addition, the Receiver has received numerous phone calls from various parties claimed to have been financially injured by Prime's alleged fraud or otherwise inquiring about the case, which could likely lead to more lawsuits being filed against the receivership estate. <u>See</u>, Receiver's Third Report, at ¶24; <u>see also</u>, Declaration of Matthew A. Fistonich on behalf of SP

---

[3] See, Exhibit 26 to Plaintiff's Complaint.
[4] See, Motion to Disqualify Counsel filed by Compass-Charlotte, Exhibits 3, 5-6

{LG 00728391 3}                                     4

Harbor, ECF Dkt. No. 106, Attachment #5. ($2.5 million claim). The Receiver believes that his time and attention are best spent on continuing to recover monies and other assets of Prime that appear to have been improperly diverted from the company. However, the Receiver has found it increasingly necessary to spend, and indeed ***drain***, receivership resources, in connection with the Additional Prime Borrower Proceedings s, some which have been reduced to money judgments against Prime assets which they can now seek to enforce, and others where money judgments and enforcement proceedings appear imminent.

As this Court is aware, there was an involuntary Bankruptcy matter filed against Prime in the Northern District Court of New York, on January 9, 2024, CV# 1:2023bk11302, which was dismissed on the grounds that additional necessary parties were not joined to it. As such, Prime does not have the advantage of the automatic stay that would have been imposed in a bankruptcy action.

## ARGUMENT

The power "to issue such commands...as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained" is among the inherent powers recognized by the Supreme Court, of a federal court, codified in the All Writs Act, United States v. N.Y. Tel. Co., 434 U.S. 159, 172, 98 S. Ct. 364, 54 L.Ed. 2d 376 (1977) (citations omitted). This inherent power permits a federal court to enjoin actions in other jurisdictions that would undermine its "ability to reach and resolve the merits of the federal suit before it." In re Baldwin-United Corporation, 770 F.2d 328, 338-39 (2d Cir. 1985), and extends to both Federal and state court actions.[5] See, S.E.C. v. Credit Bancorp., Ltd., 93 F.

---

[5] An important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction.

{LG 007283913 }                                    5

Supp. 2d 475, 477 (S.D.N.Y. 2000) (staying state court action and stating that "the power to stay competing actions falls within the court's inherent power to prevent interference with the administration of that estate"); see also, In re Baldwin-United Corp., 770 F.2d at 338-39 (affirming district court's injunction, pursuant to All Writs Act, 28 U.S.C. § 1651, against suits in state courts).

Thus, a district court possesses the equitable power to order a stay preventing non-parties from initiating or continuing litigation against an entity in receivership. KeyBank National Association v. Monolith Solar Associates LLC, 2020 WL 1157650 (N.D.N.Y. 2020), *quoting*, S.E.C. Byers, 609 F.3d 87, 91 (2d Cir. 2010) (authorized blanket stay of all litigation against receivership property in SEC receivership context), *and citing*, Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 552 (6th Cir. 2006)(authorizing blanket stay in insurance dispute absent statutory authority). The equitable power to impose such a blanket stay is "effective against all persons, of all proceedings against the receivership entities" and "rests as much on [the court's] control over the property placed in receivership as on its jurisdiction over the parties" to the underlying claim. Id., at 2. "After all, 'if a district court could not control the receivership assets, the receiver would be unable to protect those assets.'" Id., *citing*, SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980).

The Byers and Liberte cases, supra, lay out the rationale for the imposition of an anti-litigation injunction in furtherance of the equitable purpose of the Receivership, and are unequivocal that *the purpose demands* that the court be able to exercise control over claims brought

---

The power to bind non-parties distinguishes injunctions issued under the Act from injunctions issued in situations in which the activities of the third parties do not interfere with the very conduct of the proceeding before the court. In re Baldwin-United Corp., 770 F.2d at 338 (citations omitted). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." N.Y. Tel. Co., 434 U.S. at 174 (citations omitted).

{LG 00728391 3 }                                                    6

against receivership assets. "The receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets. To this extent, the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control ... [b]ecause the court's power of injunction in a receivership proceeding arises from its power over the assets in question, non-parties to the underlying litigation may be bound by a blanket stay, so long as the non-parties have notice of the injunction." Liberte, at 551-52.

### A.  A Stay of Litigation against the Receivership Assets is Necessary and Warranted

Here, as in the Byers case, the Receiver must discover and secure assets that have been transferred to multiple Third-Party Defendant entities and recover funds that have been converted to tangible assets and co-mingled. In this regard, the Receiver has been presented with a landscape no different in kind than existed in the Monolith Solar case, supra, where the court deemed the case "ponderously complex" and noted that the receivership properties would "require a great deal of management and focus" on the part of the Receiver, and "[d]iverting the receiver's time and resources to attempt to fend off [third-party's] claim would put the receivership property, and the several creditors the receivership was enacted to protect, at risk." Id., at 5.

The Receiver is actively engaged in identifying the whereabouts of the ICA Deposits of all of Prime's borrowers, recovering both money and tangible assets (exotic cars, multi-million dollar wristwatches and jewelry, etc.), safeguarding the disputed assets, administering Prime's property as suitable[6], and assisting the Court in achieving a final, equitable distribution.[7] In order to

---

[6] For example, the Receiver and his staff spent significant time renewing insurance on Prime's luxury home in Virginia Beach, Virginia.
[7] Once appointed and having posted the bond required by the court, the receiver can control all property of the defendant in whatever district the property is located. See, 28 U.S.C. §754

untangle the web of malfeasance wrought by Mr. Roglieri and his accomplices, the Receiver needs to asset maximum control over Prime's assets and the Court must be able exercise control over claims brought against those assets. "An anti-litigation injunction is simply one of the tools available to court to help further the goals of the receivership." Byers, at 92. Moreover, as in Byers, an anti-litigation injunction would prevent any of Prime's many creditors from placing Prime or any of the Third-Party Defendants "into bankruptcy, thereby removing assets from the receivership estate to the potential detriment of all." Id., at 93.[8]

The primary purpose of establishing a receivership is to protect the estate property and ultimately return that property to the proper parties in interest. See, S.E.C. v. American Bd. of Trade Inc., 830 F.2d 431, 436 (2d Cir. 1987). This Court has previously issued the TRO at the Receiver's request, to prevent interference with and dissipation of the receivership estate. (See, Dkt. No. 78). Among the Receiver's duties is that of marshaling and preserving the assets of the estate in order to effectuate an orderly, efficient, and equitable administration of the estate. See, Ft. Nt. 1; In re Consolidated Welfare Fund "ERISA" Litigation, 798 F. Supp. 125, 128 (S.D.N.Y. 1992) (stay is akin to the automatic stay that applies in the bankruptcy context, 11 U.S.C. § 362, that protects the fund's assets during an interim period). Such efforts would be "rendered meaningless" if third parties, such as the Additional Prime Borrowers, are permitted to obtain judgments against the estate and thereby deplete its assets. In re Consolidated Welfare Fund, 798 F. Supp. at 128.

Permitting the Additional Prime Borrowers to seize receivership assets for the payment of claims for the missing $63 million ICA Deposits would reduce the total estate assets available to

---

[8] "Plaintiff has provided evidence that "the risk of insolvency is likely and imminent" because $52 million is not being held in RBC by Berone for the benefit of Prime Capital or in a Citibank account." ECF Dkt. No. 56, page 16; see also, Receiver's Third-Party Complaint (EFC Dkt. No. 71), at ¶114 and *infra*: "Upon information and belief, based upon the foregoing, it is reasonable to assume that Prime does not have sufficient assets to pay its liabilities."

{LG 00728391 3 }                                    8

Plaintiff and other Prime borrowers/claimants, the full scope of whom are not currently known. The Receiver is actively seeking out information regarding all Prime borrowers, loan transactions and closings, to determine the full universe of those who have been harmed by the alleged Ponzi scheme at issue here. See, Receiver's Third Report. Making any of the Prime Borrowers whole before this vital work has been completed, would be to the detriment of other Prime creditors, and would undermine the TRO and Receivership Order, and this Court's overriding interest in the orderly and equitable administration of the receivership estate. See, In re Lehal Realty Assoc., 101 F.3d 272 (2d Cir. 1996).

The Order to Show Cause accompanying this motion therefore seek to stay and enjoin during pendency of the Receivership previously ordered herein, except by leave of this Court, Defendants, Third-Party Defendants, and all other persons and entities from taking any action related to Prime Capital Ventures LLC, the Berone Defendants, the Third-Party Defendants, and any of their subsidiaries, affiliates, partners, their assets, documents, or against the receiver or the receiver's duly authorized agents (the "Relevant Parties and Property"), including, without limitation:

1. Any action to establish or enforce any claim, right, or interest against the Relevant Parties and Property: or

2. Commencing, prosecuting, continuing, entering or enforcing any suit or proceeding or judgments resulting therefrom against the Relevant Parties and Property, except that such actions may be filed to toll any applicable statute of limitations.

The injunction is tailored so that it will not apply to (a) any governmental investigation, action or prosecution related to violations of criminal laws; (b) the JAMS arbitration between

Plaintiff and Defendant Prime Capital Ventures, LLC; or (c) any matters in the bankruptcy case of Prime Capital Ventures, LLC.

It is submitted that such an injunction would be in keeping with the axiom that a receiver is an officer of the court which appointed him or her and "cannot be sued without the court's consent." Chicago Title & Trust Co. v. Fox Theatres Corp., 69 F.2d 60, 62 (2d Cir.1934)(citing Barton v. Barbour, 104 U.S. 126, 137; 26 L.Ed. 672 (1881)(i.e., the "Barton Doctrine").[9]

**B.     The Harm to any individual Prime Borrowers from a litigation stay is Outweighed by The Court's interest in the orderly and equitable administration of the receivership for the benefit of all Prime Borrowers.**

The Receiver has been considering what he might recommend to the Court with regard to the claims of multiple creditors and the distribution of monies to those creditors. The Receiver is the receiver of Prime and the Barone Defendants. The Receiver may very well determine and, therefore, recommend to the Court, that to discharge the Defendants' fiduciary obligations to their creditors, that a claims submission, review and payment process be established at an appropriate time in this case if and when the Defendants' and Third-Party Defendants' liability is established.

It is with this ultimate possibility in mind that the Receiver seeks a blanker stay of all arbitration and litigation, including entering or enforcing any suits or proceedings, in order to conserve receivership estate resources such that all creditors may be treated in a fair and equitable fashion pursuant to further order of this Court. To the extent that additional creditors may appear,

---

[9] The Second Circuit has recognized that Barton Doctrine extends to both the receiver and the receivership estate, in both bankruptcy proceedings as well as receiverships, (see, Vass v. Conron Bros., 59 F.2d 969, 971 (2d Cir.1932); and District Courts have extended the Barton Doctrine equally to arbitration (see e.g., McIntire v. China MediaExpress Holdings, Inc., 113 F.Supp.3d 769 (S.D.N.Y. 2015).

the Order to Show Cause has been drafted in a matter to permit the filing, but not the further prosecution of new actions, for the sole purpose of tolling any applicable statute of limitations.[10]

### C. This Court's Existing Temporary Restraining Order Should be Expanded to Cover Receivership Assets held by Shark Ventures LLC.

In accordance with the Third Report of the Permanent Receiver, at ¶21, the Receiver's investigation has revealed that four of the exotic automobiles set forth in the Order to Show Cause for Attachment Pursuant to Rule 64, and the five automobiles identified in the Supplemental Declaration in support thereof, are in fact owned by an entity known as Shark Ventures LLC; a company organized under Montana law. The Receiver's investigation has shown that Mr. Roglieri formed Shark Ventures LLC in order to save very substantial sales tax had the automobiles been purchased and owned by a New York entity. As a result, and for the reasons already established in support of the Receiver's Order to Show Cause Restraining the transfer or encumbrance of receivership assets, filed on February 2, 2024 (ECF Dkt. Nos. 78 & 90), receiver submits that the automobiles and assets paid for by Prime and held by Shark Ventures LLC, be likewise subjected to the same restraint, to preserve the status quo and prevent any eventual further order of equitable distribution by this Court a nullity.

---

[10] The Receiver is aware that there is a pending divorce action between Kris and Tina Roglieri, and does not seek to enjoin that action from proceeding at this time, but does need the injunction herein to be broad enough to cover any attempt to enforce an Equitable Distribution judgment against the receivership estate.

## CONCLUSION

Wherefore, Wherefore, it is respectfully submitted that the Court should grant the Receiver's Order to Show Cause, imposing a blanket anti-litigation injunction in this proceeding, together with such further relief as this Court deems just and equitable.

Dated: February 9, 2024
      Saratoga Springs, New York

                              Respectfully Submitted,
                              Lemery Greisler LLC

                              Robert A. Lippman, Esq
                              Bar Roll No. 102052
                              Counsel for the Receiver, Paul A. Levine, Esq.
                              60 Railroad Place, Suite 502
                              Saratoga Springs, New York 12866
                              (518) 581-8800
                              RLippman@Lemerygreisler.com