UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                      Plaintiff,

-against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                      Defendants.

Case No.:1:24-cv-55
(MAD/DJS)

---

PAUL A. LEVINE, as RECEIVER of PRIME CAPITAL
VENTURES, LLC,

                      Third-Party Plaintiff,

-against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC, FUPME, LLC

                      Third-Party Defendant,

---

**THIRD-PARTY PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RECEIVER'S REQUEST FOR INJUNCTIVE RELIEF, INCLUDING ATTACHMENT PURSUANT TO FED. R. CIV. P. 64 AND EXPEDITED DISCOVERY**

LEMERY GREISLER LLC
Robert A. Lippman, Esq (Bar Roll No.102052)
60 Railroad Place, Suite 502
Saratoga Springs, New York 12866
Tel: (518) 581-8800
RLippman@Lemerygreisler.com
Counsel for the Receiver, Paul A. Levine, Esq.

## **TABLE OF CONTENTS**

**Preliminary Statement**............................................................................................................1

**Argument** ................................................................................................................................2

    **I.**    The Cumulative Impact of Third-Party Defendants' Participation in Prime's Many Acts of Wanton Conversion and Fraud, Together with Common Law Breaches of Fiduciary Duty, Supply the Necessary Evidence of Intent to Warrant Attachment ..........................2

    **II.**    Third-Party Defendants are Not Subject to the Arbitration Agreement and Receiver Must be Given the Tools Necessary to Carry Out His Appointment ...............................7

**Conclusion**  ............................................................................................................................7

# **TABLE OF AUTHORITIES**

**CASES:** **Pages**

*Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.,* 54 F. Supp. 3d 287 (E.D. N.Y. 2014) ..................................................................................................................................2

*In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir.1983). ......................................................................2

*Ford Motor Credit Co. v. Hickey Ford Sales, Inc.,* 465 N.E.2d 330, 334 (N.Y.1984)......................2

*Helicon Partners, LLC v. Kim's Provision Co., Inc.* 2013 WL 1881744 (Bkrtcy. S.D.N.Y. 2013) .2

*Superintendent of Ins. of State of N.Y. v. Freedman*, 443 F.Supp. 628, 638–639, affd. 594 F.2d 852..................................................................................................................................................3

*Binon v. Boel,* 271 App.Div. 505, 510, 66 N.Y.S.2d 425, affd. 297 N.Y. 528, 74 N.E.2d 466).......3

*Bank of Leumi Trust Co.,* 892 F.Supp. at 483 .................................................................................3

*Monteleone v. Leverage Group,* No. 08–CV–1986, 2008 WL 4541124, at *9 (E.D.N.Y. Oct. 7, 2008) ................................................................................................................................................3

*Mineola Ford Sales Ltd. v. Rapp,* 242 A.D.2d 371, 661 N.Y.S.2d 281, 281–82 (2nd Dept. 1997) ........................................................................................................................3,4

*Eaton Factors Co. v. Double Eagle Corp.,* 17 AD2d 135 (1st Dept. 1962) ...................................4

*In re Distribution Co., Inc. v. Pincus,* 110 B.R. 658 (Bankr. S.D.N.Y. 1990).............................4, 5

*Diorio v. Kreisler-Borg Constr. Co.,* 407 F.2d 1330 (1969)...........................................................5

*Guardian Industrial Products Inc. v. Diodati,* 9 B.R. 804 (Bankr.D Mass 1981) .........................6

*Allstate Ins. Co. v. TMR Medibill Inc.,* CV–00–0002 (CPS), 2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000)...............................................................................................................................6

*Worldwide Carriers, Ltd. v. Aris Steamship Co.,* 301 F. Supp. 64, 67–68 (S.D.N.Y. 1968)............6

**STATUTES:** **Pages**

Federal Rules of Civil Procedure Rule 64 ......................................................................................1

NY Civil Practice Law and Rules Article 62 – Attachment 6201(3) .............................................2

## **PRELIMINARY STATEMENT**

Plaintiff Paul A. Levine, Esq. as Receiver of Prime Capital Ventures, LLC, through his attorneys, Lemery Greisler LLC, submits this Reply Memorandum of Law in support of the Receiver's request that the Court enter an Order to Show Cause, for injunctive relief, including attachment pursuant to Fed. R. Civ. P. 64, and for expedited discovery of the Third-Party Defendants. The Receiver incorporates the allegations and exhibits set forth in the Verified Third-Party Complaint and Declaration of Paul A. Levine, dated February 12, 2024, as if more fully set forth herein.

This Court appointed a Receiver to prevent the dissipation of assets based upon findings that Defendant Prime appears to have engaged in fraudulent conduct, and that there is imminent danger that the monies and property sought in this case may be lost, concealed, diminished in value, or squandered, based on Plaintiff's probability of success in the action and the possibility of irreparable injury without the receivership. In response, Prime has engaged in extensive motion practice to rid itself of the receivership, while at the same time discouraging cooperation with the receiver's efforts to trace Prime's transactional history with third-parties who can shed light on Prime's finances, where Prime's borrowers' ICA Deposits went, what the money was spent on, and the extent to which Prime's sole member and CEO, Kris Roglieri and the other Third-Party Defendants profited from, collaborated with, or were used as instrumentalities to perpetrate the Ponzi scheme at the heart of this case. The opposition is just another part of that effort to cover-up and distract, rather than assist the receiver in the performance of his duties and ultimately assist this Court in fashioning appropriate equitable relief.

## ARGUMENT

I. **THE CUMULATIVE IMPACT OF THIRD-PARTY DEFENDANTS' PARTICIPATION IN PRIME'S MANY ACTS OF WANTON CONVERSION AND FRAUD, TOGETHER WITH COMMON LAW BREACHES OF FIDUCIARY DUTY, SUPPLY THE NECESSARY EVIDENCE OF INTENT TO WARRANT ATTACHMENT**

Since direct evidence of fraudulent intent is rare, on a claim for attachment on ground that the debtor disposed of or secreted assets with intent to commit fraud, a court may look for the presence of badges of fraud that commonly accompany fraudulent transfers in determining whether to infer fraudulent intent from a disposition of assets. Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp., 54 F. Supp. 3d 287 (E.D. N.Y. 2014) (applying New York law). Badges of fraud a court may consider on a claim for attachment on the ground that the debtor disposed of or secreted assets with intent to commit fraud include: (1) a close relationship between the parties involved in the transfer or transaction; (2) secrecy in the transfer; (3) a questionable transfer not in the usual course of business; (4) gross inadequacy of consideration; (5) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (6) the use of fictitious parties; and (7) the retention of control of the property by the transferor after transfer. Id.; see also, In re Kaiser, 722 F.2d 1574, 1582 (2d Cir.1983).

CPLR §6201(3) is satisfied if any <u>one</u> of the seven badges of fraud are evident. Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 465 N.E.2d 330, 334 (N.Y.1984); see also, Helicon Partners, LLC v. Kim's Provision Co., Inc. 2013 WL 1881744 (Bkrtcy. S.D.N.Y. 2013). This Court has already been presented with substantial proof that Prime's borrowers' ICA Deposits were systematically looted and transferred to the Third-Party Defendants and spent on highly questionable purchases, such as exotic hyper cars (which appear to have been driven recklessly

{LG 00731080 3 }

2

and not held as investments), wasteful charter jet travel (to exotic car rallies, and not for anything having to do with Prime or Third-Party Defendants' legitimate business purposes), and millions of dollars of wristwatches and jewelry, apparently to satisfy Mr. Roglieri's narcissism.

As the Receiver has reported to the Court, there is a growing list of third-party Prime borrowers who have been harmed, and the fraud committed by Prime, was at the direction of its sole member and CEO, Kris Roglieri, and for his sole benefit. Mr. Roglieri's actions have been more fully plead in the Verified Third-Party Complaint, and include not only conversion and fraud but breaches of his common law fiduciary duty (see, Superintendent of Ins. of State of N.Y. v. Freedman, 443 F.Supp. 628, 638–639, affd. 594 F.2d 852; and Binon v. Boel, 271 App.Div. 505, 510, 66 N.Y.S.2d 425, affd. 297 N.Y. 528, 74 N.E.2d 466).

While it is axiomatic that direct proof of fraudulent intent can rarely be obtained and must ordinarily be inferred from the circumstances, here, neither Defendant nor any Third-Party Defendant has come forward with ***any*** plausible explanation for the dissipation of the ICA Deposit funds which the Receiver has begun to uncover and has documented in his Reports to the Court. Lavish and inexplicable spending of borrower's money on personal matters rather than investing it as promised is inarguably the classic case of where attachment has been held to be warranted. See, Bank of Leumi Trust Co., 892 F.Supp. at 483; Monteleone v. Leverage Group, No. 08–CV–1986, 2008 WL 4541124, at *9 (E.D.N.Y. Oct. 7, 2008) (noting defendants failed to put forth a legitimate motive for spending investors' money on personal matters rather than investing it as promised); Mineola Ford Sales Ltd. v. Rapp, 242 A.D.2d 371, 661 N.Y.S.2d 281, 281–82 (2nd Dept. 1997) (affirming order of attachment, noting defendant-employee failed to explain falsified business records and failed to explain what she had done with plaintiff-employer's money).

{LG 00731080 3 }

3

In opposing the attachment, Prime argues that this case is akin to the situation set forth in Eaton Factors Co. v. Double Eagle Corp., 17 AD2d 135 (1st Dept. 1962), where the NY Appellate Division overturned an order of attachment, holding that disposal of business assets by a debtor, *who never exercised control over the corporate assets at issue*, was insufficient to establish an intent on the part of the debtor to defraud his creditors. In Eaton, it was established that the trucks, trailers and other assets of the corporation, a separate entity from the debtor, would not have been subject to the appellants' claims, such that their disposal would not have resulted in them being defrauded. Id. at 135-6. Moreover, the debtor received consideration of a "substantial sum in consideration of a limited agreement" with the corporate trucking business. Id., at 136. Here, by contrast, Roglieri and the other Third-Party Defendants have failed to come forward with any proof of consideration for the vast sums they received, nor explain otherwise how the transfers of ICA funds out of Prime served any legitimate purpose. Indeed, as already set forth in the original moving papers and in the ever-expanding docket in this matter, Prime and Mr. Roglieri, when confronted with lawsuits by borrowers alleging conversion, fraud and breach of financing agreements, have either settled those actions with money taken from other borrowers, or defaulted.

Rather than presenting a defense, the Eaton decision relied upon in opposition to the Receiver's carefully drafted and narrow request for attachment of specific bank accounts, cars and chattel, has actually been the subject of negative treatment, and distinguished by the much more analogous case of In re Distribution Co., Inc. v. Pincus, 110 B.R. 658 (Bankr. S.D.N.Y. 1990), where the fact that debtor property had been transferred to corporate alter-egos did not prevent an order of attachment brought by Trustee, who had made out a prima facie showing that debtor property had been secreted or disposed of in such a way as to frustrate creditor's rights. In Pincus,

{LG 00731080 3 }
4

the court held that the requisite intent to defraud could be inferred from the fact that the debtor, as is the case here, failed to provide adequate documentation to substantiate the amount and nature of the questionable transactions, which by comparison to Mr. Roglieri's spending spree, seem quite tame.

The factual scenario in Pincus involved concealment of the existence of assets, misappropriation and sale of assets, and a failure to account for the proceeds. Here, as in Pincus, Kris Roglieri, Kimmy Humphrey, and the other Third-Party Defendants represented by the Hogan Lovells law firm have chosen to not cooperate with the Receiver's requests for information on the fate of ICA Deposit money transferred to Third-Party Defendants, all while evidence continues to come to light that these moneys were moved to these other entities such as FUPME, and the newly discovered Shark Ventures LLC. As the court in Pincus makes clear, fraudulent intent may be manifested when the party against whom credible allegations of conversion and misappropriation have been made, "utterly failed to provide documentation to substantiate the nature or amount" of the claimed expenses, and fraudulent intent is manifested by a lack of books and records through which lies might be detected. Id., at 663. The reckless spending and indifference to Prime's obligations under financing agreements with its borrowers, coupled with the fierce resistance to the Receiver's attempts to uncover the location of assets, puts this case squarely within the precedent established in Pincus, where the court sustained the attachment based on "reckless indifference to the truth…" in business schedules (recall here that both Mr. Roglieri and Ms. Humphrey, in response to the Receiver, have not produced Prime's business records and financial statements), "…is the equivalent of fraud." citing, Diorio v. Kreisler-Borg Constr. Co., 407 F.2d 1330 (1969), and "…the cumulative effect of all falsehoods together evidences a pattern of reckless

and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent..." citing, Guardian Industrial Products Inc. v. Diodati, 9 B.R. 804 (Bankr.D Mass 1981).

Third-Party Defendants also argue, without citation or case law, that the Receiver may not rely on verified allegation in the Third-Party Complaint to meeting the requirement of showing *at least one* of the badges of fraud. Paragraph 74 of the Third-Party Complaint, and Exhibit "E" thereof (ECF Dkt. No. 71 -1), show the monies being wired out of the Prime bank accounts to the accounts of Kris and Tina Roglieri, Prime Commercial Lending, Commercial Capital Training Group ("CCTG"), and the National Alliance of Commercial Loan Brokers ("NACLB"). Paragraph 57 of the Third-Party Complaint shows that at least $16,396,702.53 of the missing money was paid to Kris and Tina Roglieri, CCTG, Prime Commercial and NACLB. Paragraph 77 of the Third-Party Complaint, at footnote 4, shows $2,344,454 taken from Prime's Citibank account and being delivered to Scott Oliver Law Firm for the purchase of a Mercedez-Benz AMG, which has been established (by the allegations of the FUPME lawsuit against Traveon Devonta) to be a misappropriation of ICA Deposits for yet another exotic automobile for Kris Roglieri's use.

Contrary to the statements made in the memo of law in opposition, the use of Third-Party entities as alter-egos to hold and dispose of assets is actually a compelling reason to attach those assets, so that creditors may look to those assets of one to satisfy claims against the other. See, Allstate Ins. Co. v. TMR Medibill Inc., CV–00–0002 (CPS), 2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000) (allowing attachment of non-party's assets because plaintiffs made sufficient showing regarding its reverse corporate veil piercing claim); Worldwide Carriers, Ltd. v. Aris Steamship Co., 301 F. Supp. 64, 67–68 (S.D.N.Y. 1968) (allowing attachment of property held by third party on the basis of an alter ego theory because plaintiff made out at least a prima facie case).

{LG 00731080 3 }

6

As is the case with conversion and fraud, it is submitted that the alter-ego theory has been adequately plead in the Third-Party Complaint. See, Dkt. No. 71, ¶¶ 109-118.

## II. THIRD-PARTY DEFENDANTS ARE NOT SUBJECT TO THE ARBITRATION AGREEMENT AND RECEIVER MUST BE GIVEN THE TOOLS NECESSARY TO CARRY OUT HIS APPOINTMENT

The Third-Party Defendants argue that the Receiver will not be able to succeed on the merits for the reasons set forth in their stricken motion to dismiss and, therefore, the attachment must be denied. The fraudulent conveyances and the other causes of action in this case are so blatant, so pervasive and of such magnitude that the Court should not allow the Third-Parties' procedural gamesmanship to strip the Receiver of the powers necessary to discharge his duties; powers and duties conveyed by the Court. And, as previously pointed out by the Court, the Receivership is in aid of the arbitration and the Plaintiff has already been found to be likely to succeed on the merits of its case. In any event, the Receiver intends to file an amended third-party complaint to address any perceived pleading deficiencies.

For the reasons set forth at length in the Receiver's Declaration in support, submitted herewith, the Court, in its broad discretion, should permit the Receiver to discharge his duties.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Receiver hereby asks that the Court grant the Order to Show Cause and Temporary Restraint on the dissipation of the assets at issue in this

action, together with the right to conduct expedited discovery in connection with the Third-Party Defendants, and such other and further relief as this Court deems just and equitable.


Dated: February 12, 2024
    Saratoga Springs, New York

                                          Respectfully submitted,
                                          LEMERY GREISLER LLC

                                          _____
                                          Robert A. Lippman, Esq
                                          Bar Roll No.102052
                                          Counsel for the Receiver, Paul A. Levine, Esq.
                                          60 Railroad Place, Suite 502
                                          Saratoga Springs, New York 12866
                                          (518) 581-8800
                                          RLippman@Lemerygreisler.com