# Exhibit A



30 South Pearl Street, Suite 901
Albany, NY 12207

p: 518-396-3100  f: 518-396-3101
hinckleyallen.com

**Christopher V. Fenlon, Partner**
cfenlon@hinckleyallen.com

January 17, 2024

**VIA ECF**
Hon. Christian F. Hummel
United States Magistrate Judge
United States District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

      RE:    *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC, et. al.*,
               Case No. 1:24-cv-55 (N.D.N.Y.)

Your Honor:

      We represent Plaintiff Compass-Charlotte 1031, LLC ("Compass") in the above-referenced matter. We write in response to Prime Capital Ventures, LLC's ("Prime") letter requesting that the Court quash the subpoenas issued by Compass (Dkt. No. 25) (the "Quash Letter"), pursuant to the Court's January 12, 2024 Order to Show Cause for the Appointment of a Receiver on an Emergency Basis and for Expedited Discovery (Dkt. No. 8) (the "Order").

      A primary purpose of this expedited discovery (and the appointment of a receiver) is to preserve the status quo and to answer a straightforward question: where are the Interest Credit Account ("ICA") deposits, including Compass's $15 million? Prime will not answer that simple question. Now Prime wants to cut off this critical third-party discovery so that the answer to that question is never known. Prime seeks to quash third-party subpoenas to financial institutions seeking information regarding non-parties affiliated with Prime on relevance and confidentiality grounds. Neither ground has merit, Prime lacks standing to raise these objections, and Prime's request to quash subpoenas should be denied.

      **A.**    **Prime Lacks Standing to Request the Subpoenas Be Quashed**

      First, Prime lacks standing to raise objections to the subpoenas on behalf of the subpoenaed parties. Despite Prime's efforts to direct the Court to a slew of out-of-circuit cases, it is well-settled in this Circuit that "[a] party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party." *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)). Absent a showing of privilege or privacy, a party lacks standing to challenge a non-party subpoena with a motion to quash. *See Nova Prod.,*

*Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) ("a party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right"); *see also* Quashing or Modifying a Subpoena, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.) (same).

Prime has not shown how the subpoenas seek privileged information or would otherwise interfere with Prime's privacy interests. Aside from the conclusory assertion that the subpoenas seek information "likely to reveal private, confidential, proprietary, or business-sensitive information," Quash Letter at 3, Prime offers no evidence that could afford it standing to object. Courts in this Circuit have made it clear that such bare assertions cannot serve as the basis for a motion to quash. *See, e.g.*, *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349, *8 (E.D.N.Y. Mar. 24, 2017) ("[i]n order for a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive.") (citing *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, *5 (S.D.N.Y. Jan. 4, 2013) for the proposition that a motion to quash subpoena served on non-party should be denied where the defendant "made no attempt to establish any proprietary or other confidentiality-related interest it may have in the requested documents beyond a conclusory assertion that the subpoenas seek documents that are 'private, confidential, and commercially sensitive. This bald statement, by itself, is insufficient to confer [defendant] with standing.").

Outside of these conclusory allegations regarding privacy, Prime's motion primarily takes issue with the relevance of the information sought in the subpoenas, which, for the reasons stated below, is meritless.

## B. The Relevance of the Subpoenaed Information is Already Apparent and the Subpoenas Are Necessary to Protect the Interests Recognized in the Order

It is axiomatic that, in the context of discovery, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also* Fed. R. Civ. P. 26(b)(1). This broad definition of relevance is applicable to discovery through a subpoena. Fed. R. Civ. P. 45; 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2457 (1971).

The Court issued the Order precisely so Compass could attempt to locate the missing $50+ million of ICA deposits. (Dkt. No. 1 at ¶1) ("The immediate appointment of a receiver is required to find the deposits . . ."). In the Complaint, Compass alleges that Roglieri's principal, has used the funds for improper purposes. (*E.g.*, Dkt. No. 1 at 102) Indeed, one of the individuals affiliated with Prime whose information is the subject of some of the subpoenas apparently lives rent-free in a company house in Virginia Beach, VA. Compass's subpoenas are directly related to locating and securing the money sent to Prime by third parties that, to date, no one can definitively locate. This is precisely the type of discovery that is required to unwind complicated fraud. The subpoenaed financial institutions all have banking relationships with Prime, its many affiliates, and its sole member.

Importantly, in response to a subpoena sent to the Royal Bank of Canada ("RBC") seeking information about Defendant Berone Capital LLP, RBC has provided account statements that confirm, contrary to Prime's representations: (1) Prime never wired $50 million to Berone; and (2) there is no (and never has been any) account at RBC associated with Berone Capital with $50 million in it for the benefit of Prime. Whoever created the RBC account statement relied on by Prime, and whatever such statement is supposed to represent, the account was not held for benefit of Prime and never had $50 million in it. (Dkt. No. 1-39).

Compass and the interim Receiver now can rule out RBC accounts in the name of Berone Capital as a possible source for the missing $50+ million in ICA deposits. But at this time, Compass cannot rule out any other possible location for those funds or who might now have custody thereof. Indeed, at this time, Prime has not provided information or bank account statements that show that Prime actually provided the ICA funds to Berone Capital.

Accordingly, it is critical that Compass and the Receiver be allowed to pursue and discover where Prime's assets are located and what is left. The subpoenas essentially seek information limited to two categories:

(a) the Berone Capital entities and their principals; and

(b) Prime Capital, its principals and their related companies.

If Prime can provide evidence of the wires going to Berone Capital, and the location of those assets, Compass will agree to withdraw the subpoenas while it works with the Receiver to locate and secure the missing $50+ million. Without that evidence, however, it is possible that such funds never went to Berone Capital and the missing ICA deposits have otherwise been dissipated by Prime, its principals, and most importantly Prime and Berone Capital's related companies and affiliates, who are covered by the present subpoena (the entities and individuals that Prime seeks to cut off discovery against).

Further, the facts set forth in the Jeffery Huston Declaration (Dkt. No. 23) give Compass significant reason to believe that the alleged $50+ million may indeed have been improperly used by Prime and its principals (just as the $5 million of 1800 Park Ave LLC's trust funds were used). Indeed, it appears that Hogan Lovells US LLP ("Hogan") was paid nearly $400,000 out of funds sent to Prime which were then sent to a Prime affiliate (which is not Hogan's client) who then paid Hogan to represent Prime. This circularity and intermingling of funds, companies, and accounts demonstrates the necessity for the subpoenas and confirms the relevance of the requested information.[1]

---

[1] Prime's Quash Letter notes the Parties' January 17, 2024 meet and confer regarding these issues was "fruitless." *See* Quash Letter at 1. This position is disingenuous, given counsel for Prime's unilateral demand that the subpoenas be withdrawn as to any information regarding a non-party without discussion or support, and the almost simultaneous submission of its Quash Letter following the conclusion of that meeting. As Second Circuit courts have maintained, to constitute an appropriate meet and confer, Parties must "make a genuine effort to resolve the dispute by determining . . . (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, cannot be resolved without judicial

Hon. Christian F. Hummel
January 17, 2024
Page 4

### C. Prime's Purported Concerns Are Remedied by a Protective Order

Courts in this jurisdiction have dealt with similar issues related to financial records, and have noted that the "proper way" to handle such concerns is "for the parties to agree on a confidentiality order and identify the documents as 'Confidential.'" *See Lopez v. Setauket Car Wash & Detail Ctr.*, 2015 WL 13753675, *5 (E.D.N.Y. May 19, 2015) (citing *Allen v. Devine*, 2011 WL 505007, *2-3 (E.D.N.Y. Feb. 9, 2011).

During the January 17, 2024 meet and confer, Prime indicated that it would be preparing a proposed protective order to govern confidential information and documents produced in this litigation. In the interim, Compass has agreed to treat bank account statements as confidential, while reserving its rights to contest such designation upon the entry of a protective order. If the non-party accounts do not contain or did not receive any of the missing $50+ million, then Compass is willing to return and delete any such statements it receives. Prime's assertion that Kris Roglieri and Kimmy Humphrey have no connection to this action is baseless, as they are affiliated with Prime, communicated with Compass in such capacity, participated in the fraud, and appear to be in the middle of the $50 million hole. Indeed, Roglieri informed the Bankruptcy Court that "all of the ICA deposit funds, which are listed on schedule 1 attached, are being held in Prime Capital's accounts" including $52,364,000 in an RBC-Partnership account, Dkt. No. 1-37, which is not the case. In any event, a standard protective order is more than adequate to address any potential confidentiality concerns in this discovery.

All rights are reserved.

Very truly yours,

**HINCKLEY, ALLEN & SNYDER LLP**

Christopher V. Fenlon

cc: All Counsel of Record (via ECF)
Berone Defendants (via email)
James L. Tuxbury, Esq. (via email, *pro hac vice pending*)
Brian Hail, Esq. (via email)

---

intervention." *See U.S. Bancorp Equipment Fin., Inc. v. Babylon Transit, Inc.*, 270 F.R.D. 136, 140 (E.D.N.Y. 2010) (quoting *Big Apple Pyrotechnics v. Sparktacular Inc.*, 2006 WL 587331, *1 (S.D.N.Y. Mar. 8, 2006)). Counsel for Prime did not inform Compass of its position with regard to the subpoenas until the meet and confer commenced, and requested only that counsel for Compass immediately respond "yes or no" when asked whether Compass would be withdrawing the subpoenas (without providing any meaningful reason, let alone a legal basis, for its request that Compass do so).