UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
COMPASS-CHARLOTTE 1031, LLC,                                   :
:
Plaintiff,                                      :
:
v.                                              :     Case No. 24-cv-00055 (MAD/CJH)
:
PRIME CAPITAL VENTURES, LLC                                    :
BERONE CAPITAL FUND, LP,                                       :
BERONE CAPITAL PARTNERS LLC,                                   :
BERONE CAPITAL LLC,                                            :
BERONE CAPITAL EQUITY FUND I, LP,                              :
and 405 MOTORSPORTS LLC f/k/a Berone                           :
Capital Equity Partners LLC,                                   :
:
Defendants.                                     :
---------------------------------------------------------------x
:
PAUL A. LEVINE, as Receiver of Prime Capital                   :
Ventures, LLC,                                                 :
:
Third-Party Plaintiff,                          :
:
v.                                              :
:
KRIS D. ROGLIERI *et al.*,                                     :
:
Third-Party Defendants.                         :
:
---------------------------------------------------------------x

**PRIME CAPITAL AND THIRD-PARTY DFENDANTS' RESPONSE TO
RECEIVER'S MOTION TO STAY AND ATTACH FURTHER ASSETS**

*(Counsel Listed on Next Page)*

HOGAN LOVELLS US LLP
Pieter Van Tol (Bar Roll No. #508405)
Christopher Bryant (admitted *pro hac vice*)
Peter Bautz (admitted *pro hac vice*)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com
peter.bautz@hoganlovells.com

*Attorneys for Defendant Prime Capital Ventures, LLC , and Third-Party Defendants (as defined below)*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1
BACKGROUND ............................................................................................................................ 2
    I.      Relevant Court Orders ........................................................................................... 2
    II.     Recent Correspondence with Receiver .................................................................. 2
ARGUMENT .................................................................................................................................. 3
    I.      The Court Has No Subject-Matter Jurisdiction Over the Third-Party
           Claims and the Related Request to Attach Assets ................................................. 3
           A.      The Third-Party Complaint Does Not Include a Jurisdictional
                  Statement ................................................................................................... 3
           B.      The Third-Party Complaint Is Inextricably Intertwined with Claims
                  by Borrowers, Including Compass, That Are Governed by
                  Arbitration Agreements ............................................................................. 4
           C.      The Court Was Divested of Jurisdiction When Prime Capital
                  Appealed from the Order Appointing the Receiver ................................... 6
           D.      The Receiver Lacks Standing to Bring Claims on Behalf of Prime
                  Capital ....................................................................................................... 7
    II.     The Receiver Has Not Shown That He Is Entitled to an Attachment Order
           Over the Shark Ventures Assets ............................................................................. 7
CONCLUSION ............................................................................................................................... 8

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cayuga Indian Nation of New York v. Village of Union Springs*,
  317 F. Supp. 2d 152 (N.D.N.Y. 2004) ....................................................................................... 7

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., Ltd.*,
  189 F.3d 289  (2d Cir. 1999) ..................................................................................................... 7

*Citibank, N.A. v. Hyland (CF8) Ltd.*,
  839 F.2d 93 (2d Cir. 1988) ........................................................................................................ 7

*DeVito Verdi, Inc. v. Legal Sea Foods, Inc.*,
  2021 WL 1600088 (S.D.N.Y. Apr. 23, 2021) ............................................................................ 3

*F.T.C. v. 1st Guar. Mortg. Corp.*,
  2012 WL 1676746 (S.D. Fla. May 14, 2012) ............................................................................ 6

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982) ..................................................................................................................... 6

*Jones v. Farney*,
  2023 WL 7688457 (N.D.N.Y. May 19, 2023) ........................................................................... 3

*Suero v. NFL*,
  2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) .......................................................................... 3

**Statutes**

N.Y.C.P.L.R. § 6201 ........................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 8(a)(1) ...................................................................................................................... 3

Fed. R. Civ. P. 62(a) ........................................................................................................................ 6

Fed. R. Civ. P. 62(c) ........................................................................................................................ 6

Fed. R. Civ. P. 82 ............................................................................................................................. 6

Defendant Prime Capital Ventures, LLC ("Prime Capital") and Third-Party Defendants Kris D. Roglieri, Kimberly Humphrey (a/k/a Kimmy Humphrey), Prime Commercial Lending, LLC, Commercial Capital Training Group, The Finance Marketing Group, National Alliance of Commercial Loan Brokers LLC, and FUPME, LLC (collectively, the "Third-Party Defendants"), by their undersigned counsel, respectfully submit this response, along with the Declaration of Pieter Van Tol ("Van Tol Declaration"), to a motion (the "Motion") by the receiver here (the "Receiver") for a stay of litigation and the expansion of the pending temporary restraining order ("TRO") to include newly identified assets owned by Shark Ventures LLC ("Shark Ventures") (which we will refer to as the "Shark Ventures Assets"). (*See* Dkt. No. 118.)[1]

## PRELIMINARY STATEMENT

The Court should reject the Receiver's request to expand the TRO to include the Shark Ventures Assets. As discussed below, the Court lacks subject-matter jurisdiction over the Receiver's claims in the Third-Party Complaint and, as a result, it cannot issue an attachment order in connection with those claims. In addition, the Receiver has not satisfied the strict requirements for attachment. Finally, the Receiver's request is deficient because he is seeking attachment against Shark Ventures, but it is not a defendant in this action. Also, with respect to one of the assets, the Receiver has not provided any evidence that it is an asset of Shark Ventures.

---

[1] Prime Capital takes no position on the part of the Motion that seeks a stay of litigation, and the Third-Party Defendants submit this response to oppose the part of the Motion that seeks to extend the TRO to the Shark Ventures Assets. Also, to the undersigned's knowledge, the Court did not enter the Order to Show Cause that was filed on February 9, 2024 by the Receiver and, accordingly, there is no date set for any response. In an abundance of caution and reserving all rights, we submit this response by the date proposed in the Order to Show Cause.

# BACKGROUND

I. **Relevant Court Orders**

The Court appointed the Receiver, on an interim basis, on January 12, 2024. The order (the "January 12 Order") appointing the Receiver stated, among other things, that:

> 2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to … (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured or un-matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.

(Dkt. No. 8 at 2-3.) The January 24 Order, in which the Court appointed the Receiver on a permanent basis, removed the above language regarding the Receiver's authority to assert claims, demands, or causes of action. (*See* Dkt. No. 56 at 22.) Thus, the Receiver's current duties are limited, and they do not extend to an assertion of legal claims on Prime Capital's behalf.

II. **Recent Correspondence with Receiver**

In the brief in support of the Motion, the Receiver claims that Prime Capital has not produced any records between Prime Capital and Berone to corroborate Prime Capital's assertion that it was defrauded by Berone. (Br. at 2.) That is not the case. In its sur-reply, Prime Capital provided fraudulent bank statements that Berone sent in December 2022 and April 2023. (*See* Dkt. No. 43.) Prime Capital provided the emails transmitting the statements, which came from Prime Capital's files. (*See* Dkt. No. 43-5 and 43-5.) There is no doubt that the statements from Berone are different from the bank records that RBC produced in response to subpoenas in this case. Thus, it is not clear what additional corroboration the Receiver believes is necessary.

Nevertheless, counsel for Prime Capital recently wrote to the Receiver and recounted Berone's fraudulent conduct in detail and with supporting documents. That letter is attached to the Van Tol Declaration as **Exhibit A**. In summary, the letter demonstrates that Prime Capital (a)

2

believed that it had a credit facility with Berone, based on a $20 million contribution, that was more than sufficient to cover the ICA deposits; and (b) only recently, through the production of documents in response to subpoenas in this case, learned that it did not have access to the facility and that its $20 million had been stolen and spent by Berone. That is fraud. Therefore, despite the constant accusations by the Receiver (and Plaintiff), Prime Capital is also a fraud victim here.

## ARGUMENT

**I.    The Court Has No Subject-Matter Jurisdiction Over the Third-Party Claims and the Related Request to Attach Assets**

There are four separate grounds for a finding that the Court lacks subject-matter jurisdiction here. If the Court accepts any of them, it does not need to reach the merits of the Receiver's request to attach assets, including the Shark Ventures Assets, because the Court must have subject-matter jurisdiction over the Receiver's claims in order to grant attachment.

### A.    The Third-Party Complaint Does Not Include a Jurisdictional Statement

The Receiver omitted any jurisdictional statement from the Third-Party Complaint, which violates the pleading requirements in Fed. R. Civ. P. 8(a)(1). The Receiver's failure to include a jurisdictional statement is sufficient grounds to dismiss the Third-Party Complaint. *See Jones v. Farney*, 2023 WL 7688457, at *2 (N.D.N.Y. May 19, 2023) (recommending dismissal when complaint failed to clearly identify jurisdiction and claims); *Suero v. NFL*, 2022 WL 17985657, at *5 (S.D.N.Y. Dec. 16, 2022) (the plaintiff's failure to plead jurisdictional facts requires dismissal or amendment). While the Third-Party Complaint alleges the principal place of business of five Third-Party Defendants that are limited liability corporations, it does not allege the citizenship of the LLC members. Such a failure is fatal. *See id.* (citing *DeVito Verdi, Inc. v. Legal Sea Foods, Inc.*, 2021 WL 1600088, at *1-2 (S.D.N.Y. Apr. 23, 2021) ("Where a complaint does not plead the citizenship of an LLC party's members, it fails to plead diversity jurisdiction.")). The Receiver,

3

therefore, fails to allege the basis for the Court to assert subject-matter jurisdiction over the claims in the Third-Party Complaint.

### B. The Third-Party Complaint Is Inextricably Intertwined with Claims by Borrowers, Including Compass, That Are Governed by Arbitration Agreements

In the Third-Party Complaint, the Receiver alleges that the Third-Party Defendants misappropriated ICA deposits from borrowers paid pursuant to credit agreements between Prime Capital and the borrowers. (*See* Dkt. No. 71, ¶¶ 3, 73-84.)

Prime Capital uses a standard credit agreement, which is exemplified by the Development Line of Credit Agreement between Prime Capital and Plaintiff Compass-Charlotte 1031, LLC ("Compass") as of April 24, 2023 ("DLOC"). (*See* Dkt. No. 1-29.) With regard to ICA deposits, the DLOC states as follows:

> C.   Within twenty-four (24) hours after the fully executed Loan Documents are received by Lender and Borrower, Borrower has agreed to pay to Lender, pursuant to Section 3.6 hereof, the aggregate amount of Fifteen Million Nine Hundred Two Thousand Two Hundred Fifty Dollars and 00/100 Dollars ($15,902,250.00) (the "ICA Payment"), by bank wire to Lender. <u>An account on the books and records of Lender shall be created to serve as an Interest Credit Account (the "Interest Credit Account" or "ICA").  A credit equal to the ICA Payment shall be noted in the ICA for purposes of satisfying interest payments under the Loan</u>.
>
> **Section 3.6. Reserves.**  Following the signing of this Agreement, Borrower shall remit the ICA Payment in accordance with the terms and time period set forth in Recital C. Upon the funding of the First Advance, the ICA Payment shall remain part of the Interest Credit Account and subject to the provisions of this Agreement, and not refundable to Borrower unless otherwise specifically provided for in this Agreement. <u>All credits to the Interest Credit Account shall be used, absent the occurrence of an Event of Default, for purposes of payment on interest payable on the Advances as and when such interest payments are due and payable.</u> Upon exit and payoff of the LOC, absent the occurrence of an Event of Default, if there is a remaining balance in the ICA, the excess amount shall be applied to the unpaid principal balance outstanding under the Promissory Note or, if it exceeds such unpaid principal, refunded to Borrower.

(*Id.*, Recital C and § 3.6; emphasis added.)

Compass has argued in this case that Prime Capital was required to segregate its ICA deposit under the above language and the Receiver has adopted this argument as well in the Third-Party Complaint. (*See* Dkt. No. 71, ¶¶ 23-24, 72.) Prime Capital disagrees with such an interpretation, and believes that it is only required to provide a credit on its books and record for the ICA deposit (as expressly stated in Recital C and Section 3.6). (*See* Dkt. No. 43-13, ¶ 8.)

In addition, Compass contends that it was entitled to send a termination letter and demand the return of its ICA deposit, but Section 3.6 notes that the deposits are only refundable under the terms of the DLOC. The relevant language in Section 13.7 of the DLOC states as follows:

> (a)   <u>So long as all conditions precedent to an Advance have been met pursuant to the terms of this Agreement</u>, if Lender fails to fund the First Advance in accordance with the terms and conditions of this Agreement and the Promissory Note, Borrower shall have the option to terminate this Agreement and request a full refund of the ICA Payment. Upon the occurrence of such default, Borrower shall deliver written notice in the form of a notarized termination letter, a copy of which is attached hereto as Exhibit F (the "Termination Letter"), to Lender by certified mail.

(Dkt. No. 1-29, § 13.7; emphasis added.)

The Receiver has also adopted the argument of Compass and other borrowers because the Third-Party Complaint repeatedly refers to borrowers' demands for the return of the ICA deposits. (*See, e.g.*, Dkt. No. 71, ¶¶ 29, 36, 47, 56.) As Prime Capital has pointed out elsewhere, Compass did not satisfy the closing conditions and, therefore, it could not invoke Section 13.7. The same is true for other borrowers that did not satisfy the closing conditions. (*See* Dkt. No. 13-6 at 5, 7, 14.) That issue, however, will be resolved in arbitration.

Thus, the Third-Party Complaint necessarily implicates issues that are subject to a valid and binding arbitration agreement, and must be determined in another forum. Allowing the Receiver to obtain a determination of disputed issues in this case would vitiate Prime Capital's bargained-for arbitral rights, in violation of the strong federal policy favoring arbitrations.

**C.    The Court Was Divested of Jurisdiction When Prime Capital Appealed from the Order Appointing the Receiver**

The Court does not have jurisdiction over the Receiver's claims in the Third-Party Complaint because Prime Capital has appealed from the January 24 Order appointing the Receiver. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), the U.S. Supreme Court noted that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* at 58. The power of the Receiver to take any action in this case, particularly litigation purportedly on behalf of Prime Capital, is a central issue on appeal. In an analogous case, *F.T.C. v. 1st Guar. Mortg. Corp.*, 2012 WL 1676746 (S.D. Fla. May 14, 2012), the court refused to hear a motion regarding the preservation of assets because an appeal from the receiver's appointment was pending. *Id.* at *1. The Court should take the same approach with the Receiver's claims here.

Rule 62(c) is not to the contrary. It states that an order appointing a receiver (among other things) is not stayed upon the filing of an interlocutory appeal "[u]nless the court orders otherwise." Fed. R. Civ. P. 62(c). Rule 62(c) is referring to the fact that the 30-day automatic stay in Rule 62(a) does not apply to appeals from receivership orders. *See* Fed. R. Civ. P. 62(a) ("Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."). Rule 62(c) does not speak to the Court's jurisdiction, which is governed by *Griggs* and related cases. Indeed, Rule 82 of the Federal Rules of Civil Procedure states that "[t]hese rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." Fed. R. Civ. P. 82. Instead, Rule 62(c) is a limited exception to the *Griggs* rule, and it allows for injunctive relief during the pendency of an appeal solely to maintain the status quo. *See Cayuga Indian Nation of New York v. Village of*

6

*Union Springs*, 317 F. Supp. 2d 152, 154 (N.D.N.Y. 2004). Here, the Third-Party Complaint goes well beyond the status quo and seeks other relief against the Third-Party Defendants, which, as discussed above, requires an adjudication of issues that are reserved for arbitration pursuant to the valid and binding arbitration clause.

### D. The Receiver Lacks Standing to Bring Claims on Behalf of Prime Capital

Even if the Court determines that the claims by the Receiver do not interfere with Prime Capital's arbitral rights and that the Court is not divested of jurisdiction, the Receiver lacks the authority to bring the claims in the Third-Party Complaint. As discussed above, the January 24 Order delineates the Receiver's "powers and duties," and they do not include the assertion of claims on Prime Capital's behalf. (*See* Jan. 24 Order, 19-20.) The January 12 Order referred to broader powers for the Receiver when he was the interim receiver, but the Court removed that provision when it entered the January 24 Order. *See supra*, 2.

The Court noted in the January 24 Order that "[a] receiver's 'authority is wholly determined by the order of the appointing court.'" (Dkt. No. 56 at 18 (quoting *Citibank, N.A. v. Hyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988) (internal citation omitted).) Thus, the Receiver cannot rely on general powers or case law; his authority is limited by the January 24 Order, which does not permit the Receiver to bring claims on behalf of Prime Capital.

## II. The Receiver Has Not Shown That He Is Entitled to an Attachment Order Over the Shark Ventures Assets

The Third-Party Defendants incorporate, by reference, the arguments made in their February 7, 2024 opposition regarding (a) the attachment requirements; and (b) the Receiver's entitlement to an attachment order generally. (*See* Dkt. No. 103 at 3-4 and 5-10.) Below is the Third-Party Defendants' response with respect to the Shark Ventures Assets.

7

As the basis for attachment of the Shark Ventures Assets, the Receiver relies on Paragraph 21 of his Third Report. (Br. at 11.) In Paragraph 21, the Receiver stated that he had learned that Shark Ventures owns five automobiles included in the original motion for attachment. (*See* Dkt. No. 107, ¶ 21.) The Receiver added that "[a]s a result, the Receiver will be seeking to amend the Third-Party Complaint to add [Shark Ventures] as a Third-Party defendant." (*Id.*) The Receiver, however, has not amended the Third-Party Complaint to add Shark Ventures as a defendant. As the Receiver implicitly recognized with his statement regarding an amendment to the Third-Party Complaint, the Court cannot order attachment of a defendant's assets if the plaintiff has not asserted a claim against the defendant. *See* N.Y.C.P.L.R. § 6201 (party moving for an attachment must have demanded a money judgment against the defendant).

The Receiver also includes a Ferrari V-12 Engine Table in the proposed order extending attachment to the Shark Venture Assets (*see* Dkt. No. 118, ¶ 1), but he does not provide any evidence that the table is an asset of Shark Ventures LLC.

## **CONCLUSION**

For the foregoing reasons, the Third-Party Defendants respectfully request that the Court deny the Receiver's request to extend the attachment order to the Shark Ventures Assets.

8

Dated: February 13, 2024

Respectfully submitted,

HOGAN LOVELLS US LLP

By: /s/ *Pieter Van Tol*

Pieter Van Tol (Bar Roll No. #508405)
Chris Bryant (admitted *pro hac vice*)
Peter Bautz (admitted *pro hac vice*)
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Fax: (212) 918-3100
pieter.vantol@hoganlovells.com
chris.bryant@hoganlovells.com
peter.bautz@hoganlovell.com

*Attorneys for Defendant Prime Capital Ventures, LLC, and Third-Party Defendants (as defined above)*