UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
COMPASS-CHARLOTTE 1031, LLC,                          :
                                                      :
                                  Plaintiff,          :   Civ. No. 24-CV-0055 (MAD/CFH)
                                                      :
         -against-                                    :
                                                      :
PRIME CAPITAL VENTURES, LLC,                          :
BERONE CAPITAL FUND, LP,                              :
BERONE CAPITAL PARTNERS LLC,                          :
BERONE CAPITAL LLC,                                   :
BERONE CAPITAL EQUITY FUND I, LP, and                 :
405 MOTORSPORTS LLC f/k/a Berone Capital              :
Equity Partners LLC,                                  :
                                                      :
                                  Defendants.         :
------------------------------------------------------------------------X

## NON-PARTY HOGAN LOVELLS US LLP'S SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Tyler Maulsby
Cesarina da Parma (*pro hac vice pending*)
28 Liberty Street, 35th Floor
New York, New York 10005
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
tmaulsby@fkks.com
cdaparma@fkks.com

*Attorneys for Non-Party Hogan Lovells US LLP*

Pursuant to the Court's February 12, 2024 Order (Dkt. 120), non-Party Hogan Lovells US LLP ("Hogan Lovells"), by its attorneys Frankfurt Kurnit Klein & Selz PC, submits this Sur-Reply in further opposition to Plaintiff Compass-Charlotte 1031, LLC's ("Plaintiff" or "Compass") Motion to Disqualify (the "Motion").

## PRELIMINARY STATEMENT

Having recognized that Hogan Lovells' clients have clearly and unequivocally waived any conflict of interest in this matter, Compass resorts to introducing new facts in its Reply brief and accompanying declaration (Dkt. 105) (the "Reply") in an effort to cloud the issues before the Court. As detailed below, none of these additional facts support disqualification.

In its Reply Compass argues that the conflict at issue is not waivable under the New York Rules of Professional Conduct (the "RPCs") because at the time that Prime Capital and Camshaft agreed to waive the conflict of interest, the United States Attorney's Office was conducting an investigation into Prime Capital and therefore Hogan Lovells is representing both a victim and a perpetrator of the same alleged fraud. This claim is only is it inaccurate, but it also does not create an unwaivable conflict of interest that forms the basis for Compass' Motion. As detailed in the Expert Declaration of Prof. Bruce Green filed in opposition to the Motion (Dkt. 92-7), the criteria that make a conflict is unwaivable are not present here. There is little question that Hogan Lovells can competently and diligently represent Prime Capital in this action, which is the sole question at issue in the Motion. Both of Hogan Lovells' clients were fully informed of the material facts, they agreed to waive the conflict on multiple occasions, and their consent was memorialized in writing as required by the RPCs. Moreover, Hogan Lovells has agreed to withdraw from the Florida Action (which was nearly complete at the time that this action was filed), which by itself should provide sufficient basis to deny the Motion.

Compass also suggests that a completely unrelated lawsuit *against Camshaft* should serve as a basis to disqualify Hogan Lovells.  This argument is nonsensical.  That lawsuit has nothing to do with the allegations here, and Camshaft was surely aware of that lawsuit when it considered whether to consent to Hogan Lovells' representation of Prime Capital.

The Court-appointed Receiver has also filed a "joinder" in support of the Motion, arguing that Hogan Lovells' representation of certain third-party defendants in an action that the Receiver commenced warrants disqualification.  As detailed below, this argument cannot withstand scrutiny.  The interests of Prime Capital and the third party defendants are not at odds.  Prime Capital continues to challenge the appointment of the Receiver, which is similarly in the interests of the third-party defendants.

Although it is apparent that Compass and the Receiver do not want Hogan Lovells to continue in this case, their position is not supported by the RPCs.  The ethics rules are clear that absent exceptional circumstances, when clients provide informed consent to a lawyer's representation of another client with differing interests, the clients should be entitled to their choice of counsel.  That is exactly what happened here.  Compass has provided no basis to disqualify Hogan Lovells over the express wishes of Prime Capital and Camshaft, the parties with the most at stake in this Motion.  Under these circumstances the Motion should be denied.

## ARGUMENT

### I.    COMPASS' ATTEMPT TO ADD ADDITIONAL FACTS IN SUPPORT OF ITS MOTION DO NOT CHANGE THE CONFLICT ANALYSIS

In its Reply, Compass claims that two additional facts support disqualification – namely the existence of a U.S. Attorney's Office investigation and an unrelated lawsuit involving Camshaft and a third party, neither of whom are parties in the instant action.  As detailed below, neither issue is relevant to the disqualification analysis before the Court.

    1.  **The Purported U.S. Attorney's Office Investigation Does Not Make the Conflict Unwaivable**

Compass argues in its Reply that Hogan Lovells' conflict could not be waived by either Camshaft or Prime Capital because "Hogan Lovells knew that the U.S. Attorney was investigating Prime and considered Camshaft and Compass-Charlotte to both be victims of Prime's scheme." *See* Reply Br. at 6. This argument fails for at least three reasons.

*First*, Compass' statement that Hogan Lovells knew that Camshaft was the "victim of a fraud" perpetrated by Prime Capital is inaccurate. Compass cites the email from its counsel to David Massey dated December 20, 2023 to argue that Compass put Hogan Lovells on notice of an investigation into Prime Capital. Not so. All that email stated was that "[t]he U.S. Attorney's office is interested in talking to victims as well if you or your client [i.e. Camshaft] want[s] to talk with them." *See* Esser Decl. Ex. 5. Aside from that email, Compass' counsel did not provide any further context including the scope of the investigation, the basis for his understanding that such an investigation was underway, or whether Prime Capital was even a target. At the same time, Compass' principal had been making veiled threats to Prime Capital of criminal prosecution. *See* Dkt. 13-5 at 2. Accordingly, Hogan Lovells reasonably believed that the basis of the December 20 email was the same unsupported rumors being spread by Compass' principal, not that the U.S. Attorney's Office had formally opened an investigation in December 2023.

*Second*, even if it was clear that Prime Capital was the target of an investigation by the U.S. Attorney's Office, ***both Camshaft and Prime Capital again agreed to waive the conflict.*** *See* Dkt. 92-8, 92-9; *see also* Green Decl. ¶¶ 12, 24. In its Reply, Compass asks the question "What client would ever give informed consent on that basis (and what reasonable lawyer looking out for its client's best interests would ever ask)?" Reply Br. at 6. The answer is simple:

Both Camshaft and Prime Capital have consistent interests in this lawsuit.  As detailed in Hogan

Lovells' opposition papers, it is in both Prime Capital's and Camshaft's interest for Prime

Capital to successfully defend against this lawsuit.  Camshaft is of the opinion that it will have a

better opportunity to be repaid if Prime Capital is permitted to continue operations.  Prime

Capital similarly has an interest in defending against Compass' allegations of fraud and requests

to have its assets restrained.  This does not mean, as Compass suggests in its Reply, that

Camshaft and Prime have somehow colluded or that Camshaft has a "role in Prime's

operations."  *See* Reply Br. at 8.  It simply means that Camshaft made a reasoned business

decision that appears to be different than the decision that Compass made when it initiated this

lawsuit.[1]  As detailed in the Expert Declaration of Prof. Green, Compass is not entitled to inquire

further into conversations that are clearly protected by the attorney-client privilege and the Reply

provides no authority to the contrary.  *See* Dkt. 92-7.

 *Third*, as detailed in Hogan Lovells' opposition papers, there is virtually no work left to

be done in Hogan Lovells' representation of Camshaft in the Florida Action.  Prime Capital has

defaulted and all that is left is to formalize a judgment in favor of Camshaft.  However, in the

abundance of caution, Hogan Lovells has filed a Stipulation For Substitution Of Counsel With

Consent in the Florida Action so that, once approved by the Court, other counsel can complete

the final step of obtaining a judgment.  Prior to filing the Stipulation For Substitution Of Counsel

With Consent in the Florida Action, Hogan Lovells obtained Camshaft's informed consent and

---

[1] The cases cited by Compass in its Reply do not lead to a different result and, if anything, reaffirm the adequacy of the consent that Hogan Lovells obtained here.  In *Akagi v. Turin Housing Dev. Fund Co., Inc.,* 2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017), the consent at issue (which was included in a Joint Defense Agreement) was given to prior counsel, not the firm in question.  Similarly, *Anderson v. Nassau Cnty. Dep't. of Corr.,* 376 F. Supp. 2d 294 (E.D.N.Y. 2005), involved facts far afield from what transpired here.

Camshaft promptly secured new counsel to finish the matter (which will be no more than a few hours of work).  Hogan Lovells' pending withdrawal from the Florida Action should dispose of the issues in the Motion.  Compass' primary argument in support of disqualification is that Hogan Lovells was simultaneously advocating against Prime Capital in the Florida Action and defending Prime Capital against purportedly similar allegations in this action.  *See* Reply Br. at 4-5.  However, because Hogan Lovells will no longer be counsel in the Florida Action, there is no longer any concern that Hogan Lovells will be forced to take inconsistent positions.

Hogan Lovells' withdrawal from the Florida Action also demonstrates a more fundamental point:  the primary parties that the conflict rules are intended to protect – Camshaft and Prime Capital – have wholeheartedly endorsed Hogan Lovells' continued participation in this action.  As detailed in the Green Declaration: "[t]he concern underlying Rule 1.7, as it applies to this action, is not that Hogan Lovells might pull its punches.  The concern is that Prime Capital might 'feel betrayed' to the detriment of the client-lawyer relationship, thereby impeding Hogan Lovells' 'ability to represent [Prime Capital] effectively.'"  *See* Dkt. 92-7 ¶ 22 (quoting RPC 1.7, Cmt. [6]). Not only have Camshaft and Prime Capital agreed to Hogan Lovells' representation of Prime Capital in this action on multiple occasions, both orally and in writing, but now Camshaft has agreed to permit Hogan Lovells to withdraw from the Florida Action in order to address any potential optics issues associated with Hogan Lovells remaining on the docket in a near-finished case in Florida while simultaneously representing an adverse party in a separate litigation in New York.  Under these circumstances, there is no basis in the ethics rules to disqualify Hogan Lovells from this action.

> ### 2.   The "GLAS Trust" Lawsuit Against Camshaft Is Irrelevant To the Conflict Analysis

The Reply also bizarrely references an entirely unrelated case against Camshaft titled

*GLAS Trust Co. LLC v. Camshaft Capital Fund LP,* Case No. 2023-022640-CA-01 (Miami Dade

Cnty.) (the "GLAS Lawsuit").  *See* Reply Br. at 8, Esser Decl. ¶¶ 7-9.  Compass acknowledges

that the GLAS Lawsuit is under seal and the complaint is not available (Esser Decl. ¶8), but at

the same time claims that Camshaft "ha[s] already been publicly sued for hiding over $500

million."  Reply Br. at 8.  Compass suggests in the Reply that because of the GLAS Lawsuit,

Hogan Lovells should have known that Compass would allege some commonality between the

actions of Prime Capital and the actions of Camshaft.  Reply Br. at 8-9.  This argument is

preposterous.  The GLAS Lawsuit is entirely unrelated to both this action and the Florida Action.

The existence of a separate lawsuit against Camshaft (whatever the actual claims may be) is

immaterial to the conflict waivers provided by Camshaft and Prime Capital for this action.

## II.   THE THIRD-PARTY PLAINTIFF'S CONSENT IS NOT REQUIRED FOR HOGAN LOVELLS TO REPRESENT THE THIRD-PARTY DEFENDANTS

Separately, the Court-Appointed Receiver filed a declaration in "Joinder" to the Motion.

*See* Declaration of Paul A. Levine dated February 8, 2024 (Dkt. 111, the "Levine Declaration").

The Levine Declaration claims that a conflict of interest exists based on Hogan Lovells'

representation of certain third-party defendants in a Third Party action that the receiver has

commenced.  *See* Levine Decl. ¶ 2.  The Receiver claims that Hogan Lovells' representation of

these third-party defendants conflicts with Hogan Lovells' representation of Prime Capital

because the third-party defendants are "opposing the Receiver's efforts to protect Hogan

[Lovells]'s other client [Prime Capital]."  *Id.* ¶ 4 (emphasis removed).  The Receiver further

argues that Hogan Lovells was required to obtain his consent on behalf of Prime Capital to waive

any such conflict.  *Id.* ¶¶ 6-7.  This position is without merit.

The interests of the third-party defendants are not in conflict with Prime Capital's interests.  Both Prime Capital and the Third Party defendants are asserting the same position – Prime Capital has denied all material allegations in this lawsuit and is arguing that a Receiver should not have been appointed.  Similarly, the Third Party Defendants have argued that the Third Party Action was improperly commenced by the receiver and share the same interest in opposing the relief the Receiver is seeking.

Finally, there is no merit to the Receiver's argument that he should be permitted to determine counsel for Prime Capital.  That argument was rejected by the Court at the January 22, 2024 hearing (*see* Dkt. 67-10 at 30).  In addition, taking this argument to its logical conclusion, permitting the receiver to choose counsel for Prime Capital would effectively give the Receiver total control over Prime Capital, which is well beyond the scope of the appointment order.  As evidenced by the Third-Party Complaint as well as the myriad other filings, the Receiver is represented by his own counsel in his capacity as Receiver for Prime.  Prime Capital is similarly permitted to be represented by counsel of its choice in this action.

## **CONCLUSION**

For the foregoing reasons, Hogan Lovells respectfully requests that the Court deny the Motion in its entirety and grant such further relief as it deems just and proper.

Dated: New York, New York
        February 14, 2024

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _____*/s/ Tyler Maulsby*_____
        Tyler Maulsby
        Cesarina da Parma
28 Liberty Street, 35th Floor
New York, New York 10005
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
tmaulsby@fkks.com

cdaparma@fkks.com
*Attorneys for Non-Party Hogan Lovells US LLP*