UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMPASS-CHARLOTTE, LLC,<br><br>Plaintiff,<br><br>- vs -<br><br>PRIME CAPITAL VENTURES, LLC, *et al.*,<br><br>Defendant. | Civil Action No.: 1:24-cv-00055-MAD-CFS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**

Prospect Intervenor CoNextions Medical Inc. ("CoNextions") is another victim of the fraud that Prime Capital Venture ("Prime"), and its principal, Kris Roglieri ("Roglieri"), perpetrated against Plaintiff Compass-Charlotte, LLC ("Plaintiff") (and apparently many others). (*See, e.g.* Complaint, ¶ 1). Because of the identity of issues and parties, and more significantly, the limited funds available for victims of the Prime fraud, CoNextions has moved to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(a), and alternatively 24(b), and presents this Memorandum of Law in support of its motion.

**Facts**

**A. Prime's Fraud Against CoNextions**

CoNextions is a leader in innovative tendon repair technology. CoNextions' business has grown rapidly, creating the need for funding to keep track with its expansion. As a result, CoNextions approached Prime for a business line of credit. (Proposed Verified Intervenor Compl., ¶ 4). Prime promised favorable terms and quick delivery of that credit, so long as CoNextions made an "Interest Credit Account" ("ICA") deposit, supposedly for the purpose of prepaying interest that would be due on the promised line of credit. (*Id.*, ¶ 5).

Like Plaintiff, CoNextions made the ICA deposit to Prime based upon Prime's promise to extend credit to CoNextions. (*Compare id.*, ¶ 11 *with* Complaint, ¶ 130). Also like Plaintiff, Prime accepted and retained CoNextions' ICA deposit, but absconded with those funds and never provided the promised loan. (*Compare* Proposed Verified Intervenor Complaint, ¶¶ 12-13 *with* Complaint, ¶ 135-36).

The specifics of Prime's fraud against CoNextions are detailed in CoNextions' Proposed Verified Intervenor Complaint, attached to its Motion as Exhibit A. In sum, CoNextions and Prime entered into a Letter of Intent dated November 30, 3022 (the "LOI"). (Proposed Verified Intervenor Complaint, ¶ 6 & Ex. A). That LOI represented that CoNextions was pre-approved for a line of credit in the amount of $28,000,000. (*Id.*, ¶ 7). As part of that transaction, CoNextions was obligation to make an ICA payment in the amount of $5,800,000.00, expressly denominated as "pre-paid interest." (*Id.*, ¶ 8).

The parties also entered into a Deposit Agreement dated October 27, 2023. (*Id.*, ¶ 9 & Ex. B). The salient terms of the Deposit Agreement were:

- ■ "The Lender [*i.e.* Prime] has approved the Borrower [*i.e.* CoNextions] for a Business Expansion Line of Credit … in the amount of $28,000,000.00"; and,

- ■ "The Business Expansion Line of Credit … requires the Borrower to deposit with Lender an amount equal to $5,800,000.00 in [ICA] maintained by Lender for the benefit of Borrower and for the purpose of the Borrower's payment of interest due and payable over the term of the [Line of Credit]."

(Id.)

After execution of the LOI and the Deposit Agreement, Prime and its principals pressured CoNextions and its investors into making the ICA payment. Specifically, Prime set an artificial deadline for payment of the ICA payment under the guise that Prime could not extend the favorable terms contained in the LOI after that date. Prime also represented that it would needs a

five percent (5%) increase in the ICA payment because the deadline lapsed, for a total of approximately $7,200.000.00. (*Id*., ¶ 10).

Based upon these representations by Prime, CoNextions and its investors provided $6,150,000.00 of the ICA deposit through a series of wire transfers to Prime's account (and ceased funding the balance upon learning of Prime's fraud). (*Id*., ¶ 11 & Ex. C).

Thereafter, Prime disappeared. Specifically, Prime failed to return any communications from CoNextions. (*Id*., ¶ 12). And, more significantly, Prime never provided the promised loan to CoNextions, while retaining the ICA deposit. (*Id*., ¶ 13).

### B. Receivership of Prime

This Court has appointed Paul A. Levine, successively, as Temporary Receiver, [Doc. No. 8], and ultimately as Permanent Receiver of the Defendants (the "Receiver") in this matter. [Doc. No. 56]. That Memorandum – Decision and Order dated January 24, 2024, is appropriately broad given the underlying fraud, and authorizes the Receiver to identify and take control of all of Defendants' assets, wherever those assets may be located:

- ■ "The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants."

- ■ "The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located."

- ■ "The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets."

(1/24/24 Memorandum – Decision and Order, pp. 19-20).

Since then, the Receiver has identified assets in the hands of third parties that are traceable to Defendants. As a result, the Receiver sought and the Court granted injunctive relief, effectively freezing all of the identified assets in the hands of third parties. [Doc. No. 78].

Given the breadth of the Prime fraud, (*see* Complaint, ¶¶ 138-140 (valuing missing funds at "$50+ million")), and the relatively limited amounts of Prime assets that the Receiver has identified to date, this receivership will likely not make Prime's victims whole. A discounted, *pro rata* distribution to victims, consequently, appears more probable. As significantly, the Receiver has not traced any of Prime's or third party's property to a specific victim. Such linkage is probably not possible given what appears to be a wholesale intermingling of victim's funds.

## Argument

### The Court Should Permit CoNextions To Intervene.

CoNextions satisfies the elements for either intervention as of right or permissive intervention. As detailed above, CoNextions is as much of victim of Prime as Plaintiff. And, Plaintiff sought this receivership, in part, to benefit all victims – "Figuring out what happened to the missing $50+ million will benefit all victims of Prime …." (*Id.*, ¶ 140).

Rule 24 governs motions to intervene. Rule 24(a) addresses intervention as of right, and Rule 24(b) addresses permissive intervention.

### A. Intervention As Of Right

Rule 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who: … (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

The Second Circuit summarized these provisions in *In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003):

> In order to intervene as a matter of right under Fed. R. Civ. P.24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.

320 F.3d at 300.

### 1. CoNextions' Motion Is Timely.

The Court first considers the timeliness of the motions to intervene. The timeliness requirement under Rule 24(a) "is flexible and the decision is one entrusted to the district judge's sound discretion." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986). In exercising that discretion and assessing the timeliness of a motion to intervene, courts consider factors that include (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Assoc.*, 356 F. Supp. 3d 287, 293 (S.D.N.Y. 2018) (quoting *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014)). The most significant criterion is whether the delay in moving for intervention has prejudiced any of the existing parties. *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (*quoting United States v. IBM*, 62 F.R.D. 530, 541-42 (S.D.N.Y. 1974)).

Here, CoNextions' motion is timely. CoNextions brought this motion within approximately one month of the filing of this suit. This receivership is in its nascent stages, and CoNextions' intervention will not prejudice the rights of any of the existing parties. Additionally, denying the Motions would result in significant prejudice to CoNextions because, as discussed below, CoNextions has a financial stake in this receivership, as it involves the identification (and ultimately, distribution) of the fruits of the Prime fraud, inclusive of funds of which CoNextions was defrauded.

### 2. CoNextions Has An Interest In The Action.

CoNextions has an interest in this action. Specifically, it has lost $6,150,000.00 in the form of its ICA deposit that Prime accepted and unlawfully retained. Those funds ostensibly are part of Prime's assets that the Receiver is marshalling. Rule 24(a)(2)'s purpose is to protect such an interest – "'Interests in property are the most elementary type of right that Rule 24(a) is designed to protect,' and many of the cases in which a sufficient interest has been found under amended Rule 24(a)(2) have been cases in which there is a readily identifiable interest in land, *funds* or some other form of property." 7C Charles A. Wright *et al.*, *Federal Practice and Procedure* § 1908 at 272-75 (1986) (quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)).

### 3. CoNextions' Interest May Be Impaired And Not Adequately Protected.

This receivership is a paradigmatic example of a "limited fund" case, as the receivership is unlikely to identify sufficient assets to make all victims whole. Under such circumstances, the consensus of courts reaching the question is that every claimant to a limited fund may intervene as of right, because that claimant's interest in the limited funds may be impaired and the claimant may not be adequately protected in the absence of intervention. *See, e.g., Cascade Natural Gas*

*Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 146, 87 S. Ct. 932, 17 L. Ed. 2d 814 (1967) ("[W]hen a number of persons possess claims to a fund which are or may be mutually exclusive, intervention is allowed a claimant."); *In re September 11 Litig.*, 649 F. Supp. 2d 171, 176 (S.D.N.Y. 2009) ("Because the two sets of plaintiffs are competing claimants to a limited fund, each has sufficient interest and standing to move against the other, and may suffer prejudice if intervention is denied.").

### B. Permissive Intervention

Rule 26(b) confers the alternative remedy of "permissive intervention." That Rule reads, in pertinent part, that "the court may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

In terms of deciding the propriety of permissive intervention, "[t]he court considers substantially the same factors whether the claim for intervention is 'of right' under Rule 24(a)(2), or 'permissive' under Rule 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (citation omitted). "The principal consideration set forth in the Rule [for permissive intervention] is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Brennan v. United States Postal Service*, 579 F.2d 188, 191 (2d Cir. 1978).

As detailed above, CoNextions shares common questions of law and fact here, as it is a claimant for the funds that the Receiver is marshalling. Moreover, its presence in this case does not delay this matter, and does not prejudice any other party, each of whom (if others intervene or make claims) will have an equal opportunity to assert claims to the receivership funds. As a result, this Court should permit, alternatively, CoNextions to intervene permissively in this matter.

**Conclusion**

This Court should allow CoNextions to intervene in this matter.

Dated:  February 15, 2024                                  **NIXON PEABODY LLP**

By: /s/ Richard McGuirk
Richard A. McGuirk, Esq.
1300 Clinton Square
Rochester, New York 14604
Tel.: (585) 263-1644
rmcguirk@nixonpeabody.com

*Attorneys for Prospective Intervenor*