UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

COMPASS-CHARLOTTE 1031, LLC,

                                        Plaintiff,

      -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                                        Defendants.
-------------------------------------------------------------------------X

Case No. 24-cv-00055
(MAD/CFH)

**DECLARATION IN SUPPORT OF MOTION TO VACATE THE RECEIVERSHIP ORDER SOLEY WITH RESPECT TO THE BERONE DEFENDANTS**

PAUL A. LEVINE, as RECEIVER OF PRIME CAPITAL
VENTURES, LLC,

                               Third-Party Plaintiff,

      -against-

KRIS D. ROGLIERI, TINA M. ROGLIERI,
KIMBERLY HUMPHREY a/k/a KIMMY
HUMPHREY, PRIME COMMERCIAL
LENDING, LLC, COMMERCIAL CAPITAL
TRAINING GROUP-, THE FINANCE
MARKETING GROUP, NATIONAL
ALLIANCE OF COMMERCIAL LOAN
BROKERS LLC and FUPME, LLC,

                             Third-Party Defendants.

-------------------------------------------------------------------------X

      JEREMIAH BEGUESSE, under penalty of perjury, declares as follows:

      1.     I am the Chief Investment Officer of Defendant Berone Capital LLC ("Berone Capital"). Berone Capital is a Securities Exchange Commission Registered Investment Advisor with its principal place of business located in Marietta, Georgia. Berone Capital Partners is the

general partner of Berone Capital and the two partners of Berone Capital Partners are myself and Fabian Stone. Fabian Stone is the Chief Operating Officer of Defendant Berone Capital. Other than Fabian Stone and myself, there are no other principals or employees of Defendant Berone Capital.

2. I have personal knowledge of the facts hereinafter stated. This Declaration is submitted on behalf of Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC (the "Berone Defendants") in support of the Berone Defendants' motion, brought by order to show cause, to vacate the Receivership Order (Dkt. No. 56) as to the Berone Defendants.

**BERONE DEFENDANTS DID NOT OBTAIN ANY MONEY FROM PLAINTIFF IN THIS ACTION, AND THERE IS NO BASIS FOR CONTINUING A RECEIVERSHIP AGAINST THE BERONE DEFENDANTS**

3. The Receivership Order was granted as to the Berone Defendants due to Plaintiff's assertion that Berone Defendants were holding ICA deposits for defendant Prime Capital Ventures LLC ("Prime"), which allegedly included Plaintiff's funds, and those funds were unable to be located. (Dkt. No. 6, p. 3; Dkt. No. 56, p. 14) Plaintiff also sought the appointment of a receiver as to the Berone Defendants in part because Plaintiff allegedly was unable to contact Berone to confirm or deny the allegations Prime made with respect to the location of these ICA deposits allegedly containing Plaintiff's money. (Dkt. No. 6, p. 3-4)

4. The Berone Defendants have since retained counsel, appeared in this action and communicated with the Receiver in an attempt to cooperate and demonstrate that they are not in possession of Plaintiff's funds, contrary to Prime's false allegations to the contrary. (Dkt. No. 107, ¶35)

5.      As mentioned above, Berone Capital is a registered investment advisor, and Prime was one of its clients.  Berone Capital is **not** party to any joint venture agreement with Prime. The purported joint venture agreement between Prime and Berone Capital referenced at ¶93 of the Complaint, and annexed as Exhibit 25 to Plaintiff's Verified Complaint in Support of Order to Show Cause is, simply, a fake.  That is not the signature of Fabian Stone on behalf of Berone Capital, and that is not how Fabian electronically signs documents. See Stone Declaration, Ex. B. Prime first became a client of Berone Capital on October 14, 2022.  Not only had Prime not been a client of Berone Capital on the August 16, 2022 date of the fake joint venture agreement, Berone Capital had not been introduced to Kris Roglieri or Prime until after the August 16, 2022 date.

6.      Similarly, the purported $52 million account statement referred to in ¶152 of the Complaint, and annexed thereto as Ex. 39, is a fabrication, and as demonstrated below, despite several requests and the Receiver's thorough investigation to date, no evidence has been provided demonstrating that Prime ever transferred these funds to the Berone Defendants.

## BERONE DID NOT RECEIVE ANY OF THE FUNDS IN QUESTION FROM PRIME

7.      Plaintiff sought the appointment of a Receiver and expedited discovery to locate and preserve Plaintiff's missing $15 million, which it paid to defendant Prime in April 2023. (Dkt. No. 1, ¶130)

8.      The Berone Defendants never received Plaintiff's $15 million – and this was recently confirmed by Plaintiff in papers it filed in Prime's involuntary bankruptcy proceedings on February 28, 2024.  Plaintiff states that "Prime's bank records show that Prime never sent any funds to Berone in calendar year 2023…" (United States Bankruptcy Court, Northern District of New York, Case No. 23-11302-rel; Dkt. No. 140, a copy of which is annexed hereto as Exhibit

3

8249530.1

F) By Plaintiff's own admission, the Berone Defendants could not have received any of Plaintiff's money from Prime since it never received any funds from Prime in 2023.

9. Plaintiff has made similar admissions in the instant case acknowledging that Berone never received its money from Prime. Notably, in a letter dated January 17, 2024 from counsel for Plaintiff Compass-Charlotte 1031, LLC, which obtained the appointment of the Receiver in this Action, Plaintiff's counsel informed the Court of the following:

> Importantly, in response to a subpoena sent to the Royal Bank of Canada ("RBC") seeking information about Defendant Berone Capital LLP, RBC has provided account statements that confirm, contrary to Prime's representations: (1) **_Prime never wired $50 million to Berone_**; and (2) **_there is no (and never has been any) account at RBC associated with Berone Capital with $50 million in it for the benefit of Prime_**. Whoever created the RBC account statement relied on by Prime, and whatever such statement is supposed to represent, the account was not held for benefit of Prime and never had $50 million in it. (Dkt. No. 1-39).

(Dkt. No. 30, at 3, first paragraph.) (Emphasis supplied.)

10. In the next paragraph of the letter from Plaintiff's counsel, Plaintiff's counsel informs the Court that: "**_Compass and the interim Receiver now can rule out RBC accounts in the name of Berone Capital as a possible source for the missing $50+ million in ICA deposits_**." Dkt. No. 30, second paragraph. (Emphasis supplied.)

11. Indeed, Plaintiff conceded in this letter that "it is possible that such funds [the missing $52 million] never went to Berone Capital…" (Dkt. No. 30, p. 3)

12. The Receiver has submitted 3 reports to this Court to date since his temporary appointment on January 12, 2024 (subsequently made permanent on January 22, 2024). (Dkt. Nos. 37, 61, 107)[1] These reports confirm that there is no evidence that the Berone Defendants ever received the alleged $50 million in ICA deposits from Prime that contain Plaintiff's $15 million. (Dkt. No. 37, ¶43; Dkt. No. 61, ¶6; Dkt. No. 107, p. 9, n. 4)

---

[1] The second report was amended at Dkt. No. 65, but only three reports were submitted in total.

4

13. On January 23, 2024, the Receiver explicitly asked Prime to provide proof that it wired the $50 million in ICA deposits to the Berone Defendants by January 24, 2024. (Dkt. No. 61, ¶4) Based upon the Receiver's reports, that proof has not been provided to date. (Dkt. No. 61, ¶4; Dkt. No. 107, p. 9, n. 4)

14. On February 9, 2024, as part of the Receiver's motion for an anti-litigation injunction, counsel for the Receiver again confirmed that Prime has provided zero evidence to support its contention that the Berone Defendants defrauded Prime and that they are in possession of Plaintiffs' $15 million (let alone the $52 million in ICA deposits). Dkt. No. 118-1, p. 2)

15. On February 14, 2024, counsel for the Receiver yet again demonstrated that Prime has provided absolutely no support for its claims against the Berone Defendants, only unsworn allegations made by its attorneys. (Dkt. No. 132, pp. 2-3) The Berone Defendants, on the other hand have been in contact with the Receiver and have submitted sworn statements to this Court disputing the baseless claims made by Prime that it is holding Plaintiff's money on behalf of Prime. (Dkt. Nos. 128, 128-3)

16. More specifically, in the First Report of the Receiver filed January 24, 2024 (Dkt. No. 37), in which the Receiver details, among other things, his conversations with me, the Receiver indicates that he was advised that Mr. Beguesse had been out of the country when the Interim Trustee was appointed in the involuntary bankruptcy proceeding, and that Mr. Beguesse told him that Prime was merely a client and that Berone Capital did not start doing business with Prime until after the date of the [fake] joint venture agreement, that Fabian Stone had also confirmed that there was no joint venture agreement between Berone Capital and Prime, and that was not his signature thereon. (Dkt. No. 37, ¶¶31-38)

8249530.1

17. Berone Capital did not receive any of Plaintiff's money from Defendant Prime, or from anyone else. Unfortunately, when the Interim Trustee was appointed in the bankruptcy proceeding both Fabian Stone and I were out of the country and did not have access to secure contents of Berone's books and records and advised the Interim Trustee of such, but nonetheless were improperly included as defendants in this Action due to the forged joint venture agreement.

18. Annexed hereto as Exhibit A is an email which I received from the Interim Trustee in the now dismissed involuntary bankruptcy petition dated December 27, 2023 in which I was notified of the Interim Trustee's appointment and asked to acknowledge receipt of the Interim Trustee's email. On the same day, December 27, 2023 I acknowledged receipt of the Interim Trustee's message and told him that I was currently out of the country. (I was in Trinidad and Tobago visiting my family.) On December 28, 2023 the Interim Trustee asked if I could confirm the amount in Prime's account at Berone. The next morning, on December 29, 2023 I advised the Interim Trustee that I was overseas and did not have secure access to client accounts. See Exhibit A.

19. On January 17, 2024 I came back to the United States, and spoke with Paul Levine on January 18, 2024, who was the Temporary Receiver at the time, and I was shocked to learn that the Berone Defendants had been named as Defendants by Plaintiff herein and that a Receiver had already been appointed over the Berone Defendants. Annexed hereto as Exhibit C is an email chain dated January 17, 2024-January 19, 2024 reflecting some of these initial e-mail communications between myself, Fabian Stone, the Receiver and Plaintiff's counsel.

20. I have attempted to provide information to the Receiver to assist him in his efforts to locate Plaintiff's money. In the meantime, however, all of the accounts of the Berone

Defendants were frozen and I was unable to retain counsel in this action until February 6, 2024, the same day that the Answer of the Berone Defendants was due, and filed. (Dkt. No. 97.)

### THE RECEIVERSHIP ORDER HAS CAUSED DEVASTATING HARM AND DAMAGE TO THE BERONE DEFENDANTS AND THEIR PRINCIPALS

21.     As indicated above, as a registered investment advisor, Berone Capital owes a fiduciary duty to its clients. As a result of the Receivership, the securities of unrelated legitimate clients have been frozen, and Berone Capital is not able to service its legitimate clients. Although the Receiver has stepped into the fiduciary duties owed to legitimate Berone Capital clients, the Receiver is not a registered investment advisor, and is not well-positioned to discharge these fiduciary duties owed to the clients.

22.     In addition, Berone Capital Fund, LP holds client funds unrelated to Prime that we are being prevented from servicing due to the Receivership Order. We have lost business phone service, as we are several months in arrears due to the freezing of Berone's bank accounts. We have lost access to New York Stock Exchange market data and Bloomberg market data, which are critical components to our operational capabilities, and are both in arrears due to the Receivership Order. Attached hereto as Exhibit D is a letter dated March 4, 2024 from Bloomberg reflecting past due invoices since the Receivership Order.

23.     Our relationship with RBC (Royal Bank of Canada) Capital Markets, our custodian bank which holds client assets has also been irreparably damaged. Attached hereto as Exhibit E is a March 4, 2024 letter from RBC to myself and the Receiver terminating RBC Clearing & Custody's relationship with Berone Capital effective as of June 5, 2024. We have also been notified that our TD Bank relationship was terminated due to the Order to Show Cause sent by Plaintiff. The Berone Defendants have, in effect, been put out of business as a result of false statements of Plaintiff, such as that in paragraph 4 of the Complaint that Berone Capital had

taken over $50 million of ICA deposits from unsuspecting victims like Plaintiff. As reflected above, as well as in Dkt. No. 30 from Plaintiff's counsel itself, there is no (and never has been any) account at RBC associated with Berone Capital with $50 million in it for the benefit of Prime, and that the Receiver can rule out RBC accounts in the name of Berone Capital as a possible source for the missing $50 million in ICA deposits. In sum, Prime's allegations against the Berone Defendants have been demonstrated to be false according to the Plaintiff and the Receiver themselves.

24. The Berone Defendants have also suffered reputational damage and have been contacted by media entities due to false allegations contained in Plaintiff's Complaint against the Berone Entities.

25. The equity assets of Berone Capital Partners LLC have been force liquidated due to this Receivership, causing financial damage. Potential losses continue to mount due to the lack of operational functionality and not being able to pursue new business opportunities.

26. On a personal level, the principals of the Berone Defendants, myself and Fabian Stone, have suffered personally due to the freezing of the TD Bank payroll account closure and seizure. The principals have had to go into debt to survive without ongoing income, and also have the burden of paying legal fees which they should not have had to incur.

### PLAINTIFF SHOULD HAVE CORRECTED TO THE COURT THE FALSE STATEMENTS WHICH IT HAS MADE ABOUT THE BERONE DEFENDANTS BASED UPON ITS OWN ADMISSIONS IN DOCKET NO. 30

27. Even if Plaintiff believed in the authenticity of the Joint Venture Agreement and $52 million account statement when they were originally submitted to the Court, Plaintiff should have attempted to mitigate the damage caused to the Berone Defendants at the time they submitted Docket No. 30 to the Court. This holds true especially in light of the recent admissions

by Plaintiff filed in Prime's involuntary bankruptcy proceedings that Prime never transferred any funds to Berone in 2023, the year that Plaintiff sent its money to Prime. (Ex. F)

## CONCLUSION

28.   The Receivership Order (Dkt. No. 56) should be modified to vacate the receivership solely as to the Berone Defendants for the reasons set forth herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>7th</u> day of March, 2024.

_____
Jeremiah Beguesse