UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                                      Plaintiff,

  -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital
Partners LLC

                                     Defendants.

Case No.:1:24-cv-55
(MAD/DJS)

---

PAUL A. LEVINE, as RECEIVER of PRIME CAPITAL
VENTURES, LLC,

                            Third-Party Plaintiff,

  -against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC, FUPME, LLC

                            Third-Party Defendant,

---

## MEMORANDUM OF LAW IN OPPOSITION OF MOTION TO VACATE RECEIVERSHIP AS TO THE BERONE DEFENDANTS

                                                      LEMERY GREISLER LLC
                                                      Paul A. Levine, Esq. Bar Roll No. 103758
                                                      677 Broadway, 8th Floor
                                                      Albany, New York 12207
                                                      Counsel for the Receiver, Paul A. Levine, Esq.


## **TABLE OF CONTENTS**

| | Page |
|---|---|
| PRELIMINARY STATEMENT..................................................................................... | 1 |
| STATEMENT OF FACTS............................................................................................. | 1 |
| ARGUMENT................................................................................................................. | 9 |
| CONCLUSION............................................................................................................. | 12 |

## TABLE OF AUTHORITIES

**_Cases_** _**Page**_

*January 24, 2024 Memorandum Decision and Order (Doc. No. 56)*............................  9

## PRELIMINARY STATEMENT

Paul A. Levine, Esq. as Receiver of Prime Capital Ventures, LLC, through his attorneys, Lemery Greisler LLC, respectfully submits this memorandum of law in opposition to the motion of Berone Capital Ventures, LLC, Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC ("Berone") to vacate the receivership as it pertains to the Berone (the "Motion"). Because (a) there are still significant disputes of fact as to and to what extent the various defendants have responsibility for the large scale fraud that has gone on this case, (b) Prime and Berone have raised serious and substantial allegations of fraud against the other, and (c) there are still significant unanswered questions regarding monies that were handled by Berone and the use of some of those monies, the Motion should be denied.

## STATEMENT OF FACTS

As an initial matter, regarding alleged harm to clients of Berone that is asserted in support of the Motion, the Receiver has not received any inquiries from any such clients as compared to the numerous and repeated calls from Prime Capital Ventures, LLC's ("Prime") borrowers. Levine Declaration at ¶9.

To date, the Receiver has collected the following monies from the Berone entities financial accounts:

- o Berone Capital Fund LP – from TD Bank - $14,285.27
- o Berone Capital Partners LLC – from Interactive Brokers LLC - $118,335.90

Berone also has two other investments housed at RBC. The first is 1,808.5106 shares of LHL Strategies and the other is 261,000 shares of Lighthouse Life Cap LLC, neither of which

{LG 00738192 1}    1

RBC can easily liquidate. The book value of these investments as of year-end 2023 was approximately $2,000,000. Just on March 12th, Berone identified other potential assets. Levine Declaration, Exhibit "5."

It also appears from the Motion that Berone is focusing its argument on the alleged lack of present evidence that Plaintiff Compass-Charlotte 1031, LLC's ICA deposit found its way to Berone.

This does not, however, obscure the fact that Prime is pointing the finger squarely at Berone blaming it for the missing funds in this case. Prime's detailed version of events, which is at odds with the representations set forth in the Motion, is set forth in a letter from Prime's attorneys to the Receiver dated February 13, 2024 (Doc. 129-2 attached to the accompanying Declaration of Paul A. Levine, Esq. as Exhibit "1") (the "Hogan Letter").

The Hogan Letter details what Prime views as fraudulent conduct on the part of the Berone Defendants that led to the morass that all defendants now find themselves in. By way of example, the Hogan Letter:

   a. Alleges that the Berone Defendants provided an RBC statement "which showed $52,364,000 that Berone said it was holding for benefit of Prime Capital. Prime Capital reasonably relied on the December 26 Statement because it was very similar to statements that Prime Capital had received from Berone in late 2022 and throughout 2023. Prime Capital did not learn that those statements from Berone were false until after RBC produced the actual statements in this case." Levine Declaration Exhibit "1" at page 5.

   b. The Hogan letter describes alleged misconduct by Berone with respect to lines of credit and Reign Financial International, Inc. ("Reign"). In particular, the Hogan Letter states

{LG 00738192 1}                                                         2

that "On October 27, 2022, Prime Capital entered into subscription documents in which it committed to investing $20 million with Berone to get access to Berone's credit lines and had to contribute additional funds for access to even higher lines....There is no dispute that Prime Capital made the capital contribution of $20 million in late October 2022." Levine Declaration, Exhibit "1" at page 8.

c. The allegations continue. "Berone repeatedly assured Prime Capital in December 2022 and January 2023 (with written documentation) that its $20 million was being held safe in an RBC account ending in 0011, and it placed the blame solely on Reign for any issues. By late January 2023, Prime Capital lost patience with the situation and terminated the agreements with Reign." Levine Declaration, Exhibit "1" at page 9.

d. The Hogan Letter goes on to describe more allegedly fraudulent conduct on the part of Berone:

"In early February 2023, and to make up for Reign's failure to invest the $20 million, Berone agreed to give Prime Capital access to Berone's $300 credit facility. Berone assured Prime Capital that this would cut Reign out of the process and would give Prime Capital access to the funds it needed in connection with Prime Capital's credit agreements with borrowers."

"Thus, the Berone credit line, along with other funds (such as the $7 million in another RBC ending in 0017), gave Prime Capital more than enough access to capital to cover the borrowers' ICA deposits (in the event the closing conditions were not met and they demanded a return). The December 26 Statement, therefore, was consistent with Prime Capital's understanding of the minimum capital (in one RBC account alone) to which Prime Capital had access and was being held for Prime Capital's benefit, as expressly noted in the December 26 Statement."

"As noted above, the various documents executed by Prime Capital with Berone demonstrate that Berone was forbidden from transferring Prime Capital's $20 million contribution or using it for any purpose other than investment. Prime Capital, therefore, insisted that Berone provide periodic statements showing that the $20 million was still in the account ending 0011. Prime Capital attached several of those statements (for the period from December 2022 through March 2023) to the sur-reply that it filed with the Court on January 21, 2024. (*See* Dkt. No. 43.)"

"Those statements, however, turned out to be forgeries, which Prime Capital learned only recently in connection with this case. Prime Capital has also learned, through the documents produced in this case (which you have as well), that Berone also transferred most of the $20 million from the account ending 0011 without Prime Capital's knowledge or permission. We have recounted Prime Capital's fraudulent behavior below. On October 27, 2022 (immediately after Prime Capital made its $20 million payment), Berone transferred $3.4 million to a Berone account at Signature Bank and another $6 million to Martin Karo, Esq., who is associated with Berone."

Levine Declaration, Exhibit 1, pages 9-10.

e. In fact, to underscore the situation, Prime commenced litigation in this Court against Reign and others to address its allegations concerning the missing funds. Prime Capital Ventures, LLC v. Reign Financial International, inc. (23 cv 00207). A motion by Reign's attorneys in that case to withdraw was recently granted and the court allowed 30 days for Reign and the individual defendants to retain new counsel.

f. Even giving Berone the benefit of the doubt, the issue then becomes what happened to the $20,000,000 and other monies allegedly sent by Prime to Berone.

g. The Hogan Letter sets forth a detailed analysis of the banking records to, at least partially, answer that question.

"In addition, we are aware from recently produced bank records that, beginning in late October 2022 and continuing for months thereafter, Berone used millions of dollars from the account ending 0011—which were supposed to be held in trust for Prime Capital—to purchase cars, private jets and Atlanta Hawks tickets as well as to pay itself fees, all in violation of the parties' agreements. … The chart below summarizes the funds that Prime Capital wired Berone and that Berone wrongfully used in violation of the agreements with Prime Capital, without Prime Capital's knowledge and all while fraudulently assuring Prime Capital that its funds were safe."

The chart, with some non-substantive formatting edits, is reprinted here.

| Date | Amount | Action |
|---|---|---|
| 10/26/2022 | $20,000,000 | Prime Capital wires Berone |
| 3/22/2023 | $4,800,000 | Prime Capital wires Berone |
| 4/7/2023 | $800,000 | Prime Capital wires Berone |

| | | |
|---|---|---|
| 10/27/2022 | $3,400,000 | Berone wires $3,400,000 to themselves |
| 10/27/2022 | $6,000,000 | Berone wires Martin Karo IOLTA $6M |
| 10/28/2022 | $281,000 | Berone buys a Ferrari |
| 10/28/2022 | $283,000 | Berone buys a Rolls-Royce |
| 10/28/2022 | $400,000 | Berone wires themselves at TD Bank $400k |
| 11/1/2022 | $58,000 | Atlanta Hawks game |
| 11/2/2022 | $100,000 | Private Jet |
| 11/4/2022 | $850,000 | Phoenix American (fund administrator) |
| 11/8/2022 | $5,900,000 | Berone wires $5.9M; sends to Karo (Chase acct # 0137) |
| 11/9/2022 | $5,900,000 | Wires Karo again (Chase acct #3169) |
| 11/21/2022 | $15,000 | Berone wires themselves at TD Bank |
| 11/23/2022 | $772,000 | Berone wires themselves at TD Bank |
| 11/7/2022 | $198,000 | Check from Quattro Capital (Reign) |
| | | **significant because facility is in* |
| 12/6/2022 | $132,000 | Berone received check from Quattro Capital (Reign) |
| | | **significant because facility is in* |
| 12/19/2022 | $110,000 | Berone wires to Dirk Roskam IOLTA account |
| 1/11/2023 | $300,000 | Berone wires to Omega 14 Inc. |
| 1/18/2023 | $74,000 | Berone wires to themselves at TD Bank |
| 1/23/2023 | $500,000 | Berone wires to Alexander Capital Ventures LLC |
| 1/31/2023 | $764,000 | Berone charges Prime Capital for "fee" on Jan 23 RBC Statement |
| 2/28/2023 | $524,000 | Berone charges Prime Capital for "fee" on Feb 23 RBC Statement |
| 3/16/2023 | $1,700,000 | Berone wires Phoenix American |
| 3/20/2023 | $500,000 | Berone wires Alexander Capital Ventures |
| 3/31/2023 | $124,000 | Berone charges Prime Capital $124,000 "fee" |
| 4/26/2023 | $257,000 | Berone wires itself $257,000; charges a "fee" to Prime Capital |
| 4/27/2023 | $96,000 | Berone spends on Atlanta Hawks game |
| 4/27/2023 | $60,000 | Berone wires Dirk Roskam ILOTA account |
| 6/13/2023 | $345,000 | Berone wires itself $345,000 to Signature; charges Prime Capital "fee" |
| 8/1/2023 | $100,000 | Berone wires Gulf Atlantic |
| 8/1/2023 | $50,000 | Berone wires Bois D'Arc |
| 8/2/2023 | $50,000 | Berone wires Matthew Cummings |
| 8/2/2023 | $10,000 | Berone wires itself at Signature |
| Total | $29,853,000 | |

Levine Declaration, Exhibit "1" pages 13-15.

The Receiver is not representing to the Court that this chart presented in the Hogan letter, which was docketed with Court and referenced by Prime and the Third-Party Defendants' Response to [the] Receiver's Motion to Stay and Attach Further Assets, is entirely accurate. However, in that memorandum of law Hogan represented to this Court that the Hogan Letter "recounted Berone's fraudulent conduct in detail and with supporting documents." The letter continues that "Prime Capital (a) believed it had a credit facility with Berone based on a $20 million contribution, that was more than sufficient to cover the ICA deposits; and (b) only recently, through production of documents in response to subpoenas in this case, learned that it did not have access to the facility and that its $20,000,000 had been stolen and spent by Berone. That is fraud." Doc. No. 129 at pages 2-3.

The very same arguments on behalf of Prime accusing Berone of fraud also were presented to the bankruptcy court in the context of ongoing litigation on the remaining matters before that court resulting from the now dismissed involuntary bankruptcy case that had been filed against Prime. The Hogan firm has recently argued to the bankruptcy court that based on alleged representations of Berone "(a) Prime Capital had a good faith basis for believing that it had access to more than sufficient funds to meet any liabilities arising under agreements with borrowers; and (b) Berone defrauded Prime Capital, which Prime Capital did not discover until January 2024." Alleged Debtor's Reply in Further Support of Motion for a Bond, page 10, Levine Declaration, Exhibit "4."

The Receiver has also received bank statements for Berone Capital LLC from TD Bank. A sampling of those statements for the period October 1, 2022 to December 31, 2022 for the account ending in nos. 1876 is attached as Exhibit "6" to the Levine Declaration. They show

substantial deposits in the hundreds of thousands of dollars, for example $400,000 coming in from Berone Capital Fund LP on October 28, 2022 (monies referenced in the chart above). They also show that the principals of Berone appeared to use the account as their personal piggy bank with numerous debit card purchases, many of which appear to be of a non-business nature. The beginning balance of the account on October 1, 2002 was $24,034.57. The ending balance on October 31, 2022 was $384,691.46. The ending balance on December 31, 2022 was $13,135.75.

As previously previewed for the Court and parties, the Receiver has in fact retained a forensic CPA who is actively reviewing the substantial banking records obtained by the Receiver, including those of Berone, in order to allow a thorough tracing of monies in and out of the accounts of Prime and the Berone defendants. Levine Declaration ¶13.

The Receiver provides this background to the Court not because he is in a position to make a final judgment as to which side of the dispute is telling the truth, he is not. Of course, it is not for the Receiver to ultimately determine such matters in any event. Rather, the Hogan Letter and the Motion highlight the profoundly serious allegations of fraud by Prime and Berone against one another. Also, the allegations are relevant to the claims raised by Plaintiff in this case, and the numerous other aggrieved parties who have contacted the Receiver, because Prime blames Berone for its inability to fund loans.

The Receiver has made inquiries to Berone through its attorneys. See Levine Declaration, Exhibit "2" (Email from Peter Damin, Esq. to Thomas McNamara, Esq. dated February 14, 2024). A response to that email was received on March 8, 2024 from Attorney McNamara. Levine Declaration Exhibit "3." It attached two short and unsigned memorandums stating that they were "information from Berone" with no further information or argument on behalf of Berone. The first punts the questions about Reign and Prime to Prime which, as shown above,

Prime similarly punts to Berone. The second justified the very large fees that Berone paid itself by stating "[w]e worked for and are entitled to the fees we deducted in 2022 and 2023 that are non-refundable." It also stated that "the partnership is responsible for all expenses incurred during operations." No written agreement is cited to by Berone to support these statements. Based on the chart in the Hogan letter, the fees totaled nearly $1,000,000, not accounting for other transfers to Berone that are not identified as to purposes in the chart above.

It is unclear what "partnership" the unsigned memorandum is referring to; is it referring to the allegedly forged Joint Venture Agreement between Prime and Berone that Berone's principals swear is a fraud and that Prime has represented to the Receiver was valid or some other agreement.[1] Doc No. 37, ¶26. As with most of the back and forth between Prime and Berone, more questions are raised than answered.

The Receiver also inquired about monies sent to Signature Bank in the amount of $3,400,000. Levine Declaration Exhibit "2." But the response from Berone did not provide information in that regard other than stating that Signature bank failed and they did not have access to the accounts. Levine Declaration, Exhibit "5." The Motion does not speak to the issue. Of course, one would think that Berone's own records would provide enough information to explain why monies were sent to Signature Bank and what then happened to the monies. The Receiver is working to obtain Signature Bank's records as to such matters, but due to its insolvency, the records of Signature Bank are under the control of the FDIC. The Receiver has

---

[1] By email dated March 12, 2024, Berone's attorney sent "more documents from Berone" which were the following: Subscription Documents – Prime Capital Ventures; Limited Partnership Agreement (Berone Capital Fund, LP); Investment Advisory Agreement; and, Berone Prime Agreement. As stated, it is unclear from the bare email which "partnership" the memorandum from Berone refers to. A further email from Berone's attorney on March 12th provides some information as to Berone's alleged assets but contains nothing that addresses the core allegations leveled by Prime. Levine Declaration Exhibit "5."

been in touch with the FDIC which requires a confidentiality order and anticipates being able to obtain those records to further investigate through his forensic CPA the trail of monies into and out of Berone's hands.

Of note is that the Berone bank records that have been obtained showed luxury expenditures, perhaps not quite of the same breathtaking scope and amount done by Prime and Mr. Roglieri, but significant nonetheless. For example, $281,20059 was sent to a Ferrari dealership and $283,000 references a Rolls Royce. Levine Declaration, Exhibit "1" pages 13-15. Despite the request having been made on February 14, 2024, no response for purchase and title documents on those vehicles has been served on the Receiver. Levine Declaration, ¶8. The chart above also shows expenditures for sporting tickets and air travel that can only be viewed as extravagant given the allegations back and forth between the parties, especially in the context of similar luxury spending by Mr. Roglieri. It appears that at the very least Messrs. Roglieri, Beguesse and Stone shared an affinity for luxury automobiles and private air travel.

## ARGUMENT

The Receiver will not burden the Court with a recitation the law on the receiverships which is already law of this case. As this Court's January 24, 2024 Memorandum Decision and Order (Doc. No. 56) recited, the appointment of a receiver is left to the sound discretion of the Court which considers such factors as:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to [the] plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and in more general terms, [the] plaintiff's probably success in the action and the possibility of irreparable injury to his interests in the property.

Doc. No. 56, at page 12 (citations omitted).

The pending Motion does not come close to tipping the scale sufficiently for the Court to second guess its well-founded decision to appoint the Receiver over all of the defendants. Prime has raised serious and substantial allegations of fraudulent conduct on the part of Berone. Berone's motion sidesteps most of the allegations. Significant monies are unaccounted for relating to the monies transferred to Martin Karo and to the Signature Bank account. Luxury purchases and expenditures should be explored further to determine if they were made with any of Prime's monies. And, importantly, Prime puts the blame squarely on Berone for Prime's failures in funding loans due to Berone's alleged failure to make a line of credit available which Prime could use to meet its obligations to its borrowers. See, Doc. 129-2 attached to the accompanying Levine Declaration as Exhibit "1" and Debtor's Reply, Levine Declaration at Exhibit "4."

Glaring in its absence was any request by Berone to chambers pursuant to the Judge's rule requesting a conference to discuss making a motion for summary judgment. One would think that if Berone was so confident of its innocence in this matter, it would be seeking an expedited determination on the merits. Instead, it seeks a summary determination of the receivership without a corresponding determination of its liability on the merits which, if it is found liable, might very well be an empty gesture many months after the receivership is vacated as to Berone.

As to the risk of funds or assets being lost if Berone is no longer under the Receivers' authority, the records show a penchant for luxury spending. Until it is proven that such prior spending was not with Prime's borrower's monies that should have been devoted to funding Prime's borrower's loans, the Court should not reverse the grant of the receivership over Berone which would risk its remaining assets being similarly dissipated.

As to the harm to Berone, it claims its other "legitimate clients" are being impacted. Doc. No. 148-1 at ¶21. None of those alleged clients, even in a redacted form, are identified. None have contacted the Receiver. Levine Declaration at ¶9. If proof of such clients were provided, the Receiver would commit to considering seeking Court permission to allow him to return any funds of such clients he has seized. Berone's protestations of personal hardship to Messrs. Beguesse and Stone ring hollow in light of what appear to be very significant use of monies on luxury expenditures and enormous fees.

As he has referred to in prior filings, aside from the harm alleged by Plaintiff in this case, the Receiver has been inundated with pleas and inquiries from many parties injured by the misconduct that has occurred. Doc. No. 107 ¶24. The Receiver's forensic accountant is actively reviewing voluminous banking records and part of that review will be to advise the Receiver as to what additional records need to be obtained for further tracing of funds. Levine Declaration ¶13. In order to allow him to continue investigating the full extent of the fraud and to have a chance of achieving the best result, the Receiver urges the Court to deny Berone's Motion.

## **CONCLUSION**

Wherefore, it is respectfully submitted that the Court deny the Motion and grant such further relief as this Court deems just and equitable.

Dated: March 13, 2024
      Albany, New York

                        Respectfully Submitted,
                        Lemery Greisler LLC

                        _____
                        Paul A. Levine, Esq
                        Bar Roll No.103758
                        Counsel for the Receiver, Paul A. Levine, Esq.
                        677 Broadway, 8th Floor
                        Albany, New York 12207
                        (518) 433-8800
                        plevine@Lemerygreisler.com