UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

COMPASS-CHARLOTTE 1031, LLC,

                            Plaintiff,

  -against-

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity Partners LLC

                            Defendants.

Case No.: 22-cv-55 (MAD/CFH)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE BERONE DEFENDANTS' MOTION TO VACATE RECEIVERSHIP WITH RESPECT TO THE BERONE DEFENDANTS**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................................. 2

    A.    Berone Background ........................................................................................... 2

    B.    Prime and Berone Become Partners .................................................................. 3

    C.    Prime Sends Berone $20 million ....................................................................... 5

    D.    Berone Sends $11.9 million to Martin Karo ..................................................... 5

    E.    Berone Improperly Spends Additional Funds ................................................... 6

    F.    Prime Uses Compass-Charlotte's ICA Deposit to Partially Repay Onward Holdings .... 7

    G.    Berone Capital Partners, LLC Voluntarily Dissolves ....................................... 7

**PROCEDURAL HISTORY** .................................................................................................... 8

    A.    Berone's Failure to Respond to Court Orders in the Prime Bankruptcy .......... 8

    B.    Berone's Failure to Timely Appear and Oppose the Receivership .................. 9

**ARGUMENT** .......................................................................................................................... 11

**CONCLUSION** ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*,
  74 F.R.D. 621 (1977) ............................................................................................................ 12
*Kingsport Press v. Brief English Systems*,
  54 F.2d 497 (2d Cir. 1931) .................................................................................................... 14
*Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003) .................................................................................................. 11
*Patterson v. Patterson*,
  184 F. 547 (S.D.N.Y. 1910) .................................................................................................. 12
*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ................................................................................................ 11
*Zdanok v. Glidden Co.*,
  327 F.2d 944 (2d Cir. 1964) .................................................................................................. 11

**PRELIMINARY STATEMENT**

Plaintiff Compass-Charlotte 1031, LLC ("Compass-Charlotte") filed this lawsuit against Defendant Prime Capital Ventures, LLC ("Prime") and Defendants Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC (collectively, "Berone")[1] as a result of a Ponzi scheme which has resulted in at least $90 million in ICA Deposits stolen from Plaintiff and other third-party victims. Compass-Charlotte reasonably believed that Berone was a key part of that Ponzi scheme because of: (a) a written joint venture agreement between Prime and Berone to collectively conduct business under the name of Prime Capital Ventures; (b) Kris Roglieri's (Prime's principal) testimony that Prime gave ICA deposits to Berone, which in turn promised to make lines of credit available to Prime to fund loans to third parties; and (c) Prime's fraud allegations in another suit in this District against non-party Reign Financial International, Inc. to recover $20 million Prime invested with Berone "to participate in a transaction platform involving arbitrage of international commercial private placement programs."[2] Berone argues that at least some of those contentions by Prime are false and therefore the receivership should be set aside. But Berone ignores that these facts ***are in dispute***. Simply because Berone claims the Prime joint venture agreement and Prime account statements were fabricated does not entitle Berone to the relief they seek.

---

[1] Berone has not attempted to distinguish between the five Berone entities and has treated them all as similarly situated for purposes of its motion to vacate the receivership. Accordingly, Compass-Charlotte does likewise, except where otherwise noted.

[2] *Prime Capital Ventures, LLC v. Reign Fin. Int'l., Inc., et al.*, Case No. 1:23-cv-00207 (N.D.N.Y.), Dkt. No. 4.

Berone's arguments are misguided and improperly try to divert the Court's attention away from Berone's wrongdoing. What Berone fails to address is that it received $20 million in ICA deposits from Prime and has not returned over $18 million of those deposits. Specifically:

(a) Prime wired Berone $20 million of ICA deposits in late 2022;

(b) Berone has failed to account for the $20 million it received and appears to have spent a portion of those ICA deposits on luxury cars, professional sports tickets and luxury air travel;

(c) Berone owes millions in ICA deposits back to Prime; and

(d) the ICA deposits of Compass-Charlotte and other third-party victims were used to partially refund the creditor who put up the $20 million that Berone received.

These facts alone are more than sufficient to justify continuation of the receivership over Berone, so that Compass-Charlotte and the receiver, Paul Levine, Esq. ("Receiver"), can fully explore Berone's exact role in this $90+ million fraud. Accordingly, the Motion should be denied.

## FACTUAL BACKGROUND

### A. Berone Background

The Berone entities were formed by Jeremiah Beguesse and Fabian Stone between June and December 2021. Dkt. No. 97 ¶ 3 (Berone answer admitting certain allegations in Verified Complaint). Berone admitted it has never had any employees (other than Beguesse and Stone) or any physical commercial office.[3] The addresses used by Berone were a private box at a UPS store in Marietta, Georgia and a $99 / month "virtual office" in Miami. Dkt. No. 1 at ¶¶ 60-65. Berone was registered as an investment advisor in three states, not including New York (Prime's place of operation) or Delaware (Prime's state of incorporation). Dkt. No. 1-11 at 5 (IAPD report listing

---

[3] Berone has not provided any evidence that it ever had an office in Atlanta, Georgia (contrary to the information on its website) or that it ever had anything other than a $99 / month "virtual office" in Miami, Florida.

2

Berone Capital LLC as approved as an investment advisor only in Georgia, North Carolina and Texas).

Fabian Stone lacks the background and qualifications typically expected for an individual involved in financial services companies, and specifically, the owner/operator of a hedge fund. He has no background in financial services or the investment advisory industry; rather, his background is in healthcare. Dkt. No. 1-13 at 20. Although he was given the title of "Manager and Chief Operations Officer" for Berone, this appears to have been, at best, a part-time role, as Mr. Stone continued to work his regular job as a Senior Strategic Partner Associate at AthenaHealth. *Id*.

Jeremiah Beguesse is a registered investment advisor, although he appears to have a limited track-record dealing with hedge funds or managing substantial investments. *Id*. Beguesse was first registered with a financial services company in November 2012 and was employed by nine different employers between 2011 and 2021. Dkt. No. 1-11 at 7; 1-13 at 19.

### B. Prime and Berone Become Partners

It is presently unclear how Prime and Berone met or started a relationship in 2022. Berone was run by two individuals in the Southeast with no background in hedge funds and no proven track record of success, having only started Berone about a year earlier. Meanwhile, Kris Roglieri had been operating various financial services companies in Albany, New York for almost 20 years, had a company which trained commercial loan brokers, and had formed a national alliance of commercial loan brokers. Berone's lack of experience, coupled with this new relationship with Prime, cast further doubt on the viability of any legitimate business—it is a remarkably odd pairing. Nevertheless, both Prime and Berone continue to agree that they met and formed a business relationship sometime between August and October 2022. It is the exact nature of that relationship which is disputed.

3

Prime claims that it entered into an August 16, 2022 joint venture agreement with Berone pursuant to which Berone was the "Managing Member" of all "business under the name Prime Capital Ventures, LLC" and profits were to be split equally between Prime and Berone. Dkt. No. 1-25. But Berone claims that the joint venture agreement is a fake—that Berone didn't meet Prime "until after the August 16, 2022 date," and that Prime "first became a client of Berone Capital on October 14, 2022." Dkt. No. 148-1 at ¶ 5.

The October 14, 2022 date appears to refer to the date on which Berone executed certain "Subscription Documents" between Prime and Berone. Dkt. No. 129-2 at 46. Those documents indicate that Prime became a limited partner of Berone Capital Fund, L.P., of which Berone Capital Partners, LLC was the "General Partner." In connection with becoming a limited partner, Prime was required to send Berone $20 million so it could receive "Limited Partnership Interests" as consideration.

The rights, duties, and obligations of Berone Capital Partners, LLC as "General Partner" and Prime as "Limited Partner" are set forth in a Limited Partnership Agreement with Berone Capital Fund, LP. Fenlon Decl., Exhibit A (the "Berone LPA").[4] Section 2.13 of the Limited Partnership Agreement provides that "In the event of dissolution of the General Partner . . ., the General Partner . . . shall become inactive in the affairs of the Partnership, shall have none of the rights and powers of a General Partner hereunder, shall have no authority to act on behalf of the Partnership of have any voice in the management and operation of the Partnership, except as provided in Section 11.02 herein." *Id.* Section 11.01 calls for the dissolution of the partnership upon any event resulting in Berone Capital Partners, LLC ceasing to be the General Partner. Section 11.02 calls for the liquidation of the Partnership upon dissolution. *Id.*

---

[4] Declaration of Christopher V. Fenlon, Esq., dated March 13, 2024 ("Fenlon Decl.").

4

C.  **Prime Sends Berone $20 million**

On September 19, 2022, Prime opened a new bank account at CitiBank. On September 21 and 22, 2022, Prime received into that account wires totaling $20 million (the "Onward Deposit"). Fenlon Decl., Exhibit B (Prime's CitiBank account statements). Those wires were an ICA deposit for third-party Onward Holdings, LLC ("Onward Holdings"), pursuant to a Business Expansion Line of Credit whereby Prime was required to give Onward Holdings a $107 million line of credit. Dkt. No. 1 at ¶¶ 104-107. On October 24, 2022, Prime wired the $20 million to Berone's account at Signature Bank, purportedly pursuant to the "Subscription Documents." Fenlon Decl., Exhibit B at 8. Berone then wired the $20 million to its RBC account (XX0011) on October 26, 2022. Fenlon Decl., Exhibit C (RBC account statements).

D.  **Berone Sends $11.9 million to Martin Karo**

On October 27, 2022, Berone wired $6 million of the Onward Deposit to the IOLTA account of Martin Karo, Esq. at Wells Fargo Bank. Berone also transferred $5.9 million to a different Martin Karo, Esq. IOLTA account at JPMorgan Chase Bank on November 9, 2022.[5] Fenlon Decl., Exhibit D (Signature Bank account statements). In all, Berone transferred at least $11.9 million of Onward Holding's $20 million ICA Deposit to Martin Karo's account(s). These are the funds which were lost and which are the subject of Prime's lawsuit against Reign Capital filed in February 2023. *See Prime Capital Ventures, LLC v. Reign Financial International, Inc., et al.*, Case No. 1:23-cv-00207 (N.D.N.Y.); *see also* Dkt. No. 1-7. Although the funds were lost through Berone, as alleged by Prime in the *Reign* case, it is noteworthy that Prime did not sue

---

[5] November 9, 2022 is the same date a YouTube video was uploaded showing Jeremiah Beguesse and Fabian Stone at a luxury real estate closing in the Dominican Republic. Dkt No. 1 at ¶ 114.

5

Berone for this loss—a strong indication that Prime and Berone were both active participants in the fraud.

### E. Berone Improperly Spends Additional Funds

Berone's bank account statements also show that Berone improperly used the Onward Deposit for luxury items for Beguesse and Stone. On October 27, 2022, Berone took $3.4 million of the Onward Deposit and transferred it to a different Signature Bank account (XX3727). The very next day, Beguesse and Stone used part of that $3.4 million to fund a $281,200.50 purchase from Ferrari of Central Florida and a $283,000 purchase from MaxxVin LLC of a 2019 Rolls-Royce Wraith. On November 1, 2022, they used $58,000 towards a purchase from the Atlanta Hawks basketball team and $100,000 to Jet Linx Aviation (a provider of private air charters). Fenlon Decl., Exhibit D (Signature Bank account statements). Both the Receiver and Compass-Charlotte have asked counsel for Berone to account for these purchases and to provide an explanation as to why Berone was using the Onward Deposit funds from Prime in this manner. No explanation has been provided.

Of the $20 million that Prime sent to Berone, the only funds which Prime received back appear to be $1,865,000 which Berone wired from its RBC account to Prime's KeyBank account on October 16, 2023. Fenlon Decl., Exhibit C (RBC account statements). That leaves a total of $18,135,000 owed back to Prime. Even if the $11.9 million which Berone sent to Martin Karo's IOLTA accounts is deducted, that still leaves $6,235,000 in funds which Berone received from Prime and which Berone has failed to account for. Unfortunately, the Receiver has thus far only been able to locate minimal funds connected to Berone, and nowhere near the missing $6.2 million.[6]

---

[6] Compass-Charlotte has been unable to complete a full review to track the $20 million because it has not received all of the relevant bank account statements. For instance, in a January 18, 2024 production letter, Flagstar Bank informed

6

In sum, Prime alleges that it deposited $20 million that should have been used by Berone to secure a line of credit facility to fund the loans Prime promised to make to Compass-Charlotte and others. *See* Dkt. No. 43-1. Instead, it appears that the $20 million was not used for that purpose and was either spent by Berone's principals and/or is missing. While Berone may dispute certain facts, it remains for the Receiver, or the Court, to determine what transpired.

### F. Prime Uses Compass-Charlotte's ICA Deposit to Partially Repay Onward Holdings

Prime did not fund the $107 million line of credit to Onward Holdings, and was also unable to return the $20 million to Onward Holdings since those funds had been given to Berone. So, Prime used ICA deposits from other creditors to partially repay Onward Holdings at least $16 million. Most noticeably, Onward Holdings alleges that Prime repaid it $10 million in April 2023, with two wires for $5 million each. Dkt No. 1-26 at ¶ 34. The second of these appears to have been funded entirely with the ICA Deposit of Compass-Charlotte. Fenlon Decl., Exhibit B (Prime's Citibank account statements showing back to back entries of $5 million wire going out and $15,902,250 wire coming in from Compass-Charlotte which funded the outgoing $5 million wire) at 40. In addition, Prime sent Onward Holdings a wire for $4 million on October 27, 2023, and a wire for $2 million on November 10, 2023. Dkt. No. 1-26 at ¶¶ 40-41.

### G. Berone Capital Partners, LLC Voluntarily Dissolves

At the same time that Berone failed to return the $20 million to Prime (or even the $6.2 million that continues to be unaccounted for), Berone Capital Partners, LLC ceased to exist. On November 29, 2023, Berone Capital Partners, LLC (the General Partner of the Berone Capital

---

Compass-Charlotte that it could not produce the account records for Berone's Signature Bank account XX3581 because those records "are in receivership with the FDIC." Fenlon Decl., Exhibit E. (That account is the initial account into which Prime sent the $20 million Onward Holdings funds).

7

Fund L.P. into which Prime had "subscribed" for $20 million) voluntarily dissolved with the Florida Secretary of State. Dkt. No. 1-3.

This dissolution is particularly notable because, it caused the dissolution of Berone Capital Fund, LP under the Berone LPA. The Berone LPA expressly provides that in the event of the dissolution of Berone Capital Partners, LLC, Berone Capital Fund, LP must be dissolved and liquidated. Fenlon Decl., Exhibit A, §§ 2.13, 11.01, 11.02. These provisions were triggered when the General Partner filed its voluntary dissolution in Florida on November 29, 2023. Thus, there is no business of the Berone Capital Fund, LP to continue and it needs to be liquidated and its assets returned to the limited partners.

Since the commencement of this case, Berone has not explained this dissolution or provided any information as to who is now running Berone Capital Fund L.P. following the General Partner's dissolution. Berone Capital Equity Partners, LLC n/k/a 405 Motorsports LLC also voluntarily dissolved on November 29, 2023. Dkt. No. 1-1.

## PROCEDURAL HISTORY

### A. Berone's Failure to Respond to Court Orders in the Prime Bankruptcy

On January 3, 2024, the Court in the Prime bankruptcy issued an order directing the Berone Defendants disclose to the interim trustee by 9:30 a.m. on January 4, 2024 the value of Prime's interest in Berone and provide corroboration of the existence and location of Prime's funds. *See In re Prime Capital Ventures LLC*, Case No. 23-11302 (N.D.N.Y. Bankr.) Doc. 33. The Bankruptcy Court also ordered that service of its order via email to Jeremiah Begeuesse at jeremiah@beronecaptial.com and Fabian Stone at stone@beronecaptial.com was deemed sufficient service of process. Berone did not comply with the Bankruptcy Court's order and did not provide the required information.

As such, the Bankruptcy Court issued a show cause order ordering Berone Capital Fund LP "to show cause why the Court should not find it in contempt and issue a $1,000.00 a day sanction, as well as any other sanction the Court finds appropriate, until such information is provided," which appearance could be made by telephone. Berone was also given the opportunity to "purge itself of potential contempt by providing the Interim Trustee the requested information" by January 8, 2024. *Id.*, Doc. 46. The Bankruptcy Court again ordered that service of this order via email to Jeremiah Begeuesse at jeremiah@beronecaptial.com and Fabian Stone at stone@beronecaptial.com was deemed sufficient service of process.

Berone did not appear or produce the requested information and was therefore found in contempt by the Bankruptcy Court and subjected to a $1,000.00 sanction. *Id.*, Doc. 107.

### B. Berone's Failure to Timely Appear and Oppose the Receivership

On January 11, 2024, Compass-Charlotte e-mailed notice of its forthcoming Application for an Order to Show Cause ("Emergency Motion") to the Berone Defendants at jeremiah@beronecapital.com and Stone@beronecapital.com. *See* Dkt. No. 40-1. On January 12, 2024, the Court granted the Plaintiff's proposed Order to Show Cause for the Appointment of a Receiver on an Emergency Basis and for Expedited Discovery (the "Order") (Dkt. No. 8).

The Order required that the Plaintiff serve a copy of the Verified Complaint, the Order, and supporting papers upon the Defendants on or before January 16, 2024, by e-mail and overnight courier. In accordance with the Order, the Berone Defendants were served with a copy of the Verified Complaint, Order, and supporting papers via email to Fabian Stone (stone@beronecapital.com) and Jeremiah Beguesse (jeremiah@beronecapital.com) on January 12, 2024. *See* Dkt. No. 40-1, ¶ 4.

9

Thereafter, both Prime and Compass-Charlotte included Mr. Stone and Mr. Beguesse on several emails attaching documents filed with the Court. Neither Mr. Stone nor Mr. Beguesse responded to any emails from either party until January 18, 2024, when they responded to an email from the Receiver. Dkt. No. 148-5.

The Order further required the Berone Defendants to file an opposition to Compass-Charlotte's Emergency Motion for Appointment of a Receiver and for Expedited Discovery by January 18, 2024, and appear to show cause before the Court on January 22, 2024. Dkt. No. 8. The Berone Defendants do not and cannot dispute that they were served with the Order, and they expressly acknowledge receipt as of January 18. 2024, *see* Dkt. No. 148-5. Despite having received notice of the Order, the Berone Defendants did not file an opposition, did not make a request for an extension of time to respond, did not appear before the Court on January 22, 2024, and did not request an adjournment of that hearing date.

On January 24, 2024, the Court issued a Memorandum-Decision and Order granting Compass-Charlotte's motion to appoint a permanent receiver and for expedited discovery. *See* Dkt. No. 56. It was not until February 6, 2024, that the Berone Defendants entered an appearance in the case and filed an Answer. *See* Dkt. No. 97. Over a month later, on March 8, 2024, the Berone Defendants filed the instant motion to vacate.

Mr. Beguesse states in his affirmation that he was out of the country from at least December 27, 2023 through January 17, 2024. Dkt. No. 148-1 ¶¶ 18-19. He implies, but does not state, that he was incapable during that time period of responding to the Bankruptcy Court's orders or retaining counsel to represent Berone in this action. His statement that he was shocked to learn of the appointment of the receiver on January 18, 2024 strains credulity in light of the electronic and in-person service of the Verified Complaint, Emergency Motion, and Order. For his part, Mr.

10

Stone offers no excuse for why he failed to respond to the Bankruptcy Court's or this Court's orders. Dkt. No. 148-2. Neither of these individuals, the only two principals and employees of Berone, proffer an explanation for why they ignored federal court orders and defaulted on Plaintiff's Emergency Motion.

## ARGUMENT

The Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case." *Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). The "law of the case" doctrine "gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). As a general matter, decisions resolving aspects of a case "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

In this case, Berone had notice of Compass-Charlotte's Emergency Motion and the Court's Order. The Court appointed a temporary receiver over Berone on January 12, 2024. Dkt. No. 8. By its own admission, Berone was fully-informed of the receivership no later than January 18, 2024, and responded to the receiver, but failed to file any opposition to Compass-Charlotte's Emergency Motion. Dkt. No. 148-5  This Court entered its order making the receivership permanent on January 24, 2024 (Dkt. No. 56), yet Berone did not move to vacate the receivership until March 8, 2024, some 45 days later.

11

Since Berone failed to appear and raise any arguments in opposition to the Emergency Motion, the Court should deny its motion on this basis alone. *Cf. Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 624 (1977) ("Strong policy reasons favor the denial of the defendant's motion at this time. To permit a party to withhold its objections to a preliminary injunction until such time as it can present the strongest possible case and allow it to then obtain a dissolution of the injunction would be judicially unwise.").

Even if the Court considers the merits of Berone's motion, one would expect that, having waited for so long, Berone might have some newly-discovered information which was not previously in its possession. But that is not the case. Rather, Berone argues that the Court should vacate the receivership based upon three alleged facts that are (and have at all times been) peculiarly within Berone's knowledge:

    (a) Berone did not enter into a joint venture agreement with Prime;

    (b) Berone did not receive $52 million from Prime; and

    (c) Berone does not have Compass-Charlotte's ICA Deposit.

Since Berone has presented no new evidence, its motion should be denied.

In addition, because only limited third-party discovery has taken place, neither Compass-Charlotte nor the Court knows whether each of these arguments is factually correct. Prime disputes Berone's assertions and a fact-finder must resolve them.

Even if Berone were correct, however, its arguments miss the forest for the trees. Whether Berone is a "joint venturer" with Prime is not dispositive, since Berone is indisputably a "partner" with Prime (in the Berone Capital Fund LP). Even if Berone did not receive $52 million of ICA deposits from Prime, Berone clearly received at least $20 million and has not accounted for or returned those funds to Prime (other than $1,865,000). *See Patterson v. Patterson*, 184 F. 547,

12

549 (S.D.N.Y. 1910) (refusing to vacate receivership without credible proof that companies "were or are solvent and their assets sufficient to pay their creditors in full").   And even if Berone itself is not in direct possession of Compass-Charlotte's $15.9 million, it has the Onward Deposit which was partially repaid with Compass-Charlotte's ICA Deposit (thus essentially placing Compass-Charlotte into the shoes in which Onward Holdings stood with regard to the Onward Deposit).

Moreover, Berone does not even attempt to address all the other indicia of fraud raised in Compass-Charlotte's complaint (*e.g.* the missing $11.9 million paid to Reign Capital; Berone's lack of any physical office locations; the video showing Beguesse and Stone closing a transaction in the Dominican Republic on the same day they wired money to Martin Karo's IOLTA account). These indicia of fraud made it clear that the appointment of a receiver was necessary when the Complaint was filed, and the facts which have been uncovered since demonstrate that a receiver remains very much needed to unwind the relationship between Prime and Berone and determine where the missing funds have gone.

Berone claims that its business is being harmed, but has not shown any specific evidence of an existing business which will be harmed by a continuation of the receivership.  For instance, it is undisputed that two of the Berone entities voluntarily dissolved with the Florida Secretary of State on November 29, 2023.  Dkt. Nos. 1-1 and 1-2.  Berone offers no explanation as to how those entities are harmed by the appointment of a receiver or what business they would even have to continue after their voluntary dissolution.  As to Berone Capital Fund, LP, it was managed by its General Partner Berone Capital Partners, LLC, which is one of the two Berone entities which voluntarily dissolved.  Berone offers no explanation as to how the limited partnership could continue without a general partner to govern its partnership affairs.

In fact, the Berone LPA expressly provides for the dissolution and liquidation of Berone Capital Fund, LP in the event of the dissolution of its General Partner, Berone Capital Partners, LLC.  This dissolution and liquidation is precisely the task that should be undertaken by the Receiver to ensure that the assets are not dissipated and are returned to Prime so that the Receiver can satisfy Prime's creditors.

Finally, Berone asserts that "the securities of unrelated legitimate clients have been frozen."  Dkt No. 148-1 at ¶ 21.  Compass-Charlotte is certainly sympathetic to the claims of any legitimate third parties and has no desire to see more victims of either Prime or Berone.  If Berone was holding securities that it did not own but was simply managing for "unrelated legitimate clients," then it should provide that information to the Receiver.  Upon information and belief, to date, no such information has been presented.  More importantly, no third parties have contacted either Compass-Charlotte or the Receiver to allege harm or to argue that the Receiver should release securities that they own and Berone was simply managing.

The only persons who would benefit from vacating the receivership over Berone are Beguesse and Stone who could then continue their personal dissipation of the remaining amount of Berone assets, including any remaining amount of the $20 million Onward Deposit.  This result cannot be allowed.  As the Second Circuit held long ago when affirming the denial of a motion to vacate a receivership:

> It is vital that such a receivership as this should have the most careful and constant supervision.  It should not be the means of continuing an enterprise that does not show evident signs of working out for the benefit of creditors.  Their rights should be preserved at all hazards, and corporate assets applicable to their claims must not be kept at risk in the hope of benefiting stockholders who are in an entirely subordinate position.

*Kingsport Press v. Brief English Systems*, 54 F.2d 497, 501 (2d Cir. 1931).

## **CONCLUSION**

For the foregoing reasons, the Berone Defendants' Motion to Vacate the Receivership should be denied, and the Court should grant any further relief it deems just and proper.

DATED:   March 13, 2024
               Albany, New York  **HINCKLEY, ALLEN & SNYDER LLP**

By:  */s/ Christopher V. Fenlon*
     Christopher V. Fenlon
     Kieran T. Murphy
     30 South Pearl St., Suite 901
     Albany, NY 12207-3492
     T: 518-396-3100
     F: 518-396-3101
     E: cfenlon@hinckleyallen.com
        kmurphy@hinckleyallen.com

**PARKER, POE, ADAMS & BERNSTEIN LLP**

William L. Esser, IV (*pro hac vice*)
620 South Tyron St., Suite 800
Charlotte, NC 28202
T: 704-335-9507
F: 704-334-4706
E: willesser@parkerpoe.com

*Attorneys for Plaintiff*
*Compass-Charlotte 1031, LLC*