UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X

| | |
|---|---|
| COMPASS-CHARLOTTE 1031, LLC, | Case No. 24-cv-00055 (MAD/CFH) |
| Plaintiff, | |
| -against- | |
| PRIME CAPITAL VENTURES, LLC<br>BERONE CAPITAL FUND, LP<br>BERONE CAPITAL PARTNERS LLC<br>BERONE CAPITAL LLC<br>BERONE CAPITAL EQUITY FUND I, LP<br>405 MOTORSPORTS LLC f/k/a Berone Capital Equity Partners LLC | **REPLY DECLARATION** |
| Defendants. | |

--------------------------------------------------------------------------X

PAUL A. LEVINE, as RECEIVER OF PRIME CAPITAL
VENTURES, LLC,

                Third-Party Plaintiff,

        -against-

KRIS D. ROGLIERI, TINA M. ROGLIERI,
KIMBERLY HUMPHREY a/k/a KIMMY
HUMPHREY, PRIME COMMERCIAL
LENDING, LLC, COMMERCIAL CAPITAL
TRAINING GROUP-, THE FINANCE
MARKETING GROUP, NATIONAL
ALLIANCE OF COMMERCIAL LOAN
BROKERS LLC and FUPME, LLC,

                Third-Party Defendants.

--------------------------------------------------------------------------X

      JEREMIAH BEGUESSE, under penalty of perjury, declares as follows:

1

1.      I am the Chief Investment Officer of Defendant Berone Capital LLC ("Berone Capital"). Berone Capital is a Securities Exchange Commission Registered Investment Advisor with its principal place of business located in Marietta, Georgia. I have personal knowledge of the facts hereinafter stated. This Reply Declaration is submitted on behalf of the Berone Defendants in further support of their motion to vacate the Receivership Order as to the Berone Defendants only.

**THE SUGGESTION OF THE PLAINTIFF AND THE RECEIVER
THAT QUESTIONS OF FACT BEARING UPON THE CREDIBILITY
OF PRIME, ON THE ONE HAND, AND BERONE ON THE OTHER, PRECLUDE THE
GRANTING OF THE MOTION TO VACATE
IS NOT WELL-FOUNDED; THE MOTION IS BASED UPON ADMISSIONS OF
PLAINTIFF AND THE RECEIVER**

2.      Berone's motion to vacate is premised largely upon findings and admissions made by the Plaintiff and the Receiver in this Court and the Bankruptcy Court as a result of their investigations and reports. For example, Plaintiff's counsel has advised the Court that: "***Compass and the interim Receiver now can rule out RBC accounts in the name of Berone Capital as a possible source for the missing $50+ million in ICA deposits.***" Dkt. 30 (emphasis supplied). The Court is respectfully referred to my supporting declaration filed March 8, 2024 (Dkt. 148-1), showing that these admissions appear not only in Dkt. 30, but Dkt. 37, 61, and 107.

3.      Similar admissions have been made by Plaintiff's counsel in the involuntary bankruptcy case, Dkt. 148-8 at 8-10 (Lies nos. 5 and 6). Similar admissions have been made by Plaintiff's counsel to this Court in Dkt. 45.

4.      With regard to the alleged Joint Venture Agreement, Plaintiff has told the Bankruptcy Court: "Prime also asserted that it was a party to a Joint Venture Agreement with Berone. The principles of Berone have provided a sworn declaration that the Joint Venture

Agreement is a fake and Berone has never been party to such an agreement with Prime.  Exh. 17 at ¶ 6.  Prime and Roglieri have provided no sworn statement to the contrary." Dkt. 148-8 at 10, n.8.

5. In the Bankruptcy Court Plaintiff stated: "Roglieri told the Court that Prime's business was based on giving Berone the ICA deposits, which Berone then used to borrow a multiple of that amount and then made those borrowings available for Prime to fund its obligations to borrowers.  The Receiver has investigated that claim and it is a fiction.  Putting aside that there is no evidence that Prime ever gave the ICA deposits to Berone, there is no evidence that Berone ever agreed to provide Prime with a "line of credit" at any time." Dkt. 148-8, at 9.

6. Since Berone's motion to vacate is based upon the findings and admissions of Plaintiff and the Receiver, in opposition, they are not arguing against Berone as much as they are arguing against themselves and what they have previously said to this Court and the Bankruptcy Court.  Thus, the motion to vacate does not pit the credibility of Prime against the credibility of Berone, but is based on the credibility of Plaintiff and the Receiver in what they have previously said in this Court and the Bankruptcy Court.

## PLAINTIFF'S COMPLAINT

7. Plaintiff's Complaint contains four claims, each of which is to recover the $15,902,250 apparently transferred by Plaintiff to Prime in April 2023.  The fifth claim is for the appointment of a receiver.

## THE 2022 $20 MILLION TRANSFER IS A RED HERRING AND FEIGNED ISSUE, AND HAS BEEN FULLY ACCOUNTED FOR IN ANY EVENT

8. Knowing that Berone never received its $15.9 million ICA deposit, Plaintiff has devoted much of its opposition to a 2022 transfer from Prime to Berone which has nothing to do

with Plaintiff Compass. On January 22, 2024, Mr. Esser argued to the Court: "The $20 million which came into that account was an ICA deposit from Onward Holdings, who did not receive their money back and has sued Prime in Federal Court in Utah. So that $20 million has nothing whatsoever to do with Compass. It was Onward Holdings' money and regardless of that if you simply read the Complaint which Prime filed in Federal-in this Court, Prime alleged that the money was lost and absconded by Reign International." Dkt. 67-10 at 21 (i.e., p. 19 of the transcript).

9. Significantly, Plaintiff does not claim that any of that $20 million which Prime wired to Berone in October of 2022 came from Plaintiff. Rather, Plaintiff Compass alleges that before the $20 million was wired in October 2022 to Berone it was wired to Prime by Onward Holdings, which it describes as the "Onward Deposit". Dkt. 156, at 8 (p. 5 of Plaintiff's brief). Thus, the 2022 $20 million transfer is irrelevant to Prime's claim concerning its $15.9 million transfer to Prime in April of 2023. Indeed, Plaintiff has so argued exactly that. Nonetheless, although it is irrelevant, I have already fully accounted to the Receiver with respect to the disposition of the $20 million, as explained below in discussing the Receiver's opposition to the motion to vacate. See ¶¶ 12-15, *infra*., and Dkt. 153-4, at 6, 7, and 32.

10. To the extent that Plaintiff surmises, e.g., Dkt. 156, at 10 (p. 7 of brief) that Prime may have used part of the $15,902,250 received from Compass to repay $5 million to Onward, then Plaintiff may have a claim against Prime who made the $5 million payment, or Onward, which received the $5 million payment, but it does not have a claim against Berone which never received the $15.9 million wire.

## BERONE HAS FULLY ACCOUNTED TO THE RECEIVER
## FOR THE DISPOSITION OF THE $20 MILLION

## RECEIVED FROM PRIME IN OCTOBER OF 2022

11. Although Plaintiff has conceded that the $20 million received by Berone from Prime in October 2022 did not come from it and Plaintiff's counsel has previously argued to the Court that it is irrelevant to its $15.9 million ICA deposit made in April, 2023, and Berone has nonetheless fully accounted to the Receiver for the disposition of the $20 million.

12. As both the Plaintiff and Receiver have acknowledged, $11.9 million was wired to Martin Karo IOLTA Account, who is identified in the *Prime v. Reign* First Amended Complaint as an escrow agent, Dkt. 1-7, ¶ 29, in two wires, one in the amount of $6 million and one in the amount of $5.9 million. Those wires were initiated by Berone at the verbal authorization and direction of Kris Roglieri. (I have never personally met Mr. Roglieri and he was introduced to me by Reign as a prospective client.) The Receiver has attached the narrative which I provided as an Ex. 3 to his opposition. Dkt. 153-4, p. 6 of 50. In addition, both the Receiver and the Plaintiff have acknowledged that $1.8 million was returned to Prime, and the Receiver has attached my explanation as an exhibit to his opposition. Dkt. 153-4, p. 7 of 50.

13. A hedge fund investment in a limited partnership is not like a retail stock brokerage account where the value of the stock can be determined on a daily basis on a Robinhood app. Most of the investments are private equity and alternative investments which are illiquid due to limits on the times and amounts of permitted redemptions, lockup periods, and the like. I prepared an itemization of the initial amounts of the investments, and where possible, estimates of current value, which the Receiver has also annexed as Ex. 5 to his opposition. Dkt. 153-4, at 32 of 50. The Receiver himself has acknowledged the illiquidity of these investments, which the Receiver himself has tied up, and with regard to the LHL Strategies and Lighthouse Life Cap LLC

investments, the Receiver states "neither of which RBC can easily liquidate." Dkt. 153-1, at 2, ¶ 4. The Receiver thanked my counsel for forwarding to him the information which I had compiled. See Exhibit 1 hereto.

14. With regard to the two vehicles mentioned by the Receiver and the Plaintiff, these are owned by Berone and were paid for out of Berone's money from fees which it earned in 2022 and 2023. These vehicles are not utilized for personal use. They were purchased as part of its marketing efforts, as Berone markets its services to celebrity entertainers and athletes, which come with certain expectations of wealthy clients that their investment advisors are also successful. On a personal level, I drive a 2015 Nissan 370-Z. The vehicles which the Plaintiff and Referee questioned are kept in storage and only taken out for special circumstances when appropriate for Berone's business and marketing endeavors.

15. Also questioned are expenditures for chartering a private jet and expensive sports tickets. I have never flown in a private jet. Berone did fly a prospect on a private jet to an athletic event that he wanted to attend. The prospect was a first round NBA draftee who was interested in placing $7 million in investments with Berone. Unfortunately, because of the Receivership Order Berone was not able to pursue and close that financial opportunity, demonstrating just some of the damage caused to Berone by the Receivership Order.

16. Plaintiff's counsel has submitted as Exhibit A to the Declaration of Christopher V. Fenlon, Esq. a copy of the Limited Partnership Agreement ("LPA") between Berone Capital Fund, LP and Berone Capital Partners, LLC, dated November 23, 2021. Dkt. 156-2. Section 7.01, entitled Management Fee, specifies that the investment manager shall receive a management fee of approximately 2% per year. Dkt. 156-2, at 40-41 (pp. 38-39 of the LPA). Plaintiff lacks

standing to object to how Berone spends its fees. Once again, none of the $20 million received in October 2022 from Prime was provided by Plaintiff Compass. Recognizing that Prime may not have the resources to satisfy the $15.9 million judgment which Plaintiff seeks herein, Plaintiff has improperly joined Berone in this action and seeks to have Berone remain subject to the Receivership Order in a transparent effort to create a pot from which Plaintiff may recover damages caused by Prime, not Berone, who had no dealings with Plaintiff Compass before this action. The LPA also provides that organizational and operating expenses, including legal, marketing, etc., are chargable to the partnership. Dkt. 156-2 at 41-42 of 58, Section 7.02.

## BERONE DID NOT RECEIVE ICA DEPOSITS

17.  Once again, the Receiver is helpful in dispelling some of the speculation of Plaintiff. Berone did not receive ICA deposits from Prime to hold for the benefit of its investors. The Receiver has attached to his opposition as Exhibit 4 the subscription documents executed by Prime on October 7, 2022. On page SA-2 (Dtk. 153-2, p. 51 of 67), the Court will note that Prime indicated that the source of the money/wealth/income used for this investment was "EARNINGS." Indeed, before this litigation I had never heard of and did not know what an ICA deposit was. I have since learned that ICA is an abbreviation for interest credit account. Prime clearly represented and warranted that the source of Prime's investment was its earnings. Moreover, there is nothing about providing a line of credit to Prime in the subscription documents.

## THE HOGAN LOVELLS LETTER SHOULD NOT BE CONSIDERED BY THE COURT

18. The Receiver has previously stated to this Court that: "As has happened so often in this case to date, when statements are made on behalf of the third-party Defendants or Prime Capital Ventures LLC they are simply made by an attorney, sometimes in a memorandum of law, or, as in this situation, a letter attached to a memorandum of law. As such, they have no evidentiary value whatsoever and any alleged factual basis to oppose the requested relief should be disregarded. Conspicuous by its absence is any sworn statement by either Kris Roglieri or Kimberly Humphrey." Dkt. 132, at 5. I do not understand how the same receiver can argue that the Hogan Lovells letter has no evidentiary value and should be disregarded, but now seeks to rely upon it to attempt to create questions of fact to maintain the receivership as to the Berone Defendants.

**THE HARM TO THE BERONE DEFENDANTS IS REAL AND CONTINUING**

19. The harm to the Berone Defendants of the unwarranted Receivership Order has been outlined in my supporting Declaration, to which the Court is respectfully referred. Dkt. 148-1. The result of the letter sent to Berone Capital and Mr. Levine, unless the Receivership Order is vacated as to the Berone Defendants, is that I will have to notify all clients of Berone Capital that they must find another platform for their investment accounts as RBC plans to de-platform Berone Capital as of June 5, 2024. This means that the clients will have to find other registered investment advisors with clearinghouse capabilities, and if that were to happen it would be very difficult to win any of the clients back. Dkt. 148-7.

20. Plaintiff also argues that because of the dissolution of Berone Capital Partners LLC, the hedge fund itself should be technically dissolved. It is correct that Berone Capital Partners LLC was dissolved in Florida on November 29, 2023. As previously told to the Plaintiff and the

Receiver, a new company by the name of Berone Capital Partners, LLC was formed in Montana the day before, on November 28, 2023. This was done to take advantage of lower corporate fees in Montana. There was no intention to cause a dissolution of the hedge fund itself. The intention was to also create a hedge fund entity under Montana Law. That plan was stymied by the Receivership Order. Yes, the Florida hedge fund was eventually going to be liquidated, but that is a lengthy process because of the nature of the investments. Also, under § 11.04 of the LPA (Dkt. 156-2), the expenses of the partnership are paid prior to distributions to limited partners. Under Florida law, the dissolution can be revoked within 120 days, if necessary. Fla. Stat. Ann. § 605.0708. Also, under §2.12 of the LPA the General Partner can transfer its interest to an affiliate.

21. Also, Berone Capital LLC, the brokerage RIA has not been dissolved. The RIA clients cannot currently be served, absent vacatur of the Receivership Order. That causes great harm, not only to Berone Capital LLC, but their legitimate clients as well. Once again, however, Plaintiff has no standing to raise claims concerning possible technical violations of the limited partnership agreement by the general partner and this does not change the fact that the Berone Defendants never received any money from Plaintiff Compass.

### THAT BERONE DID NOT OPPOSE THE INITIAL MOTION DOES NOT MEAN THAT IT DOES NOT HAVE DEFENSES TO IT

22. Plaintiff goes to great lengths to detail the proceedings in this case prior to Berone's retention of counsel (Dkt. No. 156, pp. 9-11) knowing full well that as soon as I returned from visiting family out of the country on January 18, 2024, I reached out to the Receiver and communicated with Plaintiff's counsel as well. (Dkt. No. 148-5) I was advised by both the Receiver and Plaintiff's counsel to retain counsel for the Berone Defendants, and I did so as

quickly as possible – which was difficult with a temporary receivership in place and no access to any company funds to pay for a company lawyer.

## **CONCLUSION**

23.    For all the reasons set forth in the motion and reply, request is hereby made that the Court modify the Receivership Order so as to release the Berone Defendants therefrom.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of March, 2024.

_____
Jeremiah Beguesse