UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
COMPASS-CHARLOTTE 1031, LLC

                Plaintiff,

   - against -                        **Case No. 24-cv-55 (MAD/DJS)**

PRIME CAPITAL VENTURES, LLC, BERONE
CAPITAL FUND, LP, BERONE CAPITAL
PARTNER, LLC, BERONE CAPITAL LLC,
BERONE CAPITAL EQUITY FUND I, LP,
405 MOTORSPORTS LLC F/K/A BERONE
CAPITAL EQUITY PARTNERS, LLC,

                Defendants.
-------------------------------------------------------------


## **FOURTH REPORT OF PERMANENT RECEIVER**


Respectfully submitted,


Paul A. Levine, Esq.
RECEIVER
LEMERY GREISLER LLC
Office and P.O. Address
677 Broadway, 8th Floor
Albany, New York 12207
Ph:   (518) 433-8800
Fax:  (518) 433-8823

plevine@lemerygreisler.com

## TABLE OF CONTENTS

**Page**

1. INVESTIGATIVE ACTIVITIES...................................................................................... 1

    a. Forensic Accounting............................................................................ 1
    b. Prime Capital's Accounts.................................................................... 2
    c. Berone's Accounts............................................................................... 2
    d. Investigation as to Prime.................................................................... 3
    e. Investigation – Berone........................................................................ 4
    f. Relationship Between Prime and Berone............................................ 5

2. LITIGATION ACTIVITIES......................................................................................... 7

    a. ER Tennessee...................................................................................... 7
    b. Caruso.................................................................................................. 7
    c. 135 Railroad....................................................................................... 8
    d. Reign................................................................................................... 8
    e. B and R Acquisition Partners, LLC, et al........................................... 9
    f. Onward................................................................................................ 9
    g. Camshaft............................................................................................. 9
    h. 1800 Park Avenue............................................................................... 10

3. STATUS OF ASSETS OVER WHICH THE RECEIVER HAS CONTROL................ 10

    a. Real Estate.......................................................................................... 10
    b. Investment Assets............................................................................... 10
    c. Vehicles.............................................................................................. 11
    d. Watch.................................................................................................. 11
    e. Bank Accounts.................................................................................... 11
    f. Loan Receivables................................................................................ 11

4. STATUS OF ISSUES REMAINING IN PRIME INVOLUNTARY............................. 12

5. STATUS OF ROGLIERI CHAPTER 11.................................................................... 13

6. GENERAL COMMUNICATIONS FROM VICTIMS.................................................. 15

7. ACCOUNTING TO COURT..................................................................................... 15

i

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
COMPASS-CHARLOTTE 1031, LLC

                        Plaintiff,

        - against -                                    **Case No. 24-cv-55 (MAD/DJS)**

PRIME CAPITAL VENTURES, LLC, BERONE
CAPITAL FUND, LP, BERONE CAPITAL
PARTNER, LLC, BERONE CAPITAL LLC,
BERONE CAPITAL EQUITY FUND I, LP,
405 MOTORSPORTS LLC F/K/A BERONE
CAPITAL EQUITY PARTNERS, LLC,

                        Defendants.
----------------------------------------------------------------

## <u>FOURTH REPORT OF PERMANENT RECEIVER</u>

To:     Hon. Mae D'Agostino, United States District Court Judge

        In order to keep the Court and parties advised on matters since his Third Report, Paul A.

Levine, Esq., Permanent Receiver (the "Receiver") for Defendants Prime Capital Ventures LLC

("Prime") Berone Capital Fund, LP, Berone Capital Partner, LLC, Berone Capital LL C, Berone

Capital Equity Fund I, LP and 405 Motorsports LLC f/k/a Berone Capital Equity Partners, LLC

(collectively "Berone") (Prime and Berone are collectively the "Defendants") respectfully

submits his Fourth Report to the Court as follows.

### 1.  <u>INVESTIGATIVE ACTIVITIES</u>

        a.  <u>**Forensic Accounting**</u>

        The Receiver has retained BST & Co. CPAs, LLC ("BST") to conduct a forensic

accounting analysis of Prime's and Berone's bank accounts.  BST has reviewed substantial

banking records, has conferred several times with the Receiver and has rendered several reports

1

as to the various accounts which detail, to the extent information is available from the banking records themselves, the sources of deposits into the accounts and disbursements from the accounts.  A summary memo with attached schedules from BST to the Receiver is attached hereto as Exhibit "A[1]."  Highlights include:

    b.  **Prime Capital's Accounts**

- Wire transfer information from Farmers Bank showed that approximately $99,340,492 in ICA deposits were initially identified wherein approximately $24,307,178 was returned to third-party borrowers.

- An examination of KeyBank and Citibank accounts showed a total of approximately $83,662,632 in potential additional ICA deposits were identified wherein approximately $33,328,750 was returned to the third-party borrowers.

- Potential personal expenditures from a KeyBank account totaled $3,469,172.88.

- Potential personal expenditures from a Citibank account totaled $15,542,761.47.

- With respect to Prime's Citibank account a total of $143,608,453.02 was deposited and $142,857,067.81 was withdrawn over the time period September 2022 to January 2023.

As is apparent, tens upon tens of millions of dollars were transferred by Prime to numerous third parties.

    c.  **Berone's Accounts**

- BST identified a transfer in of $20,000,000 from Signature Bank account x3581 on October 26, 2022.
- BST also identified a $20,000,000 transfer made on October 24, 2022 from Berone Capital Fund LP to Signature Bank account x3581 (unknown bank account).
- A total of $21,000,000 went to unknown Signature bank accounts.
- $6,000,000 was transferred to a "M Caro Esq IOLTA" account on October 27, 2022.
- $11,800,000 was transferred to a "M Caro Esq IOLTA" account on October 27, 2022.
- Personal expenditures of approximately $944,909 were identified.

---

[1] In places, the report references the Receiver having subpoenaed records.  That was the Receiver's intent as expressed to BST but, as explained below, the Receiver is presently constrained from doing so pending the Second Circuit's decision on Prime's appeal.

d.  **Investigation as to Prime**

It had been the Receiver's intent upon receiving BST's work, to begin serving a rolling series of subpoenas on parties receiving the substantial monies identified through BST's work. The Receiver considers serving such subpoenas critical to identifying possible sources of recovery of funds in this case. By text order entered April 15, 2024 (Doc. No. 170), in response to the Receiver's inquiry, the Court clarified that at the present time, and until the Second Circuit decides Prime's appeal of the January 24, 2024 Memorandum-Decision and Order, no discovery is to take place other than in the arbitration between Prime and Compass-Charlotte 1031, LLC. At such time as the Second Circuit decides the appeal, and assuming that decision keeps the Receiver in place, the Receiver will resume his work in this regard.

With regard to Signature Bank, the parties have all signed a Confidentiality Stipulation that has been so ordered by the Court with respect to the FDIC producing bank statements from Signature Bank which had become insolvent and certain of its records are in the custody of the FDIC.  The Receiver's counsel is working with FDIC counsel to obtain production of those records but has been informed that the FDIC requires a subpoena to produce records which, as explained above, the Receiver is prevented from issuing at this time.

The Receiver has also been in contact with the Barclay Damon LLP[2] law firm which served as Prime's counsel and, according to Mr. Roglieri, conducted the "soft closings" prior to funding.  The Receiver was advised that the law firm would produce records if issued a subpoena.  Again, the Receiver is constrained from doing so presently.

---

[2] Sheppard Mullin, the law firm that did the "hard closings" for Prime, when loans were funded, voluntarily produced information and documents to the Receiver.

e. **Investigation - Berone**

As to Berone, and in direct response to the Court's inquiry on page 41 of its March 19, 2024 Memorandum-Decision and Order (Doc. 160), the Receiver has not yet obtained any evidence that Berone came into possession of Plaintiff's ICA deposit. It is unlikely that the Signature Bank records will provide information in this regard inasmuch as Signature Bank was closed and came under FDIC control on March 12, 2023[3] and Plaintiff's complaint states that it did not pay its ICA deposit until April 27, 2023 (Doc. 1 ¶130).

As part of his investigation, the Receiver sent a letter on March 25th to Berone's counsel requesting information. Exhibit "B." That letter was responded to on April 12th with an attached summary of information provided by Berone. Exhibit "C."

The Receiver has reviewed the responses and the documents provided.  Of concern to the Receiver are the following:

- In response to Receiver request no. 3 for internal financial records such as profit and loss statements, check registers, income and expense statements and balance sheets, Berone fell back on the explanation that the Receivership has allegedly terminated its access to financial records. That Berone would not have access, on its own computers, to any internal bookkeeping and other records does not seem credible.

- In response to Receiver request no. 9, Berone identified certain of its clients with current concerns regarding their accounts.  Two emails to Berone in this regard were provided to the Receiver and information was provided as to 4 or 5 other

---

[3] https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/signature-ny.html

clients. As he has previously stated, the Receiver is prepared to work with Berone's counsel to assist any clients as he may be able. To date, none have contacted the Receiver.

   f.   **Relationship Between Prime and Berone**

The Receiver's counsel has further reviewed the various agreements by and between Berone and Prime and finds that Berone and Prime did, in fact, have an investment relationship pursuant to the following:

- A Limited Partnership Agreement dated November 23, 2021.

- A Subscription Agreement dated October 7, 2022 pursuant to which Prime was to pay $20,000,000 for a limited partnership interest in Berone Capital Fund LP (DE) with a two year lock-up period.  Given that Prime presumably derived the monies from ICA deposits and would need access to monies to refund ICA deposits or make loans, the lock-up period seems unusual.

- An Investment Advisory Agreement dated June 7, 2023 pursuant to which Berone was the advisor and Prime was the client.  This agreement also had a two year lock-up period.

The Receiver has also reviewed the alleged Joint Venture Agreement dated August 16, 2022 which Berone asserts is a forgery and Prime asserts is genuine. See Doc. 1-25.  In the Receiver's opinion the authenticity of that agreement is suspect. Unlike the other agreements cited above, it does not have wet ink signatures. Rather it has what appear to be facsimile signatures and not of the type that services such as DocuSign generate.  The term of the agreement is "perpetual" which seems unusual for any business agreement.  While it has a notice provision typical to most contracts, it does not have attorneys listed as notice parties. As compared to the other agreements between Prime and Berone listed above, which are

5

comprehensive and with wet ink signatures, it seems odd that the parties would enter into the alleged Joint Venture Agreement in the midst of their other agreements. For example, how would the Joint Venture Agreement integrate with the other agreements, if at all? And, it seems unusual for an investment advisor to also become a business partner with a client.

As to the alleged RBC statement which according to Prime was presented to it by Berone showing that $52,364,000 was on deposit at RBC (Doc. 13-13), the statement is suspect on its face for at least the following reasons:

- It states it is "Page 1 of 1." Statements that the Receiver obtained from RBC have more than one page, usually several pages.

- It has Prime's Albany address rather than, as other RBC statements for Berone do, Berone's Georgia address.

- It is missing the words "Please see 'About your Statement' on page 2 for further information;" the statements that the Receiver obtained directly from RBC have these words printed on them.

- It adds the words ""if you have any questions, please reach out to your financial advisor."

Compare Exhibits "D" and "E" hereto (which the Receiver has marked to show the differences). As to who is responsible for the false account statement and the dispute over whether the Joint Venture Agreement is genuine, Prime and Berone have accused each other of fraud and the Receiver defers to the Court for the ultimate determination of such matters in either this case or any criminal case that may follow.

2.  **LITIGATION ACTIVITIES**

a.  **ER Tennessee**

ER Tennessee LLC ("ER") commenced an action against Prime and Berone Capital LLC in New York State Supreme Court, New York County (Index No. 650231/2024).  ER alleges fraud and other causes of action against Prime and Berone relating to a deposit in the amount of $5,000,000 ER made in connection with a proposed loan from Prime.  The loan was not made, and the deposit was not returned. The Receiver first had to respond to a motion by ER for the appointment of a Receiver. The Motion was denied.  Supreme Court delayed further proceedings in the case pending this Court's decision on whether Kris Roglieri's Chapter 11 bankruptcy filing stayed cases against Prime.  Since the Court's March 19, 2023 Memorandum-Decision and Order on that, and many other issues, a deadline to answer or move with respect to the ER lawsuit was established. Berone, through its counsel, had already answered the lawsuit.  Prime through the Hogan firm moved to dismiss the complaint.  The Receiver submitted an answer for both Prime and Berone. Supreme Court conferenced the case and directed briefing on the authority and ability of Prime and Berone to litigate the case separate and apart from the Receiver. The parties timely submitted their memorandums and declarations to Supreme Court. Just today (April 18th) Supreme Court struck Hogan's motion and directed the Receiver to amend his answer to clarify that the Receiver is answering on behalf of Prime. Supreme Court also deferred to the Receiver's discretion in allowing Berone's counsel to defend the case for Berone. Supreme Court has also imposed a scheduling order.

b.  **Caruso**

Caruso Home Builders, LLC and Sage Estates Malta, LLC ("Caruso") commenced an action in New York Court, Saratoga County (Index No. EF2024312) against Prime alleging

7

breach of a loan agreement. Caruso paid Prime $2,600,000 and received $5,000,000 in partial loan proceeds with regard to its construction project in Saratoga County. Caruso, unlike most victims in this case, was a "net winner" having received more in loan proceeds than it paid – a net of approximately $2,400,000.

While the Receiver prepared and is ready to serve an answer and counterclaims in the case, just before the answer was to be served, the parties agreed to extend the time to answer in order to focus efforts on resolution rather than on litigation. Very recently, in response to the Receiver's requests, Caruso's counsel has supplied information to the Receiver and a settlement proposal. The Receiver is reviewing the information and anticipates continuing discussions with Caruso's counsel. The Receiver anticipates resolving the case with monies being paid to the Receiver in exchange for a release of liens.

c. **135 Railroad**

135 Railroad, LLC entered into a loan transaction pursuant to which it paid to Prime $400,000 as a loan deposit and received $400,000 in loan proceeds. The Receiver was contacted by 135 Railroad, LLC's principal and has spoken with him at least twice since this case was commenced. The principal represented that 135 Railroad LLC's project was his last project involving the redevelopment of a property in a small town in Texas and that it represented, once developed and sold, he and his wife's retirement. The borrower retained counsel who commenced an action in Texas to void Prime's liens and for damages under various Texas state law causes of action.  Counsel and the Receiver have been in contact with regard to a resolution of the case and the Receiver anticipates reaching an agreement in the near future.

d. **Reign**

Prime commenced litigation against Reign in the U.S. District Court, NDNY (23-CV 00207). This is the case that involves Martin Karo, Esq. and Berone having sent a total of

8

$11,000,000 to Mr. Karo's IOLTA accounts at JP Morgan Chase.  Reign's counsel in the case, Boies Schiller Flexner LLP withdrew pursuant to court order after the Receiver had requested information about the monies.  Earlier this month, new counsel for Reign entered an appearance in the case and the Receiver has reached out to this new counsel to informally, given the current stay on discovery, to renew his requests for information. Further, in light of the Court's text order on discovery, the Receiver is ready to immediately serve subpoenas on Mr. Karo's bank to learn more about the disposition of the monies Berone sent to Mr. Karo as soon as the Second Circuit decides Prime's appeal; of course assuming the Receiver is still in place.

e.   **B and R Acquisition Partners LLC et al.**

In this arbitration, B and R Acquisition Partners LLC was granted an award of $4,300,000.00. That award was converted to a judgment by New York State Supreme Court, Albany County on February 8, 2024.  That judgment has been domesticated in Virginia Beach Circuit Court, Virginia.

f.   **Onward**

Onward sued Prime and Mr. Roglieri in U.S. District Court, District of Utah and, due to Prime's involuntary bankruptcy, was awarded a default judgment against Mr. Roglieri only but he filed his personal bankruptcy case prior to any enforcement action on that judgment being taken.

g.   **Camshaft**

In this case Camshaft CRE 1 LLC is suing Prime in state court in Florida, for nearly identical misconduct as alleged in this case for the return of a $12.4 million ICA deposit.

Camshaft CRE 1 LLC obtained new counsel in place of the Hogan firm in the Florida case in early March and since that time, no further activity has occurred in the case.[4]

### h. **1800 Park Avenue**

1800 Park Avenue LLC commenced an adversary proceeding in Mr. Roglieri's personal Chapter 11 case objecting to his discharge and also seeking recovery of its $5,000,000 from him along with Prime and Prime Commercial Lending LLC and other individual defendants. The answer in that case is due on May 6, 2024.

### 3. <u>STATUS OF ASSETS OVER WHICH THE RECEIVER HAS CONTROL</u>

### a. **Real Estate**

As previously reported the Receivership estate includes a valuable luxury beach house in Virginia Beach, Virginia that was purchased, for cash, by Prime in January 2023 for $3,750,000. The Receiver's law firm had to advance funds to pay the insurance premium due on the house but has since been reimbursed. The Receiver has received a serious inquiry for the sale of the house. However, due to the Court's prohibition on filing substantive motions pending the Second Circuit appeal the Receiver is not presently moving forward in this regard.

### b. **Investment assets**

In its response to the Receiver's March 25, 2023 inquiry, Berone provided additional information as to its investments and the Receiver is reviewing that information, but they appear to be, as previously reported, presently illiquid.

---

[4] Of note is that the Hogan firm has entered an appearance in a bankruptcy appeal as co-counsel on behalf of certain other Camshaft entities in the United States District Court for the District of Delaware (In re BYJU's Alpha, Inc.) (District Court Case No. 24-358, Doc. 4). The appeal is from an order finding contempt against a Camshaft officer.

c.  **Vehicles**

The FBI has seized the numerous vehicles which the Receiver had targeted in his third party action thereby preventing the Receiver from taking any meaningful action in this regard.

d.  **Watch**

For the same reasons expressed above with regard to the house, the Receiver is holding off taking any action with regard to the Richard Mille Skull Watch which Mr. Roglieri caused Prime to purchase for $2,275,000 and which remains in the Receiver's possession secured in a safe deposit box at a local bank.

e.  **Bank accounts**

The funds in the Receiver's possession are reported below and in attached financial reports.  The only bank accounts not yet closed are at KeyBank which holds a small amount (less than $2,000 and which the Receiver is working with KeyBank to transfer) and Citibank which holds $751,385.21.  While Citibank has frozen the account it has previously stated it will not turn over the funds pending resolution of the stay motion by this Court. The Receiver has inquired as to whether this position still applies given this Court's denial of a stay and in light of the pending motion for a stay pending appeal in the 2nd Circuit.

f.  **Loan Receivables**

Contrary to what Mr. Roglieri has represented to the public and the Receiver, based on information obtained from the Shepard Mullins law firm, the firm that Mr. Roglieri stated did the "hard closing" when loans were funded, it appears that Prime closed and fully funded at most 4 or 5 loans. Fully funded current loan receivables appear to be:

SRA-CH Richland LLC - $17,366,250

Brightsmith Tulsa LLP - $7,875,000

11

Hudson & Hudson, LLC - $5,250,000

The Receiver has provided written notice to each borrower of the Receiver's appointment and that all loan repayments must be sent to the Receiver.

In addition, the Receiver is investigating a loan made to Indigo Pharmaceutical LLC which was supposed to be funded in the amount of $20,000,000. The Receiver's attorney is in contact with Indigo's counsel to verify the amount actually funded. To be clear, Indigo claims damages as a result of an alleged partial funding and, for this reason, the loan is not included on the balance sheet of assets described below and attached hereto.

### 4.    STATUS OF ISSUES REMAINING IN PRIME INVOLUNTARY

As the Court is aware, Prime's involuntary bankruptcy case (23-11302 NDNY) was dismissed with the Court retaining jurisdiction over the disposition of $5,000,000 paid by 1800 Park Avenue LLC that was misappropriated by Prime and Mr. Roglieri, as well as Prime's motion under Bankruptcy Code §303(g) for the posting of a bond to secure any alleged damages suffered by Prime as a result of the involuntary filing. Given the remoteness of Prime prevailing in showing that it is something more than a fraudulent Ponzi or other scheme, and to save the expense of Prime litigating such issues through the Hogan Lovells firm, in the exercise of his discretion the Receiver notified the Bankruptcy Court that he wished to withdraw the motion. In light of the pending appeal to the Second Circuit, the Bankruptcy Court instead adjourned the motion pending a decision by the Circuit.

Assuming the Receiver is in place following a decision from the Second Circuit, the Receiver intends to seek recovery of the $925,000 in retainer monies to two different law firms relating to the Prime bankruptcy case which were derived from monies the Receiver contends were fraudulently conveyed by Prime to its affiliates.

12

In Prime's bankruptcy case, Hogan filed a Rule 2016 statement which disclosed the following:

> On December 29, 2023, Hogan Lovells received a retainer payment in the amount of $400,000.00 from Prime Commercial Lending LLC. That retainer is being held in a trust account pending resolution of a dispute over ownership of the funds. On January 16, 2024, Hogan Lovells received $200,000.00 from Commercial Capital Training Group and $200,000.00 from National Alliance of Commercial Loan Brokers. On January 30, 2024, Hogan Lovells received another retainer payment in the amount of $50,000.00 from Commercial Capital Training Group.

Prime Commercial Lending LLC, Commercial Capital Training Group and the National Alliance of Commercial Loan Brokers are all defendants in the Receiver's Third-Party Action in which he has asserted fraudulent conveyance claims.

Similarly, Prime's first attorneys in the involuntary bankruptcy case, Cullen and Dykman LLP filed a Rule 2016 disclosure stating that it received a total of $75,000 from Prime Commercial Lending LLC.

## 5.      STATUS OF ROGLIERI CHAPTER 11

As the Court is aware, on February 15, 2024, Mr. Roglieri filed a personal bankruptcy case under Subchapter V of Chapter 11 in the United States Bankruptcy Court for the Northern District of New York (Case No. 24-10157). The Receiver has been actively engaged in the case including receiving and reviewing the initial bare bones petition that was filed, the schedules and statement of financial affairs and other documents that were filed to complete the debtor's initial case filings.

An issue of concern arose over the source of Mr. Roglieri's bankruptcy attorneys $100,000 retainer that was paid in connection with the case. Creditor 1800 Park Avenue LLC, the Receiver and the U.S. Trustee all raised concerns that the monies paid to the attorneys was improperly diverted from 1800 Park Avenue LLC's deposit paid in connection with a Prime loan

transaction. The attorneys quickly recognized the issue and agreed to disgorge the entire retainer. It was agreed, and the ordered by the Bankruptcy Court, that the retainer would be disgorged and the funds would be remitted to the Receiver to be held pending further order of this Court.  The monies have in fact been paid over to the Receiver and they are being held in a segregated interest-bearing account at M&T Bank. A similar issue has arisen with respect to Mr. Roglieri's application to retain the Dreyer Boyajian law firm as special criminal defense counsel and the source of its $100,000 retainer.

Other notable events in the case include:

- The meeting of creditors took place over two days, first via teleconference and then a second day of in person testimony.

- At the first meeting of creditors, Mr. Roglieri was very firm that it was he, and he alone, that had access to Prime's bank accounts.

- At the second meeting of creditors, Mr. Roglieri was unable to testify to any business purpose for the millions of dollars that were transferred from Prime to his affiliated companies that are named in the Receiver's Third-Party Complaint.

- And, just this week, Mr. Roglieri filed Periodic Reports (official bankruptcy form 426) for Prime Commercial Lending, LLC, Commercial Capital Training Group, LLC, Digital Marketing Training Group, LLC, Prime Capital Ventures, LLC, National Alliance of Commercial Loan Brokers, LLC, Shark Ventures, LLC and FUPME, LLC; entities of which he is the sole member.  With the single exception of Prime Capital Ventures, LLC, each Periodic Report states that the entity in question "did not maintain formal financial records such as (1) balance sheets (2)

14

statement of income (loss), or (3) statement of cash flows or that "no financial information is available for this entity" or "no financial information exists." This admitted complete lack of financial information by these affiliated entities provides strong support for the Receiver's claims against them.

The Receiver believes that these factors would support his claim to recover retainer monies paid to Prime's bankruptcy attorneys that, in the Receiver's view, derived from fraudulent conveyance claims by Prime to its affiliates.

Creditor 1800 Park Avenue LLC has filed an adversary proceeding objecting to both dischargeability under Bankruptcy Code §523 as to Mr. Roglieri and other relief as to Prime and other parties relating to the misappropriate of its $5,000,000 ICA deposit.

The Receiver intends to file an adversary proceeding objecting to both dischargeability under Bankruptcy Code §523 and to discharge under Bankruptcy Code §727.  The Receiver will also be filing a proof of claim in the case on behalf of Prime.

### 6.    GENERAL COMMUNICATIONS FROM VICTIMS

The Receiver continues to be contacted from victims of Prime's fraud; including those that have contacted him in the past and new parties seeking information.

### 7.    ACCOUNTING TO THE COURT

All funds received by the Receiver are on deposit, at interest, at M&T Bank.

Because of the sophisticated nature of the accounting required, the Receiver directed BST to assist the Receiver with his accountings.  Attached hereto for the Receivership estate are the following reports which have been prepared by BST:

- Prime Balance Sheet February 29, 2024. Exhibit "F."[5]

- Prime Balance Sheet March 31, 2024. Exhibit "G."[6]

- Prime Profit and Loss February 29, 2024. Exhibit "H."

- Prime Profit and Loss March 31, 2024. Exhibit "I."

- Prime Transaction Detail February, 2024. Exhibit "J."

- Prime Transaction Detail March, 2024. Exhibit "K."

- Berone Balance Sheet February 29, 2024. Exhibit "L."[7]

- Berone Balance Sheet March 31, 2024. Exhibit "M."

- Berone Profit and Loss February 29, 2024. Exhibit "N."

- Berone Profit and Loss March 31, 2024. Exhibit "O."

- Berone Transaction Detail February, 2024. Exhibit "P."

- Berone Transaction Detail March, 2024. Exhibit "Q."

As the attached reports reflect, as of the date of this report the Receiver has paid his professionals and himself for services rendered through the end of February, 2024.

- BST billed and was paid $9,833.75 at hourly rates ranging from $115 to $400.

- The Receiver's law firm Lemery Greisler LLC billed and was paid $105,063.80 for 275.7 hours worked in January and February at an hourly rate of $381.08 which, at the Receiver's direction, reflects a 10% courtesy discount from their standard rates.

---

[5] It was not until February that the Receiver was able to transfer funds. The balance sheet notes a loan receivable for 135 Railroad in the amount of $2,100,000. As noted above, the Receiver has since determined that the loan was not fully funded and is of no value to the Receivership estate.
[6] Same note as above.
[7] The Berone balance sheets do not reflect investments as they are illiquid and the Receiver is not presently able to put a fair value on them.

- The Receiver has been compensated (the money has gone to his law firm) in the amount of $60,907.45 for 150.7 hours worked at an hourly rate of $450.00. This payment also reflects a courtesy discount of 10%.

- In addition, Lemery Greisler LLC was reimbursed a total of $11,870.88 for necessary expenses such as advancing the insurance premium due on the Virginia Beach house, services of local Virginia counsel for preparing and filing a notice of pendency against the house, service of process, overnight delivery service, business entity reports from Montana, title search fees, court filing fees and investigation services relating to the vehicles.

- Additional professional services for BST's work, Lemery Greisler LLC and the Receiver continue to be incurred and will be paid in the ordinary course. BST's work on the forensic accounting and reporting will be reflected in a larger bill for March.  Lemery Greisler LLC's and the Receiver's billings for March, as a result of Mr. Roglieri's bankruptcy case and the resulting more than a month long pause of certain matters, is significantly less than that billed for January and February.

As he has noted in prior reporting, and as is evidenced by:

- the extensive docket in this case and very aggressive litigation posture of Prime through the Hogan firm;

- the extensive docket in Mr. Roglieri's personal bankruptcy case;

- the ongoing docket in the dismissed Prime involuntary bankruptcy case;

17

- the state court litigations;

- the regular interaction requested by victims of Prime's fraud and their attorneys;

- the Receiver's ongoing work with BST on forensic matters, the Receiver's diligence in opening accounts and, with BST's assistance, in providing detailed accounting of funds and assets for the Court;

- the work identifying and contacting the few borrowers with fully funded loans to secure Prime's rights to repayment;

- the extensive investigation that went into identifying and, through the third party action, attempting to secure vehicles and other valuable assets;

- several court appearances in this Court and bankruptcy court;

- attendance at two meetings of creditors in Mr. Roglieri's personal Chapter 11 case; and

- receiving and reviewing the enormous amount of information involved in this case

hardly a day goes by (and this includes all weekends since the case was commenced) without the Receiver having to devote significant attention to his duties.

Pursuant to Bankruptcy Court order, the Receiver also paid the Interim Trustee Christian Dribusch, Esq. who served in Prime's involuntary bankruptcy case. The total fee paid was $39,591.38 for fees and expenses. Both the fee and expense awards and that the Receiver paid were without objection by Prime, the United States Trustee or the petitioning creditors in that case and approved by the Bankruptcy Court. The order providing for the payment reserved the Receiver's right to seek reimbursement for that expense should the Bankruptcy Court award damages, costs and attorney's fees against the petitioning creditors under Bankruptcy Code §303(i).

18

WHEREFORE it is respectfully requested that the Court consider this Fourth Report and grant such other and further relief as is just, necessary and proper.

Dated: April 18, 2024

Respectfully submitted,

 /s/Paul A. Levine
Paul A. Levine, Esq.
RECEIVER
LEMERY GREISLER LLC
Office and P.O. Address
677 Broadway, 8th Floor
Albany, New York 12207
Ph:  (518) 433-8800
Fax:  (518) 433-8823

plevine@lemerygreisler.com