UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

COMPASS-CHARLOTTE 1031, LLC,　　　　　　　Case No.: 1:24-cv-55 (MAD/CFH)

　　　　　　　　　　　　Plaintiff,

　　　-against-

PRIME CAPITAL VENTURES, LLC, BERONE
CAPITAL FUND, LP, BERONE CAPITAL PARTNERS
LLC, BERONE CAPITAL LLC, BERONE CAPITAL
EQUITY FUND I, LP, 405 MOTORSPORTS LLC f/k/a
Berone Capital Equity Partners LLC,

　　　　　　　　　　　　Defendants.
------------------------------------------------------------------X
PAUL A. LEVINE, as Receiver of Prime Capital
Ventures, LLC,

　　　　　　　　　　　　Third-Party Plaintiff,

　　　-against-

KRIS D. ROGLIERI, TINA M. ROGLIERI, KIMBERLY
HUMPHREY a/k/a KIMMY HUMPHREY, PRIME
COMMERCIAL LENDING, LLC, COMMERCIAL
CAPITAL TRAINING GROUP-, THE FINANCE
MARKETING GROUP, NATIONAL ALLIANCE OF
COMMERCIAL LOAN BROKERS LLC and FUPME,
LLC,

　　　　　　　　　　　　Third-Party Defendants.
------------------------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
VACATE THE RECEIVERSHIP ORDER AS TO THE BERONE DEFENDANTS**

　　　　　　　　　　　　　　　　　　CERTILMAN BALIN ADLER & HYMAN, LLP
　　　　　　　　　　　　　　　　　　*Attorneys for Defendants Berone Capital Fund,*
　　　　　　　　　　　　　　　　　　*LP, Berone Capital Partners LLC, Berone Capital*
　　　　　　　　　　　　　　　　　　*LLC, Berone Capital Equity Fund I, LP, and 405*
　　　　　　　　　　　　　　　　　　*Motorsports LLC f/k/a Berone Capital Equity*
　　　　　　　　　　　　　　　　　　*Partners LLC*
　　　　　　　　　　　　　　　　　　90 MERRICK AVENUE, 9TH FLOOR
　　　　　　　　　　　　　　　　　　EAST MEADOW, NY 11554
OF COUNSEL:　　　　　　　　　　　　(516) 296-7000
Thomas J. McNamara, Esq.
Nicole L. Milone, Esq.

8303697.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………...……………..1

STATEMENT OF FACTS……………………………………………………….…………..2

ARGUMENT…………………………………………………………………………………...3

    THE RECEIVERSHIP AS TO THE BERONE DEFENDANTS
    SHOULD BE VACATED: THE RECORDS REVEAL THAT
    THE BERONE DEFENDANTS NEVER HAD PLAINTIFF'S FUNDS……...…………3

    A. FACTORS NECESSARY TO VACATE THE RECEIVERSHIP
       WEIGH IN FAVOR OF BERONE DEFENDANTS…………………………………4

       1. No Evidence of Fraudulent Conduct by Berone…………………………….…….4

       2. No Showing of Imminent Danger or Inadequacy
         of Legal Remedies to Plaintiff……………………………………………………….8

       3. Strong Probability of Greater Harm to Berone……………………………………8

       4. Plaintiff Lacks Probability of Success Against
         Berone and Irreparable Injury……………………………………………………10

CONCLUSION…………………………………………………………………………..12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Baliga v. Link Motion Inc.*,
    No. 18CV11642 (VM) (DF), 2022 WL 2531535 (S.D.N.Y. Mar. 9, 2022),
    *report and recommendation adopted,* No. 18 CIV. 11642 (VM),
    2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022)……………………………………….…3, 4, 8

*Chambers v. Blickle Ford Sales, Inc.*,
    313 F.2d 252 (2d Cir. 1963)……………………………………………………………….4

*Ferguson v. Tabah,*
    288 F.2d 665 (2d Cir. 1961)……………………………………………………………….4

*Melnick v. Press,*
    No. 06-CV-6686 JFB ARL, 2007 WL 2769490
    (E.D.N.Y. Sept. 21, 2007)……………………………………………………………….8

**PRELIMINARY STATEMENT**

Defendants Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC (hereinafter referred to as the "Berone Defendants") respectfully submit this Supplemental Memorandum of Law in further support of their motion for an order relieving the Berone Defendants from the Receivership pursuant to leave granted by this Court's Order (Dkt. No. 177). The Berone Defendants' application was previously made by motion, brought by Order to Show Cause (Dkt. No. 148), to vacate the Receivership Order (Dkt. No. 56) as to the Berone Defendants only, which motion was denied by Memorandum Decision and Order of this Court, dated March 19, 2024 (Dkt. No. 160, the "Order"). In denying the motion, the Order stated: "However, if the records reveal what the Berone Defendants assert – that they never had Plaintiff's funds – then they should likely be released from the Receivership when that information becomes accurate and reliable." (*Id.* at 40) Since the entry of the Order, the Receiver filed his Fourth Report which states: "As to Berone, and in direct response to the Court's inquiry on page 41 of its March 19, 2024 Memorandum-Decision and Order (Doc. 160), the Receiver has not yet obtained any evidence that Berone came into possession of Plaintiff's ICA Deposit." (Dkt. No. 173, at 4)

The Receiver's Fourth Report confirms that there is no evidence that the Berone Defendants ever had Plaintiff's funds in its possession. As the purpose of the Receivership was to locate Plaintiff's funds, and as there is no evidence after a months-long forensic analysis of Berone's bank records that it ever held Plaintiff's funds, the purpose of the Receivership is no longer being met with respect to the Berone Defendants. As such, the Receivership Order should be vacated as to the Berone Defendants.

1

8303697.1

## **STATEMENT OF FACTS**

The relevant facts in support of the present Letter Request were fully set forth in the Berone Defendants' motion to vacate the Receivership Order as to the Berone Defendants only (Dkt. Nos. 148 and 157), which is hereby incorporated by reference, in the interest of judicial economy.

## ARGUMENT

**THE RECEIVERSHIP AS TO THE BERONE DEFENDANTS SHOULD BE VACATED: THE RECORDS REVEAL THAT THE BERONE DEFENDANTS NEVER HAD PLAINTIFF'S FUNDS**

The Order denying the Berone Defendants' prior motion to vacate the Receivership Order as to the Berone Defendants stated: "However, if the records reveal what the Berone Defendants assert – that they never had Plaintiff's funds – then they should likely be released from the Receivership when that information becomes accurate and reliable." (Dkt. No. 160, at 40) Since the entry of the Order, the Receiver filed his Fourth Report which states: "As to Berone, and in direct response to the Court's inquiry on page 41 of its March 19, 2024 Memorandum-Decision and Order (Doc. 160), the Receiver has not yet obtained any evidence that Berone came into possession of Plaintiff's ICA Deposit." (Dkt. No. 173, at 4)

As the Court rightly stated in the Order, "[t]he purpose of the Receiver was to locate Plaintiff's ICA deposit which Plaintiff alleges was secured by fraud from Prime Capital and the Berone Defendants." (Dkt. No. 160, at 40) Now, over four months after the permanent Receivership was granted (Dkt. No. 56), there is no evidence that Berone Defendants were ever in possession of Plaintiff's ICA deposit. (Dkt. No. 173, at 4) Since the purpose of the Receivership was to locate Plaintiff's funds and there is no evidence that Berone Defendants ever had Plaintiff's funds (which the Receiver has now conceded), the justification for the receivership over the Berone Defendants no longer exists. *See Baliga v. Link Motion Inc.,* No. 18CV11642 (VM) (DF), 2022 WL 2531535, at *16 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted,* No. 18 CIV. 11642 (VM), 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) (receivership terminated where court found, although a receiver was proper at the time of appointment, reason for the appointment "no longer exists" due to changed circumstances).

### A. FACTORS NECESSARY TO VACATE RECEIVERSHIP WEIGH IN FAVOR OF BERONE DEFENDANTS

It is well-settled that the appointment of a receiver is an "extraordinary remedy to be resorted to only where some injury to property can be avoided in no other way." *Chambers v. Blickle Ford Sales, Inc.,* 313 F.2d 252, 260 (2d Cir. 1963); *Ferguson v. Tabah,* 288 F.2d 665, 674 (2d Cir. 1961) (appointment of a receiver is a "drastic remedy usually imposed only where no lesser relief will be effective"). *See also* Dkt. No. 148-11, at 3-4. In determining whether a receivership order should be vacated, courts will consider the circumstances under which the receivership was granted in the first place and determine whether such justification no longer exists. *Baliga* at *16. The following factors may be considered by the Court on such a motion: (1) fraudulent conduct on the part of the defendants; (2) imminent danger of the defendants' property being lost or diminished; (3) inadequacy of available legal remedies against the defendants; (4) probability that harm to plaintiff would be greater than injury to defendants by denying appointment; or, (5) plaintiff's probable success in the action and possibility of irreparable injury to plaintiff's interests in defendants' property. *Baliga* at *16-17.

As set forth more fully in the Berone Defendant's motion, these factors weigh heavily in favor of vacating the receivership as to the Berone Defendants. (Dkt. No. 148-11, at 4) The Receiver's Fourth Report further demonstrates this.

### 1. No Evidence of Fraudulent Conduct by Berone

Since the appointment of the Receiver over four months ago, the Receiver has not obtained any evidence of fraudulent conduct on the part of the Berone Defendants that would support the Plaintiff's claims against Berone. (Dkt. 148-1 at ¶¶12-16) Importantly, the Court in its Order acknowledged that, "[t]here is some evidence that would support vacatur of the receivership over

4

Berone for a lack of evidence of fraudulent conduct by Berone as it relates to Plaintiff…" (Dkt. No. 160, p. 31)

The Receiver has had access to all of the Berone Defendants' bank accounts since January 2024. (Dkt. No. 56) The Receiver had a forensic accountant review these bank records. (Dkt. No. 173, at 1) After this forensic review of all of Berone Defendant's bank records obtained directly from the Receiver's access through the financial institutions themselves, the Receiver has no evidence that the Berone Defendants were ever in possession of Plaintiff's funds. (Dkt. No. 173, at 4) No further discovery or forensic investigation into the Berone Defendants' financial records can possibly change that fact.

The Receiver admits that the Signature Bank records (that are currently under FDIC control) are "unlikely" to provide any evidence that the Berone Defendants were in possession of Plaintiff's ICA deposit. (Dkt. No. 173, at 4) That is because the FDIC closed and took control of Signature Bank in March of 2023 and the Plaintiff's ICA deposit was not paid until April of 2023, a month after Signature Bank closed. (*Id*.) Thus, it is more than just "unlikely" – it is *not possible* that Signature Bank will produce records to the Receiver that the Barone Defendants' had possession of the Plaintiff's ICA deposit a month before it existed.

The Receiver states a concern that the Berone Defendants have not produced internal records such as profit and loss statements, balance sheets, check registers and other similar documents. (Dkt. No. 173, at 4) As detailed previously in the underlying motion and further in response to the Receiver's March 2024 requests to Berone, the Berone Defendants are made up of start-up businesses run by their two principals out of a basement office that utilizes electronic banking records in place of paper statements as well as financial portals to track annual or monthly financial data, as opposed to keeping accountants on retainer as with traditional retail businesses.

5

(Dkt. No. 173-1, at Ex. C, responses to nos. 2, 3, 8; Dkt. No. 148-1, ¶1) In keeping with this type of small business model, the Berone Defendants simply did not create or maintain the financial documents requested by the Receiver, as indicated by Berone's response attached as Exhibit "C" to the Receiver's Fourth Report. (Dkt. No. 173-1, at Ex. C)

Moreover, the Receiver does not explain how these types of financial records could possibly provide evidence of Plaintiff's ICA deposit in the Berone Defendants' possession. Berone Capital Fund LP is not a traditional retail business but rather it is an investment vehicle whose profits and losses are tracked not by such financial records referenced by the Receiver, but by the Royal Bank of Canada's Capital Market statements. These statements outline the traditional and non-traditional investments (those bought and sold), they present the monthly, quarterly and annual short-term/long-term capital gains and losses (e.g. Profit and Loss statements), and the statements also show any dividends or interest the Fund earns monthly, quarterly and annually. (Dkt. 156-2, at Ex. 7 therein, pp. 114-124) The RBC Capital Market statements *are* the financial records of Berone Capital Fund LP, and the Receiver has had access to these records since his appointment. No other financial records could provide evidence to the contrary to what the Receiver has in his possession, which demonstrates that the Berone Defendants never had Plaintiff's ICA deposit.

The Receiver's Fourth Report mentions that Prime and Berone accuse each other of fraud in relation to the Joint Venture Agreement ("JVA") as well as an account statement presented by Prime purporting to reflect that Prime had $52,364,000 on deposit at RBC. (Dkt. 173, at 5-6) These are the only two pieces of evidence that purport to tie the Berone Defendants to Plaintiff's money as recognized by this Court in the Order – pieces of evidence that have been "called into question by sworn declarations made under the penalty of perjury." (Dkt. No. 160 at 39) Now with the filing of the Receiver's Fourth Status Report, this evidence is called into question by the Receiver

himself. First, with respect to the purported account statement, the Receiver in its Fourth Report states "the [alleged RBC] statement is suspect on its face…" (Dkt. 173, at 6) Further, the Plaintiff acknowledges in its Complaint that this alleged RBC statement from Prime is false. (Dkt. No. 1, ¶153) Second, regarding the JVA, which is the sole basis upon which Plaintiff rests its claims against Berone,[1] the Receiver explicitly states that the "authenticity of that agreement [the JVA] is suspect." (Dkt. 173, at 5) However, given the dearth of any evidence that the Berone Defendants were in possession of the Plaintiff's ICA deposit, alleged factual questions are not a valid reason for continuing the Receivership as to the Berone Defendants.

The claims against Berone Defendants regarding luxury purchases are also contradicted by the record. As detailed in the motion and supported by the Limited Partnership Agreement ("LPA") between Berone Capital Fund, LP and Berone Capital Partners, LLC, dated November 23, 2021 (Dkt. Nos. 156-2; 157, ¶¶14-16), the Berone Defendants are entitled to management fees (approximately 2% per year) as the investment manager and organizational and operating expenses (such as marketing and legal fees) are chargeable to the partnership. (Dkt. 156-2, at 40-42 [pp. 38-39 of the LPA, §§7.01, 7.02]) None of these so-called luxury purchases were made with Plaintiff's money – as it has been established that Berone never had Plaintiff's money – and, further, none of these purchases were made with Prime's money, as supported by the LPA. The Receiver acknowledges in the Fourth Status Report the investment relationship between Prime and Berone pursuant to the LPA, subscription agreement and investment advisory agreement. (Dkt. No. 173, at 5)

---

[1] As previously asserted in the motion, all of Plaintiff's claims against Berone (fraudulent inducement, conversion, unfair and deceptive trade practices) are alleged based on the relationship between the defendants as set forth in the purported JVA. (Dkt. No. 157-2, at 2)

The claim that Prime invested Plaintiff's money through the Berone Defendants is also unsupported and contradicted by the documents. The subscription documents executed by Prime demonstrate that the source of its money used for the investment was "earnings" – negating any claims that Prime invested Plaintiff's ICA deposit through Berone. (Dtk. 153-2, p. 51 of 67) This was clearly detailed in the underlying motion and reiterated again to the Receiver as supported by the Fourth Status Report. (Dkt. No. 157, ¶17; Dkt. No. 173-1, Ex. C, response to no. 11)

Finally, with regard to the transfers relating to Reign Financial International Inc. and Martin Karo, this Court has acknowledged that there is "absolutely no indication that any of that money belonged to Plaintiff." (Dkt. No. 160 at 34) The Receiver's Fourth Report does not negate this, and the Berone Defendants provided its records of funds transferred on the request of Prime through RBC relating to Reign and/or Karo as requested by the Receiver. (Dkt. No. 173-1, Ex. C at response to no. 7)

### 2. No Showing of Imminent Danger or Inadequacy of Legal Remedies to Plaintiff

There has been no showing of imminent danger or an inadequacy of a monetary award to Plaintiff if the Berone Defendants were not in receivership as there is no evidence that the Berone Defendants received Plaintiff's $15 million – which the Receiver has now confirmed (Dkt. No. 173, at 4). *See Melnick v. Press,* No. 06-CV-6686 JFB ARL, 2007 WL 2769490, at *2 (E.D.N.Y. Sept. 21, 2007) (denying motion to appoint receiver where movant failed to establish imminent danger that assets will be lost). *See also* Dkt. No. 148-11 at 4-5.

### 3. Strong Probability of Greater Harm to Berone

Berone has argued in the underlying motion that it has been irreparably harmed by the appointment of the Receivership. (Dkt. No. 148-1, ¶¶21-26) *See also Baliga*, at *17 (appointment of a receiver is an equitable remedy for which considerations of harm to the parties may be weighed

8

by the court in assessing the appropriateness of a receivership). Some of this harm is acknowledged by the Court in its Order (e.g., arrears on Bloomberg market data account, lost relationships with RBC and TD Bank). (Dkt. No. 160, at 32) However, the Court expressed concern that the Berone Defendants only offered self-serving declarations uncorroborated by evidence that they will be harmed by the loss of its clients as a result of the receivership. (*Id*. at 31) To the contrary, this harm is documented and has now been acknowledged by the Receiver in his Fourth Status Report.

The Berone Defendants have been advised that, effective June 5, 2024, RBC Clearing & Custody is terminating its agreement with Berone Capital LLC and accounts must be transferred to a new broker. (Dkt. No. 148-7) As set forth in the underlying motion, Berone's clients will have to find other registered investment advisors with clearinghouse capabilities for their investment accounts as of June 5, 2024 – and it will be near impossible for Berone to win these clients back if (rather, when) that happens. (Dkt. No. 157, ¶19) That date is fast approaching, and the harm caused to Berone by the loss of clients and the abrupt deplatforming and termination of this relationship (solely as a result of the receivership) is indisputable.

This harm goes beyond that acknowledged by the Court, that Berone's relationship with RBC is terminated (Dkt. No. 160, at 32), but extends to Berone Capital LLC's relationship with its investment clients. Berone Capital LLC has several investment clients that will have to find a new investment advisor and new clearinghouse for their accounts due to the RBC termination – and these clients were listed in Berone's response to the Receiver's March 2024 request attached to his Fourth Status Report. (Dkt. No. 173-1, Ex. C, response to no. 9)

Another, related, instance of harm visited upon Berone by the receivership is the inability of Berone to manage these clients' investment portfolios. (Dkt. No. 148-1, ¶21) The Receiver's Fourth Report mentions a "concern" of the Receiver that no clients of Berone have yet contacted

the Receiver, but that he remains prepared to work to assist any clients "as he may be able." (Dkt. 173, at 4-5) First, the Receiver admits in his report that Berone has clients with concerns regarding their accounts based on the production of email correspondence from those clients as well as information provided by Berone to the Receiver. (*Id*. at Ex. C)[2] The Receiver does not claim to have attempted to contact those clients. However, as acknowledged by the Court in its Order, the Receiver stated if Berone provided proof of its clients, he would "commit to considering seeking Court permission to allow him to return any funds of such clients he has seized." (Dkt. No. 160 at 32-33, *quoting* Dkt. No. 153 at 11)

The Berone Defendants have also provided the Receiver with information regarding another investor subscribed to the Berone Capital Fund LP that is unrelated to Plaintiff or Prime. (Dkt. No. 173-1, Ex. C, response to no. 1) Any attempt by the Receiver to liquidate this investment would damage this unrelated investor client of Berone – as supported by the detailed contractual obligations between Berone and the investor provided to the Receiver. (*Id*.) The Receiver acknowledges the illiquidity of Berone investments and inability to value them in his report. (*Id*. at pp. 10, 16, n. 7)

### 4. Plaintiff Lacks Probability of Success Against Berone and Irreparable Injury

Notably, this is not a summary judgment motion in which the Court is being asked to dismiss all claims against the Berone Defendants and release them from this Court's jurisdiction. To the contrary, this request will merely return control of the Berone Defendants to its principals

---

[2] Berone redacted portions of client names in its response to the Receiver but noted it would provide unredacted names upon agreement of the Receiver not to file the names publicly in order to preserve client/investor privacy. (Dkt. No. 173-1, Ex. C, n. 1)

10

and permit them to continue to defend against the Plaintiff's claims in this action.[3] Additional discovery will be had. That does not warrant being kept in a receivership. However, to permit the Receivership to continue over the Berone Defendants based solely upon the suspicions, innuendo or disbelief of the Receiver (or the Plaintiff), when even a months-long forensic analysis of Berone's bank records reveals no evidence that it ever held Plaintiff's funds, would be manifestly unfair.

As this Court previously stated in the Order, in order for Plaintiff to ultimately be successful on the merits of its claims against the Berone Defendants, "there must be some evidence tying the Berone Defendants to Plaintiff's money." (Dkt. 160, at 39) The lack of any evidence tying Berone to Plaintiff's money was evident to the Court at the time of its March 2024 Order when the Court stated: "No bank records showing otherwise – that the Berone Defendants do in fact have some of Plaintiff's money – have been produced." (*Id.*) The Court went further, explaining that, "there is no evidence that the money spent by the Berone Defendants [on luxury expenses] was Plaintiff's money. This would support vacatur of the receivership." (*Id.*)

The Court allowed the Receiver thirty days to further investigate and issue his fourth status report to "either corroborate or negate the Berone Defendants' involvement in this case as it relates to Plaintiff…" (*Id.*, at 41) In response, the Receiver filed the Fourth Status Report which confirmed the Court's observation that there is no evidence tying Berone to Plaintiff's money: "the Receiver has not yet obtained any evidence that Berone came into possession of Plaintiff's ICA deposit."

---

[3] In fact, Plaintiff itself should support this request - if Plaintiff truly believes it has a claim against Berone, it should support the request for the Berone principals to resume control over Berone Defendants which will prevent the companies from being put out of business by virtue of the receivership order.

(Dkt. 173, at 4) Without the causal connection between Plaintiff's loss and the receivership over the Berone Defendants, there is no longer a basis for which this receivership should be continued.

## CONCLUSION

Based on the foregoing, the Receivership Order (Dkt. No. 56) should be vacated solely with respect to the Berone Defendants.

Dated: East Meadow, New York
       May 21, 2024

                              **CERTILMAN BALIN ADLER & HYMAN, LLP**

By: /s/ Nicole L. Milone
 Thomas J. McNamara, Esq.
 NDNY Bar No. 511660
 Nicole L. Milone, Esq.
 NDNY Bar No. 705183
*Attorneys for Defendants Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC f/k/a Berone Capital Equity Partners LLC*
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000
tmcnamara@certilmanbalin.com
nmilone@certilmanbalin.com

OF COUNSEL:
Thomas J. McNamara, Esq.
Nicole L. Milone, Esq.