UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COMPASS-CHARLOTTE 1031, LLC,

                                     Plaintiff,                    Case No.:1:24-cv-55
  -against-                                                     (MAD/DJS)

PRIME CAPITAL VENTURES, LLC
BERONE CAPITAL FUND, LP
BERONE CAPITAL PARTNERS LLC
BERONE CAPITAL LLC
BERONE CAPITAL EQUITY FUND I, LP
405 MOTORSPORTS LLC f/k/a Berone Capital Equity
Partners LLC

                                     Defendants.
_____

PAUL A. LEVINE, as RECEIVER of PRIME CAPITAL
VENTURES, LLC,

                                 Third-Party Plaintiff,
  -against-

TINA M. ROGLIERI, KIMBERLY HUMPHREY a/k/a
KIMMY HUMPHREY, PRIME COMMERCIAL
LENDING, LLC, COMMERCIAL CAPITAL TRAINING
GROUP, THE FINANCE MARKETING GROUP,
NATIONAL ALLIANCE OF COMMERCIAL LOAN
BROKERS LLC, FUPME, LLC

                                 Third-Party Defendants.
_____

**MEMORANDUM IN RESPONSE TO SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE RECEIVERSHIP AS TO THE BERONE DEFENDANTS**

                                                  LEMERY GREISLER LLC
                                                  Paul A. Levine, Esq. Bar Roll No. 103758
                                                  677 Broadway, 8th Floor
                                                  Albany, New York 12207
                                                  Counsel for the Receiver, Paul A. Levine, Esq.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT...................................................................................... 1

STATEMENT OF FACTS............................................................................................... 1

CONCLUSION................................................................................................................. 7

## PRELIMINARY STATEMENT

Paul A. Levine, Esq. as Receiver of Prime Capital Ventures, LLC, through his attorneys Lemery Greisler LLC, respectfully submits this memorandum in response to the Supplemental Memorandum of Law in Support of Motion to Vacate the Receivership Order as to the Berone Defendants ("Berone") (Doc. 179). While the Receiver has not been able to discover any facts showing that Berone received any of Plaintiff Compass – Charlotte 1031, LLC's ("Compass") monies it claims in this action, in the Receiver's judgment important questions remain as to Berone's role in this case that could justify the Court retaining the receivership over Berone, at least in a modified form. The Receiver of course respectfully defers to the Court's judgment as to whether Berone should remain under the Receivership and submits this memorandum and accompanying declaration to provide facts and context as the Court determines the pending motion. So as to not belabor the record, the Receiver will not reiterate the law on receiverships that has been set forth in the Court's prior decisions and, mindful of the Court's focus on the issue, will limit this response to certain of his findings and his opinions based on those findings.

## RECEIVER'S RESPONSE

As stated in his Fourth Report, the Receiver has found no evidence that Berone came into possession of Compass's ICA deposit. Doc. 173, p. 4. The Court's present stay of discovery (Text Order at Doc. 170) has prevented the Receiver from obtaining Bzerone's Signature Bank records because the FDIC, notwithstanding a Stipulation and Protective Order (Doc. 162) requires the Receiver to serve a subpoena. It is, however, unlikely that those records would show anything different. This is because due to its insolvency Signature Bank came under the FDIC's control on March 12, 2023 and Compass' complaint avers that it did not pay its deposit until April 27, 2023. Doc. 173, page 4, fn. 3. The Receiver acknowledges the Court's statement at page 40 of its March

1

19 Memorandum-Decision and Order that "if the records reveal what the Berone Defendants assert – that that they never had Plaintiff's funds – they should likely be released from the receivership when that information becomes accurate and reliable." Doc. 160, p 40. The records the Receiver has obtained do not show that Berone came into possession of the monies. The Receiver believes, however, that other factors should be taken into consideration.

This is because the Court's decision also gave the Receiver time to "review documents and present the same to the Court which will either corroborate or negate the Berone Defendants' involvement in this case as it relates to Plaintiff." Doc. 160, p. 41. The Receiver's Fourth Report provides information on this broader question, whether the Berone defendants have negated their involvement in the case as it relates to Compass because Prime's argument, as the Court is aware, is that Berone was to maintain a hedge fund which would allow Prime to fund loans to its clients such as Compass and, when necessary, return ICA deposits.

The Receiver is not, of course, the finder of fact. With that said, and as set forth in his Fourth Report, despite its protestations to the contrary the Receiver still has questions regarding Berone's involvement in this case. Mr. Beguesse asserts that Berone Capital LLC is a "Securities and Exchange Commission Registered Investment Advisor." Doc. 148-1 ¶1. As such, the fact that Berone has not produced to the Receiver any of its internal bookkeeping or financial records and claims not to have any is, in the Receiver's mind, not credible. While the Receiver acknowledges that the various banks and brokerages have, in response to the Receiver's exercise of his duties, frozen Berone's access to its accounts, the explanation that Berone would not have any internal records of its activities involving tens of millions of dollars of monies belonging to others seems reckless at best and unbelievable at worst.

2

The explanation seems to be that Berone, as a small start-up entity, relied exclusively for its financial records on the records maintained by its banks and brokerage houses. See Doc. 173-1, at Exhibit C, response to nos. 2, 3, and 8. That Berone would not, without having to access several different on-line portals, be able to provide internal records to answer simple questions like how much in total did it have on deposit for its clients, and where was that the money allocated, and to whom and in what investment vehicles, is simply not credible. Whether such records, if they exist, would reference Compass would be relevant. What Berone is asking the Court and Receiver to believe is that independent of online account access it simply has no records of its financial activities involving tens of millions of dollars. That the Receiver finds hard to believe.

Indeed, the seriousness of the issue is demonstrated by Berone's response to the Receiver's request for "[a]ll documents in their possession [Berone's] possession relating to the investments set forth on the schedule sent to me which I attached as Exhibit "5" to my declaration in opposition to your motion to vacate the receivership as to Berone including account statements, prospectuses, and any other documents what would allow me to investigate how to liquidate these investments."[1] The response was that "[t]here is another investor that is subscribed to Berone Capital Fund LP: 'P. Holdings' (name redacted to protect investor identity), who made an initial investment of $1,000,000.00. Attempting to liquidate this investment would cause proportional damages to this investor, that has nothing to do with Plaintiff's ICA deposit or Prime Capital Ventures. As per the liquidation, there is a legitimate process to follow based on the contractual obligations between Berone Capital Fund LP and the various Administrators so as to not cause harm to another investor in the Fund." Doc. 173-1, page 1.

---

[1] The referenced Exhibit "A" is attached to the Levine Declaration at Exhibit "A" and among other agreements, obligated Berone to provide updated reporting as to position and valuation to RBC during each calendar month or quarter. Without internal records, how was Berone going to provide that reporting?

3

Given that apparently Prime's monies were invested with another parties' monies, to even begin inquiries as to how to liquidate Prime's share of the fund, requires records to verify the investment and the amount of investment made by both P. Holdings and Prime. If Berone is to be believed, it has no internal records that would even start to provide this information.

The Receiver is also troubled by Berone's failure, at Kris Roglieri's urging, to cooperate with Christian Dribusch, Esq. who was the interim bankruptcy trustee when Prime was an involuntary debtor in bankruptcy. Attached as Exhibit "B' to the accompanying Levine Declaration is an email exchange commencing December 27th 2023 and continuing into December 29th 2023 between Trustee Dribusch and Mr. Beguesse. On December 27th, Mr. Dribusch emailed Mr. Beguesse, copying several others including Kris Roglieri, advising of his appointment and advising Mr. Beguesse to secure the account and to not disburse any funds absent Mr. Dribusch's consent. Late on December 27th, Mr. Beguesse acknowledged receipt of the email and on December 28th Mr. Dribusch asked him to confirm the amount in Prime's account. On December 29th, at 8:58 a.m., Mr. Beguesse replied that he was "currently overseas and [did] not have secure access to client accounts."[2] At 9:58 a.m. Mr. Roglieri texted Mr. Beguesse and said, in pertinent part, "I saw the email you received. We are getting this case dismissed next week so if you can refrain from responding to him until late next week and also can we have a conversation before you respond off the record." Mr. Beguesse responded :[h]ey Kris you got it." Levine Declaration Exhibit "C." December 28th 2023 was a Thursday, late "next week" was Thursday January 4th or Friday January 5th 2024.

---

[2] This is an assertion that the court already remarked "rings hollow" because it "fail[ed] tp explain how they could be absent for such a period without causing harm to legitimate business activities, since they have no other employees." Doc. 160 at p. 32, fn 8.

4

In this context, the Bankruptcy Court entered an order on January 3rd 2024 directing Berone to provide disclosure to the Trustee by the next day. Prime consented to the order. Levine Declaration Exhibit "D." Berone failed to comply and several days later the Bankruptcy Court found Berone in contempt and issued a sanction of $1,000 per day from January 9th until it complied. Levine Declaration Exhibit "E." At the time that the Trustee requested the information, the Bankruptcy Court ordered the production and the contempt order was issued, all before the receivership was put into place by this Court. At the time, Berone presumably had full access to its online account records but, apparently, was abiding by Mr. Roglieri's request to slow walk any cooperation with the Trustee even to the point of being held in contempt. These facts show that Berone was very willing to impede the Trustee's efforts to obtain information in the involuntary case brought by Compass and two other creditors.

The Receiver's Fourth Report also detailed the ongoing disputes between Berone and Prime as to: (i) who produced the fraudulent RBC account statement showing allegedly $52,364,000 on deposit at RBC; (ii) whether the Joint Venture Agreement is genuine; (iii) whether Berone was authorized to send millions of dollars to Martin Karo's attorney escrow account; and (iv) what representations Berone may have made to Prime about obtaining a line of credit based on the hedge fund that would have allowed Berone to meet its obligations to its clients. Doc. 173, pp. 2 and 5-6 and Doc. 129-2 generally.

To the date of this response, the Receiver has yet to be contacted by a single client of Berone with regard to an account or funds in an account. As previously stated, the Receiver stands ready to work with any such clients should they contact him and, to the Receiver's knowledge, Berone has not encouraged any of its clients to contact the Receiver. That no client has contacted

the Receiver, despite Berone's knowledge of his willingness to work with its other clients, calls into question some of the harm Berone claims.

As stated in his Fourth Report, the Receiver's efforts have been delayed by the Court's stay on discovery. Those efforts include subpoenas to Martin Karo and his bank to learn more about the many millions that Berone sent to his escrow account and the disposition of the monies as well as many other subpoenas the Receiver was preparing to serve at the time the Court clarified whether the Receiver was allowed to pursue discovery.

As this response began, the Receiver has no evidence that Berone received any of Compass's monies. With that said, the Receiver cannot with certainty state that Berone had no involvement with Compass because Prime asserts the joint venture agreement is valid and that Berone was to maintain a hedge fund and line of credit that would allegedly have allowed Prime to meet its obligations to Compass and other parties. And, because Prime asserts that it is Berone that falsified the RBC statement. Finally, Berone was clearly impeding the interim trustee's investigation during the involuntary bankruptcy case brought by Compass and others.

Should the Court determine to remove Berone from the receivership, it is respectfully suggested that the Court alternatively consider fashioning a narrowing of the Receivership such that it is maintained not over the Berone entities themselves but, rather, over any of Prime's assets that were received and are maintained in the name of Berone Capital Fund LP in proportion to the percentage that Prime's monies contributed to the total investments maintained therein.

## CONCLUSION

Wherefore, it is respectfully submitted that the Court consider this submission in determining Berone's motion and grant such further relief as this Court deems just and equitable.

Dated: June 4, 2024
      Albany, New York

                          Respectfully Submitted,
                          Lemery Greisler LLC

                          _____
                          Paul A. Levine, Esq
                          Bar Roll No.103758
                          Counsel for the Receiver, Paul A. Levine, Esq.
                          677 Broadway, 8th Floor
                          Albany, New York 12207
                          (518) 433-8800
                          plevine@Lemerygreisler.com