**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COMPASS-CHARLOTTE 1031, LLC,**

                        **Plaintiff,**            **1:24-CV-55**
                                                 **(MAD/CFH)**
  -against-

**PRIME CAPITAL VENTURES, LLC**
**BERONE CAPITAL FUND, LP**
**BERONE CAPITAL PARTNERS LLC**
**BERONE CAPITAL LLC**
**BERONE CAPITAL EQUITY FUND I, LP**
**405 MOTORSPORTS LLC f/k/a Berone Capital Equity**
**Partners LLC,**
                        **Defendants.**
_____

**PAUL A. LEVINE as RECEIVER,**

                    **Third-Party Plaintiff,**
  -against-

**TINA M. ROGLIERI, KIMBERLY**
**A. HUMPHREY, PRIME COMMERCIAL LENDING,**
**LLC, COMMERCIAL CAPITAL TRAINING GROUP,**
**THE FINANCE MARKETING GROUP, NATIONAL**
**ALLIANCE OF COMMERCIAL LOAN BROKERS**
**LLC, FUPME, LLC,**

                    **Third-Party Defendants.**
_____

**APPEARANCES:**                  **OF COUNSEL:**

**HINCKLEY, ALLEN & SNYDER LLP**     **CHRISTOPHER V. FENLON, ESQ.**
30 South Pearl Street, Suite 901          **KIERAN T. MURPHY, ESQ.**
Albany, New York 12207                **JAMES L. TUXBURY, ESQ.**
Attorneys for Plaintiff

**PARKER POE ADAMS &**             **WILL ESSER, ESQ.**
**BERNSTEIN LLP**                    **ERIC H. COTTRELL, ESQ.**
620 South Tyron Street, Suite 800

1

Charlotte, North Carolina 28202
Attorneys for Plaintiff

**HOGAN LOVELLS US LLP**                    **PIETER H.B. VAN TOL, III, ESQ.**
390 Madison Avenue                          **PETER W. BAUTZ, ESQ.**
New York, New York 10017
Attorney for Defendant Prime Capital
Ventures, LLC, and Third-Party Defendants
Kimberly A. Humphrey, Prime Commercial
Lending  LLC, Commercial Capital Training
Group, LLC, The Finance Marketing Group,
National Alliance of Commercial Loan
Brokers LLC, and FUPME, LLC

**O'CONNELL, ARONOWITZ LAW FIRM**           **BRIAN M. CULNAN, ESQ.**
54 State Street – 9th Floor                 **PETER A. PASTORE, ESQ.**
Albany, New York 12207
Counsel for Third-Party Defendant
Tina M. Roglieri

**LEMERY GREISLER, ESQ.**                   **PETER M. DAMIN, ESQ.**
677 Broadway – 8th Floor                    **ROBERT A. LIPPMAN, ESQ.**
Albany, New York 12207
Counsel for the Receiver Paul A. Levine

**CERTILMAN BALIN ADLER**                   **NICOLE MILONE, ESQ.**
**& HYMANN LLP**                            **THOMAS J. MCNAMARA, ESQ.**
90 Merrick Avenue – Ninth Floor             **JASPREET S. MAYALL, ESQ.**
East Meadow, New York 11554
Attorneys for Defendants Berone Capital
Fund, LP, Berone Capital Partners LLC,
Berone Capital LLC, Berone Capital Equity
Fund I, LP, and 405 Motorsports LLC

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On January 12, 2024, Plaintiff Compass-Charlotte 1031, LLC ("Plaintiff") filed a

complaint and an emergency motion seeking the appointment of a receiver over the Defendants.

*See* Dkt. Nos. 1, 6.  Plaintiff alleges a breach of contract claim against Defendant Prime Capital

Ventures, LLC ("Prime Capital"), and fraud in the inducement, conversion, and unfair and deceptive trade practice claims against Prime Capital and the "Berone Defendants"—Berone Capital Fund, LP, Berone Capital Partners, LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP, and 405 Motorsports LLC. *See* Dkt. No. 1. Prime Capital opposed appointment of a receiver, *see* Dkt. Nos. 12, 13, and the Berone Defendants did not appear or respond.

Following a January show cause hearing, the Court appointed a permanent receiver, Paul Levine, Esq., over all Defendants. *See* Dkt. No. 56. Prime Capital sought to stay the appointment pending its appeal to the Second Circuit, and the Berone Defendants appeared and moved to vacate the appointment. *See* Dkt. Nos. 60, 70, 96, 148. The Receiver filed a Third-Party complaint against Third-Party Defendants Kimberly Humphrey, Tina Roglieri, Prime Commercial Lending, LLC, Commercial Capital Training Group, LLC, the Finance Marketing Group, National Alliance of Commercial Loan Brokers, and FUPME, LLC, alleging fraudulent conveyance, breach of fiduciary duty, corporate waste, conversion of corporate assets, and theft of corporate opportunity. *See* Dkt. No. 71.[1]

On March 19, 2024, the Court denied Prime Capital's and the Berone Defendants' requests to vacate or stay appointment of the Receiver. *See* Dkt. No. 160. However, the Court provided "the Receiver thirty days to review documents and present the same to the Court" concerning "the Berone Defendants' involvement in this case as it relates to Plaintiff." *Id.* at 41. The Court permitted "the Berone Defendants to file supplemental briefing concerning the receivership," following receipt of additional records. *Id.*

---

[1] The third-party complaint also named Kris Roglieri, the sole owner of Prime Capital and the other Third-Party Defendant entities. *See* Dkt. No. 71. He was dismissed from this case following Prime Capital's filing for bankruptcy. *See* Dkt. No. 160.

Presently pending before the Court is the Berone Defendants' supplemental request to vacate appointment of the Receiver.  *See* Dkt. No. 179.  The Receiver and Plaintiff respond in opposition.  *See* Dkt. Nos. 180, 181.

## II. BACKGROUND

For a full recitation of the lengthy factual and procedural background of this case, the parties are referred to the Court's Memorandum-Decisions and Orders dated January 24, 2024, and March 19, 2024.  *See* Dkt. Nos. 56, 160.

For clarity in this decision, the Court will briefly summarize the relevant facts.  Plaintiff alleges that Prime Capital and the Berone Defendants stole $15,902,250.00 from Plaintiff.  *See* Dkt. No. 1.  This is purportedly evidenced by Plaintiff wiring the money to Prime Capital as an interest credit deposit, to be held in an interest credit account ("ICA").  *See id.* at ¶¶ 130-31.  That interest was given in exchange for Prime Capital's promise that it would provide Plaintiff with a $79,511,250 loan for a real estate venture.  *See id.* at ¶¶ 118, 129.  Plaintiff paid its deposit, and Prime Capital provided nothing.  *See id.* at ¶¶ 130-37.

Plaintiff and several other creditors of Prime Capital entered Prime Capital into an involuntary bankruptcy proceeding alleging similar schemes to that which was perpetuated upon Plaintiff.  *See id.* at ¶¶ 4 n.1, 138.  It was through that proceeding that the Berone Defendants' name entered the conversation.  Prime Capital asserted that it and the Berone Defendants were in a joint venture agreement by which the Berone Defendants would obtain money for proposed lines of credit.  *See id.* at ¶¶ 92-96.  Prime Capital contended that its money was being held in a bank account in the name of Berone Capital Fund LP.  *See id.* at ¶ 152.  The Berone Defendants never appeared in the involuntary bankruptcy proceeding.  *See id.* at ¶¶ 162, 164.

When this case was opened, the Berone Defendants did not appear. It was not until three and a half weeks later when they filed an answer to the Complaint that the Berone Defendants appeared. *See* Dkt. Nos. 96, 97. This was after the Court appointed a temporary receiver, ordered the Berone Defendants to show cause why one should not be appointed, and held a show cause hearing. *See* Dkt. No. 8; Text Minute Entry 01/22/2024.

The Berone Defendants are run by two individuals: Jeremiah Beguesse and Fabian Stone. *See* Dkt. No. 128 at ¶ 1. Through filings and statements made to the Court, the Berone Defendants argued that the joint venture agreement with Prime Capital was forged and that they did not hold a bank account in their name for Prime Capital. *See* Dkt. No. 128-5 at 3. The Berone Defendants also asserted that they never had any of Plaintiff's money. *See id.* The Court appointed the Receiver in the beginning because the Berone Defendants did not appear or object, and Plaintiff alleged that the Berone Defendants were a part of the large-scale scheme to defraud it and steal millions of dollars. *See* Dkt. Nos. 8, 56. Then, even after the Berone Defendants appeared, the Court maintained the Receivership because the Receiver asserted that it could not be sure whether the Berone Defendants ever received Plaintiff's money and because the Receiver identified questionable business practices and responses from the Berone Defendants. *See* Dkt. No. 160. The Court is now once again tasked with determining whether the Receiver should remain in place over the Berone Defendants.

### III. DISCUSSION

### A.     Whether the Receiver Should be Maintained Over the Berone Defendants

As already explained in this Court's March Memorandum-Decision and Order, *see* Dkt. No. 160 at 22, "[i]n order to determine whether a preliminary injunction or a receivership order should be terminated, this Court [] reviews the circumstances in which such an order would be

justified in the first instance – and then considers whether that justification no longer exists."

*Baliga v. Link Motion Inc.*, No. 18-CV-11642, 2022 WL 2531535, *16 (S.D.N.Y. Mar. 9, 2022).

"More specifically, 'modification or dissolution of an injunction is warranted where the changed

circumstances demonstrate that continuance of the injunction is no longer justified and/or will

work oppressively against the enjoined parties.'" *Lead Creation Inc. v. Hangzhou Yueji E-Com.*

*Co.*, No. 22-CV-10377, 2023 WL 2403678, *1 (S.D.N.Y. Mar. 8, 2023) (quoting *Baliga*, 2022

WL 2531535, at *15). "While the decision on whether to discharge 'a receivership turns on the

facts and circumstances of each case[,] . . . [i]t is generally held that a receivership should be

dismissed when the reason for the receivership ceases to exist.'" *Baliga*, 2022 WL 2531535, at

*16 (quoting *S.E.C. v. Kirkland*, No. 6:06-CV-183, 2012 WL 3871922, *1-2 (M.D. Fla. Aug. 6,

2012)) (additional quotation and quotation marks omitted). The factors relevant to the Court's

determination of the need for a receivership are as follows:

> [F]raudulent conduct on the part of defendant; the imminent danger
> of the property being lost, concealed, injured, diminished in value,
> or squandered; the inadequacy of the available legal remedies; the
> probability that harm to [the] plaintiff by denial of the appointment
> would be greater than the injury to the parties opposing
> appointment; and, in more general terms, [the] plaintiff's probable
> success in the action and the possibility of irreparable injury to his
> interests in the property.

*Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting 12 Charles A. Wright

& Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2983 (1999)) (first alteration in

original).

        As identified by the Court in its prior decisions, there are several facts that appear

problematic to the Court when considering whether the Berone Defendants engaged in fraudulent

conduct. *See* Dkt. Nos. 56, 160. For example, despite claiming that the joint venture agreement

is forged, the Berone Defendants have admitted that Prime Capital "was one of its clients."  Dkt. No. 148-1 at ¶ 5.  The Receiver presented the Court with a "Limited Partnership Agreement" signed by Mr. Roglieri for Prime Capital Ventures and Mr. Beguesse for Berone Capital Partners, LLC and Berone Capital Fund, LP.  Dkt. No. 153-3 at 13.

The Berone Defendants' bank records reflect a transfer of $5.9 million to Martin Karo, esq. on November 8, 2022, and $11.8 million to Mr. Karo on November 9, 2022.  *See* Dkt. No. 129-2 at 12.  Mr. Karo is a defendant in Prime Capital's lawsuit against Reign Financial International Inc.—a company that Prime Capital alleges defrauded it.  *See* Dkt. No. 1 at ¶¶ 109-10.  In that case, Prime Capital alleges that Mr. Karo is Reign's "Escrow Attorney."  *Prime Capital Ventures, LLC v. Reign Financial International, Inc.*, No. 1:23-CV-207, Dkt. No. 4 at ¶ 29 (N.D.N.Y.).  Prime Capital alleges that Mr. Karo is liable to Prime Capital for aiding and abetting Reign in a fraudulent scheme to obtain $20 million from Prime Capital.  *See id.* at ¶ 67.  Prime Capital contends that on or about November 7, 2022, Reign wired $12 million to Mr. Karo.  *See id.* at ¶ 41.  In this case, Mr. Beguesse contends that the Berone Defendants' "wires were initiated by Berone at the verbal authorization and direction of Kris Roglieri." Dkt. No. 157 at ¶ 12.  Curiously, Prime Capital did not name the Berone Defendants as a defendant in the Reign case.  It also strains credulity that a reputable business would send millions of dollars via wire transfer according to only a verbal authorization.

The "records" submitted by the Berone Defendants to the Receiver have been scarce and questionable.  Mr. Beguesse provided a "breakdown" of his companies' investments.  Dkt. No. 153-4 at 32.  The "breakdown" is a typed document that lists a few clients and amounts of contributions or fees.  *See id.*  It does not, in any way, substantiate the legitimacy of the Berone Defendants' business.  The Berone Defendants also advised the Court that despite being able to

7

buy expensive luxury vehicles for their business, they work out of the basement of one of the principal's parents' homes.  *See* Dkt. No. 160 at 34, 40.

Perhaps the most concerning and inexplicable thing to the Court is the Berone Defendants' failure to appear in this action until February 6, 2024.  *See* Dkt. No. 96.  The Berone Defendants failed to communicate in any way with this Court or cooperate with the bankruptcy trustee until that time.  In response to this motion, the Receiver and Plaintiff provided the Court with a text message exchange between Mr. Roglieri and Mr. Beguesse from December 29, 2023.  *See* Dkt. No. 180-1 at 13; *see also* Dkt. No. 181 at 5.  The text message exchange occurred only one hour after Mr. Beguesse told the bankruptcy trustee that he was overseas and did not have access to his clients' accounts.  *See* Dkt. No. 180 at 6.  Mr. Roglieri stated, "Good morning.  I saw the email you received.  We are getting this case dismissed next week so if you can refrain from responding to him until late next week and also we can have a conversation before you respond off the record?"  Dkt. No. 180-1 at 13.  Mr. Beguesse responded, "Hey Kris you got it."  *Id.*  Mr. Roglieri responded, "Thank you so much[.]  Btw. Rein [sic] is going to be indicted by fbi.  I had a meeting with them.  Said nothing but good things about you guys and also confirmed that you are not a target as well[] as us.  I said they both scammed us and you guys."  *Id.*  Mr. Beguesse said, "We ONE HUNDRED PERCENT appreciate that Kris we figured that much after our conversation with the SEC."  *Id.*

The Court agrees with Plaintiff and the Receiver that the Berone Defendants' business practices, particularly those connected to Prime Capital and Kris Roglieri, are surrounded by questions of legitimacy and legality.  However, this evidence of potential fraud is not enough to warrant retaining the Receiver over the Berone Defendants because the other factors that the Court must consider are not in Plaintiff's favor.

Neither the Receiver nor Plaintiff address all of the factors applicable to the Court's consideration. *See* Dkt. Nos. 180, 181. Instead, they both argue that Berone's questionable business practices and its association with Kris Roglieri and Prime Capital are sufficient to maintain the appointment of the Receiver. *See id.* Specifically, Plaintiff avers that "it has provided substantial facts and evidence to the Court that Berone was intimately involved in the Ponzi / fraud scheme, including conspiring with Roglieri to violate Bankruptcy Court orders to turn over information." Dkt. No. 181 at 3-4. "Compass has also provided substantial evidence to the Court that the Berone entities were never operated as legitimate companies, have been dissolved by their own filings and have no further business to conduct." *Id.* at 4. Plaintiff contends that "[t]he only effect of setting aside the receivership would be that the few remaining funds of Berone which are held by the receiver would be returned to Berone's principals and dissipated to the detriment of all the Ponzi scheme victims, including Compass." *Id.*

However, it is vitally important to recognize that, at this time, there is only one Plaintiff in this case. *See* Dkt. No. 1.[2] The Court appointed the permanent receiver "to help answer the million-dollar questions of whether Plaintiff's ICA payment still exists and where it is located." Dkt. No. 56 at 18. Although Plaintiff's complaint contains allegations of Prime Capital's and the Berone Defendant's involvement with other businesses and creditors, and the Receiver has outlined those relationships in his status reports, the Court has not been presented with enough evidence of the Berone Defendants' involvement in any of those situations to warrant keeping the Receiver in place as to the Berone Defendants.

---

[2] A motion to intervene by one of Prime Capital's other creditors is pending before the Court. *See* Dkt. No. 138.

The Receiver states that he "still has questions regarding Berone's involvement in this case." Dkt. No. 180 at 2. This is despite "[t]he records the Receiver has obtained [] not show[ing] that Berone came into possession of [Plaintiff's] monies." *Id.* The Receiver takes issue with many of the facts that the Court has already outlined. In particular, he notes that although the Berone Defendants set themselves out as a "Securities and Exchange Commission Registered Investment Advisor," they have failed to produce any internal bookkeeping or financial records because they "claim[] not to have any." *Id.* The Court agrees with the Receiver that this contention is "not credible" where the Berone Defendants claim to conduct business "involving tens of millions of dollars of monies." *Id.* The Berone Defendants' connection to Prime Capital and Kris Roglieri is also troubling given the text message produced which encouraged Mr. Beguesse to wait to engage with the bankruptcy trustee until Mr. Beguesse and Mr. Roglieri could speak "off the record." Dkt. No. 180-1 at 13. Such a text message is even more troubling to the Court given the context that Mr. Roglieri has since been arrested on a criminal complaint alleging wire fraud. *See United States v. Roglieri*, No. 1:24-MJ-261 (N.D.N.Y.).

The Receiver also sets forth the "ongoing disputes between Berone and Prime." Dkt. No. 180 at 5. These include:

> (i) who produced the fraudulent RBC account statement showing allegedly $52,364,000 on deposit at RBC; (ii) whether the Joint Venture Agreement is genuine; (iii) whether Berone was authorized to send millions of dollars to Martin Karo's attorney escrow account; and (iv) what representations Berone may have made to Prime about obtaining a line of credit based on the hedge fund that would have allowed Berone to meet its obligations to its clients.

*Id.* These are all issues that the Court is interested in knowing the answer to as well. However, none of it relates back to Plaintiff's $15,902,250.00. Neither Plaintiff nor the Receiver explain why the Receiver's appointment is necessary to discover the disputed information where the

Berone Defendants are still Defendants to this action and will be required to engage in discovery, regardless of the appointment of a receiver.

Plaintiff's and the Receiver's arguments are not meritless, but they address the issue of fraudulent conduct—a factor the Court has already concluded weighs in Plaintiff's favor. The arguments do not, however, address the other factors that the Court must also consider.

As to the imminent danger of Plaintiff's property being lost, the Court is of the belief that it is likely already lost. However, "[w]hile courts should also consider the injury that the defendants would suffer if a receiver is appointed, '[t]he dispositive issue is whether the appointment of a receiver is '*clearly* necessary to protect plaintiff's interests in the property.'" *Wells Fargo Bank, Nat'l Ass'n v. 3708 Vestal Pkwy E., LLC*, No. 22-CV-4714, 2023 WL 4741216, *4 (S.D.N.Y. July 25, 2023) (quoting *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 254 (S.D.N.Y. 2012)). The Receiver, Plaintiff, and the Berone Defendants agree that there is no evidence, to date, that the Berone Defendants received Plaintiff's money. Therefore, the Receiver over the Berone Defendants is not *clearly* necessary to protect Plaintiff's property, and this factor weighs against maintaining the Receiver as to the Berone Defendants.

As to the adequacy of available legal remedies, Plaintiff is not left without recourse if the Court vacates the receivership over the Berone Defendants. The Receiver remains in place over Prime Capital, this case remains open against Prime Capital and the Berone Defendants, and Prime Capital and Kris Roglieri have entered bankruptcy proceedings. It is possible that either through this case or one of the bankruptcy proceedings, that Plaintiff will see a return of its money. Thus, this factor weighs in the Berone Defendants' favor.

Concerning the probability of harm to Plaintiff versus the harm to the Berone Defendants, potential harm to Plaintiff will likely go unabated for some time.  However, there is insufficient information tying the Berone Defendants to that harm as they were not in control of Plaintiff's ICA deposit.  On the other hand, despite the questions of legitimacy, the Berone Defendants assert that their business is being harmed by appointment of the Receiver because they do not have control over their business and are losing clients and money.  The Berone Defendants contend that their RBC Clearing & Custody account has also been terminated.  *See* Dkt. No. 179 at 9.  This factor therefore weighs in the Berone Defendants' favor.

As to Plaintiff's probable success in its action, it brings conversion and fraud in the inducement claims against the Berone Defendants. Dkt. No. 1 at ¶¶ 171-94.  "Conversion is the 'exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession.'"  *Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, No. 05-CV-10773, 2007 WL 1489806, *7 (S.D.N.Y. May 21, 2007) (quoting *Lopresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997)).  "'Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff[']s rights.'"  *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006)).

"[A]n action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question."  *Moneygram Payment*, 2007 WL 1489806, at *7 (quotation and quotation marks omitted).  "'[W]hen there is no contractual or other legal obligation to return the identical funds allegedly converted, but a mere relationship of debtor and creditor exists between the parties, an action for

conversion of the funds which represent the indebtedness will not lie against the debtor.'" *Id.*
(quoting *In re Ames Dept. Stores, Inc.*, 274 B.R. 600, 629 (Bankr. S.D.N.Y. 2002)) (additional
quotation and quotation marks omitted).

"'To state a claim for fraud in the inducement, the party must allege: (i) a material
misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable
reliance on the misrepresentation by appellants; and (iv) resulting damages.'" *State St. Glob.
Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (quoting *Johnson v. Nextel
Commu'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011)) (citations omitted).  "'In addition, the plaintiff
must allege specific facts as to the fraud, including the misleading statements, speaker, time,
place, individuals involved, and specific conduct at issue.'" *Id.* (citation omitted); *see also* Fed. R.
Civ. P. 9(b); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995).  Under New York law, a
plaintiff "must also '(i) demonstrate a legal duty separate from the duty to perform under the
contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the
contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable
as contract damages.'" *Id.* (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13,
20 (2d Cir. 1996)).

As for conversion, Plaintiff alleges that "Prime and Berone Capital have intentionally and
without authority exercised control over Compass-Charlotte's property and have refused to return
Compass-Charlotte's property."  Dkt. No. 1 at ¶ 182.  That property is the $15,902,250.00.  *See id.*
at ¶ 183.  As to fraud in the inducement, Plaintiff contends that "Prime's and Berone Capital's
representations were false when they were made and Prime and Berone Capital knew them to be
false.  Further, Prime and Berone Capital knew or had reason to know that Compass-Charlotte
was relying on its statements.  Thus, Prime and Berone Capital's statements were reasonably

calculated to deceive." *Id.* at ¶ 175.  Plaintiff alleges that "Berone Capital is liable for Prime's actions, and Prime's conduct and statements are attributable to Berone Capital" because "Berone Capital is a partner in a joint venture with Prime pursuant to a joint venture agreement dated August 16, 2022, which states Berone Capital will be the 'Managing Member' of the joint venture while Prime will be the 'PC Member.'" *Id.* at ¶¶ 173-74.

First, there is no evidence that the Berone Defendants had control over Plaintiff's near $16 million.  Neither Plaintiff nor the Receiver contest that fact.  *See* Dkt. Nos. 180, 181.  Therefore, it does not appear that Plaintiff would likely be successful on a conversion claim against the Berone Defendants where there is no evidence that they had control over the property at issue.

Second, as to the fraudulent inducement claim, Plaintiff has not explained or alleged what representations the Berone Defendants made to Plaintiff that were false.  Plaintiff alleges that the Berone Defendants are liable for Prime Capital's statements, *see* Dkt. No. 1 at ¶¶ 173-74, but "'[w]here fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant.'"  *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) (quoting *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 641-42 (S.D.N.Y. 1999)).  Federal Rule of Civil Procedure "9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (quoting *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)) (citation omitted) (concluding that "[t]he mere fact that the Directors were controlling persons at [the defendant company] does not link them to the statements; the plaintiffs also had to allege that the Directors personally knew of, or participated in, the fraud").  Plaintiff has not alleged separate acts by the Berone Defendants that constitute fraud.

Because, at this time, it does not appear that Plaintiff would likely be successful as to the merits of its claims against the Berone Defendants, this factor weighs in favor of vacatur of the Receivership. Thus, majority of the relevant factors weigh in the Berone Defendants' favor.

Although the Court is not entirely convinced that the Berone Defendants have maintained the best business practices or associates, there has not been enough evidence presented to the Court to keep a permanent receiver in place over them. Appointment of a receiver is a drastic remedy. *See Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961) (stating that a receivership "is a drastic remedy usually imposed only where no lesser relief will be effective"). Because there is no evidence that Plaintiff's money was ever held by the Berone Defendants, the purpose of the Receiver is not being served by his appointment over the Berone Defendants. Thus, the Berone Defendants' motion is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submission and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Berone Defendants' motion to relieve them of the Receiver (Dkt. No. 179) is **GRANTED**; and the Court further

**ORDERS** that the Receiver's appointment over the Berone Defendants is **TERMINATED** as of the date of the filing of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 24, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

16