UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
COMPASS-CHARLOTTE 1031, LLC

                        Plaintiff,

   - against -                                 Case No. 24-cv-55 (MAD/DJS)

PRIME CAPITAL VENTURES, LLC, BERONE
CAPITAL FUND, LP, BERONE CAPITAL
PARTNER, LLC, BERONE CAPITAL LLC,
BERONE CAPITAL EQUITY FUND I, LP,
405 MOTORSPORTS LLC F/K/A BERONE
CAPITAL EQUITY PARTNERS, LLC,

                        Defendants.
-------------------------------------------------------------------

## FIFTH REPORT OF PERMANENT RECEIVER

To:    Hon. Mae D'Agostino, United States District Court Judge

In order to keep the Court and parties advised on matters since his Fourth Report, Paul A. Levine, Esq, Permanent Receiver (the "Receiver"), for Defendants Prime Capital Ventures LLC ("Prime") respectfully submits his Fifth Report to the Court as follows.

### The Chapter 11 Bankruptcy and Continued Need for Urgent Bankruptcy Relief

As the Court is aware, the Receiver determined to and did file a chapter 11 bankruptcy case on behalf of Prime on May 14, 2024 (Case No. 24-10531, NDNY). The purpose of the filing was to generally use the bankruptcy court to further efforts to locate and protect Prime's assets from numerous creditor lawsuits and to seek to preserve a preference claim against B&R Acquisition Partners, LLC and JHM Lending Ventures, LLC (together, "B&R") who obtained a $4,300,000 pre-petition judgment secured by certain real property with a value of at least $3,750,000. The Receiver filed the bankruptcy case at the time he did to seek to unwind the

1

B&R judgment lien and to avoid a windfall to B&R at the expense of a distribution of all assets to all creditors evenly and fairly on a *pro rata* basis all in connection with the management of Prime's business affairs. Over the opposition of the Receiver, the Plaintiff in this action and the Chapter 7 Trustee for Kris Roglieri, the bankruptcy case was dismissed on motion of B&R by Memorandum Decision and Order of the Bankruptcy Court entered July 23, 2024 (the "Bankruptcy Court Order"). The Bankruptcy Court Order was timely appealed. An application for a stay pending appeal by the same parties was denied by this Court by its Memorandum Decision and Order entered August 15, 2024 (Doc. No. 21 in Case No. 24-cv-939) (the "Stay Denial Decision"). The Receiver also notes that throughout his appointment he has been conferring on a near-daily basis with the key creditors in this case concerning how best to locate and protect Prime's assets to maximize recoveries.

The reason for the timing of the filing was to preserve the preference claim against B&R and to ensure that the filing was made before the expiration of the ninety (90) day preference period under 11 U.S.C. § 547. The reasons why the Receiver and his counsel believed he was fully vested with authority to proceed with respect to the bankruptcy are set forth in the Stay Motion and will not be reiterated. (Doc. No. 2 in Case No. 24-cv-939, ¶¶s 49-57). With that said, and in response to the Court's questions, the Receiver states that his actions were taken in good faith, and with the specific goal of locating and protecting Prime's assets such that all creditors would be treated fairly as is Prime's obligation to those creditors. The Receiver believed that the chapter 11 filing was in the furtherance of his duties.

The Receiver of course respects the Court's Stay Denial Decision but nonetheless firmly believes that Prime's assets and liabilities are best resolved in the Bankruptcy Court. The Receiver respectfully believes that the Bankruptcy Court erred at least with regard to the

2

18298790.v4-8/27/24

ratification issue. He is seriously considering pursuing the appeal based on what he and other involved parties believe to be Trustee Dribusch having ratified the Prime bankruptcy filing and understands that Trustee Dribusch is taking steps to refile a bankruptcy case based on his authority under the Bankruptcy Code as the holder of the 100% membership interest in Prime

The urgent reasons for a bankruptcy filing remain because the Receiver is authorized by the Court's January 24, 2024 order to control Prime's assets which will be very difficult to do in light of numerous creditors pursuing judgments in different courts and then executions on those judgments, as well as locating and ascertaining the amount of Prime's assets. Specifically, those reasons include:

1. The several lawsuits pending against Prime that now, without a bankruptcy court stay, will likely be proceeding.

2. Based on the Stay Denial Decision, and putting aside the very real question of what *bona fide* good faith defenses may actually exist, if any, the Receiver now has serious concerns that he may not have the authority to defend such lawsuits. As a result, those lawsuits may result in judgments and other prejudicial outcomes, such as mortgage liens in favor of Prime being declared void, resulting in harm to Prime's numerous victims.

3. The urgent need to engage in nationwide discovery under Bankruptcy Rule 2004 to trace tens of millions of dollars that the Receiver's forensic accountant has identified as being transferred from Prime's accounts over the time of its brief existence. Without such discovery, the Receiver is unable to locate substantial potential assets.

18298790.v4-8/27/24

4. The urgent need to commence numerous recovery actions for fraudulent conveyances under either Bankruptcy Code §548 or New York's Debtor and Creditor Law Article 10 as well as other potential causes of action.

5. The need for a vehicle to treat all victims of Prime's fraud equitably and fairly which the bankruptcy court and code uniquely provide.

6. The need for a forum where all creditors may file claims and have their claims and any other issues heard and determined on notice to all other parties.

7. The need to coordinate activities between this case and the personal bankruptcy filing of Kris Roglieri (Case No. 24-10157) which is now in chapter 7, with Christian Dribusch, Esq. serving as Trustee.  There are numerous significant claims that overlap both Prime and Mr. Roglieri's personal bankruptcy case  And, as a pass-through tax entity, there will be a need to coordinate tax filings.

8. The need for an orderly process to sell assets of Prime, such as the Virginia Beach House and the Richard Mille watch, a task bankruptcy is well suited to handle.

### Investigative Activities

As the Court is aware, the Receiver has retained BST & Co. CPAs, LLC ("BST") to conduct a forensic accounting analysis of Prime's and Berone's bank accounts.  That work commenced and was substantially progressed as detailed in the Receiver's Fourth Report to the Court.  It had been the Receiver's intent upon receiving BST's work, to begin serving a rolling series of subpoenas on parties receiving the substantial monies identified through BST's work.  However, by text order entered April 15, 2024 (Doc. No. 170), in response to the Receiver's inquiry, the Court stated that no discovery is to take place other than in the arbitration between Prime and Compass-Charlotte 1031, LLC.  On August 19, 2024, the Court *sua sponte,* issued a

4

general stay order in the case (the "Stay Order"). (Doc. No. 188). Respectfully, to best discover and protect Prime's assets, discovery must be commenced, either in this Court or, if another bankruptcy case is filed for Prime, in Bankruptcy Court.

A motion for comprehensive relief under Bankruptcy Rule 2004 had been filed in the Bankruptcy Court which, if granted, would have allowed Prime to serve numerous subpoenas on numerous parties to start the effort to recover monies.

### Berone

By Memorandum Decision and Order entered June 24, 2024 (Doc. No. 184) the Court granted the motion of the Berone defendants to be removed from the Receivership. All funds, other than a very minor interest accrual, recovered by the Receiver from Berone's accounts have been returned to Berone. The minor interest accrual will also be sent to Berone. The Berone defendants have since been dismissed from the case without prejudice to any claims that Compass or Prime may later bring. Doc. No. 187.

### Litigation Activities

Without bankruptcy protection, the Receiver has serious concerns that the following legal actions will continue (details on each are set forth in the Receiver's Fourth Report). In light of the Stay Denial Decision, the Receiver is concerned that he may no longer have the authority to participate in any of these cases.[1]

- **ER Tennessee LLC ("ER")**. ER commenced an action against Prime and Berone Capital LLC in New York State Supreme Court, New York County (Index No. 650231/2024). ER alleges fraud and other causes of action against Prime and

---

[1] **135 Railroad, LLC** is a case listed in the Receiver's Fourth Report. 135 Railroad, LLC entered into a loan transaction pursuant to which it paid to Prime $400,000 as a loan deposit and received $400,000 in loan proceeds. Counsel. Given the "wash," the Receiver reached a resolution whereby 135 Railroad released all claims against Prime and Prime released its liens.

5

Berone relating to a deposit in the amount of $5,000,000 ER made in connection with a proposed loan from Prime. The loan was not made and the deposit was not returned. It is anticipated that State Court will reissue a scheduling order in this action which will involve discovery deadlines at the very least.

- **Caruso Home Builders, LLC and Sage Estates Malta, LLC ("Caruso").** Caruso commenced an action in New York Court, Saratoga County (Index No. EF2024312) against Prime alleging breach of a loan agreement. Caruso paid Prime $2,600,000 and received $5,000,000 in partial loan proceeds with regard to its construction project in Saratoga County. Caruso, unlike most victims in this case, was a "net winner" having received more in loan proceeds than it paid. Caruso seeks to recover damages and to have Prime's liens voided. This action needs to be defended.

- 

- **Reign.** This is the case that involves Martin Karo, Esq. and Berone having sent a total of $11,000,000 to Mr. Karo's IOLTA accounts at JP Morgan Chase. This matter needs to be pursued on behalf of Prime but with stay on discovery in this case, and now the Stay Denial Decision and the Stay Order, the Receiver is concerned that he may lack the authority to do so.

- **Onward**. Onward sued Prime and Mr. Roglieri in U.S. District Court, District of Utah and, due to Prime's involuntary bankruptcy, was awarded a default judgment against Mr. Roglieri only. Onward may continue its action against Prime.

- **Camshaft CRE 1 LLC.** Camshaft is suing Prime in state court in Florida, for nearly identical misconduct as alleged in this case for the return of a $12.4 million ICA deposit and may resume prosecution of its claims.

- **1800 Park Avenue LLC** commenced an adversary proceeding in Mr. Roglieri's personal Chapter 11 case objecting to his discharge and also seeking recovery of its $5,000,000 from him along with Prime and Prime Commercial Lending LLC and other individual defendants. The Receiver asserted that the Adversary Proceeding was stayed by Prime's now dismissed bankruptcy case. As indicated above, the Receiver is concerned that he may no longer have the authority to defend this action.

### Status of Assets Over Which the Receiver has Control

With respect to Prime's assets, the Receiver has serious concerns that the Stay Order may prevent the Receiver from moving forward with any effort to liquidate assets.

### Real Estate

As previously reported the Receivership estate includes a valuable luxury beach house in Virginia Beach, Virginia that was purchased, for cash, by Prime in January 2023 for $3,750,000. The house remains insured. This is the property that is subject to the $4,300,000 B&R judgment.

### Investment assets

As previously reported based on information provided by Berone, Prime's investment assets, such as they are, appear to be presently illiquid.

### Vehicles

The FBI has now seized numerous vehicles which the Receiver had targeted in his third party action thereby preventing the Receiver from taking any meaningful action in this regard. The Receiver understands that the Chapter 7 Trustee for Mr. Roglieri is working with the government with regard to a possible sale of certain vehicles which are titled in other Roglieri entities.

The Receiver had been working on a settlement with Tina Roglieri with regard to two high value SUVs she has which were paid for with Prime's funds and had intended to pursue approval of that settlement in the context of the bankruptcy case.

### Watch

For the same reasons expressed above, the Receiver is holding off taking any action with regard to the Richard Mille Skull Watch which Mr. Roglieri caused Prime to purchase for $2,275,000 and which remains in the Receiver's possession secured in a safe deposit box at a local bank.

### Bank accounts

The funds in the Receiver's possession are at M&T Bank in the amount of $1,128,018.85 as of the July 31, 2024. Citibank continues to hold $751,385.  After the dismissal of the Second Circuit appeal, the Receiver had intended to transfer the monies to a debtor possession account but given the dismissal of the bankruptcy case, he needs to retitle the accounts with M&T Bank and can then once again engage with Citi to transfer the monies. A small amount of monies that were at KeyBank have since been transferred.

## Loan Receivables

As stated in his Fourth Report, Prime does have a small number of significant loan receivables. The Receiver has been in contact with each Borrower and the loans remain pending with long maturities.

## Status of Issues Remaining in Prime Involuntary

As the Court is aware, Prime's involuntary bankruptcy case (23-11302 NDNY) was dismissed with the Bankruptcy Court retaining jurisdiction over the disposition of $5,000,000 paid by 1800 Park Avenue LLC that was misappropriated by Prime and Mr. Roglieri[2], as well as Prime's motion under Bankruptcy Code §303(g) for the posting of a bond to secure any alleged damages suffered by Prime as a result of the involuntary filing. Despite the Receiver and Trustee Dribusch having requested the Bankruptcy Court to take both matters off its calendar, the matters remain pending. Given the Stay Denial Decision, the Receiver is uncertain that he can participate in any further hearings on the issues.

## Status Of Roglieri Personal Bankruptcy

As the Court is aware, on February 15, 2024, Mr. Roglieri filed a personal bankruptcy case under Subchapter V of Chapter 11 in the United States Bankruptcy Court for the Northern District of New York (Case No. 24-10157). Since the date of his last report, Mr. Roglieri's case was converted to Chapter 7, with Trustee Dribusch serving. Because he was uncertain that anyone else would do so and the case conversion had not yet happened, the Receiver timely commenced an adversary proceeding prior to the conversion objecting to Mr. Roglieri receiving a discharge. The Bankruptcy Court has since dismissed that adversary proceeding stating that the Receiver did not have authority to conduct legal matters. Given that both the United States

---

[2] Mr. Roglieri was since arrested by the FBI based on this matter and has twice been denied pretrial release based on his alleged threats made about the judiciary, the FBI, the Receiver and the Trustee.

9

Trustee and Trustee have filed their own adversary proceedings objecting to discharge, the Receiver has elected to not pursue an appeal of the dismissal. The Receiver also filed a proof of claim in Mr. Roglieri's case.

### General Communications From Victims

The Receiver continues to regularly be contacted from victims of Prime's fraud and other parties impacted by the cases, including those that have contacted him in the past and new parties seeking information.  The Receiver has regularly consulted with many of Prime's defrauded creditors who contact him on a regular basis concerning the Receiver's steps taken in this case.

### Accounting to the Court

As set forth above, all funds received by the Receiver continue to be on deposit, at interest, at M&T Bank.  With additional monies frozen at Citibank.

The Receiver's Fourth Report previously provided comprehensive financial reporting prepared by BST.  It had been the Receiver's intent, and indeed an application was filed, to retain BST in the bankruptcy case to do required comprehensive bankruptcy reporting and continued forensic activities.  Given the dismissal of the bankruptcy, that application was never considered. With the Receiver constrained as to further legal affairs and the Court having just entered the Stay Order in this case, and with little financial activity happening, the Receiver has paused further work with BST.  Other than interest accruals, fees paid and the small deposit relating to the transfer of KeyBank monies, there has been no meaningful change in the Receivership's financial position other than the payment of professional fees as set forth below.

Since the Receiver's Fourth Report:

- BST billed and was paid $74,996.25 for both continued forensic and bookkeeping services for March, April and May (up to the date of the bankruptcy) at hourly rates ranging from $200.00 to $400.00.

- The Receiver's law firm Lemery Greisler LLC billed and was paid $34,947.30 for 111 hours worked in March, April and May (up to the date of the bankruptcy case) at hourly rates ranging from $350.00 to $425.00.

- The Receiver has been compensated for work in, March, April and May, up to the date of the bankruptcy, the money has gone to his law firm) in the amount of $55,387.79 for 125 hours worked at an hourly rate of $450.00, which also includes reimbursement of expenses in the amount of $1,919.09.

- Since the bankruptcy filing, as of August 19, 2024, the Receiver has incurred $35,370.00 in billable time for which he has not been paid. Significant portions of the time relate to matters other than the Prime bankruptcy, such as its prior involuntary case, on going proceedings in Mr. Roglieri's bankruptcy case and Mr. Roglieri's criminal case (such as monitoring detention hearings given the threats the government's filings disclosed) and ongoing communications with interested parties.

- The Receiver also paid Bond Schoeneck & King ("BSK") a retainer of $100,000 on April 22, 2024 concerning work to prepare for and file the Prime chapter 11 case. As reported in the statement of financial affairs field in connection with the bankruptcy case, for pre-bankruptcy work BSK was paid $60,506.50 for a total of 137.7 hours at rates ranging from $295.00 to $585.00, along with reimbursement of expenses in the amount of $1,738.00, with the balance being held as a retainer.

11

> Since the bankruptcy filing, BSK has incurred approximately $200,000 in billable time which has not been paid. BSK also filed a retention application in the Bankruptcy Court which, for the reasons stated above with regard to BST, was never acted upon by that Court. The Receiver notes that much of the work that BSK performed, if a new case can be filed, would easily be useable with simple updating such as the petition, schedules, statement of financial affairs, turnover motion for the beach house, Rule 2004 motion, retainer applications and the motion with respect to coordination of the Roglieri estate and the Prime case.

Based on the language of the Court's January 12, 2024 order (Doc. No. 8) the Receiver in good faith believed he was within his authority to hire and pay professionals in the ordinary course as the case progressed. As a result, he believed he was authorized to retain and pay BSK. While the Receiver now understands that the Court limited that authority in its January 24th order, respectfully it did not appear apparent on its face that the Court would remove the Receiver's authority in this respect when: (i) the forensic accounting was going to proceed, and was mentioned by the Court in subsequent decisions which would then allow further investigation into the amount and location of Prime's assets; (ii) the Receiver was pursuing his third party action as to which preliminary relief was granted in the Court's March 24th order; (iii) several lawsuits against Prime were pending; and (iv) a New York State Supreme Court's ruling which agreed with the Receiver's view of his authority.

BSK worked in good faith, as has the Receiver, to take steps to locate, ascertain the amount of and to protect Prime's assets such that Prime could, at least in part, redress the damages caused to its creditors. The Receiver, as advised by counsel, believed that a bankruptcy was the best method to discharge his duties including ensuring the fair and equal treatment to all

12

creditors, which Prime, as the debtor, has a duty to achieve. As explained above, much of BSK's work product can be utilized in a subsequent bankruptcy filing. The Receiver respectfully submits it would be inequitable to not allow BSK to be compensated for that work. As to the Receiver, he has continued in his duties on a nearly daily basis which regularly consume substantial portions of his time in detriment to other professional and family commitments. The Receiver requests permission to pay both the Receiver and BSK.

The Receiver respectfully seeks guidance from the Court concerning his role and duties in this case. By separate correspondence, the Receiver is requesting a conference with the Court to address matters moving forward.

WHEREFORE it is respectfully requested that the Court consider this Fifth Report, authorize the payment of the Receiver's and BSK's outstanding compensation, and grant such other and further relief as is just, necessary and proper.

Dated: August 28, 2024

Respectfully submitted,

/s/Paul A. Levine
Paul A. Levine, Esq.
RECEIVER
LEMERY GREISLER LLC
Office and P.O. Address
677 Broadway, 8th Floor
Albany, New York 12207
Ph:  (518) 433-8800
Fax:  (518) 433-8823

plevine@lemerygreisler.com

18298790.v4-8/27/24